**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

*In re* Application of

MOUSSY SALEM,

              Applicant,

FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782 FROM BENO
SALEM

**Civil Action No.**

**MEMORANDUM OF LAW IN SUPPORT OF MOUSSY SALEM'S**
**APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

-

DLA Piper LLP (US)
FL Bar No. 118716
Andrea Guzman
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
PH: 305-423-8525
FX: 305-310-5663
andrea.guzman@us.dlapiper.com

James E. Berger (*pro hac vice* pending)
Charlene C. Sun (*pro hac vice* pending)
Erin Collins (*pro hac vice* pending)
Jamie Brensilber (*pro hac vice* pending)
1251 Avenue of the Americas
New York, NY 10020
PH: 212-335-4715
FX: 212-884-8715
james.berger@us.dlapiper.com
charlene.sun@us.dlapiper.com
erin.collins@us.dlapiper.com
jamie.brensilber@us.dlapiper.com

*Attorneys for Applicant Moussy Salem*

## <u>TABLE OF CONTENTS</u>

Preliminary Statement..................................................................................................................... 1

Factual Background......................................................................................................................... 4

A.     The Salem Family ................................................................................................................ 4

B.     African Businesses .............................................................................................................. 5

C.     Management of the African Businesses............................................................................... 6

D.     The Monline Claims ............................................................................................................ 8

E.     The Eastern District of New York 28 U.S.C. § 1782 Action.............................................. 12

Argument ...................................................................................................................................... 13

A.     This Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782 ...................... 13

       1.     Moussy Salem Is An Interested Person............................................................... 14

       2.     The Request Seeks Evidence, Including Testimony and the Production of
            Documents ............................................................................................................ 14

       3.     Beno Salem is Found in this District .................................................................... 14

       4.     Discovery Sought is "For Use in a Proceeding" that is Foreign or International ..... 15

       5.     This Court Should Exercise its Discretion in Favor of Granting the Application .... 17

            i.     Beno is Not a Participant in the Foreign Proceeding.................................... 17

            ii.     There is No Evidence the English Court Should not be Receptive to this
                 Court's Assistance.................................................................................... 18

            iii.     The Application does not Implicate any Foreign Proof Gathering
                 Restrictions............................................................................................... 19

            iv.     The Discovery Sought is not Unduly Burdensome....................................... 21

Conclusion .................................................................................................................................... 22

Moussy Salem ("**Moussy**," or the "**Applicant**"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his application (the "**Application**") for an order pursuant to 28 U.S.C. § 1782 ("**Section 1782**") authorizing him to seek discovery from Beno Salem ("**Beno**" or "**Respondent**") in accordance with the attached forms of subpoena *duces tecum* and *ad testificandum* (together, the "**Subpoenas**").[1]  The Court should grant the Application, for the reasons below.

## PRELIMINARY STATEMENT

This Application is in aid of a civil litigation proceeding (the "**English Proceedings**") currently pending before the High Court of Justice, Business & Property Courts of England and Wales, Business List (ChD) (the "**English Court**"), Claim No. BL-2022-000926, involving claims made by Moussy (having been assigned the claim by Monline International Limited ("**Monline International**"), which originally brought the claim) against one of Monline International's directors, Freddy Salem ("**Freddy**"), as well as against Monline UK Limited ("**Monline UK**") and Monline UK's sole directors and shareholders Salim Levy and Ezra Aghai.

As of March 30, 2016, Monline International's core asset was a logistics agreement with Morsgate International Limited ("**Morsgate**"), pursuant to which Monline International was responsible for providing logistics and management services (the "**Parker Services**") to a set of trading businesses (the "**African Businesses**") and for which Monline International received payment for its services.  As discussed in further detail below, the African Businesses are owned by the Salem Family, and held through a series of trusts.  Respondent Beno is a beneficiary of some of these trusts, and is also a shareholder in certain of the African Businesses.

---

[1]  Although Courts routinely grant Section 1782 applications *ex-parte*, Applicant is filing this application with notice.  Applicant will file a certificate of service with the Court upon delivering copies of this application to the discovery target.

In the English Proceedings, Moussy alleges that his uncle, Freddy (a director of Monline International), breached his duties to Monline International when, on or around June 7, 2016, he transferred Monline International's assets to Monline UK (a company owned and directed by Salim Levy and Ezra Aghai, allegedly on trust for Freddy) without Moussy's knowledge, and for insufficient or no consideration.   Moussy alleges that by causing, procuring, or otherwise permitting this transfer, Freddy (with the assistance of Salim Levy and Ezra Aghai) (1) diverted the business of Monline International, (2) misapplied Monline International's assets, (3) caused Monline International to make unlawful distributions of capital to one of its shareholders, (4) exercised his powers for an improper purpose, (5) preferred his own interests to those of Monline International, (6) failed to obtain approval of the other shareholders and directors of Monline International prior to transferring Monline International's assets to Monline UK, (7) acted to the detriment of Monline International, and (8) failed to keep proper books and records related to that transfer.  Finally, Moussy alleges that the transfer of assets to Monline UK was part of a conspiracy by Freddy (and other members of the Salem family) to place Monline International's assets out of reach of the other shareholders of Monline International — Mireille Salem and Moussy — since 2013, when Moussy was ousted from the management of the African Businesses.  As a result, Moussy claims in the English Proceedings that he, on behalf of Monline International (as the assignee of such claims by Monline International), is entitled to the return of Monline International's assets or to equitable compensation from Freddy and Monline UK.

