IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| *In re* Application of<br><br>MOUSSY SALEM,<br><br>　　　　Applicant,<br><br>FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM BENO SALEM | Case No. 1:23-mc-23186-KMM |

### BENO SALEM'S OPPOSITION TO MOUSSY SALEM'S APPLICATION FOR ASSISTANCE IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

Moussy Salem ("Applicant") filed an Application for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (the "Application"), which ostensibly seeks discovery from Beno Salem ("Respondent") to aid in the prosecution of a lawsuit (the "English Proceedings") currently pending before the High Court of Justice, Business & Property Courts of England and Wales (the "English Court"). But the English Court has already issued an order regarding the relevant issues and the proper scope of discovery in the English Proceedings, and has rejected the broad-ranging discovery into the African Business that Applicant seeks here.

Moreover, by initiating proceedings against Respondent in this Court, Applicant has flagrantly breached the terms of a settlement agreement between the parties (the "Settlement Agreement").[1] The Settlement Agreement contained a covenant not to sue, in which Applicant promised not to bring against Respondent "any legal, arbitral, administrative, regulatory or other action or proceedings" relating to any "matter arising out of or related to or connected with the relationships between the Parties … in so far as [they] relate to the African Business." Settlement

---

[1] The Settlement Agreement is attached as Exhibit 1 to the accompanying Declaration of Nathaniel J. Kritzer.

1

Agreement §§ 1.1, 5.1. This case is exactly the type of proceeding that Applicant promised not to bring. Page after page of Applicant's motion for discovery details allegations regarding the African Business and Applicant's supposed rights to share in the profits of those businesses. *See generally* ECF No. 4 at 5-8. The entire basis on which Applicant seeks discovery is Respondent's ties to the African Business: Respondent's putative "relationship" to the "overall management of the African Businesses," his role as a "shareholder of several of the African Businesses," and supposed evidence of putative actions "to deprive [Applicant's branch of the family] of its share of profits from the African Businesses." *Id*. at 9-10.

The Application should thus be denied on the grounds that it violates the terms of the parties' prior Settlement Agreement and improperly seeks discovery that has already been denied in the underlying English Proceedings.[2]

I.  **BACKGROUND**

In 2014, Applicant brought claims in England against Respondent, Freddy Salem, and the trustees of certain settlement trusts. Those claims, which concerned certain business conducted by the Salem family in Africa, and assets related to that business, were resolved by a Settlement Agreement dated April 7, 2016. The Settlement Agreement contained a covenant not to sue, by which Applicant agreed not to "bring any Proceedings in England and Wales or in ***any other jurisdiction***" against Respondent or other identified defendants "in relation to any Claims." Settlement Agreement § 5.1 (emphasis added).

The terms "Proceedings" and "Claims" are defined broadly to include "any legal, arbitral, administrative, regulatory or other action or proceedings" concerning the prior litigation or "any

---

[2] Simultaneously with this Opposition, Respondent is filing a motion to dismiss the Application based on Applicant's breach of the Settlement Agreement, and to recover his costs and attorney's fees associated with Applicant's previous, ill-fated efforts to seek similar discovery in the Eastern District of New York.

2

other matter arising out of or related to or connected with the relationships between the Parties … in so far as those Liabilities relate to the African Business," *i.e.*, "any business in Africa which has been carried on, at any time, by any member of the Salem Family or their Connected Parties and any assets held by, or arising or derived from, those businesses." Settlement Agreement § 1.1.

In 2022, Monline International Ltd. ("Monline International") brought claims in the English Court against Freddy Salem and several other defendants. Monline International assigned those claims to Applicant, who took over prosecution of the action in October 2022. In July 2023, the English Court ruled on the proper scope of discovery in the English Proceedings. Applicant had sought to expand discovery to include the African Business, and made numerous discovery requests relating to the African Business. The English Court expressly rejected those requests, ruling that they were not relevant to the issues in dispute in the English Proceedings. *See generally* Declaration of Martin Davies, dated January 25, 2024 ("Davies Decl.").

