# EXHIBIT 1

**MOUSSA RAYMOND SALEM**

**MIREILLE RAYMOND SALEM**

**ROBERT DAVID SALEM**

**FREDDY MOUSSA SALEM**

**BENO MOUSSA SALEM**

**ROTHSCHILD SWITZERLAND (CI) TRUSTEES LIMITED**

**GUERNSEY GLOBAL TRUST LIMITED**

**ROTHSCHILD TRUST GUERNSEY LIMITED**

**ROTHSCHILD TRUST (SCHWEIZ) AG**

**RTB TRUSTEES AG**

---

**SETTLEMENT DEED**

---

**THIS DEED** is made on _____ 2016

**BETWEEN:**

(1)   **MOUSSA RAYMOND SALEM** of 13 Ingram Avenue, London, NW11 6TG ("**Moussy**");

(2)   **MIREILLE RAYMOND SALEM** of 19 Chalton Drive, London, N2 0QW ("**Mireille**");

(3)   **ROBERT DAVID SALEM** of 5 Church Mount, London, N2 0RW ("**Robert**");

(4)   **FREDDY MOUSSA SALEM** of 10 Gloucester Gate, London, NW1 4HG ("**Freddy**");

(5)   **BENO MOUSSA SALEM** of 2111 East 2nd Street, Brooklyn, NY 11223 ("**Beno**");

(6)   **ROTHSCHILD SWITZERLAND (CI) TRUSTEES LIMITED,** a private limited company incorporated in Guernsey (number 16617) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP, AND **GUERNSEY GLOBAL TRUST LIMITED,** a private limited company incorporated in Guernsey (number 39304) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP AND **ROTHSCHILD TRUST GUERNSEY LIMITED,** a private limited company incorporated in Guernsey (number 2154) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP **IN EACH CASE ACTING SOLELY IN ITS CAPACITY AS TRUSTEE OF THE R1 SETTLEMENT** (the "**R1 Trustees**" and each a "**R1 Trustee**");

(7)   **ROTHSCHILD SWITZERLAND (CI) TRUSTEES LIMITED,** a private limited company incorporated in Guernsey (number 16617) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP, AND **GUERNSEY GLOBAL TRUST LIMITED,** a private limited company incorporated in Guernsey (number 39304) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP AND **ROTHSCHILD TRUST (SCHWEIZ) AG,** a private limited company incorporated in Switzerland (number CHE-103.200.027) whose registered office is Zollikerstrasse 181, 8034 Zurich, Switzerland **IN EACH CASE ACTING SOLELY IN ITS CAPACITY AS TRUSTEE OF THE F1 SETTLEMENT** (the "**F1 Trustees**" and each a "**F1 Trustee**"); and

(8)   **ROTHSCHILD SWITZERLAND (CI) TRUSTEES LIMITED,** a private limited company incorporated in Guernsey (number 16617) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP, AND **GUERNSEY GLOBAL TRUST LIMITED,** a private limited company incorporated in Guernsey (number 39304) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP AND **RTB TRUSTEES AG,** a private limited company incorporated in Switzerland (number CHE-352.895.323) whose registered office is Zollikerstrasse 181, 8034 Zurich, Switzerland **IN EACH CASE ACTING SOLELY IN ITS CAPACITY AS TRUSTEE OF THE B1 SETTLEMENT** (the "**B1 Trustees**" and each a "**B1 Trustee**")

**INTRODUCTION:**

(A)     On 11 April 2014, the English Litigation was brought against the Defendants by the Claimants.

(B)     In the English Litigation the Claimants allege that elements of the African Business were carried on in partnership and that assets relating to that business which are now held in the R1 Settlement, the B1 Settlement and the F1 Settlement belong to and should be held for that partnership.

(C)     The Litigation Parties have agreed that the English Litigation, insofar as it relates to the Claims, will be stayed and that neither of the Claimants will seek to make any further allegations of whatever nature in relation to the Claims.

(D)     This Deed is further to the settlement deed dated 7 April 2016 between the Litigation Parties, Isaac Salem, Maurice Moussy Salem and Gaby Salem in relation to the Property Business.

1.     **INTERPRETATION**

1.1     In this Deed:

   "**African Business**" means any business in Africa which has been carried on, at any time, by any member of the Salem Family or their Connected Parties and any assets held by, or arising or derived from, those businesses;

   "**B1 Settlement**" means a settlement dated 2 April 2003 of which the B1 Trustees are the present trustees;

   "**B2 Settlement**" means a settlement dated 28 March 2002 of which the B2 Trustees are the present trustees;

   "**B2 Trustee**" means Guernsey Global Trust Limited in its capacity as the trustee of the B2 Settlement;

   "**Beno and Freddy Parties**" (and each a "**Beno and Freddy Party**") means the B1 Trustees, the F1 Trustees, Freddy and Beno and their respective Connected Parties;

   "**Business Day**" means a day other than a Saturday or Sunday on which banks generally are open for inter-bank business in London;

   "**Children**" and "**Issue**" means any children and issue whether adopted or legitimate or illegitimate;

   "**Claimants**" means Moussy and Mireille Salem;

   "**Claims**" means:

      (a)     in relation to claims against the Beno and Freddy Parties by the Raymond Parties, any and all claims relating to any and all Liabilities arising from or related to or in connection with (i) the English Litigation; (ii) the underlying facts and matters relating to the English Litigation, or otherwise arising out of or related to the facts and matters referred to in the English Litigation, including but not limited to, all claims and counterclaims made in the English Litigation; and (iii) any other matter arising out of or related to or connected with the relationships between the Parties, but only (in the

cases of each of (i), (ii) and (iii)), in so far as those Liabilities relate to the African Business or to SSF;

