IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| *In re* Application of<br><br>MOUSSY SALEM,<br><br>　　　　Applicant,<br><br>FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM BENO SALEM | Case No. 1:23-mc-23186-KMM |

**DECLARATION OF MARTIN DAVIES PURSUANT TO 28 U.S.C. § 1746**

1. I am a solicitor of England and Wales and a partner of Latham & Watkins (London) LLP. I represent the first defendant, Freddy Salem, in proceedings (Claim No. BL-2022-000926) (the "**English Proceedings**") brought by the Applicant, Moussy Salem, in the High Court of Justice, Business and Property Courts of England and Wales, Business List (ChD) (the "**English Court**"). There are three other defendants to the English Proceedings (Monline UK Limited ("**Monline UK**"), Salim Levy and Ezra Aghai). Monline UK and Ezra Aghai are separately represented. The estate of Salim Levy is currently unrepresented, following his death in December 2023.

2. I respectfully submit this declaration in support of Beno Salem's opposition to the Applicant's application seeking an order for a subpoena to obtain discovery from Beno Salem pursuant to 28 U.S.C. § 1782 (the "**Subpoena**").

3. I am knowledgeable about the matters described below, and the facts stated herein are true and correct to the best of my knowledge and belief.

4.  I understand that the discovery sought by the Subpoena is purportedly "*for purposes of use*" in the English Proceedings. However, a number of the requests contained in the Subpoena go beyond the disclosure that has been ordered by the English Court.

5.  In particular, the Subpoena includes requests for discovery in relation to the "*Salem Businesses*". This is defined as "*the subset of entities, which are part of the business beneficially owned by the Salem family and operated in various countries, as well as its subsidiaries, successors, predecessors, employees, agents, representatives, or affiliates (defined in the Memorandum of Law as the "**African Businesses**") which are connected to Morsgate International Limited ("**Morsgate**")*". The definition goes on to list (non-exhaustively) 13 businesses that constitute "*Salem Businesses*".

6.  Of that list, only the activities of three entities (Parker Logistics Limited ("**Parker**"), Monline International Limited ("**Monline International**") and Monline UK) are the subject of the English Proceedings, and therefore are the subject of issues for disclosure in the English Proceedings. An additional entity, Gestcom International Trading Offshore SAL/Gee Trading (Offshore) SAL, is also the subject of issues for disclosure in the English Proceedings, but only in relation to the services it received from Monline UK and the payments it made to Monline UK.

7.  The Subpoena, however, includes, by way of example, a request for discovery in relation to the activities of *all* of the "*Salem Businesses*" (request 15) and, indeed, "[a]*ll documents ... from 2013 to present ... concerning each of the Salem Businesses*". Even putting aside the fact that the majority of the "*Salem Businesses*" are not the subject of the English Proceedings, this request is much broader than the issues for disclosure ordered in the English Proceedings.

8.      Although the Applicant sought to obtain such wider disclosure in the English Proceedings, this was rejected by the English Court. In particular, on 19 July 2023, the English Court refused to order disclosure on the following issues, as sought by the Applicant:

   a.   *"What was the composition of the trading business in Africa associated with the Salem family (African Business) from 2013 onwards and how did it operate?"*

   b.   *"What role did Morsgate play in the African Business from 2013 onwards?"*

   c.   *"What role did Parker play in the African Business from 2013 until 30 March 2016?"*

   d.   *"What role did C* [the Applicant]*, D1* [Freddy Salem]*, D3* [Salim Levy] *and D4* [Ezra Aghai] *play in the African Business, Morsgate, Parker and D2* [Monline UK] *from 2013 onwards?"*

   e.   *"What role did D2 play in the African Business from 7 June 2016?"*

9.      The English Court found that the issues above were not relevant to the issues in dispute in the English Proceedings. Although the Subpoena seeks discovery in relation to the "*Salem Businesses*", which is a subset of the African Businesses, as I explained above, it nonetheless goes beyond the disclosure ordered in the English Proceedings.

10.     The same is true of a number of other requests contained in the Subpoena. By way of further example:

   a.   Request 2 asks for "[a]*ll documents such as share registers, nominee agreements, or communications evidencing the ownership or controlling mind(s) behind … Morsgate or the Morsgate Shareholders including but not limited to information about the basis on which each of the Morsgate Shareholders (and their*

3

*respective shareholders) hold their interests therein and, to the extent such interest is held for a third party, the basis on which that interest is so held*". Neither Morsgate's ownership, nor that of its shareholders, is an issue for disclosure in the English Proceedings. Rather, the relevant issue for disclosure in the English Proceedings is: "*What role (if any) did D1 or D4 play in the management or affairs of Morsgate from 2013 onwards?*"

    b.    Requests 6 to 8 ask for "[a]*ll communications between Beno Salem or the Salem Businesses*" with Morsgate, Parker and Monline UK "*concerning the Morsgate Agreement*". Again, these requests are wider than the issues for disclosure ordered in the English Proceedings, not least insofar as they target Beno Salem, which the disclosure issues in the English Proceedings do not.

    c.    Request 10 asks for "[a]*ll communications regarding the transfer of any asset from Monline International Limited to Monline UK Limited between March 16, 2016, and August 1, 2016*", whereas disclosure in the English Proceedings is limited to the dealings between Monline International, the parties to the English Proceedings and Morsgate: "*What dealings were there between (i) the Company (ii) the parties and (iii) Morsgate with respect to the UK Transfer and/or the supply of Parker Services in the period 16 March 2016 to 1 August 2016?*"

11.    Given the English Court's ruling, ordering such discovery through the United States courts would be contrary to the rules of disclosure that have been applied in the English Proceedings. To the extent that the requests in the Subpoena go beyond the scope of the disclosure ordered in the English Proceedings, including because they bear no relevance to the English Proceedings, the English Court has not authorised disclosure on those issues, and would be

4

unlikely to permit extended disclosure on those issues. It is also my expectation that the English Court would not accept the introduction of evidence on these issues into the English Proceedings. This would be consistent with the English Court's rulings to date which I have described above.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on January 25, 2024

_____
**Martin Davies**