IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| *In re* Application of<br><br>MOUSSY SALEM,<br><br>        Applicant,<br><br>FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM BENO SALEM | Case No. 1:23-mc-23186-KMM |

**BENO SALEM'S MOTION TO DISMISS OR STAY MOUSSY SALEM'S APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 AND FOR ENTITLEMENT TO FEES AND COSTS**

Applicant Moussy Salem ("Applicant") brought this proceeding against Respondent Beno Salem ("Respondent") in flagrant breach of a settlement agreement between the parties (the "Settlement Agreement").[1] The Settlement Agreement contained a covenant not to sue, in which Applicant promised not to bring against Respondent "any legal, arbitral, administrative, regulatory or other action or proceedings" relating to any "matter arising out of or related to or connected with the relationships between the Parties … in so far as [they] relate to the African Business." Settlement Agreement §§ 1.1, 5.1. This case is exactly the type of proceeding that Applicant promised *not* to bring. Page after page of Applicant's motion for discovery details allegations regarding the African Business and Applicant's supposed rights to share in the profits of those businesses. *See generally* ECF No. 4 at 5-8. The entire basis on which Applicant seeks discovery is Respondent's ties to the African Business: Respondent's putative "relationship" to the "overall management of the African Businesses," his role as a "shareholder of several of the African

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Nathaniel J. Kritzer ("Kritzer Decl.").

Businesses," and supposed evidence of putative actions "to deprive [Applicant's branch of the family] of its share of profits from the African Businesses." *Id.* at 9-10.

Respondent has multiple remedies under the Settlement Agreement for this breach. First, Applicant agreed that if any party to the Settlement Agreement issues proceedings in violation of the covenant not to sue, "damages are not an adequate remedy and, accordingly, that injunctive or other similar relief is appropriate to restrain that breach." Settlement Agreement § 5.4. These proceedings are subject to dismissal because they are barred by the Settlement Agreement, and Respondent seeks such relief in this motion. Second, Respondent is entitled to recover his attorney's fees, costs, and all other losses, liabilities, expenses, and payments in connection with this proceeding. Respondent intends to seek such fees through a separate motion once this matter is otherwise concluded.

Additionally, this matter is subject to a stay under Fed. R. Civ. P. 41(d), which provides separate and independent grounds to halt these proceedings. Prior to filing this case, Applicant filed an identical proceeding against Respondent in the Eastern District of New York, based on frivolous claims that Respondent lived there. After Respondent filed a motion to dismiss, Applicant quickly admitted that there was no basis for filing suit in New York, and filed a notice of voluntary dismissal. Under Rule 41(d), the Court may (and should) order Applicant to pay Respondent's costs and attorney fees for Applicant's frolic and detour in New York, and stay this matter until such costs are paid.

I. **BACKGROUND**

In 2014, Applicant brought claims in England against Respondent, Freddy Salem, and the trustees of certain settlement trusts. Those claims, which concerned a certain business conducted by the Salem family in Africa, and assets related to that business, were resolved by a Settlement Agreement dated April 7, 2017. The Settlement Agreement contained a covenant not to sue, by

which Applicant agreed not to "bring any Proceedings in England and Wales or in ***any other jurisdiction***" against Respondent or other identified defendants "in relation to any Claims." Settlement Agreement § 5.1 (emphasis added).

The terms "Proceedings" and "Claims" are defined broadly to include "any legal, arbitral, administrative, regulatory or other action or proceedings" concerning the prior litigation or "any other matter arising out of or related to or connected with the relationships between the Parties … in so far as those Liabilities relate to the African Business," *i.e.*, "any business in Africa which has been carried on, at any time, by any member of the Salem Family or their Connected Parties and any assets held by, or arising or derived from, those businesses." Settlement Agreement § 1.1.

In 2022, Monline International Ltd. ("Monline International") brought claims in the High Court of Justice in England (the "English Court") against Freddy Salem and several other defendants (the "English Proceedings"). Monline International assigned those claims to Applicant, who took over prosecution of the action in October 2022.

