# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

*In re* Petition of

MOUSSY SALEM

FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782 FROM BENO
SALEM

Civil Action No.

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE***
**PETITION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

James E. Berger
Charlene C. Sun
Erin Collins
Jamie Brensilber
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
PH: 212-335-4715
FX: 212-884-8715
james.berger@us.dlapiper.com
charlene.sun@us.dlapiper.com
erin.collins@us.dlapiper.com
jamie.brensilber@us.dlapiper.com

*Attorneys for Petitioner*

# <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................................................... 1

Factual Background ..................................................................................................................... 4

A.      The Salem Family ........................................................................................................ 4

B.      African Businesses ....................................................................................................... 4

C.      Management of the African Businesses ....................................................................... 6

D.      The Monline Claim ...................................................................................................... 7

Argument ..................................................................................................................................... 9

A.      This Petition Satisfies the Statutory Requirements of 28 U.S.C. § 1782 ................... 9

        1.      Discovery Subject Is Found In This District ................................................. 11

        2.      Discovery Sought Is "For Use In A Proceeding" That Is Foreign Or International 11

        3.      Petitioner Is An Interested Person .................................................................. 12

        4.      This Court Should Exercise Its Discretion In Favor Of Granting The Petition ....... 12

                i.      Beno Salem Is Not A Participant In The Foreign Proceeding ...................... 13

                ii.      There Is No Evidence The English Court Should Not Be Receptive To This Court's Assistance ..................................................................................... 14

                iii.      The Petition Does Not Implicate Any Foreign Proof Gathering Restrictions ....................................................................................................... 15

                iv.      The Discovery Sought Is Not Unduly Burdensome ...................................... 16

Conclusion ................................................................................................................................ 18

Moussy Salem ("**Moussy**," or the "**Petitioner**"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his petition (the "**Petition**") for an order pursuant to 28 U.S.C. § 1782 ("**Section 1782**") authorizing him to seek discovery from Beno Salem ("**Beno**" or "**Respondent**") in accordance with the attached forms of subpoena *duces tecum* and *ad testificandum* (together, the "**Subpoenas**").[1]  The Court should grant the Petition, for all the reasons that follow.

## PRELIMINARY STATEMENT

This Petition is in aid of a civil litigation proceeding (the "**English Proceeding**") currently pending before the High Court of Justice, Business & Property Courts of England and Wales, Business List (ChD) (the "**English Court**"), Claim No. BL-2022-000926, involving claims made by Moussy (having been assigned the claim by Monline International Limited ("**Monline International**"), which originally brought the claim) against one of Monline International's directors, Freddy Salem ("**Freddy**"), as well as against Monline UK Limited ("**Monline UK**") and Monline UK's sole directors and shareholders Salim Levy and Ezra Aghai.

Since March 30, 2016, Monline International's core asset was a logistics agreement with Morsgate International Limited ("**Morsgate**"), pursuant to which Monline International was responsible for providing logistics and management services to a set of trading businesses in West Africa (the "**African Businesses**") and for which Monline International received payment for its services.  As discussed in further detail below, the African Businesses are owned by the Salem

---

[1]  Petitioner seeks discovery on an *ex parte* basis in accordance with the accepted practice in this Court and in many other courts to seek relief pursuant to 28 U.S.C. § 1782 on an *ex parte* basis. *See e.g., In re Hornbeam Corp.*, 722 Fed. App'x 7, 10 (2d Cir. 2018) (noting there is no impropriety in bringing Section 1782 applications *ex parte* since respondents may move to quash); *In re O'Keeffe*, 650 Fed. App'x 83, 85 (2d Cir. 2016) (rejecting the suggestion that bringing a Section 1782 application *ex parte* is "impermissible or improper"); *Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.") (collecting cases).

Family, and held through a series of trusts. Respondent Beno is a beneficiary of some of these trusts, and is also a shareholder in certain of the African Businesses.