Beno has also been responsible since 2013 for, *inter alia* and with others, the management of several of the African Businesses, a subset referred to in this Application as the Salem Businesses (the "**Salem Businesses**"), and assisted Freddy and Freddy's son Philip Salem ("**Philip**") in taking steps to inhibit Applicant and his family from benefiting from the profits of

the African Businesses.  Accordingly, Beno is likely to have critical documents pertaining to efforts by himself, Freddy, and Philip to restructure management of the African Businesses to prevent Applicant and his family from receiving the profits owed, as well as detailed information regarding the value of the Parker Services at the time of the transfer of those services from Monline International to Monline UK.  This information is relevant to Moussy's claims in the English Proceedings concerning whether sufficient compensation was paid when this asset was transferred, and to determine the quantum of damages owed due to Freddy's wrongful acts.  Thus, Applicant seeks an order authorizing this Application and the issuance of Subpoenas to Beno Salem.

As shown below, this Application meets all of the statutory requirements of Section 1782 to warrant discovery.  Beno Salem is "found" in this District because he resides in Sunny Isles Beach, Florida, considers Florida his "home" and intends "to reside in Florida for all of the foreseeable future."  Declaration of Beno Salem, *In re* Petition of Moussy Salem, No. 23-mc-01092-ENV, Dkt. No. 14, at ¶¶ 2-3 (E.D.N.Y. 2023).  The discovery sought is highly material and relevant to the issues at stake in the ongoing English Proceedings, and is "for use" in those proceedings.  The documents and information requested will help Applicant establish the fraud and breaches of duties perpetrated by Freddy, and will provide additional information to ensure that Moussy receives equitable compensation and/or damages for the assets transferred out of Monline International.

Moreover, each of the *Intel* discretionary factors are met.  Respondent is a nonparticipant in the English Proceedings and cannot be compelled by the English Court to disclose information or documents.  There is nothing to indicate that the English Court will decline U.S. judicial assistance, nor is this discovery request an attempt to circumvent English proof-gathering restrictions.  Finally, this request is narrowly tailored to documents and information relating only

to the operation and management of a subset of the African Businesses that are currently most at issue in the English Proceedings, which are referred to herein as the "**Salem Businesses**". Accordingly, Applicant respectfully requests that the Court grant the Application and permit Applicant to serve the Subpoenas on Beno Salem.

## FACTUAL BACKGROUND

### A.   THE SALEM FAMILY

Applicant is a member of the Salem Family.  The Salem Family is composed of the children of Moussa Salem (the grandfather of the Applicant) and Perla Ishak Yael, and their descendants. It is composed of four branches, corresponding to Moussa's and Perla's four children: (1) the late Raymond Salem, husband to Mireille Salem and father to Moussy Salem, the "**R Branch**;" (2) Beno Salem and his family, the "**B Branch**;" (3) Freddy Salem and his family, including son Philip, the "**F Branch**;" and (4) Isaac Salem and his family, the "**I Branch**."  The four branches each hold or held interests in various trusts set up by Moussa and Perla.

The I Branch's interests in these trusts have already been separated from those of the rest of the Salem Family, however, the R, F and B Branches remain connected because they are all beneficiaries of certain trusts (which hold some parts of the African Businesses) and because they are beneficiaries of separate trusts which share interests in the same assets (again parts of the African Businesses).

At present, there has been a near total breakdown in relations between the R Branch and the F and B Branches.

## B.    AFRICAN BUSINESSES

The Salem family operates a trading business in West Africa, known as the "**African Businesses**," which are beneficially owned in equal parts by the R, F, and B Branches.[2]  *See* Declaration of Simon Goldring ("**Goldring Decl.**") Ex. B, ¶ 19; *see also* Goldring Decl., Ex. C, at ¶¶ 5, 4b.  The African Businesses' operations include the import and distribution of consumer products such as pharmaceuticals, tobacco products (including the exclusive right to distribute and retail British American Tobacco tobacco products in several countries), personal care, food, alcoholic and non-alcoholic beverages, and confectionary products.  *See* Goldring Decl., Ex. C, ¶ 5(c).

Historically, the R, F and B branches managed the African Businesses equally.  *See* Goldring Decl., Ex. C, ¶ 4.  Moussy took over the R Branch's management duties in 1997 upon his father's incapacity due to a stroke.  *See id.*  But, as alleged in the English Proceedings, in 2013, Moussy was excluded from activities associated with running the African Businesses, which from