Undeterred by this ruling, Applicant filed the pending Application on August 21, 2023, asking this Court to authorize the issuance of subpoenas to Respondent for both documents and testimony concerning the African Business. Applicant specifically asserted that Respondent "has also been responsible since 2013 for, *inter alia* and with others, the management of several of the African Businesses," and sought discovery regarding purported efforts by Beno and other members of the Salem family "to restructure management of the African Businesses to prevent [Moussy] and his family from receiving the profits owed." ECF No. 4 at 2-3.

II. **ARGUMENT**

    A. **The Application Should be Denied Because it Violates the Settlement Agreement**

"An unconditional promise not to sue by one party onto another divests a trial court of subject matter jurisdiction." *Patent Licensing and Investment Co., LLC v. Green Jets Inc.*, No. 11-

80689-CIV, 2012 WL 13019189, at *1 (S.D. Fla. May 9, 2012); *see also PayRange, Inc. v. KioSoft Technologies*, No. 20-cv-24342, 2022 WL 823885, at *7 (S.D. Fla. Mar. 18, 2022). "The Southern District of Florida has made it clear that public policy strongly favors the enforcement of settlement agreement in all types of litigation. Accordingly, any consideration of a settlement agreement must commence with an understanding that compromise of disputed claims is favored by the Court and will be enforced if at all possible." *In re Managed Care Litigation*, No. 00-MD-1334, 2010 WL 6532982, at *13 (S.D. Fla. Aug. 15, 2010) (internal quotations and citations omitted), report and recommendation adopted, 2011 WL 1522561 (Mar. 8, 2011). Here, the Application should be denied because the Settlement Agreement expressly prohibits Applicant from bringing *any* legal proceedings against Respondent that relate to the African Business, which is precisely what Applicant has done here.

Pursuant to the covenant not to sue contained in the Settlement Agreement, Applicant agreed "that [he] will not … bring any Proceedings in England and Wales or in any other jurisdiction against a Defendant Released Party" (*i.e.*, Respondent) "in relation to any Claims." Settlement Agreement § 5.1. The plain language of the Settlement Agreement clearly encompasses Applicant filing this action and initiating legal process against Respondent. The Settlement Agreement defines "Proceedings" as "any legal, arbitral, administrative, regulatory or other action or proceedings." Settlement Agreement § 1.1. The Application seeks the issuance of subpoenas to compel Respondent to produce documents and testify at deposition. Applicant filed a Motion for Issuance of Summons, and served Respondent with a copy of the Application, to "afford [Respondent] an opportunity to respond to the Application." ECF No. 1 at 2. Applicant's papers in support of both the Application and the Motion for Issuance of Summons expressly name Beno

Salem as the "Respondent" in these proceedings. *See* ECF No. 4 at 3; ECF No. 16 at 1. The Application itself refers to "this proceeding." ECF No. 1 at 2.

The Settlement Agreement specifically prohibits Applicant from bringing "any Proceedings" against Respondent in any venue "in relation to any Claims." Settlement Agreement § 5.1. "Claims" are broadly defined to include "any and all claims relating to any and all Liabilities arising from or related to or in connection with … any other matter arising out of or related to or connected with the relationships between the Parties … in so far as those Liabilities relate to the African Business." *Id.* § 1.1. The Settlement Agreement contains an expansive definition of Liabilities, including "any and all liabilities in respect of any existing … matter, fact, action or inaction giving rise to any demand, liability, obligation, complaint, claim, counterclaim, … petition, right or interest of any kind or nature whatsoever, whether in law or equity, direct or indirect, joint or several, foreseen or unforeseen, contingent or actual, accrued or unaccrued, liquidated or unliquidated, known or unknown, disclosed or undisclosed, suspected or unsuspected, howsoever arising in whatever capacity and jurisdiction." *Id.*