(b)  in relation to claims against the Beno and Freddy Parties by the R1 Trustees and/or their Connected Parties, any and all claims relating to any and all Liabilities arising from or related to or in connection with (i) the English Litigation; (ii) the underlying facts and matters relating to the English Litigation, or otherwise arising out of or related to the facts and matters referred to in the English Litigation, including but not limited to, all claims and counterclaims made in the English Litigation; and (iii) any other matter arising out of or related to or connected with the relationships between the Parties, but only (in the cases of each of (i), (ii) and (iii)), in so far as those Liabilities arise from the allegations of partnership that have been raised by the Claimants in the English Litigation in respect of the African Business or relate to SSF;

(c)  in relation to claims against the R1 Trustees by the Beno and Freddy Parties or the Raymond Parties, any and all claims relating to any and all Liabilities arising from or related to or in connection with (i) the English Litigation; (ii) the underlying facts and matters relating to the English Litigation, or otherwise arising out of or related to the facts and matters referred to in the English Litigation, including but not limited to, all claims and counterclaims made in the English Litigation; and (iii) any other matter arising out of or related to or connected with the relationships between the Parties, but only (in the cases of each of (i), (ii) and (iii)), in so far as those Liabilities arise from the allegations of partnership that have been raised by the Claimants in the English Litigation in respect of the African Business or relate to SSF;

(d)  in relation to claims against the R2 Trustee, B2 Trustee, Sheba Trustee or Rabiu Trustees by the Beno and Freddy Parties, the Raymond Parties or the R1 Trustees, any and all claims relating to any and all Liabilities arising from or related to or in connection with (i) the English Litigation; (ii) the underlying facts and matters relating to the English Litigation, or otherwise arising out of or related to the facts and matters referred to in the English Litigation, including but not limited to, all claims and counterclaims made in the English Litigation; and (iii) any other matter arising out of or related to or connected with the relationships between the Parties, but only (in the cases of each of (i), (ii) and (iii)), in so far as those Liabilities arise from the allegations of partnership that have been raised by the Claimants in the English Litigation in respect of the African Business or relate to SSF;

(e)  in relation to claims against the Raymond Parties by the Beno and Freddy Parties, any and all claims relating to any and all Liabilities arising from or related to or in connection with (i) the English Litigation; (ii) the underlying facts and matters relating to the English Litigation, or otherwise arising out of or related to the facts and matters referred to in the English Litigation, including but not limited to, all claims and counterclaims made in the English Litigation; and (iii) any other matter arising out of or related to or connected with the relationships between the Parties, but only (in the cases of each of (i), (ii) and (iii)), in so far as those Liabilities relate to the African Business or to SSF;

(f)  in relation to claims against the Raymond Parties by the R1 Trustees and/or their Connected Parties, any and all claims relating to any and all Liabilities arising from or related to or in connection with (i) the English Litigation; (ii) the underlying facts and matters relating to the English

Litigation, or otherwise arising out of or related to the facts and matters referred to in the English Litigation, including but not limited to, all claims and counterclaims made in the English Litigation; and (iii) any other matter arising out of or related to or connected with the relationships between the Parties, but only (in the cases of each of (i), (ii) and (iii)), in so far as those Liabilities arise from the allegations of partnership that have been raised by the Claimants in the English Litigation in respect of the African Business or relate to SSF;

"**Conciliation Process**" means a process of dividing the African Business on the terms of the letter set out at Schedule 2;

"**Confidential Information**" means the terms of this Deed and the content of the negotiations leading to it;

"**Connected Party**" or "**Connected Parties**" means:

(a)     in relation to each of the R1, F1, B1, R2, B2, Sheba and Rabiu Trustees, their past and present administrators, advisors, affiliates, agents, assigns, attorneys, consultants, directors, employees, executors, members, officers, Parents, predecessors, principals, representatives, stockholders, Subsidiaries, successors, related or affiliated Persons (including protectors of their respective trusts), and any other Person over which any of them has control through a direct or indirect interest;

(b)     in relation to Mireille, her late husband Raymond, future spouse (or civil partner) or widower;

(c)     in relation to each of Moussy, Robert, Freddy, Beno and Isaac:

    (i)     themselves;

    (ii)     their spouse (or civil partner), widows or widowers;

    (iii)     their Children and remoter Issue; and

    (iv)     the spouse (or civil partner), widows and widowers of their Children and remoter Issue.

"**Control**" has the meaning given in sections 450 and 451 of the Corporation Tax Act 2010 and references to "**Controlled**" shall be construed accordingly;

"**Defendants**" means (1) Rothschild Switzerland (CI) Trustees Limited and Guernsey Global Trust Limited only in their capacities as trustees of the R1 Settlement; (2) Rothschild Switzerland (CI) Trustees Limited and Guernsey Global Trust Limited only in their capacities as trustees of the F1 Settlement; (3) Rothschild Switzerland (CI) Trustees Limited and Guernsey Global Trust Limited only in their capacities as trustees of the B1 Settlement; (4) Freddy and (5) Beno;

"**Defendant Released Parties**" and each a "**Defendant Released Party**" means Freddy, Beno, the R1 Trustees, the F1 Trustees, the B1 Trustees and their respective Connected Parties;

"**Dispute**" means any dispute arising from or connected with this Deed, including, without limitation, non-contractual disputes and disputes regarding the existence, validity or termination of this Deed or the consequences of its nullity;

"**English Litigation**" means the proceedings in the Chancery Division of the High Court of Justice in England under claim number HC14B01575/HC-2014-000788 which have been brought by the Claimants against the Defendants;

"**F1 Settlement**" means a settlement dated 2 April 2003 of which the F1 Trustees are the present trustees;

"**Isaac**" means Isaac Moussa Salem of Le Rocabella, 24 Avenue Princesse Grace, Apartment 17B, MC98000, Monaco;