On April 18, 2023, Applicant filed an *ex parte* motion in the U.S. District Court for the Eastern District of New York, No. 23-mc-01092, to take discovery from Respondent pursuant to 28 U.S.C. § 1782. The Court granted the Section 1782 application on May 1, 2023, and granted Applicant's subsequent *ex parte* motion for alternative service on July 7, 2023. On July 10, 2023, Applicant served subpoenas on Respondent by email and certified mail to Respondent's New York-based counsel. Respondent moved to quash the subpoenas on July 24, 2023 because (among other reasons) Respondent lives in Florida, not in New York.

On July 31, 2023, Applicant filed a notice of voluntary dismissal of the New York action. Then, on August 21, 2023, Applicant filed the pending Application for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (ECF No. 1, the "Application"), seeking

3

essentially the same relief as the original New York application. Applicant acknowledges that, upon discovering that he had filed his original application in the wrong court, he "re-filed an amended version of the [New York] Application" in this court. ECF No. 16 at 2-3.

## II. ARGUMENT

### A. The Application is Barred by the Parties' Settlement Agreement and Must be Dismissed

"An unconditional promise not to sue by one party onto another divests a trial court of subject matter jurisdiction," and therefore requires dismissal. *Patent Licensing and Investment Co., LLC v. Green Jets Inc.*, No. 11-80689-CIV, 2012 WL 13019189, at *1 (S.D. Fla. May 9, 2012); *see also PayRange, Inc. v. KioSoft Technologies*, No. 20-cv-24342, 2022 WL 823885, at *7 (S.D. Fla. Mar. 18, 2022). "The Southern District of Florida has made it clear that public policy strongly favors the enforcement of settlement agreements in all types of litigation. Accordingly, any consideration of a settlement agreement must commence with an understanding that compromise of disputed claims is favored by the Court and will be enforced if at all possible." *In re Managed Care Litigation*, No. 00-MD-1334, 2010 WL 6532982, at *13 (S.D. Fla. Aug. 15, 2010) (internal quotations and citations omitted), report and recommendation adopted, 2011 WL 1522561 (Mar. 8, 2011). Here, the Application should be dismissed because the Settlement Agreement expressly prohibits Applicant from bringing *any* legal proceedings against Respondent that relate to the African Business.

Pursuant to the covenant not to sue contained in the Settlement Agreement, Applicant agreed "that [he] will not … bring any Proceedings in England and Wales or in any other jurisdiction against a Defendant Released Party" (*i.e.*, Respondent) "in relation to any Claims." Settlement Agreement § 5.1. The plain language of the Settlement Agreement clearly encompasses Applicant filing this action and initiating legal process against Respondent. The Settlement

4

Agreement defines "Proceedings" as "any legal, arbitral, administrative, regulatory or other action or proceedings." Settlement Agreement § 1.1. The Application seeks the issuance of subpoenas to compel Respondent to produce documents and testify at deposition. Applicant filed a Motion for Issuance of Summons, and served Respondent with a copy of the Application, to "afford [Respondent] an opportunity to respond to the Application." ECF No. 1 at 2. Applicant's papers in support of both the Application and the Motion for Issuance of Summons expressly name Beno Salem as the "Respondent" in these proceedings. *See* ECF No. 4 at 3; ECF No. 16 at 1. The Application itself refers to "this proceeding." ECF No. 1 at 2.

The Settlement Agreement specifically prohibits Applicant from bringing "any Proceedings" against Respondent in any venue "in relation to any Claims." Settlement Agreement § 5.1. "Claims" are broadly defined to include "any and all claims relating to any and all Liabilities arising from or related to or in connection with … any other matter arising out of or related to or connected with the relationships between the Parties … in so far as those Liabilities relate to the African Business." *Id.* § 1.1. The Settlement Agreement contains an expansive definition of Liabilities, including "any and all liabilities in respect of any existing … matter, fact, action or inaction giving rise to any demand, liability, obligation, complaint, claim, counterclaim, … petition, right or interest of any kind or nature whatsoever, whether in law or equity, direct or indirect, joint or several, foreseen or unforeseen, contingent or actual, accrued or unaccrued, liquidated or unliquidated, known or unknown, disclosed or undisclosed, suspected or unsuspected, howsoever arising in whatever capacity and jurisdiction." *Id.*