In the English Proceeding, Moussy alleges that his uncle, Freddy (a director of Monline International), breached his duties to Monline International when, on or around June 7, 2016, he transferred Monline International's assets to Monline UK (a company owned and directed solely by Salim Levy and Ezra Aghai, allegedly on trust for Freddy) without Moussy's knowledge, and for minimal or no consideration. Moussy alleges that by causing, procuring, or otherwise permitting this transfer, Freddy Salem (a) diverted the business of Monline International, (b) misapplied Monline International's assets, (c) caused Monline International to make unlawful distributions of capital to one of its shareholders, (d) exercised his powers for an improper purpose, (e) preferred his own interests to those of Monline International, (f) failed to obtain approval of the other shareholders and directors of Monline International prior to transferring Monline International's assets to Monline UK, (g) acted to the detriment of Monline International, and (h) failed to keep proper books and records related to that transfer. Finally, Moussy alleges that the transfer of assets to Monline UK was part of a conspiracy by Freddy to place Monline International's assets out of reach of the other shareholders of Monline International — Mireille Salem and Moussy — since 2013, when Moussy was ousted from the management of the African Businesses. As a result, Moussy claims in the English Proceeding that he, on behalf of Monline International (as the assignee of such claims by Monline International), is entitled to the return of Monline International's assets or to equitable compensation from Monline UK and its shareholders.

As alleged in the English Proceeding, Beno has also been responsible since 2013 for the downstream management of several of the African Businesses, and assisted Freddy and Freddy's

son Philip Salem (**Philip**) in taking steps to inhibit Petitioner from sharing the profits of the African Businesses. Accordingly, Beno is likely to have critical documents pertaining to efforts by himself, Freddy, and Philip to restructure the management of the African Businesses to prevent Petitioner from receiving the profits derived therefrom, as well as detailed information regarding the profitability of the African Businesses that is relevant to Moussy's claims in the English Proceeding concerning whether sufficient compensation was paid when the assets were transferred, and to determine the quantum of damages owed due to Freddy's wrongful acts. Thus, Petitioner seeks an order authorizing this Petition and the issuance of Subpoenas to Beno Salem.

As shown below, this Petition meets all of the statutory requirements of Section 1782 to warrant discovery. Respondent is "found" in this District because he lives in Brooklyn, New York. The discovery sought is highly material and relevant to the issues at stake in the ongoing English Proceeding, and is "for use" in those proceedings. The documents and information requested will help Petitioner establish the fraud and breaches of shareholder duties perpetrated by Freddy (in concert with others), and will provide additional information to ensure that Moussy receives equitable compensation and/or damages for the assets improperly transferred out of Monline International.

Moreover, each of the *Intel* discretionary factors are met. Respondent is a nonparticipant in the English Proceeding and cannot be compelled by the English Court to disclose information or documents. There is nothing to indicate that the English Court will decline U.S. judicial assistance, nor is this discovery request an attempt to circumvent English proof-gathering restrictions. Finally, this request is narrowly tailored to documents and information relating only to the operation and management of the African Businesses. Accordingly, Petitioner respectfully

requests that the Court grant his Petition and authorize service of the Subpoenas on Respondent Beno Salem.

## FACTUAL BACKGROUND

### A.    THE SALEM FAMILY

Petitioner is a member of the Salem Family.  The Salem Family is composed of the children of Moussa Salem and Perla Ishak Yael, and their descendants.  It is composed of four branches, corresponding to Moussa's and Perla's four children: (1) the late Raymond Salem, husband to Mireille Salem and father to Moussy Salem, the "**R Branch**;" (2) Beno Salem and his family, the "**B Branch**;" (3) Freddy Salem and his family, including son Philip, the "**F Branch**;" and (4) Isaac Salem and his family, the "**I Branch**."  The four branches each hold interests in various trusts set up by Moussa and Perla.

The I Branch's interests in these trusts have already been separated from those of the rest of the Salem Family, however, the R, F and B Branches remain connected through interests in the same trusts, and through these trusts, the R, F and B Branches share interests in the same assets.

At present, there has been a near total breakdown in relations between the R Branch and the F and B Branches.