---

[2]    The African Businesses are comprised of the following entities: Africa International Group, Cobetrac, Madison Sarl, Société Cobexim SARL, Monline International Limited, Boulder Finance Limited, Cromwell Trading Corp, Fernbridge International Limited, Glynfield Finance Limited, Great Brands (Holdings) Limited, Metrocom Holdings Inc., Nartnett Limited, Tabcom SA, Transglobe Logistics Management Limited, Universal Metrocom Limited, Vélaire Limited, Westco Export Trading, Bargain R Us, Comfu, Diplo FZ Limited, First Rec Ltd., Forewin (Ghana) Limited, HMD Africa Limited, HMD Africa Services Limited, HMD Forewin Limited, Lewadis FZ Limited, Mabani Seven Company Ltd., Mabani Six Company Limited, Mass Industries Limited, Star Games, Zoobashop Limited, Bracknell Investments Limited, Framwell Investments Limited, Morsgate International Ltd., Chakras (Holding) SAL, Gestcom International Offshore SAL, Gestcom International Trading Offshore SAL/Gee Trading (Offshore) SAL, Globest Services Offshore SAL, Conchee Holdings SARL, Gateacre Holdings SARL, Great Brands (Holdings) Limited, Mabani FBR Holdings Mauritius Limited, Mabani Holdings Ghana Limited, Mabani Real Estate & Management Services (MI) Limited, Maiddat MI Ltd, Marchari Investments Ltd, Afro Ocean Bridge Nigeria Ltd, BA Nigeria Distribution Ltd, Best Tobacco Company Ltd, Big Bowl Company Nigeria Ltd, Blue Arrow TSW Limited, Dynabuy Nigeria Company Limited, Grand Concept Ltd, Great Brands Nigeria Limited, IDF Trading Company Ltd, Inter Market Distribution Company Ltd , Inter Trade Worldwide Distribution Company Ltd, Inter-Food Distribution Company Ltd, Mabani Five Nigeria, Mabani Four Nigeria, Mabani Real Estate Nigeria Limited, Mabani Three Nigeria, Mabani Two Nigeria, Maon Alpha Alliance Ltd, Maon Holdings Ltd, Maon Services Ltd, Maon Technology Ltd, Saharan Distillers Ltd, Ultra Trade Company Nigeria Ltd, Perron Trading Inc, Richon Trading Co Ltd, Simpex Limited, Wafco Inc, Royal Beverages Espana SL, Societe Samex Sarl, Togo Trading & Disribution SARL, Monline UK Limited, Parker Logistics Limited, Blue Arrow Warehousing & Logistics LLC, Bonita Warehouse LLC, BS Gestcom Holdings Corp, BS Global Holdings Corp, BS and DS Holding Corp, and Renis Warehousing LLC.

then onwards have been under the control of Freddy, Beno, and Philip. *See id.* Accordingly, from this point forward, Moussy had no access to the email systems or physical offices used to run the affairs of the African Businesses, namely those systems owned and offices used by Parker Logistics Limited ("**Parker Logistics**") until 2016 and thereafter by Monline International and Monline UK. *See* Goldring Decl., ¶ 8. As a result, since 2013, members of the R Branch, including Applicant, have had very limited information concerning the operation of the African Businesses, including the provision of the Parker Services, though they have remained entitled, as beneficiaries of various Salem family trusts, to their share of profits from the African Businesses.

As alleged in the English Proceedings, the Salem family trusts received profits from the African Businesses through a corporate structure involving several offshore companies including Morsgate. Goldring Decl., Ex. C, ¶ 3. However, once the R Branch was excluded from management of the African Businesses, the profits from the African Businesses paid out to the R Branch through the Salem family trusts suffered a sudden and inexplicable decline. *Id.* Moussy has alleged in the English Proceedings that Beno, Freddy, and Philip, who continue to manage the trading companies overseeing the African Businesses, have altered the management of the African Businesses in order to divert profits away from the R Branch. *See* Goldring Decl., Ex. C, ¶ 4f & g; *see also* Goldring Decl., Ex. A, ¶ 25.

C.   **MANAGEMENT OF THE AFRICAN BUSINESSES**

Historically, one of the primary ways that the three branches of the Salem family operated the African Businesses was through an English company called Parker Logistics, which had a logistics agreement with Morsgate (the "**Morsgate Agreement**"). *See* Goldring Decl., Ex. A, ¶ 15. As alleged in the English Proceedings, in March 2016, the B and F Branches of the Salem Family transferred management of the African Businesses, including the right or opportunity to

provide the Parker Services to said businesses via Morsgate from Parker Logistics, to Monline International.  *See* Goldring Decl., Ex. A, ¶ 16(b).

Monline International was incorporated in the British Virgin Islands on September 23, 2005.  *Id.* ¶ 2.  Applicant understands that at all material times (*i.e.*, the times during which it was proposed or contemplated that Monline International would provide the Parker Services), Freddy beneficially owned 50% of Monline International, and Moussy and Mireille beneficially owned the remaining 50%.  *See id.*, ¶ 5.  Monline International was effectively dormant until it took over provision of the Parker Services from Parker Logistics in 2016.  *See id.*, ¶ 6.  Moussy lent funds to Monline International to fund the original transfer of the assets of Parker Logistics (including the provision of the Parker Services) to Monline International.  *See* Goldring Decl., Ex. B, ¶ 11.

Shortly after the transfer of the assets and provision of the Parker Services to Monline International, a representative of Freddy requested that Moussy agree to a further transfer of management, this time from Monline International back to an English company.  Goldring Decl., Ex. A, ¶ 19(a).  Moussy did not object, as long as the ownership structure remained the same and that he and Freddy were both appointed directors of the newly incorporated UK company.  *Id.* ¶ 19(b).  Freddy moved ahead with the transfer without further consulting Moussy.  Moussy later learned that Freddy had transferred the assets of Monline International and provision of the Parker Services to a new English company, Monline UK, in which neither Moussy nor Mireille had any ownership interest nor any control, and for no or insufficient consideration.  *Id.* ¶ 19(b)-(c).