The Settlement Agreement defines the "African Business" as "any business in Africa which has been carried on, at any time, by any member of the Salem Family or their Connected Parties and any assets held by, or arising or derived from, those businesses." Settlement Agreement § 1.1. Here, Applicant alleges that "Beno has [] been responsible since 2013 for … the management of several of the African Businesses … and assisted Freddy and Freddy's son Philip Salem ('Philip') in taking steps to inhibit Moussy and his family from benefiting from the profits of the African Businesses. Accordingly, Beno is likely to have critical documents pertaining to efforts by himself, Freddy, and Philip to restructure management of the African Businesses to prevent Applicant and his family from receiving the profits owed." ECF No. 4 at 2-3. Applicant

5

describes the "African Businesses" as "a trading business in West Africa" which "the Salem family operates." ECF No. 4 at 5; *see also* ECF No. 1-2 (defining "African Business" as "a set of trading businesses owned by the Salem Family and held through a series of trusts").

Accordingly, the plain terms of the Settlement Agreement show that the Application constitutes a (i) "Proceeding" (ii) "against" Respondent (iii) "in relation to" a "Claim" (iv) "relating to" a "Liability" (v) "arising out of or related to or connected with the relationships between" the parties to the Settlement Agreement (vi) and which "relate[s] to the African Business," in blatant violation of the terms of the Settlement Agreement. *Id.* §§ 1.1, 5.1. Applicant should not be permitted to use this Court to dredge up and re-litigate old disputes that the Settlement Agreement conclusively resolved. The Settlement Agreement should be enforced, and the Application should be denied.

**B.  The Application Should Also be Denied Because It Fails to Satisfy 28 U.S.C. § 1792**

Applicant's ongoing efforts to re-open a broad-ranging inquiry into the African Business not only violate the clear terms of the Settlement Agreement, but also flout the English Court's order regarding the scope of discovery and the issues in dispute in the English Proceedings. The English Court ruled that Applicant's discovery requests into the African Business were not relevant to the issues in dispute in the English Proceedings, and refused to allow Applicant to obtain that information from the parties to the English Proceedings. *See* Davies Decl. ¶¶ 8-9.  Applicant now seeks to make an end-run around the English Court's order by enlisting this Court to help obtain that same information from Respondent instead. This suggests that Applicant's goal is simply to pry into unrelated business affairs for his own private purposes—notwithstanding the prior Settlement Agreement or the English Court's refusal to green-light those efforts.

Throughout his submission, Applicant complains that he "was ousted from the management of the African Businesses" and that Respondent and other members of the Salem family allegedly took "steps to inhibit Applicant and his family from benefiting from the profits of the African Business." Application at 2, 3. The entire Application is premised on Applicant's assertion that Respondent "is likely to have critical documents pertaining to efforts … to restructure management of the African Businesses to prevent Applicant and his family from receiving the profits owed." *Id.* at 3. Applicant claims to need this information because he has "very limited information concerning the operation of the African Businesses," despite his alleged entitlement to a "share of profits from the African Businesses." *Id.* at 6.

Applicant made multiple discovery requests in the English Proceedings concerning the African Business:

- "What was the composition of the trading business in Africa associated with the Salem family (African Business) from 2013 onwards and how did it operate?"
- "What role did Morsgate play in the African Business from 2013 onwards?"
- "What role did Parker play in the African Business from 2013 until 30 March 2016?"
- "What role did C, D1, D3 and D4 play in the African Business, Morsgate, Parker and D2 from 2013 onwards?"[3]
- "What role did D2 play in the African Business from 7 June 2016?"

*See* Davies Decl. ¶ 8. But by order dated July 19, 2023, the English Court rejected Applicant's attempt to expand discovery in the English Proceedings to include the African Business, denying these requests as not relevant to the issues actually in dispute in the English Proceedings. *See id.* ¶¶ 8-9. Applicant's renewed attempt to obtain this same information in the United States under the

---

[3] "C" refers to Applicant, while "D1," "D2," "D3," and "D4" refer to the defendants in the English Proceedings.