"**Liability**" and "**Liabilities**" means any and all liabilities in respect of any existing (as at the date of this Settlement Deed) matter, fact, action or inaction giving rise to any demand, liability, obligation, complaint, claim, counterclaim, right of set-off, right to net, indemnity, right of contribution, cause of action (including, without limitation, in negligence), administrative or regulatory claim or infraction, petition, right or interest of any kind or nature whatsoever, whether in law or equity, direct or indirect, joint or several, foreseen or unforeseen, contingent or actual, accrued or unaccrued, liquidated or unliquidated, known or unknown, disclosed or undisclosed, suspected or unsuspected, howsoever arising in whatever capacity and jurisdiction;

"**Litigation Parties**" and each a "**Litigation Party**" means the Claimants, the Defendants and Robert;

"**Notice**" means a notice under or in connection with this Deed;

"**Parent**" means a person in respect of whom a company is a Subsidiary, and includes the Parent of a Parent, no matter how many times removed;

"**Party**" and "**Parties**" means a party and the parties to this Deed;

"**Patty**" means Patricia Ladow of 50 Acacia Road, London, NW8 6AL;

"**Person**" means any natural person or any entity, including a corporation, partnership, limited partnership, association, limited liability company, limited liability partnership, joint-stock company, joint venture, estate, legal representative, trust, unincorporated association, and any business or legal entity and their administrators, assignees, executors, heirs, predecessors, representatives, and successors;

"**Proceedings**" means any legal, arbitral, administrative, regulatory or other action or proceedings;

"**Property Business**" means any property investment businesses which may have been carried on, at any time, through Presi Inc or any of its Subsidiaries, and any funds that may have been received, or generated, by such businesses, and/or any assets held by, or arising or derived from, those businesses;

"**R Trust Parties**" and each a "**R Trust Party**" means the R1 Trustees, the Rabiu Trustees, the R2 Trustee and their respective Connected Parties;

"**R1 Settlement**" means a settlement dated 2 April 2003 of which the R1 Trustees are the present trustees;

"**R2 Settlement**" means a settlement dated 22 November 2004 of which the R2 Trustee is the present trustee;

"**R2 Trustee**" means Guernsey Global Trust Limited in its capacity as the trustee of the R2 Settlement;

"**Rabiu No. 1 Settlement**" means a settlement dated 30 June 1997 of which Rabiu 1 Trustee is the present trustee;

"**Rabiu 1 Trustee**" means Rothschild Trust Financial Services Limited (a private limited company incorporated in Guernsey (number 2313) whose registered office is St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP) in its capacity as trustee of the Rabiu No. 1 Settlement;

"**Rabiu No. 2 Settlement**" means a settlement dated 30 June 1997 of which Rabiu 2 Trustee is the present trustee;

"**Rabiu 2 Trustee**" means Rothschild Trust Guernsey Limited in its capacity as the trustee of the Rabiu No. 2 Settlement;

"**Rabiu Trustees**" and each a "**Rabiu Trustee**" means Rabiu 1 Trustee and Rabiu 2 Trustee;

"**Raymond Parties**" and each a "**Raymond Party**" means Moussy, Mireille and Robert and their respective Connected Parties;

"**Salem Family**" means Mireille, Moussy, Robert, Patty, Freddy, Beno, Isaac and their respective Connected Parties

"**Sheba Trust**" means a settlement dated 21 September 2000 of which the Sheba Trustee is the present trustee;

"**Sheba Trustee**" means Beeston Management Limited (a company organised and existing under the laws of the Isle of Man and whose registered office is situate at PO Box 237, Peregrine House, Peel Road, Douglas, Isle of Man IM99 ISU, British Isles) in its capacity as trustee of the Sheba Trust;

"**SSF**" means Société Salem Frères, a Société en Nom Collectif registered on 26 January 1973 at the Commercial Registry of Beirut under registration number 28496;

"**Subsidiary**" means a company

(a)     in which another person directly or indirectly holds or controls a majority of the voting rights,

(b)     in respect of which another person has the right to appoint or remove a majority of the directors, or

(c)     over which another person has the right to exercise a dominant influence by virtue of the company's constitution or a contract, or does in fact exercise a dominant influence,

(d)     and includes a Subsidiary of a Subsidiary, no matter how many times removed;

"**Third Party**" means any Person who is not a Party to this Deed or defined in this Deed; and

"**Tomlin Order**" means a Tomlin Order in the form of the agreed draft, the material provisions of which are attached at Schedule 1.

1.2     In this Deed, a reference to:

1.2.1 a statutory provision includes a reference to the statutory provision as modified or re-enacted or both from time to time whether before or after the date of this Deed and any subordinate legislation made or other thing done under the statutory provision whether before or after the date of this Deed;

1.2.2 a company includes a reference to a corporation, body corporate, trust and partnership;

1.2.3 the singular includes the plural and vice versa (unless the context otherwise requires);

1.2.4 a clause or schedule, unless the context otherwise requires, is a reference to a clause of or schedule to this Deed; and

1.2.5 this Deed includes this Deed as amended or varied in accordance with its terms.

1.3 Clause headings in this Deed are for ease of reference only and do not affect its construction.

2. **SETTLEMENT**

This Deed is made in full and final settlement of the Claims which the Claimants or Robert or any of them has or may have against the Defendant Released Parties or any of them.

3. **ACKNOWLEDGEMENT**

The Parties each acknowledge that there is not and never has been a partnership over or in relation to the African Business.

4. **RELEASE**

4.1 The Claimants and Robert each agree that the Defendant Released Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee and the Rabiu Trustees (and their respective Connected Parties) are released and forever discharged from the Claims.

4.2 The R1 Trustees agree that the Raymond Parties, the Beno and Freddy Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee and the Rabiu Trustees (and their respective Connected Parties) are released and forever discharged from the Claims.