The Settlement Agreement defines the "African Business" as "any business in Africa which has been carried on, at any time, by any member of the Salem Family or their Connected Parties and any assets held by, or arising or derived from, those businesses." Settlement Agreement

§ 1.1. Here, Applicant alleges that "Beno has [] been responsible since 2013 for … the management of several of the African Businesses … and assisted Freddy and Freddy's son Philip Salem ('Philip') in taking steps to inhibit Moussy and his family from benefiting from the profits of the African Businesses. Accordingly, Beno is likely to have critical documents pertaining to efforts by himself, Freddy, and Philip to restructure management of the African Businesses to prevent Applicant and his family from receiving the profits owed." ECF No. 4 at 2-3. Applicant describes the "African Businesses" as "a trading business in West Africa" which "the Salem family operates." ECF No. 4 at 5; *see also* ECF No. 1-2 (defining "African Business" as "a set of trading businesses owned by the Salem Family and held through a series of trusts").

Accordingly, the plain terms of the Settlement Agreement show that the Application constitutes a (i) "Proceeding" (ii) "against" Respondent (iii) "in relation to" a "Claim" (iv) "relating to" a "Liability" (v) "arising out of or related to or connected with the relationships between" the parties to the Settlement Agreement (vi) and which "relate[s] to the African Business," in blatant violation of the terms of the Settlement Agreement. *Id.* §§ 1.1, 5.1.

The broad-ranging but detailed and specific terms of the Settlement Agreement reflect the parties' clear intention to provide comprehensive, mutual releases and avoid the burdens associated with further legal proceedings. Where any party "issues Proceedings or asserts a Claim or Liability in breach of" the covenant not to sue, the Settlement Agreement provides that "damages are not an adequate remedy and, accordingly, that injunctive or other similar relief is appropriate to restrain that breach." Settlement Agreement § 5.4. As expressly provided for in the Settlement Agreement, Respondent will seek recovery of all "costs (including, without limitation, legal costs), losses, liability, expenses and payments incurred or made by [him] … in connection with or arising from the defence of, or otherwise responding to," these proceedings. Settlement Agreement § 5.5.

But as Applicant acknowledged by his unambiguous agreement that "damages are not an adequate remedy," the harm to Respondent arising from Applicant's breach of the Settlement Agreement is not purely monetary. Settlement Agreement § 5.4. Applicant seeks many years of confidential business records from Respondent concerning relationships and putative liabilities that have been resolved through the Settlement Agreement, and the disclosure of such information could result in irreparable harm to Respondent. *See, e.g., Jeld-Wen, Inc. v. Nebula Glass International Inc.*, No. 07-22326-CIV, 2008 WL 11333314, at *4 (S.D. Fla. Feb. 26, 2008) ("disclosure of personal financial information may cause irreparable harm in a case where information is not relevant"); *CMA of Delaware, Inc. v. Mursten*, No. 14-62066-CIV, 2015 WL 11197768, at *2 ("[t]he potential disclosure of sensitive business or personal information may pose a threat of irreparable harm which legal remedies are inadequate to address"). For these reasons, "where the parties enter into a settlement agreement, the settlement bars discovery regarding settled matters no longer at issue in the litigation." *JILCO, Inc. v. MRG of S. Fla., Inc.*, 162 So. 3d 108, 110 (Fla. Dist. Ct. App. 2014) ("[t]he disclosure of a party's financial or confidential business information may cause irreparable harm" where matters relating to the information have been settled and "the information is irrelevant to any pending matter").

Applicant should not be permitted to use this Court to dredge up and re-litigate old disputes that the Settlement Agreement conclusively resolved. The Settlement Agreement should be enforced, and the Application should be dismissed.