### B.    AFRICAN BUSINESSES

The Salem family operates a trading business in West Africa, known as the African Businesses, which are owned in equal parts by the R, F, and B Branches.[2]  *See* Declaration of

---

[2]    The African Businesses are comprised of the following entities:  Africa International Group, Cobetrac, Madison Sarl, Société Cobexim SARL, Boulder Finance Limited, Cromwell Trading Corp, Fernbridge International Limited, Glynfield Finance Limited, Great Brands (Holdings) Limited, Metrocom Holdings Inc., Nartnett Limited, Tabcom SA, Transglobe Logistics Management Limited, Universal Metrocom Limited, Vélaire Limited, Westco Export Trading, Bargain R Us, Comfu, Diplo FZ Limited, First Rec Ltd., Forewin (Ghana) Limited, HMD Africa Limited, HMD Africa Services Limited, HMD Forewin Limited, Lewadis FZ Limited, Mabani Seven

Simon Goldring ("**Goldring Decl.**"), Ex. B, ¶ 19; *see also* Goldring Decl., Ex. C, at ¶¶ 5, 4b. The African Businesses' operations include the import and distribution of consumer products such as pharmaceuticals, tobacco products (including the exclusive right to distribute and retail British American Tobacco tobacco products in several countries), personal care, food, alcoholic and non-alcoholic beverages, and confectionary products. *See* Goldring Decl., Ex. C, ¶ 5(c).

Historically, the R, F and B branches managed the African Businesses equally. *See* Goldring Decl., Ex. C, ¶ 4. Moussy took over the R Branch's management duties in 1997 upon his father's incapacity due to a stroke. *See id*. But, as alleged in the English Proceeding, in 2013, Moussy was excluded by other Salem family members from activities associated with running the African Businesses, which from then onwards have been under the control of Freddy, Beno, and Philip. *See id*. Accordingly, from this point forward, Moussy had no access to the email systems or physical offices used to run the affairs of the African Businesses. *See* Simon Goldring Decl., ¶ 8. As a result, since 2013, members of the R Branch, including Petitioner, have had very limited information concerning the operation of the African Businesses, though they have remained

---

Company Ltd., Mabani Six Company Limited, Mass Industries Limited, Star Games, Zoobashop Limited, Bracknell Investments Limited, Framwell Investments Limited, Morsgate International Ltd., Chakras (Holding) SAL, Gestcom International Offshore SAL, Gestcom International Trading Offshore SAL/Gee Trading (Offshore) SAL, Globest Services Offshore SAL, Conchee Holdings SARL, Gateacre Holdings SARL, Great Brands (Holdings) Limited, Mabani FBR Holdings Mauritius Limited, Mabani Holdings Ghana Limited, Mabani Real Estate & Management Services (MI) Limited, Maiddat MI Ltd, Marchari Investments Ltd, Afro Ocean Bridge Nigeria Ltd, BA Nigeria Distribution Ltd, Best Tobacco Company Ltd, Big Bowl Company Nigeria Ltd, Blue Arrow TSW Limited, Dynabuy Nigeria Company Limited, Grand Concept Ltd, Great Brands Nigeria Limited, IDF Trading Company Ltd, Inter Market Distribution Company Ltd , Inter Trade Worldwide Distribution Company Ltd, Inter-Food Distribution Company Ltd, Mabani Five Nigeria, Mabani Four Nigeria, Mabani Real Estate Nigeria Limited, Mabani Three Nigeria, Mabani Two Nigeria, Maon Alpha Alliance Ltd, Maon Holdings Ltd, Maon Services Ltd, Maon Technology Ltd, Saharan Distillers Ltd, Ultra Trade Company Nigeria Ltd, Perron Trading Inc, Richon Trading Co Ltd, Simpex Limited, Wafco Inc, Royal Beverages Espana SL, Societe Samex Sarl, Togo Trading & Disribution SARL, The Second Defendant (Monline UK Limited), Parker Logistics Limited, Blue Arrow Warehousing & Logistics LLC, Bonita Warehouse LLC, BS Gestcom Holdings Corp, BS Global Holdings Corp, BS and DS Holding Corp, and Renis Warehousing LLC.

entitled, as beneficiaries of various Salem family trusts, to their share of profits from the African Businesses.