Following the start of the English Proceedings, on July 11, 2023, Monline UK, Salim Levy and Ezra Aghai admitted that Monline UK had ceased to provide the Parker Services to Morsgate in or around July 2017 and instead, at that point, Gestcom International Trading Offshore SAL/Gee Trading (Offshore) SAL ("**Gestcom**") became the sole recipient of the Parker Services in place of

Morsgate.  Goldring Decl., ¶ 10.  They further admitted, on August 2, 2023, that the Parker Services were provided to Gestcom until in or around March 2021 at which point they ceased being provided altogether.  *Id.*  It therefore appears that from July 2017 Gestcom took on the role of Morsgate in the Salem Businesses.  Accordingly, Applicant has reason to believe that the Parker Services may have been supplied to unknown third parties other than Morsgate, and have alleged as much in the English Proceedings.  *Id.*

D.   THE MONLINE CLAIMS

On October 12, 2020, a British Virgin Islands court ordered Monline International to be wound up.  *See* Simon Goldring Decl., Ex. A, ¶ 3.  In connection with the liquidation, two liquidators were appointed, who conducted an investigation into Monline International's affairs and determined it was necessary to initiate a separate litigation in the UK against Monline UK, Freddy, and the two directors and shareholders of Monline UK, Salim Levy and Ezra Aghai, relating to wrongdoing by those persons and entities in connection with the assets of Monline International.  *See id.* at 8.

This resulted in the commencement of the English Proceedings, and on October 4, 2022, an English court assigned the prosecution of the case to Moussy pursuant to a deed of assignment between Monline International and Moussy.  *See* Simon Goldring Decl., Exh. A, ¶ 1.

The English Proceedings concern three core claims (together, the "**Monline Claims**"): (1) breach of duty by Freddy; (2) gratuitous transfer by Freddy (and knowing receipt of that transfer by Monline UK, Salim Levy, and Ezra Aghai), and (3) conspiracy to divest Monline International of its assets to place those assets out of reach of Applicant.  *See generally*, Goldring Decl., Ex. A.

To establish that Freddy breached his duty to Monline International, Moussy must demonstrate, *inter alia*, that Freddy diverted business of Monline International and/or corporate

opportunities of Monline International, and specifically the provision of the Parker Services, to Monline UK; that Freddy preferred his own interests and/or those of Monline UK and its shareholders over the interests of Monline International; and that Freddy acted to the detriment of Monline International.  Goldring Decl., Ex. A, ¶ 25.  Moussy also alleges that Freddy failed to keep proper books and records for Monline International including the records and explanations for the transfer of assets from Monline International to Monline UK.  *Id*. ¶ 26.  Given Beno's close relationship with Freddy in connection with the overall management of the African Businesses, including the provision of the Parker Services, Beno is likely in possession of information and documents regarding these actions.  Goldring Decl., Ex. B, ¶ 19(b).  Further, Beno's position as shareholder of some of the companies which form part of the African Businesses, including one of Morsgate's corporate shareholders,[3] makes it likely that Beno is in possession of documents and information not only regarding the change in provision of the Parker Services from Monline International to Monline UK, but also information concerning the circumstances in which the provision of the Parker Services by Monline UK ceased and were transferred to Gestcom (in which Beno is an indirect shareholder).

Second, to establish the gratuitous transfer by Freddy, Moussy will need to show that the transfer of the Parker Services from Monline International to Monline UK was unconscionable because Monline UK obtained these assets without providing any or sufficient consideration.  Goldring Decl., Ex. A, ¶¶ 28-29.  Moussy will therefore need to demonstrate the value of the revenues generated by the provision the Parker Services, which has been opaque to Moussy since his ouster from the management of the African Businesses in 2013.  *See e.g.*, *id.* ¶ 30.  The English

---

[3]   Applicant understands that Morsgate's shareholders include:  Great Brands Nigeria Limited, Forewin (Ghana) Limited, Blue Arrow TSW Limited, Société Cobexim SARL, and Lewadis FZ Limited.  Beno directly owns 40% of Société Cobexim SARL.  Goldring Decl., ¶¶ 15-16.

Court will also need to assess what revenue and profits Monline International would have made, but for the unlawful diversion of business and assets to Monline UK and beyond.  In order to do so, the Court will need to understand the operations of and the expenditure of the African Businesses, as the revenue and profits of Monline International would have derived from services provided to support those operations and expenditure (namely the Parker Services).  As shareholder of several of the African Businesses, Beno will be able to shed light on the activities and expenditure of these businesses.

Finally, for Moussy to establish that Freddy and the other defendants in the English Proceedings were part of a conspiracy, Moussy will need to demonstrate that the transfer of assets from Monline International to Monline UK was part of a concerted action taken for the purpose of placing those assets out of reach of Mireille and Moussy.  *Id.* ¶ 32.  Given Beno's role in assisting with Moussy's ouster from management of the African Businesses generally in 2013, Beno is likely in possession of documents and communications demonstrating concerted action involving Freddy and the other defendants in the English Proceedings to deprive the R Branch of its share of profits from the African Businesses.  *See e.g.*, Goldring Decl., Ex. C, ¶ 4g.