7

guise of a 28 U.S.C. § 1782 application is improper, and inconsistent with the statute's purpose. Applicant also seeks several other broad categories of information which fall well outside the scope of the discovery authorized by the English Court. *See id.* ¶ 10.

It is well-settled that a Section 1782 petition cannot be used "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). The English Court has already considered, and has already rejected, the overbroad discovery into the African Business that Applicant originally sought in the English Proceedings themselves. Having been expressly denied the right to take that discovery from the parties to the English Proceedings, Applicant should not be permitted to obtain that information from a non-party in Florida instead. This Court need not consider foreign rules of discoverability to acknowledge that the English Court has already resolved this question against Applicant. And, as discussed *supra*, the Application also seeks to circumvent the strong public policy interest of the United States (and other jurisdictions) in the enforceability of settlement agreements—like the one here, which expressly prohibits new proceedings relating to the African Business. *See* Settlement Agreement §§ 1.1, 5.1 (barring Applicant from asserting any petition or right in any legal proceeding that "relate[s] to the African Business"); *In re Managed Care Litigation*, 2010 WL 6532982, at *13 ("The Southern District of Florida has made it clear that public policy strongly favors the enforcement of settlement agreement in all types of litigation.") (quotation omitted).

This Court may also consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" in weighing a Section 1782 application. *Intel*, 542 U.S. at 265. There is no evidence that the English Court would be receptive to assistance from a

US court in this matter, as the English Court has already determined that discovery concerning the African Business is not relevant to the claims at issue in the English Proceedings. Indeed, the mutual respect between the American and English court systems is ample reason for this Court to defer to the English Court's reasoned decision regarding the scope of discovery. "Comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of anther nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *ASI Diamonds, Inc. v. Allianz Versicherungs-Aktiengesellschaft*, No. 1:18-cv-20680, 2018 WL 8193867, at *4 (S.D. Fla. Aug. 16, 2018), quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895); *see Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004) (courts may apply the "doctrine of international comity … to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings"). In deciding whether and how to assist the English Court, this Court should be guided by the principles of comity and give appropriate recognition and deference to the English Court's own determination about what information is (or is not) relevant to the English Proceedings. *See* Davies Decl. ¶ 11.

Courts may also consider whether the requested discovery is "unduly intrusive or burdensome." *See Intel*, 542 U.S. at 265. That is true here, in spades. The Subpoenas identify thirteen businesses in seven jurisdictions that are part of the broader African Business, and seek, as just one example, "all documents, such as, account statements, management account statements, business statements, income and expenditure records, organograms or share registers from 2013 to present evidencing the activities of or concerning each of" those distinct African businesses. Even if such requests were not addressed to the African Business—and thereby foreclosed by both the Settlement Agreement and the English Court's July order—such requests would vastly exceed

9

the scope of permissible discovery, they are overly broad, and they are unduly burdensome. The Application should be rejected for this reason as well.

### III. CONCLUSION

Applicant is barred by the Settlement Agreement from bringing legal proceedings against Respondent related to the African Business, like the Application at issue here. The Application also seeks discovery which has been directly rejected by the English Court in the same English Proceedings for which Applicant purports to seek this Court's assistance. The Application should be dismissed.

| | |
|---|---|
| Dated: January 25, 2024<br>New York, New York | STEPTOE LLP<br>By: /s/ Nathaniel J. Kritzer<br><br>Nathaniel J. Kritzer [*]<br>Jason E. Meade [*]<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Tel: (212) 506-3900<br>Fax: (212) 506-3950<br>nkritzer@steptoe.com<br>jmeade@steptoe.com<br><br>Elise Haverman<br>Florida Bar No. 1003004<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>Tel: (202) 429-8000<br>Fax: (202) 429-3902<br>ehaverman@steptoe.com<br><br>*Counsel for Beno Salem*<br><br>[*] *Pro Hac Vice* motion forthcoming |