4.3 The Beno and Freddy Parties each agree that the Raymond Parties, the R Trust Parties, the B2 Trustee and the Sheba Trustee (and their respective Connected Parties) are released and forever discharged from the Claims.

5. **COVENANT NOT TO SUE**

5.1 The Claimants and Robert each agree that they will not (and will procure that their respective Connected Parties will not) bring any Proceedings in England and Wales or in any other jurisdiction against a Defendant Released Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustees (or their respective Connected Parties) in relation to any Claims or otherwise assert a Claim against a Defendant Released Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustees (or their respective  Connected Parties).

5.2 The R1 Trustees agree that they will not (and will procure that their respective Connected Parties will not) bring any Proceedings, in England and Wales or in any

other jurisdiction, against any of the Raymond Parties, the Beno and Freddy Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustees (or their respective Connected Parties) in relation to any Claim or otherwise assert a Claim against any of the Raymond Parties, the Beno and Freddy Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustees (or their respective Connected Parties).

5.3   The Beno and Freddy Parties each agree that they will not (and will procure that their respective Connected Parties will not) bring any Proceedings, in England and Wales or in any other jurisdiction, against any of the Raymond Parties or the R Trust Parties in relation to any Claim or otherwise assert a Claim against the Raymond Parties or the R Trust Parties.

5.4   Each of the Parties agrees that if any of the Raymond Parties issues Proceedings or asserts a Claim or Liability in breach of clause 5.1 above, damages are not an adequate remedy and, accordingly, that injunctive or other similar relief is appropriate to restrain that breach.

5.5   If, contrary to clause 5.1 above, any of the Raymond Parties brings Proceedings in relation to a Claim or otherwise asserts a Claim against any of the Defendant Released Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustees (or their respective Connected Parties), Moussy, Mireille or Robert (as the case may be) shall pay on demand to the Defendant Released Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee, or, if requested by the Defendant Released Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee, to the relevant Connected Party, a sum equal to the costs (including, without limitation, legal costs), losses, liabilities, expenses and payments incurred or made by the Defendant Released Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee or the relevant Connected Party in connection with or arising from the defence of, or otherwise responding to, that Claim, including, without limitation, any sum due on a judgment or award given against the Defendant Released Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee or the Connected Party and any payment made in settlement of that Claim. A certificate signed on behalf of the Defendant Released Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee (or, if payment is to be made directly to the Connected Party, the Connected Party) shall, except in the case of manifest error, be conclusive as to the amount of any costs, losses, liabilities, expenses and payments incurred or made in connection with or arising from the defence of, or otherwise responding to, that Claim.

5.6   Each of the Parties agrees that if any of the Defendant Released Parties issues Proceedings or asserts a Liability in breach of clauses 5.2 or 5.3 above, damages are not an adequate remedy and, accordingly, that injunctive or other similar relief is appropriate to restrain that breach.

5.7   If, contrary to clause 5.2 above, the R1 Trustees or their Connected Parties brings Proceedings in relation to a Claim or otherwise asserts a Claim against the Raymond Parties, the Beno and Freddy Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustees (and their respective Connected Parties), the R1 Trustees shall pay on demand to the Raymond Party, the Beno and Freddy Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee, or, if requested by the Raymond Party, the Beno and Freddy Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee, to the relevant Connected Party, a sum equal to the costs (including, without limitation, legal costs), losses, liabilities, expenses and payments incurred or made by the Raymond Party, the Beno and Freddy Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee or the relevant Connected Party in connection with or arising from the

defence of, or otherwise responding to, that Claim, including, without limitation, any sum due on a judgment or award given against the Raymond Party, the Beno and Freddy Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee or the Connected Party and any payment made in settlement of that Claim. A certificate signed on behalf of the Raymond Party, the Beno and Freddy Party, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustee (or, if payment is to be made directly to the Connected Party, the Connected Party) shall, except in the case of manifest error, be conclusive as to the amount of any costs, losses, liabilities, expenses and payments incurred or made in connection with or arising from the defence of, or otherwise responding to, that Claim.

5.8   If, contrary to clause 5.3 above, the Beno and Freddy Parties brings Proceedings in relation to a Claim or otherwise asserts a Claim against any of the Raymond Parties or the R Trust Parties, the F1 Trustees, the B1 Trustees, Freddy or Beno (as the case may be) shall pay on demand to the Raymond Party or the R Trust Party, or, if requested by the Raymond Party or the R Trust Party, to the relevant Connected Party, a sum equal to the costs (including, without limitation, legal costs), losses, liabilities, expenses and payments incurred or made by the Raymond Party or the R Trust Party or the relevant Connected Party in connection with or arising from the defence of, or otherwise responding to, that Claim, including, without limitation, any sum due on a judgment or award given against the Raymond Party or the R Trust Party or the Connected Party and any payment made in settlement of that Claim.  A certificate signed on behalf of the Raymond Party or the R Trust Party (or, if payment is to be made directly to the Connected Party, the Connected Party) shall, except in the case of manifest error, be conclusive as to the amount of any costs, losses, liabilities, expenses and payments incurred or made in connection with or arising from the defence of, or otherwise responding to, that Claim.

5.9   Nothing in this Clause 5 applies, or should be construed such that it has the effect of applying, to any Proceedings brought in relation to a breach of this Deed or any future matter, fact, action or inaction.

6.   **DIVISION OF THE AFRICAN BUSINESS**

6.1   Freddy, Beno, Moussy, Robert and Mireille each agree to enter into the Conciliation Process with or without Patty (albeit which it is currently intended shall include Patty), and to execute and deliver to all other Parties a copy of the letter at Schedule 2, which is to be signed by each of Freddy, Beno, Moussy, Robert and Mireille.