    **B.**    **This Court Should Award Respondent's Fees and Costs Under Rule 41(d) and Stay the Proceedings Until Applicant Has Complied**

Under the Federal Rules of Civil Procedure, "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court … may order the plaintiff to pay all or part of the costs of that previous action; and (2)

may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d). The moving party "must show that: (1) the plaintiff dismissed a previous action; (2) the plaintiff then commenced a second action that is based upon or includes the same claim against the same defendants; and (3) the defendant incurred costs in the prior action that will not be useful in the newly filed litigation." *Monterey at Malibu May Condominium Ass'n, Inc. v. Empire Indemnity Insurance Co.*, No. 20-cv-24587, 2021 WL 603032, at *3 (S.D. Fla. Jan. 11, 2021).

Courts in this district have routinely held that reasonable attorneys' fees are recoverable as "costs" under Rule 41(d). *See, e.g.*, *USA Entertainment Group, Inc. v. City of Pompano Beach*, No. 18-cv-62740, 2019 WL 498743, at *2 (S.D. Fla. Feb. 8, 2019); *see also Monterey*, 2021 WL 603032, at *4; *Rodriguez*, 2021 WL 2666995, at *2; *Fees v. Zarco*, No. 17-civ-20564, 2019 WL 2106072, at *5 (S.D. Fla. Feb. 11, 2019). "[I]n determining whether an award of costs is appropriate, courts look to whether a plaintiff's conduct satisfies the requirements of Rule 41(d) and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant." *Monterey*, 2021 WL 603032, at *3 (citation omitted). This Court has "broad discretion under Rule 41 to award fees and costs." *Id.*

### 1.     The Requirements of Rule 41(d) Are Satisfied Here

The requirements of Rule 41(d) are present here. *First*, Applicant "previously dismissed an action in any court." Fed. R. Civ. P. 41(d). Applicant has expressly acknowledged in this proceeding that he "withdrew the Application without prejudice in the Eastern District of New York." ECF No. 16 at 2-3. The docket for the previous action in the Eastern District of New York confirms that Applicant voluntarily dismissed that action on July 31, 2023. *See* Kritzer Decl. Ex. 2.

*Second*, Applicant "then commenced a second action that is based upon or includes the same claim against the same defendants." Fed. R. Civ. P. 41(d). Applicant acknowledges that, after dismissing the New York action, he "re-filed an amended version of the Application before this

8

Court on August 21, 2023." ECF No. 16 at 3; *see also id.* at 2 (Applicant "intended to re-file the Application in Florida"); ECF No. 16-2 at 3 (Applicant "would be amenable to withdrawing the EDNY 1782 application and subpoenas, and refiling the 1782 application in the Southern District of Florida"). Both the New York application and the present Application seek an order pursuant to 28 U.S.C. § 1782 authorizing Applicant to take discovery from Respondent, ostensibly for use in the same ongoing judicial proceedings in England.

Applicant's own descriptions of the discovery sought and the reason for seeking such discovery speak for themselves. In connection with the previous New York action, Applicant stated:

> Accordingly, Beno is likely to have critical documents pertaining to efforts by himself, Freddy, and Philip to restructure the management of the African Businesses to prevent Petitioner from receiving the profits derived therefrom, as well as detailed information regarding the profitability of the African Businesses that is relevant to Moussy's claims in the English Proceeding concerning whether sufficient compensation was paid when the assets were transferred, and to determine the quantum of damages owed due to Freddy's wrongful acts. Thus, Petitioner seeks an order authorizing this Petition and the issuance of Subpoenas to Beno Salem.

Kritzer Decl. Ex. 3 at 3. And in connection with the instant Application, Applicant likewise stated:

> Accordingly, Beno is likely to have critical documents pertaining to efforts by himself, Freddy, and Philip to restructure management of the African Businesses to prevent Applicant and his family from receiving the profits owed, as well as detailed information regarding the value of the Parker Services at the time of the transfer of those services from Monline International to Monline UK. This information is relevant to Moussy's claims in the English Proceedings concerning whether sufficient compensation was paid when this asset was transferred, and to determine the quantum of damages owed due to Freddy's wrongful acts. Thus, Applicant seeks an order authorizing this Application and the issuance of Subpoenas to Beno Salem.