As alleged in the English Proceeding, the Salem family trusts received profits from the African Businesses through a corporate structure involving several companies including Morsgate International Limited ("**Morsgate**"). *See* Goldring Decl., Ex. C, ¶ 3. However, after the R Branch was excluded from management of the African Businesses, the profits from the African Businesses paid out to the R Branch through the Salem family trusts suffered a sudden and inexplicable decline. *Id.* Moussy has alleged in the English Proceeding that Beno, Freddy, and Philip, who continue to manage the trading companies overseeing the African Businesses, have altered the management of the African Businesses in order to divert profits away from the R Branch. *See* Goldring Decl., Ex. C, ¶ 4f & g; *see also* Goldring Decl., Ex. A, ¶ 25.

## C.    MANAGEMENT OF THE AFRICAN BUSINESSES

Historically, one of the primary ways that the three branches of the Salem family operated the African Businesses was through an English company called Parker Logistics, which had a logistics agreement with Morsgate. *See* Goldring Decl., Ex. A, ¶ 15. As alleged in the English Proceedings, in March 2016, the B and F Branches of the Salem Family transferred management of the African Businesses, including the right to payment under the Morsgate logistics agreement, from Parker Logistics, to Monline International. *See* Goldring Decl., Ex. A, ¶ 16(b).

Monline International was incorporated in the British Virgin Islands on September 23, 2005. *See* Goldring Decl., Ex. A, ¶ 2. Petitioner understands that at all material times, Freddy Salem beneficially owned 50% of Monline International, and Moussy and Mireille beneficially owned the remaining 50%. *See id.*, ¶ 5. Monline International was effectively dormant until it took over management of the African Businesses from Parker Logistics in 2016. *See id.*, ¶ 6.

Moussy lent funds to Monline International to fund the original transfer of the African Businesses' management from Parker Logistics to Monline International. *See* Goldring Decl., Ex. B, ¶ 11.

Shortly after the transfer of the African Businesses and the related logistics agreement to Monline International, a representative of Freddy requested that Moussy agree to a further transfer of management, this time from Monline International back to an English company. Goldring Decl., Ex. A, ¶ 19(a). Moussy did not object, as long as the ownership structure remained the same and that he and Freddy were both appointed directors of the newly incorporated UK company. *Id.* ¶ 19(b). Freddy moved ahead with the transfer without further consulting Moussy. Moussy later learned that Freddy had transferred the management of the African Businesses, including the logistics agreement, to a new English company, Monline UK Limited ("**Monline UK**"), in which neither Moussy nor Mireille had any ownership interest nor any control, and for no consideration. *Id.* ¶ 19(b)-(c).

## D.    THE MONLINE CLAIM

On October 12, 2020, a British Virgin Islands court ordered Monline International to be wound up. *See* Goldring Decl., Ex. A, ¶ 3. In connection with the liquidation, two liquidators were appointed who conducted an investigation into Monline International's affairs and determined it was necessary to initiate a separate litigation against Monline UK, Freddy Salem, and the two directors and shareholders of Monline UK, Salim Levy and Ezra Aghai, relating to wrongdoing by those persons and entities in connection with the assets of Monline International. *See id.* at 8.

This resulted in the commencement of the English Proceeding, and on October 4, 2022, following the initial Issued Claim Form and Brief of Particulars, an English court assigned the

prosecution of the case to Moussy pursuant to a deed of assignment between Monline International and Moussy. *See* Goldring Decl., Ex. A, ¶ 1.

The English Proceeding concerns three core claims (together, the "**Monline Claim**"): (1) breach of duty by Freddy; (2) gratuitous transfer by Freddy (and knowing receipt of that transfer by Monline UK, Salim Levy, and Ezra Aghai), and (3) conspiracy to divest Monline International of its assets to place those assets out of reach of Petitioner. *See generally* Goldring Decl., Ex. A.