The English Proceedings are still in the early stages, and Moussy has obtained an order for disclosure from the English Court.  On July 19, 2023, the English Court ordered the parties to disclose documents relevant to the following issues: (1) the winding up of Parker Logistics, (2) the sale of Parker Logistics' business (*i.e.*, the provision of the Parker Services) to Monline International, (3) the beneficial ownership of Monline UK, (4) the transfer of Monline International's operations (*i.e.*, the provision of the Parker Services) and assets to Monline UK, (5) Monline International's UK bank account (or lack thereof), (6) the control of Monline UK, (7) what services were provided to Morsgate, what payments were made for those services and to

whom and what role did First and Fourth Defendants in the English Proceedings play in the management or affairs of Morsgate, (8) whether Monline UK provided the Parker Services (or similar) to any entity other than Morsgate (including without limitation Gestcom), (9) what became of assets transferred to Monline UK, (10) whether there should be set-off of payments made by Monline UK to Moussy, and (11) the assignment of the claim in the English Proceedings to Moussy Salem.  Goldring Decl., ¶ 14.  Because Beno is not a party to the English Proceedings, he is not subject to the disclosure order, but he is likely in possession of documents and information relevant to the English Proceedings.  The Applicant has limited the focus of this Application to a subset of the African Businesses defined herein as the Salem Businesses.[4]  These include the entities which own a share of Morsgate and the entities involved in the provision or receipt of the Parker Services.  Goldring Decl., ¶¶ 15-16.

Moreover, the Defendants in the English Proceedings have, as explained above, very recently admitted that Gestcom replaced Morsgate as the recipient of the Parker Services in or around July 2017.  Goldring Decl., ¶ 10.  The Defendants further admitted that in or around March 2021, Monline UK ceased to provide the Parker Services altogether.  *Id.*  The provision of the Parker Services from July 2017 onwards is therefore an ongoing line of investigation in the English Proceedings, and the English Court will need to understand: (1) the role that Gestcom played once it received the Parker Services, including whether the Parker Services were still required after March 2021, and (2) who, if anyone, provided the Parker Services following that date.

---

[4]   The Salem Businesses are limited to:  Société Cobexim SARL. Monline International Limited, , Glynfield Finance Limited, Transglobe Logistics Management Limited, Forewin (Ghana) Limited, Lewadis FZ Limited,  Gestcom International Offshore SAL, Gestcom International Trading Offshore SAL/Gee Trading (Offshore) SAL, Blue Arrow TSW Limited, Great Brands Nigeria Limited, Monline UK Limited, Parker Logistics Limited, and BS Gestcom Holdings Corp.

E.    THE EASTERN DISTRICT OF NEW YORK 28 U.S.C. § 1782 ACTION

Upon evidence, information and belief that Beno resided in Brooklyn, New York, on April 18, 2023, Moussy filed a Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 ("**New York Application**") on an *ex parte* basis in the United States Court for the Eastern District of New York ("**New York Court**").  *Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, *In re Petition of Moussy Salem*, No. 23-mc-01092-ENV, Dkt. No. 2 (E.D.N.Y. 2023).   The New York Court granted the New York Application on May 1, 2023.  Order, *In re Petition of Moussy Salem*, No. 23-mc-01092-ENV, Dkt. No. 7 (E.D.N.Y. 2023).

Applicant then attempted personal service on Beno on 11 separate occasions, at three separate addresses.  *Ex Parte* Motion for Alternative Service, *In re Petition of Moussy Salem*, No. 23-mc-01092-ENV, Dkt. No. 8 (E.D.N.Y. 2023).  Those efforts, which were made over the course of six weeks, were unsuccessful.  Accordingly, on July 7, 2023, Applicant moved for, and the New York Court granted, alternative service (1) by email, WhatsApp, and certified mail to Beno Salem, and (2) email and certified mail to Beno's New York-based attorney.  *Id.* at 1; *see also* Order Granting Applicant's *Ex Parte* Motion for Alternative Service, *In re Petition of Moussy Salem*, No. 23-mc-01092-ENV, Dkt. No. 9 (E.D.N.Y. 2023).  Applicant then served Beno on July 10, 2023 consistent with each of the alternative means granted by the Eastern District of New York.  Affidavit of Service, *In re Petition of Moussy Salem*, No. 23-mc-01092-ENV, Dkt. No. 10 (E.D.N.Y. 2023).

Following service, Beno Salem filed a Motion to Quash the Subpoenas and argued, *inter alia*, that the Subpoenas should be quashed because Beno Salem did not reside in the Eastern District of New York.  Memorandum of Law in Support of Beno Salem's Motion to Quash, *In re Petition of Moussy Salem*, No. 23-mc-01092-ENV, Dkt. No. 12 (E.D.N.Y. 2023).  In support of

that motion, Beno declared that he resides in Sunny Isles Beach, Florida, considers Florida his "home," and intends "to reside in Florida for all of the foreseeable future."  Declaration of Beno Salem, *In re* Petition of Moussy Salem, No. 23-mc-01092-ENV, Dkt. No. 14, at ¶¶ 2-3 (E.D.N.Y. 2023).

On July 31, 2023, Applicant filed a Notice of Voluntary Dismissal, withdrawing the New York Application without prejudice to refiling in this District on the basis of Beno's declaration that Florida is his domicile.  Notice of Voluntary Dismissal, *In re* Petition of Moussy Salem, No. 23-mc-01092-ENV, Dkt. No. 17 (E.D.N.Y. 2023).

## **ARGUMENT**

A.    **THIS APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782**

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The statute reads, in pertinent part:

> **The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal**…The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal **or upon the application of any interested person** and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court…

28 U.S.C. § 1782 (emphasis added).

Section 1782 permits a district court to grant an application where applicants can establish four factors:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be

found in the district of the district court ruling on the application for
assistance.

*Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 816 (11th Cir. 2019); *see also In re Clerici*, 481

F.3d 1324, 1334 (11th Cir. 2007); *In re England/Bahamas*, No. 20-MC-61696, 2021 WL 3270074,

at *2 (S.D. Fla. 2021).

As explained in detail below, Applicant satisfies each of the four statutory requirements

set forth in Section 1782: (1) Applicant qualifies as an interested person seeing as he is the

claimant in the English Proceedings; (2) the requests seek the testimony of Beno Salem and

documents in his possession; (3) the documents and information that Applicant seeks are plainly

"for use" in a foreign court proceeding; and (4) the person from whom discovery is sought, Beno

Salem, lives in this District.

### 1.      Moussy Salem Is An Interested Person

Moussy is an "interested person" within the meaning of Section 1782. The Supreme Court

has explicitly stated that an "interested person" is a "complainant [who] 'possess[es] a reasonable

interest in obtaining [judicial] assistance.'" *Intel*, 542 U.S. at 256. Moussy is the claimant in the

English Proceedings, and by this Application he seeks evidence to support the Monline Claims in

those proceedings. He accordingly has a clear interest in obtaining judicial assistance to help him

prosecute the Monline Claims and is an interested person for purposes of the statute.

### 2.      The Request Seeks Evidence, Including Testimony and the Production of Documents

The second statutory requirement is satisfied because the Application seeks both

testimonial and documentary evidence, as set forth in the attached Subpoenas.

### 3.      Beno Salem is Found in this District

The third statutory requirement is that the person from whom discovery is sought resides,

or is found, in the district of the district court to which the application is made. *Victoria*, 791 F.

App'x at 816.  Beno Salem has declared that he resides in Sunny Isles Beach, Florida, "intend[s] to reside in Florida for all of the foreseeable future," is a member of a synagogue in Florida, has a Florida driver's license, and owns two personal vehicles which are registered in Florida under his current address.  Declaration of Beno Salem, *In re Petition of Moussy Salem*, No. 23-mc-01092-ENV, Dkt. No. 14, at ¶¶ 2-5 (E.D.N.Y. 2023).  Under such circumstances, Beno is "found in" this district.  *In re MTS Bank*, No. 17-21545-MC, 2017 WL 3155362, at *5 (S.D. Fla. July 25, 2017) (finding a discovery target was "found in" the district because the target "(1) owns real property, (2) owns two automobiles, (3) pays real estate taxes, (4) owns a Florida telephone number, and (5) conducts financial transactions.").

**4.     Discovery Sought is "For Use in a Proceeding" that is Foreign or International**

The information sought in the Subpoenas is for use in an ongoing foreign court proceeding. Courts in this district have found that the evidence is "for use" in a foreign proceeding when it may be "employed with some advantage or serve some use in the proceeding" *In re Bernal*, No. 18-MC-21951, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018).  This includes instances when an applicant exhibits the "practical ability to inject the requested information into [the] foreign proceeding." *Id.* (internal quotations omitted).  This analysis does not require determining whether the foreign court will ultimately decide to admit or include the evidence.  *Id.* at *5.

Here, Applicant easily satisfies the "for use" requirement.  The evidence Applicant seeks is intended to be used in the English Proceedings, which are adjudicative proceedings before the English Court.  An order for disclosure has been given in those proceedings, and much of the information sought from Beno tallies closely with the issues on which the Defendants to the English Proceedings are required to provide disclosure.  One of the issues in dispute is whether any or adequate consideration was paid for the transfer of the provision of the Parker Services from Monline International to Monline UK.  In order to assess the adequacy of any consideration

paid, the English Court will need to understand the revenues generated by the provision of the Parker Services.  This information will assist the English Court in understanding the value of the Parker Services at the time of the transfer (and in the future), and what adequate consideration would have been for such services.

Moussy only recently learned that Gestcom replaced Morsgate as the recipient of the Parker Services in or around July 2017.  The continued changing hands of the administrator of the Parker Services is a continuing line of investigation in the English Proceedings.  Therefore, information from Beno regarding the provision of the Parker Services to Gestcom will aid the English Court in understanding what services were provided to Gestcom, whether the Parker Services were still required after March 2021, and who provided such services from that point onward.

The discovery sought by Beno is therefore "for use" in the English Proceeding as it will aid the English Court in understanding the full chain of events surrounding the provision of the Parker Services and in assessing the adequacy of the consideration paid for the transfer of the Parker Services.

It will also assist Moussy in efforts to quantify the value his claims.  The discovery sought includes information about the operations and expenditure of the Salem Businesses, and the profits Monline International should have generated while providing the Parker Services.  As an owner of certain of the Salem Businesses, indirect shareholder of Gestcom, and head of the B Branch, Beno likely has direct access to this information, which Moussy (as the claimant in the English Proceedings) would then be able to "inject" and proffer to support his claims in the English Proceedings.

In sum, the information that Applicant seeks is clearly "for use" in the English Proceedings.

5.     **This Court Should Exercise its Discretion in Favor of Granting the Application**

Where, as here, the statutory elements are satisfied, a district court may grant discovery in its discretion. *See In re Bernal,* 2018 WL 6620085, at *6.

In evaluating such discretion, the Supreme Court in *Intel* outlined four factors for consideration: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *In re Clerici*, 481 F.3d at 1334; *In re Bernal,* 2018 WL 6620085, at *6.  These factors all weigh in favor of granting the Application.