6.2   The Parties each agree that the costs of the Conciliation Process shall be borne one third by Beno and the B1 Trustees, one third by Freddy and the F1 Trustees and one third by Moussy, Robert, Mireille and the R1 Trustees.

6.3   Freddy, Beno, Moussy, Robert and Mireille each agree that any determination or proposal for settlement put forward by Ezra Marcos as part of the Conciliation Process shall be put to the F1 Trustees, B1 Trustees and R1 Trustees for approval.

6.4   The F1 Trustees, B1 Trustees and R1 Trustees each agree to consider and, if considered by them in their absolute discretion to be appropriate, approve any determination or proposal for settlement put forward by Ezra Marcos as part of the Conciliation Process.

6.5   If the Conciliation Process does not result in an agreed division of the African Business approved and effected by the F1 Trustees, B1 Trustees and R1 Trustees by 1 January 2017, including if by reason of Ezra Marcos being unable to act or unable to reach a conclusion, then, unless an extension is agreed by the Parties in writing, by 1 February 2017 the Parties agree to use reasonable endeavours to agree a

binding process for an expert determination to value and divide the African Business. It is currently anticipated that such an agreement might include the following terms and steps:

6.5.1   to refer the division of the African Business to an independent expert;

6.5.2   the independent expert to be appointed jointly by the Parties;

6.5.3   in the event the identity of the expert cannot be agreed between the Parties, the expert to be appointed by the President of the Institute of Chartered Accountants in England and Wales;

6.5.4   each Party to be entitled to make written submissions to the expert if they so wish;

6.5.5   the expert to duly consider the written submissions and, to assist him in his deliberations, the Parties to provide such information as the expert reasonably requests;

6.5.6   once the expert has completed his deliberations it is envisaged that he would prepare a valuation of the African Business;

6.5.7   the Parties to then express whether they have a desire to purchase or sell each and any assets of the African Business;

6.5.8   if the Parties cannot agree to buy or sell the assets of the African Business between them then the Parties would put the African Business as a whole, or any part that is not sold between the Parties by agreement, up for sale on the open market; and

6.5.9   the costs of the expert to be borne one third by Beno and the B1 Trustees, one third by Freddy and the F1 Trustees and one third by Moussy, Robert, Mireille and the R1 Trustees.

7.   **COMING INTO FORCE OF THIS DEED**

The Parties each agree that this Deed will come into force immediately upon execution of this Deed.

8.   **NO ADMISSION**

This Deed is entered into in order to compromise the Claims. Nothing in this Deed or any related negotiations shall be represented, construed or used in evidence as an admission of any Liability whatsoever.

9.   **CONFIDENTIALITY**

9.1   Subject to clauses 9.2 and 9.3 below, each of the Parties agrees not to:

9.1.1   communicate or disclose to any Third Party any of the Confidential Information; or

9.1.2   permit others to do so,

without the express written consent of every other Party to this Deed.

9.2   A Party may disclose Confidential Information to the extent that:

9.2.1   disclosure is required by law, by a direction or order of a court or tribunal or governmental agency or regulatory body, or pursuant to stock exchange regulations or other rules, guidelines and regulations or practice, or for the purpose of pursuing or defending court proceedings;

9.2.2   disclosure is necessary to enable or facilitate the enforcement of this Deed;

9.2.3   disclosure is necessary to comply with audit, tax or regulatory requirements; or

9.2.4   the information in question was, at the date of this Deed, already in the public domain or later comes into the public domain through no fault of any of the Parties.

9.3   Nothing in this clause 9 or elsewhere shall operate to prevent any of the R1 Trustees, the F1 Trustees, the B1 Trustees, the R2 Trustee, the B2 Trustee, the Sheba Trustee or the Rabiu Trustees disclosing the Confidential Information to any court of competent jurisdiction in proceedings concerning the administration of their respective trusts and/or to any beneficiaries or protectors of their respective trusts.

10.   **TOMLIN ORDER**

10.1   Within 7 days of the coming into effect of this Deed, the Litigation Parties shall apply to the English court for the stay of the English Litigation on the terms as set out in the Tomlin Order appended at Schedule 1.

10.2   The Litigation Parties irrevocably authorise their respective legal advisers to sign the Tomlin Order.

11.   **ENTIRE AGREEMENT**

11.1   This Deed constitutes the entire agreement between the Parties relating to its subject matter, and supersedes and extinguishes any prior undertakings, representations, warranties, conditions and arrangements of any nature, whether in writing or oral, relating to that subject matter.

11.2   Each Party represents and warrants that it has conducted such enquiries and taken such advice as it considers necessary in order to enter into this Deed and that, in doing so, it has not relied on anything said or done, or not said or not done, by or on behalf of any other Party except to the extent that it is set out expressly in this Deed. Furthermore, except to the extent that it is set out expressly in this Deed, each Party acknowledges and agrees that it was not induced to enter into this Deed by any representation or statement made by any of the other Parties, and that it has not relied on any such representation or statement.  In particular, in the case of Robert, Moussy, Mireille, Freddy and Beno they each represent and warrant that they have received written legal advice from their respective legal advisers as to the effect of entering into this Deed; confirmation of such advice is exhibited at Schedule 3.

11.3   Each Party accepts that the other Parties and/or their Connected Parties may have information relevant to the Claims or this Deed that has not been disclosed and that neither the existence of such information nor any statement or representation made by any of the Parties gives any grounds to vitiate this Deed, to claim damages or to seek any other relief.

**12.     THIRD PARTY RIGHTS**

12.1    The Defendant Released Parties' Connected Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee and the Rabiu Trustees (and their respective Connected Parties) may enforce the terms of clauses 2, 4 and 5 of this Deed subject to and in accordance with this Deed and the provisions of the Contracts (Rights of Third Parties) Act 1999.  The Parties may by agreement entered into in accordance with clause 15 below rescind or vary this Deed without the consent of the Defendant Released Parties' Connected Parties, the R2 Trustee, the B2 Trustee, the Sheba Trustee and the Rabiu Trustees (and their respective Connected Parties).