ECF No. 4 at 3. This action undoubtedly "is based upon or includes the same claim against the same Defendants" as the New York action, since both cases seek substantially the same discovery from Respondent in connection with the same foreign proceeding and with the same purported justification. *See USA Entertainment*, 2019 WL 498743, at *1 ("costs may be imposed where the

9

plaintiff has brought a second, identical, or nearly identical, claim and has requested identical, or nearly identical, relief") (quotation omitted); *Monterey*, 2021 WL 603032 at *4 ("the mere addition of a defendant or a new claim or two does not prevent the application of Rule 41(d) so long as there are claims in the new case that arise from the same nucleus of operative facts such that the new case can be said to be based on or including previously brought and dismissed claims") (quotation omitted).

*Finally*, Respondent incurred expenses in connection with his motion to quash the subpoenas issued in connection with the New York application that will not be (and have not been) useful in opposing the instant Application. In the New York action, Respondent argued principally that the Eastern District of New York lacked jurisdiction over the Section 1782 application because Respondent did not reside and was not found within the district, as required by the statute. Relatedly, Respondent argued that the subpoenas called for compliance beyond the geographic limits of Rule 45, and that the subpoenas should be quashed on forum non conveniens grounds. The work done on these points is not helpful in this proceeding, because Respondent lives in Florida (not New York).

### 2.     Costs Should be Awarded to Prevent Prejudice

Courts in this district have recognized that costs should be awarded where "the circumstances of the case warrant an award of costs to prevent prejudice to the defendant." *Monterey*, 2021 WL 603032, at *3; *see id.* ("Rule 41(d) expressly contemplates the prejudicial impact on a defendant when a plaintiff dismisses and re-files against that defendant"); *Rodriguez v. Western World Insurance Company*, No. 21-cv-20032, 2021 WL 2666995, at *1 (S.D. Fla. May 11, 2021) ("The purpose of Rule 41(d) is to deter plaintiffs from increasing litigant expenses and wasting judicial resources"). A party suffers prejudice when it incurs costs in one action which are then wasted when the other party dismisses and re-files the case.

For this reason, Rule 41(d) allows a party to recover costs "incurred [] in the prior action that will not be useful in the newly filed litigation," such as "the cost of preparing motions that were only useful in the original action." *Monterey*, 2021 WL 603032 at *3-4 & n.7; *see also USA Entertainment*, 2019 WL 498743 at *2 (a party may recover "expenses and attorneys' fees that are reasonably incurred and will not contribute toward the defendants' defense in the present case") (quotation omitted); *Groom v. Bank of America*, No. 08-cv-2567, 2010 WL 627564, at *7 (M.D. Fla. Feb. 23, 2010) (costs incurred in "researching and preparing motions to dismiss, and responding to plaintiffs' request for a voluntary dismissal" would "not be useful" in the newly-filed action); *Hard Rock Café International USA, Inc. v. RockStarHotels, Inc.*, No. 17-cv-62013, 2018 WL 7144143, at *1 (costs incurred in "researching and pressing legal arguments that will not be useful in the later suit" may be recoverable under Rule 41). In this case, most of the costs incurred in the prior action were due to the need to litigate jurisdictional issues arising out of Applicant filing that action in the wrong state—issues which were rendered moot by Applicant's decision to dismiss the New York action and re-file his application in Florida.

"A showing of bad faith is *not* required to recover costs under the rule." *Monterey*, 2021 WL 603032 at *3 (emphasis added). However, courts may "generally consider the plaintiff's motive in dismissing the first action and whether the plaintiff exhibited some measure of vexatious conduct in refiling the case." *Groom*, 2010 WL 627564 at *6. "[I]t is clear that the plaintiff bears the responsibility of determining the appropriate forum in which to prosecute her case." *NF Import & Export, Inc. v. VIA Mat International AG*, No. 11-cv-23371, 2012 WL 13013078, at *5 (S.D. Fla. Aug. 3, 2012), quoting *Esquivel*, 913 F. Supp. at 1388. Accordingly, "a plaintiff's decision to refile an action in another court rather than respond to a motion to dismiss for lack of personal

11

jurisdiction may be evidence of vexatious conduct" and will support an award of fees. *Groom*, 2010 WL 627564 at *6-7.