To establish that Freddy breached his duty to Monline International, Moussy must demonstrate, *inter alia*, that Freddy diverted business of Monline International and/or corporate opportunities of Monline International, and specifically the provision of services to Morsgate, to Monline UK; that Freddy preferred his own interests and/or those of Monline UK and its shareholders over the interests of Monline International; and that Freddy acted to the detriment of Monline International. Goldring Decl., Ex. A, ¶ 25. Moussy also alleges that Freddy failed to keep proper books and records for Monline International, including the records and explanations for the transfer of assets from Monline International to Monline UK. *Id.* ¶ 26. Given Beno's close relationship with Freddy in connection with the overall management of the African Businesses, Beno is likely in possession of information and documents regarding these actions. Goldring Decl., Ex. B, ¶ 19(b). Further, Beno's position as shareholder of several of the downstream businesses, and one of Morsgate's corporate shareholders,[3] makes it likely that Beno is in

---

[3]     Petitioner understands that Morsgate's shareholders include: Great Brands Nigeria Limited, Forewin (Ghana) Limited, Blue Arrow TSW Limited, Société Cobexim SARL, and Lewadis FZ Limited. Beno directly owns 40% of Société Cobexim SARL. Goldring Decl., ¶¶ 11-12.

possession of documents and information regarding the change in management of the logistics agreement with Morsgate from Monline International to Monline UK.

Second, to establish the gratuitous transfer by Freddy, Moussy will need to show that the transfer of assets from Monline International to Monline UK was unconscionable because Monline UK obtained these assets without providing equitable compensation to Monline International. Goldring Decl., Ex. A, ¶¶ 28-29. Moussy will therefore need to show the revenues generated by the African Businesses, which have been opaque to Moussy since his ouster from the management of the African Businesses in 2013. *See e.g.*, *id.* ¶ 30. Such information will also be necessary for Moussy's request in the English Proceeding to receive equitable compensation and/or damages for the value of the assets transferred to Monline UK. As shareholder of several of the African Businesses, Beno will be able to shed light on the profits that these businesses were generating.

Finally, for Moussy to establish that Freddy and the other defendants in the English Proceeding were part of a conspiracy, Moussy will need to demonstrate that the transfer of assets from Monline International to Monline UK was part of a concerted action taken for the purpose of placing those assets out of reach of Mireille and Moussy. *Id.* ¶ 32. Given Beno's role in assisting with Moussy's ouster from management of the African Businesses generally in 2013, Beno is likely in possession of documents and communications demonstrating concerted action involving Freddy and the other defendants in the English Proceeding to deprive the R Branch of its share of profits from the African Businesses. *See e.g.*, Goldring Decl., Ex. C, ¶ 4g.

## **ARGUMENT**

**A.    THIS PETITION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782**

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The statute reads, in pertinent part:

> *The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal*…The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal *or upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court…

28 U.S.C. § 1782 (emphasis added).

Section 1782 permits a district court to grant an application where petitioners can establish three factors: "(1) that the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) that the discovery is for use in a proceeding before a foreign tribunal, and (3) that the application is made by a foreign or international tribunal or any interested person." *In re G2A.com SP. Z.O.O. (LTD.)*, 412 F. Supp. 3d 145, 146 (E.D.N.Y. 2019); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004).

Petitioner satisfies each of the three statutory requirements set forth in Section 1782. First, the person from whom discovery is sought, Beno Salem, lives in this District. Second, the documents and information that Petitioner seeks are plainly "for use" in a foreign court proceeding. Third, Petitioner qualifies as an "interested person" under Section 1782 because he is the claimant in the English court proceeding.

10

### 1.      Discovery Subject Is Found In This District

The first statutory requirement is that the "person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made." *In re G2A.com*, 412 F. Supp. 3d, at 146.  Beno Salem resides in this District, in Brooklyn, New York.  Accordingly, Petitioner has satisfied the first requirement under Section 1782.