### i.     Beno is Not a Participant in the Foreign Proceeding

The Supreme Court has stated that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.  In contrast, courts routinely grant discovery when the respondent is not a party to the foreign proceeding. *See In re Bernal,* 2018 WL 6620085, at *6 (recalling that because the discovery targets are "not participants in the foreign proceeding" "that the first factor weighs in favor of denying the motion to quash").

Even though Beno is a partial legal owner of certain of the businesses which comprise the Salem Businesses, and oversees the B Branch including the B Branch's trusts, Beno is not a party to the English Proceedings as he is not one of the owners of Monline UK.  Because Beno is not a

party to the English Proceedings, the first *Intel* factor weighs strongly in favor of granting the Application.

> ### ii.    There is No Evidence the English Court Should not be Receptive to this Court's Assistance

The second *Intel* factor also weighs in favor of Applicant.  In evaluating this factor, courts seek "authoritative proof" that a foreign tribunal would reject evidence obtained with the aid of Section 1782. *In re Bernal*, 2018 WL 6620085, at *6.  In fact, courts should not "engage in 'speculative forays' into 'unfamiliar' legal territories to determine the likely reaction of a [foreign] court to any Section 1782 discovery." *Id.* at *7.  Instead, as courts in this district have explained, the court should "consider only 'authoritative proof' and '[a]bsent this type of clear directive . . . a district court's ruling should be informed by 1782's overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Id.* (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).  Courts in this District have repeatedly found English courts to be receptive to discovery assistance. *See In re Novoship (UK) Ltd.*, No. 20-60876-MC, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020) ("[T]here is no indication that the courts of the United Kingdom would be unreceptive to American evidence and, in fact, § 1782 is routinely used to obtain evidence for proceedings in that country."); *In re Emergency Ex Parte Application of Godfrey*, No. 17-21631-CV, 2018 WL 1863749, at *10 (S.D. Fla. Feb. 22, 2018), *report and recommendation adopted sub nom.*, *In re Godfrey*, No. 17-21631-CIV, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018) ("Some U.S. district courts have also recognized that English courts are generally receptive to § 1782 discovery.").

Consistent with these prior decisions, Applicant has no reason to believe that the English Court will not be receptive to accepting evidence obtained through Section 1782 discovery.  The

evidence gathered from Beno through the use of Section 1782 discovery would aid the English Court in adjudicating Moussy's breach of duty, gratuitous transfer, and conspiracy claims.  This evidence will also be valuable in assisting the English Court in determining the appropriate equitable compensation and/or damages owed by Freddy, Monline UK, Salim Levy and Ezra Aghai.  Thus, the second *Intel* factor weighs heavily in favor of granting discovery.

### iii.      The Application does not Implicate any Foreign Proof Gathering Restrictions

The third *Intel* factor requires this Court to consider "whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  *Intel* further made clear that "§ 1782 does not impose a foreign discoverability requirement." *In re Clerici*, 481 F.3d at 1333, n.12 (discussing *Intel*).  There is no requirement that the evidence be discoverable or admissible in the foreign proceeding.  *See In re Jagodzinski,* No. 18-20606-MC, 2019 WL 1112389, at *6 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted,* No. 18-20606-CIV, 2019 WL 2255564 (S.D. Fla. Apr. 8, 2019) ("[O]ur determination is not guided by a finding that the information sought might be admissible in the [foreign] proceeding.").  As the court explained in *In re Bernal*, "the question presented is not whether the [foreign] Court would order the requested discovery if it had jurisdiction over the [discovery target] but whether there are [foreign] proof-gathering restrictions that are akin to privileges that would prohibit the acquisition or use of the items sought.  *In re Bernal*, 2018 WL 6620085, at *8; *In re Petrus Advisers Invs. Fund, L.P. by Petrus Advisers Invs. Gen. Partner, Inc*., No. 22-CV-22437, 2023 WL 3871614, at *6 (S.D. Fla. Mar. 9, 2023), *report and recommendation adopted sub nom. In re Petrus Advisers Invs. Funds, L.P*., No. 22-CV-22437, 2023 WL 3673372 (S.D. Fla. May 26, 2023) (same).  Similarly, a district court may not refuse a Section 1782 discovery request simply because a foreign tribunal has not yet had the opportunity

19

to consider discovery or the admissibility of evidence generated from such discovery. *See Intel*, 542 U.S. at 261 (noting that the text of Section 1782 does not contain any generally applicable foreign-discoverability rule). "[C]ourts have also granted Section 1782 discovery where the discovery procedures in the country where the lawsuit is proceeding do not allow for the party seeking the application to obtain the information." *In re Gonzalez*, No. 20-24628-MC, 2021 WL 3835180, at *4 (S.D. Fla. Apr. 14, 2021), *aff'd sub nom. Gonzalez v. Verfruco Foods, Inc*., No. 21-12922, 2023 WL 1794391 (11th Cir. Feb. 7, 2023) (internal citations and alterations omitted). And, "even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery." *In re Novoship (UK) Ltd*., 2020 WL 3286308, at *3. Section 1782 does not include any "exhaustion requirement" that an applicant must first try and fail to obtain discovery in the jurisdiction where the foreign proceeding is pending. *In re Gonzalez*, No. 20-24628-MC, 2021 WL 3835180, at *10 (S.D. Fla. Apr. 14, 2021), *aff'd sub nom. Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, 2023 WL 1794391 (11th Cir. Feb. 7, 2023)