12.2    Subject to clause 12.1, a person who is not a Party to this Deed has no right under the Contracts (Rights of Third Parties) Act 1999 or otherwise to enforce any term of this Deed.

**13.     GENERAL**

13.1    The Parties represent and warrant to each other that they have the capacity, power and authority to enter into and perform this Deed, that each of those who executes this Deed on their behalf is duly authorised to do so, and that this Deed gives rise to legal, valid, binding and enforceable obligations on each Party.

13.2    The Parties each agree that:

    13.2.1   In the case of Rothschild Switzerland (CI) Trustees Limited, Guernsey Global Trust Limited and Rothschild Trust Guernsey Limited, each acting in their capacity as trustees of the R1 Settlement, their liability in respect of any warranty or obligation under this Deed is limited to trust property of the R1 Settlement in their possession or under their control from time to time.

    13.2.2   In the case of Rothschild Switzerland (CI) Trustees Limited, Guernsey Global Trust Limited and Rothschild Trust (Schweiz) AG, each acting in their capacity as trustees of the F1 Settlement, their liability in respect of any warranty or obligation under this Deed is limited to trust property of the F1 Settlement in their possession or under their control from time to time.

    13.2.3   In the case of Rothschild Switzerland (CI) Trustees Limited, Guernsey Global Trust Limited and RTB Trustees AG, each acting in their capacity as trustees of the B1 Settlement, their liability in respect of any warranty or obligation under this Deed is limited to trust property of the B1 Settlement in their possession or under their control from time to time.

13.3    Each Litigation Party shall bear its own costs of the English Litigation and in relation to this Deed, and none of the Litigation Parties shall enforce any costs or other order made in their favour in the English Proceedings.

13.4    Time is of the essence with respect to all provisions of this Deed that specify a time for performance.

13.5    Each Litigation Party warrants to the other that, as at the date of this Deed, no Proceedings (other than the English Litigation) arising out of or connected with any Claims have been commenced, are pending or, to the best of its knowledge, are contemplated against any of the other Litigation Parties.

13.6    None of the Parties may assign, transfer, declare a trust of the benefit of or in any other way alienate any of its rights under this Deed, whether in whole or in part, without the prior written consent of the other Parties.

13.7    No failure to exercise, nor any delay in exercising, any right or remedy under this Deed shall operate as a waiver, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise or the exercise of any other right or remedy.

14.    **SEVERANCE**

14.1    The illegality, invalidity or unenforceability of any provision of this Deed under any law of any jurisdiction shall not affect or impair the legality, validity or enforceability of the rest of this Deed, nor the legality, validity or enforceability of that provision under the law of any other jurisdiction.

14.2    If any invalid, unenforceable or illegal provision would be valid, enforceable and legal if some part of it were deleted, the provision shall apply with whatever modification is necessary to give effect to the commercial intention of the Parties.

15.    **VARIATIONS**

No variation, waiver or other amendment of this Deed shall be effective or enforceable unless made in writing and signed by or on behalf of the Parties.

16.    **NOTICES**

16.1    A Notice:

16.1.1   shall be in writing;

16.1.2   shall be in the English language; and

16.1.3   may be delivered personally or sent by first class post (and air mail if overseas) to the Party due to receive the Notice at the relevant address set out in clause 16.2 or to another address specified by that Party by not less than seven days' written notice to the other Party in substitution for one or more of those set out in clause 16.2.

16.2    The addresses referred to in clause 16.1.3 are:

16.2.1   in the case of Moussy, Mireille and Robert:

Address: Berwin Leighton Paisner LLP, Adelaide House, London Bridge, London, EC4R 9HA

Marked for the attention of Rupert Ticehurst/Simon Goldring;

16.2.2   in the case of the R1 Trustees:

Address: St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP

Marked for the attention of Tim Archard/Sharon Williams;

16.2.3   in the case of the F1 Trustees and the B1 Trustees:

Address: St Julian's Court, St Julian's Avenue, St Peter Port, Guernsey, GY1 3BP

Marked for the attention of Samantha Stevenson / Emma Roberts;

16.2.4   in the case of Freddy and Beno:

Address: Quinn Emanuel Urquhart & Sullivan UK LLP, One Fleet Place, London, EC4M 7RA

Marked for the attention of Martin Davies/Oliver Middleton.

16.3    A Notice shall be deemed to be given as set out below:

16.3.1   if delivered personally, when left at the address referred to in clause 16.2;

16.3.2   if sent by post, except air mail, two Business Days after posting it;

16.3.3   if sent by air mail, six Business Days after posting it;

provided always that if a Notice would otherwise be deemed to be given outside normal working hours or on a day that is not a Business Day, it shall instead by deemed to be given on the next Business Day.

17.    **GOVERNING LAW**

This Deed and all contractual or non-contractual obligations and other matters arising from or connected with it are governed by English law.

18.    **JURISDICTION**

18.1    The courts of England have exclusive jurisdiction to settle any Dispute.

18.2    The Parties agree that the courts of England are the most appropriate and convenient courts to settle any Dispute and, accordingly, that they will not argue to the contrary.

18.3    Documents that start any Proceedings and any other documents required to be served in relation to those Proceedings may be served in accordance with clause 16. These documents may, however, be served in any other manner allowed by law. This clause applies to Proceedings in England and to Proceedings elsewhere.

19.    **COUNTERPARTS**

19.1    This Deed may be executed in any number of counterparts, each of which is an original and all of which together evidence the same agreement.

19.2    Notwithstanding any contrary provision in this Deed, if this Deed is executed in counterpart, the Parties each agree that this Deed shall not come into effect until each Party has executed at least one counterpart.