Applicant acknowledges that his decision to dismiss the New York action and re-file this case in Florida was prompted by Respondent's declaration that he resides in Florida, not in New York. ECF No. 16 at 2-3. Applicant further acknowledges that this decision was motivated by his own "prefer[ence] not to … litigate over the issue of [Respondent's] intended place of residence," notwithstanding Applicant's professed belief that Respondent actually is a New York resident. ECF No. 16-2 at 3. The withdrawal of the New York action thus "appears to have been a recognition that [the] suit in [New York] was vulnerable on the grounds asserted in the motion." *Esquivel*, 913. F. Supp. at 1387-88 (awarding costs because "defendants have incurred needless expenditures as a result" of plaintiff's dismissal and re-filing of action). Under these circumstances, costs should be awarded to prevent prejudice to Respondent.

### 3. The Instant Proceedings Should be Stayed

Although the Application should be dismissed entirely because it is barred by the Settlement Agreement, Rule 41(d) provides a separate and independent basis for this Court to, at a minimum, stay the instant proceedings. This Court should exercise its discretion and enter an order staying these proceedings until Respondent's costs incurred in responding to the previous action have been paid by Applicant. *See, e.g.*, *Esquivel v. Arau*, 913 F. Supp. 1382, 1393 (C.D. Cal. 1996) (granting stay because the court "has discretion to order a stay of the instant action pending plaintiff's payment of the costs and fees imposed under Rule 41(d)" and plaintiff "has not represented that she would be unable to pay an award of costs, nor has she asserted that she would be harmed in any way by a stay of the proceedings"); *Cadle Co. v. Beury*, 242 F.R.D. 695, 70 (S.D. Ga. 2007) (awarding costs and staying proceedings pending proof of payment).

## CONCLUSION

For the foregoing reasons, Respondent Beno Salem respectfully requests that this Court enter an order:

(1) dismissing the Application in its entirety;

(2) finding that Respondent is entitled to an award of attorneys' fees and costs incurred in the prior action that will not be useful in the present litigation;

(3) granting Respondent leave to file a separate motion, with supporting documentation, to set the amount of such award;[2]

(4) in the alternative, if the Application is not dismissed in its entirety, staying the instant proceeding until Applicant certifies that the amount of Respondent's costs, whether agreed to by the parties or pursuant to a court order, have been paid to Respondent; and

(5) granting such other and further relief as this Court may determine is just and proper.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned certifies that counsel for Beno Salem has conferred in writing with respect to the Fed. R. Civ. P. 41(d) entitlement for fees with Applicant in a good faith effort to resolve the issues raised in this Motion and has been unable to do so. Additionally, pursuant to Local Rule 7.1(a)(3) a pre-filing conference is not necessary for a motion to dismiss.

---

[2] *See, e.g., Fees*, 2019 WL 2106072 at *6 (recommending that "Defendants should also be entitled to recover their costs and reasonable attorneys' fees under Rule 41(d)" and that "[t]he amount of such award should be determined upon the filing of a separate motion for attorneys' fees and costs"); NF Import & Export, 2012 WL 13013078 at *6 (recommending that "the Defendant's motion be granted, and the Defendant be required to submit its costs, including a detailed specification of the additional attorney's fees incurred due to the initial filing of the [action] in [another] court, for this court's review").

| | |
|---|---|
| Dated: January 25, 2024<br>New York, New York | STEPTOE LLP<br>By: /s/ Nathaniel J. Kritzer<br><br>Nathaniel J. Kritzer [*]<br>Jason E. Meade [*]<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Tel: (212) 506-3900<br>Fax: (212) 506-3950<br>nkritzer@steptoe.com<br>jmeade@steptoe.com<br><br>Elise Haverman<br>Florida Bar No. 1003004<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>Tel: (202) 429-8000<br>Fax: (202) 429-3902<br>ehaverman@steptoe.com<br><br>*Counsel for Beno Salem*<br><br>[*] *Pro Hac Vice* motion forthcoming |