### 2.      Discovery Sought Is "For Use In A Proceeding" That Is Foreign Or International

The information sought in the Subpoenas is clearly for use in an ongoing foreign court proceeding.  Whether discovery is "'for use in a [foreign] proceeding" is analyzed "according to the particular facts of each case." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 129, 131 (2d Cir. 2017).  Critically, however, to qualify as "for use," discovery "need not be necessary for the party to prevail in the foreign proceeding." *See Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).  The "plain meeting of the phrase . . . indicates something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail." *Id.*  This includes instances when an applicant exhibits the "practical ability to inject the requested information into [the] foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132.  In order to satisfy the requirement, the discovery must be "for use" in an "adjudicative" proceeding. *See Federal Republic of Nigeria v. VR Advisory Services, Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022).

Here, Petitioner easily satisfies the "for use" requirement.  The documents Petitioner seeks are intended to be used by him in the English Proceeding, which is clearly an adjudicative proceeding before the English Court.  Moussy seeks to prove that the transfer of the business from Monline International to Monline UK for no consideration was fraudulent and constituted a breach by Freddy of his duty to Monline International and its shareholders.  Part of his claim therefore

involves showing that consideration was not paid for the African Businesses. Moussy also seeks equitable compensation or damages for the value of the business that was fraudulently transferred. The English Court will therefore need to determine the value of the African Businesses to make this determination.

Moussy further claims that Freddy Salem's efforts to transfer the businesses to Monline UK without him was part of a larger conspiracy to hide the value of the African Businesses' profits from the R Branch. As an owner of certain of the African Businesses, and head of the B Branch, Beno likely has direct access to this information, which Moussy would then be able to "inject" in the English Proceeding. In sum, the information that Petitioner seeks is clearly "for use" in the English proceeding.

### 3. Petitioner Is An Interested Person

Petitioner is an "interested person" within the meaning of Section 1782. The Supreme Court has explicitly stated that an "interested person" is a "complainant [who] 'possess[es] a reasonable interest in obtaining [judicial] assistance.'" *Intel*, 542 U.S. at 256. Moussy is the claimant in the English Proceeding, and by this Petition he seeks evidence to support the Monline Claims in that proceeding. He accordingly has a clear interest in obtaining judicial assistance to help him prosecute the Monline Claim. Petitioner is therefore an interested person for purposes of the statute.

### 4. This Court Should Exercise Its Discretion In Favor Of Granting The Petition

Where, as here, the statutory elements are satisfied, a district court may grant discovery in its discretion. *See Schmitz*, 376 F.3d at 83-84; *see also Mees*, 793 F.3d at 297. This discretion is exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by

example to provide similar means of assistance to our courts." *Mees*, 793 F.3d at 298 (citing *Schmitz*, 376 F.3d at 83-84).

In evaluating such discretion, the Supreme Court in *Intel* outlined four factors for consideration: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *Mees*, 793 F.3d at 298. These factors all suggest the Court should grant the Petition.

### i. Beno Salem Is Not A Participant In The Foreign Proceeding

The Supreme Court has stated that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *In re Imanagement Servs., Ltd.*, 2005 WL 1959702, at *3 (E.D.N.Y. Aug. 16, 2005) (finding the parties from whom petitioner sought discovery were not parties to the foreign action). In contrast, courts routinely grant discovery when the respondent is not a party to the foreign proceeding. *See In re O'Keeffe*, 650 Fed. App'x 83, 85 (2d Cir. 2016) (allowing discovery from non-party); *see also In re Iraq Telecom Ltd.*, 2019 WL 3798059, at *4 (S.D.N.Y. Aug. 13, 2019), *reconsideration denied*, 2019 WL 508007 (S.D.N.Y. Oct. 10, 2019).

Even though Beno is an owner of certain of the businesses which comprise the African Businesses, and oversees the B Branch including the B Branch's trust, Beno is not a party to the

English Proceeding as he is not one of the owners of Monline International. Because Beno is not a party to the English Proceeding, the first *Intel* factor weighs strongly in favor of granting Petitioner's Petition.