Here, the Application does not implicate any foreign proof gathering restrictions. Applicant has not been able to obtain information on the operation of the Salem Businesses or the Parker Services since Moussy was ousted from the African Businesses, and it is clear that such information would be useful, and is likely necessary, for him to prosecute the English Proceedings. The English Court has not denied similar discovery; indeed, the scope of the discovery sought herein generally aligns with the topics of disclosure already permitted by the English Court, albeit in respect of parties other than Beno (who is not a party to the English Proceedings). Goldring Decl., ¶¶ 14-15, 17. Thus, the English Court has already acknowledged the need for this discovery. For "purposes of § 1782, district courts should consider neither discoverability or admissibility in

the foreign proceeding . . . Instead, courts should err on the side of ordering discovery." *In re Application of North American Potash, Inc.*, 2012 WL 12877816, at *8 (S.D. Fla. 2012); *see also In re Pons*, 614 F.Supp.3d 1134, 1147 (S.D. Fla. 2020). Accordingly, the third *Intel* factor supports granting the Application.

### iv.        The Discovery Sought is not Unduly Burdensome

The fourth *Intel* factor asks whether Applicant's request for discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245. It is not. Courts should not limit discovery to the scope of discovery available in the foreign proceeding, as "[f]ew if any foreign jurisdictions permit the scope of discovery available in our courts." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). "Rather, a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Id.*; *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1272 (11th Cir. 2014) (explaining that once the Section 1782 factors are met, the district court is authorized to grant discovery as would be permissible under the federal discovery rules, Fed. R. Civ. P. 26-36). To the extent that a court finds that a discovery request is overbroad, it should consider whether that defect can be cured through a more limited grant of discovery. In such circumstances, the respondent should seek to "limit discovery, identifying the terms of the written request that were overly broad, or asserting how the scope of the request should be narrowed." *In re Application of Mesa Power Grp.*, 878 F.Supp. 2d 1296, 1306 (S.D. Fla. 2012). This includes the use of confidentiality stipulations and protective orders. *See In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *10 (S.D. Fla. July 3, 2018), *on reconsideration in part*, No. 18-20226-CIV, 2018 WL 4575043 (S.D. Fla. Sept. 5, 2018) (recalling that "[a] traditional protective order can address the confidentiality concerns" raised by the discovery targets); *In re NRC Holding, Ltd.,* No. 14-MC-

61962, 2015 WL 541770, *3, (S.D. Fla. Feb. 10, 2015) ("The fact that some requests may encompass confidential information does not necessitate that § 1782 subpoena be quashed in its entirety. Appropriate measures may be taken to protect the confidentiality of materials.").

Here, the discovery Applicant seeks is not "unduly intrusive or burdensome."  Applicant seeks information regarding the Salem Businesses, a subset of the African Businesses, to assist the English Court in (1) evaluating what should have constituted valuable consideration for the transfer of the Parker Services to Monline UK; and (2) proving how much loss or damage Monline International suffered as a result of the transfer.  Applicant further seeks communications from 2013, when Moussy was ousted, to demonstrate the conspiracy to deprive the R Branch of its share of profits, concerning the provision of the Parker Services, which is the key focus of the Monline Claims.  Goldring Decl., ¶ 10.  The records that Applicant seeks should also be readily available to Beno as they concern the oversight and management of the Salem Businesses by and through Morsgate, and information regarding any transfer of that management from Morsgate to new entities.  As partial owner of one of Morsgate's shareholders, Cobexim Société SARL, Beno should be in possession, custody, or control of the requested information.  The Applicant does not consider it likely that Beno's compliance with these requests would cause any undue burden, but will engage in a good faith effort to meet and confer over the parameters of Respondent's search (including search terms) in an attempt to minimize any legitimate concerns about burden that might be raised.  Thus, the fourth *Intel* factor similarly weighs in favor of granting Applicant's discovery.

## **CONCLUSION**

Applicant satisfies all of the necessary elements required to obtain discovery pursuant to Section 1782, and all relevant discretionary considerations weigh in favor of granting this Application.

For the foregoing reasons, as well as those set forth in the accompanying Declaration of Simon Goldring, Applicant respectfully requests that the Court grant the Application authorizing Applicant to issue the attached Subpoenas to Beno Salem in the form attached hereto as **Exhibit A**, authorize Applicant to issue additional subpoenas for the production of documents and/or depositions of Beno Salem as Applicant reasonably deems appropriate and as are consistent with the Federal Rules of Civil Procedure, and for such other and further relief as this Court deems just and proper.

Dated: August 22, 2023

Respectfully submitted,

_____*Andrea Guzman*_____
Andrea Guzman
Fl. Bar No. 118716
DLA Piper LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
PH: 305-423-8525
FX: 305-310-5663
andrea.guzman@us.dlapiper.com

James E. Berger (*Pro Hac Vice* pending)
Charlene C. Sun (*Pro Hac Vice* pending)
Erin Collins (*Pro Hac Vice* pending)
Jamie Brensilber (*Pro Hac Vice* pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
PH: 212-335-4715
FX: 212-884-8715
james.berger@us.dlapiper.com
charlene.sun@us.dlapiper.com
erin.collins@us.dlapiper.com
jamie.brensilber@us.dlapiper.com

*Attorneys for Applicant Moussy Salem*