**SCHEDULE 1**

**TOMLIN ORDER**

**IN THE HIGH COURT OF JUSTICE**                    **Claim no. HC-2014-000788**

**CHANCERY DIVISION**

**ROYAL COURTS OF JUSTICE**

**Before Master**

**Dated this day**          **of**          **2016**

**B E T W E E N :**

**(1) MOUSSY RAYMOND SALEM**

**(2) MIREILLE RAYMOND SALEM**

**Claimants**

**- and -**

**(1) ROTHSCHILD SWITZERLAND (CI) TRUSTEES LIMITED**

**(2) GUERNSEY GLOBAL TRUST LIMITED**

**(3) FARAJ MOUSSA SALEM**

**(4) BENO MOUSSA SALEM**

**Defendants**

---

**TOMLIN ORDER**

---

**UPON** the parties having agreed to the terms of the confidential settlement set out in a confidential Settlement Deed dated [          ] between the Claimants, the Defendants, Rothschild Trust Guernsey Limited, Rothschild Trust (Schweiz) AG, RTB Trustees AG and Robert David Salem (the **"Settlement Deed"**), the original of which has been kept by the Claimants' solicitors and copies of which have been kept by the Defendants' solicitors, which the parties have agreed to keep confidential

**AND UPON** the parties having agreed the terms of the Tomlin Order dated [8 April 2016] ("the Original Tomlin Order") which stayed elements of the proceedings and stayed the entire proceedings brought by Isaac Moussa Salem, and required the Claimants to file and serve amended Particulars of Claim which removed Isaac Moussa Salem as a party to the proceedings

**BY CONSENT IT IS ORDERED THAT**

1.  The proceedings are stayed except for the purposes of enforcing the terms of the Settlement Deed, for which purpose the parties have permission to apply.

2.  The Claimants' obligation to file and serve amended Particulars of Claim under paragraph 2 of the Original Tomlin Order is lifted.

3.  The Defendants' obligations to file and serve amended Defences and any Counterclaims under paragraph 3 of the Original Tomlin Order are lifted.

4.  The Claimants' obligation to file and serve amended Replies to the Defences and/or Defences to Counterclaim under paragraph 4 of the Original Tomlin Order are lifted.

5.  There shall be no order as to costs.

6.  This Order shall be served by the Claimants on the Defendants.

**Service of the order**

The Court has provided a sealed copy of this order to the serving party, Berwin Leighton Paisner LLP, the legal representative for the Claimants, of Adelaide House, London Bridge, London, EC4R 9HA. Telephone: 020 3400 1000. Ref: RTIC/SGOL/34957.2.

We hereby consent to an Order in the above terms.

Dated                                    2016

................................................
Signed by **QUINN EMANUEL URQUHART & SULLIVAN LLP**

for and on behalf of **ROTHSCHILD SWITZERLAND (C.I.) TRUSTEES LIMITED, GUERNSEY GLOBAL TRUST LIMITED** and **ROTHSCHILD TRUST (SCHWEIZ) AG** in their capacities as trustee of the **F1 SETTLEMENT** AND **ROTHSCHILD SWITZERLAND (C.I.) TRUSTEES LIMITED, GUERNSEY GLOBAL TRUST LIMITED** and **RTB TRUSTEES** AG in their capacities as trustee of the **B1 SETTLEMENT** AND **FARAJ MOUSSA SALEM** AND **BENO MOUSSA SALEM**

................................................
Signed by **BERWIN LEIGHTON PAISNER LLP**

for and on behalf of **MOUSSA RAYMOND SALEM** and **MIREILLE RAYMOND SALEM**

......................................................
Signed by **CLIFFORD CHANCE LLP**

for and on behalf of **ROTHSCHILD
SWITZERLAND (C.I.) TRUSTEES LIMITED,
GUERNSEY GLOBAL TRUST LIMITED** and
**ROTHSCHILD TRUST GUERNSEY LIMITED** in
their capacities as trustee of the **R1
SETTLEMENT**

## SCHEDULE 2

### LETTER TO EZRA MARCOS

2016

Mr Ezra Marcos
92, rue du Rhône
Case postale 3730
1211 Geneva 3, Switzerland

Without Prejudice

Dear Ezra,

Differences have arisen among us regarding several commonly held business interests and real estate in Africa, held through various companies and trusts. We have agreed to separate and divide these common business interests, but have not been able to agree on the terms and price.

Our confidence in your extensive international business experience, and the many years that we have all known each other, lead us to ask you to serve as conciliator to help us to reach an amicable settlement of our dispute. We undertake to cooperate in furnishing any documents or other information you feel would be helpful in giving you an understanding of our situation.

At any stage of the conciliation proceedings, you may make proposals for a settlement of the dispute. Such proposals need not be in writing and need not be accompanied by a statement of reasons. We understand that you will be guided by principles of fairness and justice, giving consideration to any relevant trade usages.

When you submit to us the terms of a possible settlement, we may put an end to the conciliation through an agreement in writing to the terms proposed. The conciliation may also be terminated by a written declaration either from you to us or from any of us to you, stating that further efforts at conciliation are no longer justified. All of us shall keep confidential any matters and documents relating to the conciliation proceedings, except as may be otherwise required by law. For the avoidance of doubt, we agree that information exchanged shall be subject to the without prejudice privilege and will not be the object of any further disclosure or discovery in legal or arbitral proceedings.

During the conciliation proceedings, we undertake not to initiate any arbitral or judicial proceedings in respect of our dispute, or to take any step in those proceedings currently underway.

We understand that you may be advised in this matter by counsel, including but not limited to Mr Philippe Neyroud of Geneva and Professor William W. Park of Boston.

We shall bear all costs of the proceedings, including fees and expenses of your advisers, to be funded as needed.