### ii. There Is No Evidence The English Court Should Not Be Receptive To This Court's Assistance

The second *Intel* factor also weighs in favor of Petitioner. In evaluating this factor, courts seek "authoritative proof" that a foreign tribunal would reject evidence obtained with the aid of Section 1782. *In re O'Keeffe*, 650 Fed. App'x 83, 85 (2d Cir. 2016) (noting the absence of evidence that the foreign court would be unreceptive to U.S. judicial assistance); *see also In re Iraq Telecom Ltd.*, 2019 WL 3798059, at *4 (requiring authoritative proof that a foreign tribunal would 'reject' discovery). The "party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal." *In re Application of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014); *see also In re B&C KB Holding GmbH*, 2023 WL 1777326, at *7 (S.D.N.Y. Feb. 6, 2023). If there are no explicit statements in a forum country's judicial, executive, or legislative declarations suggesting that the discovery would not be accepted by the forum court, "a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *In re Imanagement Services, Ltd.*, 2005 WL 1959702, at *3 (citing to *Euromepa, S.A. v. E. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998)). In the past, courts in this Circuit have found UK courts to be receptive to discovery assistance. *See In re Application of Patokh Chodiev*, 2021 WL 3270042, at *2 (S.D.N.Y. July 30, 2021); *see also In re Vale S.A.*, 2020 WL 4048669, at *4 (S.D.N.Y. July 20, 2020).

Consistent with these prior decisions, Petitioner has no reason to believe that the English Court will not be receptive to accepting evidence obtained through Section 1782 discovery. The evidence gathered from Beno through the use of Section 1782 discovery would aid the English Court in adjudicating Moussy's breach of duty, gratuitous transfer, and conspiracy claims. This information will also be valuable in assisting the English Court in determining the appropriate equitable compensation and/or damages owed by Freddy, Monline UK, Salim Levy and Ezra Aghai. Thus, the second *Intel* factor weighs heavily in favor of discovery.

### iii. The Petition Does Not Implicate Any Foreign Proof Gathering Restrictions

The third *Intel* factor requires this Court to consider "whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Second Circuit law "expressly forbid[s] district courts from considering the discoverability of evidence in a foreign proceeding when ruling on a § 1782 application." *In re O'Keeffe*, 650 Fed. App'x 83, 85 (2d Cir. 2016). Under *Intel*, there is no requirement that the evidence be discoverable or admissible in the foreign proceeding. *See Brandi-Dohrn*, 673 F.3d, at 82; *see also In re Gorsoan Ltd.*, 652 Fed. App'x 7, 9 (2d Cir. 2016) (there is no "requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding."). Similarly, a district court may not refuse a Section 1782 discovery request just because a foreign tribunal has not yet had the opportunity to consider discovery or the admissibility of evidence generated from such discovery. *See Intel*, 542 U.S. at 261 (noting that the text of Section 1782 does not contain any generally applicable foreign-discoverability rule). A court should not deny discovery under § 1782 "solely because such discovery is unavailable in the foreign court," and likewise, the "availability of the discovery in the foreign proceeding should not be afforded undue

weight." *Mees*, 793 F.3d, at 303, 298 n.8. Section 1782 does not include an "exhaustion requirement" or a "quasi-exhaustion requirement" that an applicant must first try and fail to obtain discovery. *See id.* at 303. Moreover, it is the burden of the party seeking to oppose discovery to prove that the requested discovery runs afoul of foreign proof gathering mechanisms. *See e.g., In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (finding the third factor weighed in favor of discovery as the discovery opponent has not demonstrated that the relevant jurisdiction would prohibit the production of the discovery sought.).

Here, the Petition does not implicate any foreign proof gathering restrictions. Petitioner has not been able to obtain information on the operation of the African Businesses since Moussy was ousted in 2013. The English Court has not denied similar discovery, nor has it had occasion to evaluate the discoverability or admissibility of the evidence. Accordingly, the third *Intel* factor supports granting the Petition.

### iv.     The Discovery Sought Is Not Unduly Burdensome

The fourth *Intel* factor asks whether Petitioner's request for discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245. It is not. Courts should not limit discovery to the scope of discovery available in the foreign proceeding, as "[f]ew if any foreign jurisdictions permit the scope of discovery available in our courts." *Mees*, 793 F.3d, at 302. "Rather, a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Id.* To the extent that a court finds that a discovery request is overbroad, it should consider whether that defect can be cured through a more limited granting of discovery. *Id.* This includes the use of confidentiality stipulations and protective orders. *See In re Accent Delight Int'l*

*Ltd.*, 791 Fed. App'x at 252 (requiring respondent to show reasons that its concerns could not otherwise be addressed through a protective order).

Petitioner requires the requested communications and documents dating back to his expulsion from the African Businesses to assist the English Court in determining the damages suffered by Monline International and its shareholders as a result of the transfer of Monline International's assets to Monline UK, as well as the adequacy of the consideration given for that transfer. These determinations will necessarily require an understanding of the African Businesses' revenues, profits, losses, and any other "transfers" made by members of the Salem family prior to the fraudulent transfer of the Morsgate contract to Monline UK that may have diverted value away from Monline International (as well as Petitioner and other members of the R Branch). The communications requested by Petitioner must also necessarily cover the time period between Petitioner's ouster from the operations of the African Businesses and present-day, as the conspiracy alleged by Petitioner is believed to have occurred over a number of years, and is believed to be still ongoing.

While Petitioner's request spans a nearly ten-year period, this request is not unduly burdensome under the circumstances. For example, in *In re Aso*, 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019), the court found that discovery spanning nearly 14 years was reasonable, as the petitioner in that case was seeking to uncover information regarding businesses that her husband had hidden, and alleged that the requested discovery was necessary to identify those assets. *See id*. The court concluded the petitioner's allegations of hidden assets were "plausible enough for the Court to conclude that the proposed subpoenas could uncover information" which would then be used to ensure a fair distribution of assets in a foreign divorce proceeding. *See id*. Like in *Aso*, Petitioner's request here seeks discovery in order to uncover information regarding

the scope of assets that Petitioner's relatives have sought to hide from him. And, given that it is "plausible" that the requested discovery will uncover relevant information regarding the value of the African Businesses, Petitioner's requested discovery should be granted. Furthermore, where the requested discovery seeks information to support allegations of fraudulent activity, courts in this district have been willing to grant subpoenas spanning even more than 10 years due to the seriousness of the allegation. *See In re Children's Inv. Fund Found.*, 363 F. Supp. 3d 361, 366, 373 (S.D.N.Y. 2019).

The records that Petitioner seeks should be readily available to Beno as they concern the oversight and management of the African Businesses by and through Morsgate, and information regarding any transfer of that management from Morsgate to new entities. As partial owner of one of Morsgate's shareholders, Société Cobexim SARL, Beno should be in possession, custody, or control of the requested information. The Petitioner does not consider it likely that Beno's compliance with his requests would cause any undue burden. However, should the respondent identify any legitimate concerns, Petitioner will of course engage in a good faith effort to meet and confer and adjust his discovery requests accordingly. Thus, the fourth *Intel* factor similarly weighs in favor of granting Petitioner's discovery.

## CONCLUSION

Petitioner satisfies all of the necessary elements required to obtain discovery pursuant to Section 1782 and all relevant discretionary considerations weigh in favor of granting this Petition.

For the forgoing reasons, as well as those set forth in the accompanying Erin Collins Declaration and Simon Goldring Declaration, Petitioner respectfully requests that the Court grant the Petition authorizing Petitioner to issue the attached Subpoenas to Beno Salem in the form attached hereto as **Exhibit A**, authorize Petitioner to issue additional subpoenas for the production

of documents and/or depositions of Beno Salem as Petitioner reasonably deems appropriate and as are consistent with the Federal Rules of Civil Procedure, and for such other and further relief as this Court deems just and proper.

Dated: April 18, 2023

Respectfully submitted,

_____
James E. Berger
Charlene C. Sun
Erin Collins
Jamie Brensilber

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
PH: 212-335-4715
FX: 212-884-8715
james.berger@us.dlapiper.com
charlene.sun@us.dlapiper.com
erin.collins@us.dlapiper.com
jamie.brensilber@us.dlapiper.com

*Attorneys for Petitioner Moussy Salem*