None of us shall call you or your advisers as a witness in any legal or arbitral proceedings, or require either you or your advisers to make available any of your papers relating to this conciliation.

We agree that you and your advisers shall not be liable to us for any act or omission in connection with this conciliation. We shall jointly and severally hold you and your advisers harmless with respect to any liability arising out of a suit by third parties related to this conciliation.

**Yours truly,**

_____
Freddy Salem

_____
Beno Salem

_____
Mireille Salem

_____
Moussy Salem

_____
Robert Salem

_____
Patricia Ladow

## SCHEDULE 3

## LEGAL ADVICE

[address]

[*Date*]

Dear [          ]

### Africa Business

We have been retained by [Moussy, Mireille and Robert Salem] [Beno and Freddy Salem] as their legal advisers to provide them with legal advice on the proposed settlement of the English Litigation in the manner and form as set out in the Settlement Deed and the effect of entering into the Settlement Deed.

We have carefully considered whether we can act for [Moussy, Mireille and Robert] [Beno and Freddy] in connection with the proposed settlement and the Settlement Deed and, in particular, whether to do so would be in their best interests. We have concluded that there is nothing which in any way prevents us from giving [Moussy, Mireille and Robert] [Beno and Freddy] independent advice on the proposed settlement and the effect of entering into the Settlement Deed, and that we can therefore properly act for them.

We are writing to you to confirm that:-

1. We have explained to [Moussy, Mireille and Robert] [Beno and Freddy] the nature and consequences (including practical consequences) of the proposed settlement[, with the assistance of relevant advice from other professional advisers].

2. We have also explained to them the effect of entering into the Settlement Deed.

3. We are satisfied that [Moussy, Mireille and Robert] [Beno and Freddy] understand the nature and consequences (including practical consequences) of the proposed settlement and the effect of entering into the Settlement Deed.

4. We are satisfied that [Moussy, Mireille and Robert] [Beno and Freddy]'s participation in the discussions and events regarding the proposed settlement, and their decision to enter into the Settlement Deed, has occurred after full, free and informed thought about it.

5. We are satisfied that we have received sufficient information about the proposed settlement and the Settlement Deed to enable us to give the foregoing explanations.

Yours sincerely

[Berwin Leighton Paisner LLP] [Quinn Emanuel Urquhart & Sullivan LLP]

**Delivered as a deed on the date of this document and executed by the parties.**

Signed as a Deed by **MOUSSY RAYMOND**     )
**SALEM** in the presence of                              )

Name of witness:

Signature of witness:

Address:

Occupation:

Signed as a Deed by **MIREILLE**              )
**RAYMOND SALEM** in the presence of        )

Name of witness:

Signature of witness:

Address:

Occupation:

Signed as a Deed by **ROBERT DAVID**        )
**SALEM** in the presence of                              )

Name of witness:

Signature of witness:

Address:

Occupation:

Signed as a Deed by **FREDDY MOUSSA**      )
**SALEM** in the presence of                              )

Name of witness:

Signature of witness:

Address:

Occupation:

Signed as a Deed by **BENO MOUSSA**    )
**SALEM** in the presence of    )

Name of witness:

Signature of witness:

Address:

Occupation:

Executed as a deed by **ROTHSCHILD**    )
**TRUST SWITZERLAND (CI) LIMITED** in  )
its capacity as trustee of the **F1**
**SETTLEMENT** acting by

in the presence of

                                                      Director

Name of witness:

Signature of witness:

Address:

Occupation:

Executed as a deed by **GUERNSEY**    )
**GLOBAL TRUST LIMITED** in its capacity  )
as trustee of the **F1 SETTLEMENT** acting
by

in the presence of

                                                      Director

Name of witness:

Signature of witness:

Address:

Occupation:

Executed as a deed by **ROTHSCHILD**          )
**TRUST (SCHWEIZ) AG** in its capacity as     )
trustee of the **F1 SETTLEMENT** acting by

in the presence of

                                                        Director

Name of witness:

Signature of witness:

Address:

Occupation:

Executed as a deed by **ROTHSCHILD**                    )
**TRUST SWITZERLAND (CI) LIMITED** in   )
its capacity as trustee of the **B1**
**SETTLEMENT** acting by

in the presence of

                                                        Director

Name of witness:

Signature of witness:

Address:

Occupation:

Executed as a deed by **GUERNSEY**
**GLOBAL TRUST LIMITED** in its capacity )
as trustee of the **B1 SETTLEMENT** acting )
by

in the presence of

                                        Director

Name of witness:

Signature of witness:

Address:

Occupation:


Executed as a deed by **RTB TRUSTEES**
**AG** in its capacity as trustee of the **B1** )
**SETTLEMENT** acting by )

in the presence of

*Authorised Signatory*

                            Director

Name of witness: C. HRANIK

Signature of witness:

Address: ZOLLIKERSTRASSE 181, 8034 ZÜRICH, SWITZERLAND

Occupation: SENIOR TRUST OFFICER


Executed as a deed by **ROTHSCHILD**
**TRUST SWITZERLAND (CI) LIMITED** in )
its capacity as trustee of the **R1** )
**SETTLEMENT** acting by

in the presence of

                                        Director

Name of witness:

Signature of witness:

Address:

Occupation:

Executed as a deed by **GUERNSEY** )
**GLOBAL TRUST LIMITED** in its capacity )
as trustee of the **R1 SETTLEMENT** acting
by

in the presence of

                                Director

Name of witness:

Signature of witness:

Address:

Occupation:

Executed as a deed by **ROTHSCHILD** )
**TRUST GUERNSEY LIMITED** in its )
capacity as trustee of the **R1**
**SETTLEMENT** acting **by**

in the presence of

                                Director

Name of witness:

Signature of witness:

Address:

Occupation: