UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-mc-23186-KMM

*In re* Application of

MOUSSY SALEM,

        Applicant,

FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782
FROM BENO SALEM

_____/

**APPLICANT MOUSSY SALEM'S CONSOLIDATED BRIEF REPLYING TO
BENO SALEM'S OPPOSITION TO APPLICATION AND RESPONDING TO
<u>BENO SALEM'S MOTION TO DISMISS</u>**

| | |
|---|---|
| **FLASTER GREENBERG PC** | **BROWN RUDNICK, LLP** |
| 2255 Glades Road, Suite 324A | 7 Times Square |
| Boca Raton, FL 33431 | New York, New York 10036 |
| Tel: (561) 961-4508 | Telephone: (212) 209-4800 |
| Meghan C. Moore, Esq. | Facsimile: (212) 209-4801 |
| Florida Bar No. 668958 | Lauren Tabaksblat, Esq. (*pro hac vice*) |
| Meghan.moore@flastergreenberg.com | Tyler D. Purinton, Esq. |
| | (*pro hac vice* forthcoming) |
| | ltabaksblat@brownrudnick.com |
| | tpurinton@brownrudnick.com |

*Attorneys for Applicant Moussy Salem*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT.....................................................................................................................4

I.  THE PLAIN LANGUAGE OF THE SETTLEMENT DEED DOES NOT BAR
    MOUSSY'S APPLICATION..........................................................................................4

    A.  The Settlement Deed Does Not Bar the Application Because the English
        Claims Arise From Misconduct Postdating the Settlement Deed. ...............................4

    B.  The Application Does Not "Relate To" any "Claims Against Beno."..........................5

II.  THE APPLICATION SATISFIES 28 U.S.C. § 1782.............................................................7

III. BENO IS NOT ENTITLED TO ATTORNEYS' FEES AND COSTS ...........................10

CONCLUSION ..................................................................................................................12

11103470 v1

**TABLE OF AUTHORITES**

**Page(s)**

**Cases**

*4539 Pinetree LLC v. Certain Underwriters at Lloyd's London*,
  2023 WL 4933149 (S.D. Fla. July 18, 2023) ................................................................ 10

*Chigos v. Werner Co.*,
  2014 WL 12596525 (M.D. Fla. Feb. 26, 2014) .......................................................... 5

*In re Bernal*, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) ................................... 8, 9, 10

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011) ....................................................................................... 8

*In re Clerici*,
  481 F.3d 1324 (11th Cir. 2007) .................................................................................. 8

*In re Novoship (UK) Ltd.*,
  2020 WL 3286308 (S.D. Fla. June 18, 2020) ........................................................... 9

*Intel Corp. v. Advanced Micro Devices*,
  542 U.S. 241 (2004) ............................................................................................... 8, 9

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ...................................................................................... 10

*MSP Recovery Claims, Series LLC v. Northland Ins. Co.*,
  2021 WL 3410390 (S.D. Fla. Aug. 4, 2021) ............................................................ 11

*Perkey v. Prudential Ins. Co. of Am.*,
  1994 WL 652771 (M.D. Fla. Nov. 10, 1994) ........................................................... 6

*Redel's Inc. v. Gen. Elec. Co.*,
  498 F.2d 95 (5th Cir. 1974) ....................................................................................... 5

*Univ. of Fla. Rsch. Found. v. Motorola Mobility, LLC*,
  3 F. Supp. 3d 1374 (S.D. Fla. 2014) .......................................................................... 6

*USA Ent. Grp., Inc. v. City of Pompano Beach*,
  2019 WL 498743 (S.D. Fla. Feb. 8, 2019) ........................................................... 11, 12

*Wolf v. Pacific Nat. Bank, N.A.*,
  2010 WL 1462298 (S.D. Fla. Mar. 18, 2010) ...................................................... 11, 12

11103470 v1

**Statutes**

28 U.S.C. § 1782 ................................................................................................................... 1, 7

**Other Authorities**

Black's Law Dictionary ("claim") ................................................................................................. 6

**Rules**
Fed. R. Civ. P. 41(d) ...................................................................................................... 10, 11

11103470 v1

Moussy Salem ("Moussy" or "Applicant"), by and through his undersigned counsel, respectfully submits this consolidated brief replying to Beno Salem's ("Beno") Opposition to Moussy's Application to take discovery pursuant to 28 U.S.C. § 1782 (Dkt. 29) and responding to Beno's Motion to Dismiss or Stay Application and For Entitlement To Fees and Costs (Dkt. 30).

## PRELIMINARY STATEMENT

Moussy seeks evidence from Beno in aid of a civil litigation proceeding (the "English Proceedings") currently pending before the High Court of Justice, Business & Property Courts of England and Wales, Business List (ChD) (the "English Court"). The English Proceedings center around the misappropriation by Moussy's uncle, Freddy, of Monline International's assets— primarily a services agreement with Morsgate International Limited—in August 2016. Pursuant to the agreement, Monline International would have provided logistics and management services ("Parker Services") to other businesses owned by the Salem family in return for substantial fees that were calculated based on the operations and expenditures of those businesses. Although Beno, as a manager of several of the businesses that received Parker Services, possesses critical documents relating to the misappropriation of Monline International's assets and the value of those assets, Moussy has not brought any claims against Beno in the English Proceedings.

Beno has made every effort to avoid providing this critical information. In April 2023, based on records and correspondence from Beno stating that he lived in Brooklyn, Moussy filed a Section 1782 application in the Eastern District of New York. After the Court granted Moussy's application, Moussy made 11 separate attempts to serve the subpoenas, to no avail. Beno subsequently moved to quash the subpoenas, representing that he did not reside in New York, that "I currently reside in Sunny Isles Beach" and that "Florida is my home." Based on those representations, Moussy voluntarily dismissed the New York proceedings and filed a

11103470 v1

renewed action before this Court.  But Beno's evasion tactics didn't stop.  Although Section 1782 applications are often granted *ex parte*, Applicant attempted personal service of this Application on Beno at multiple Sunny Isles Beach addresses over the course of several months to give him an opportunity to respond.  None of those attempts were successful.  (*See* Dkt. 16; Dkt. 19.)  Moussy was able to effectuate service only after this Court issued a summons in January 2024.  (Dkt. 23.)

Now, left with no choice but to respond, Beno concocts a myriad of meritless arguments to avoid complying with the Subpoenas and argues these proceedings should be dismissed or stayed.  As a preliminary matter, for the reasons set forth in Moussy's Motion to Stay (Dkt. 41), due to intervening circumstances involving a separate action in the UK, Moussy agrees that these proceedings should be stayed pending resolution of those proceedings.  Accordingly, this Court does not need to address any of the substantive arguments Beno raises in his Motion or Opposition.  Rather, interests of judicial efficiency mandate that the Court defer determination of Beno's Motion and Opposition until such time as the parties can determine how, if at all, the intervening UK proceedings impact the relief requested in this action.

In any event, Beno is flatly wrong on the merits.  He claims the Application is barred by a covenant not to sue in a Settlement Deed executed in April 2016—months before the conduct giving rise to Moussy's claims in the English Proceedings—between Moussy, Beno, and others. But Beno ignores that the covenant is expressly limited to "Liabilities" that existed as of the date of the Deed in April 2016.  Moussy's claims in the English Proceedings indisputably did not exist in April 2016; Freddy did not even transfer Monline International's assets until August 2016.  Moreover, Moussy has not brought any "Claims" against Beno as defined by the Settlement Deed that could be barred by the covenant.

11103470 v1

Beno also contends that the Application does not meet the requirements of Section 1782 because the English Court purportedly rejected Moussy's attempts to seek similar information in the English Proceedings. This is also not true—Moussy's requests align directly with the scope of discovery ordered by the English Court. In any event, the Supreme Court and courts in this Circuit have made clear time and again that courts assessing Section 1782 applications should disregard whether the discovery sought is discoverable or admissible in the foreign tribunal. Rather, courts examine whether the respondent has set forth "authoritative proof" that the foreign tribunal would reject Section 1782 assistance, such as through "a forum country's judicial, executive, or legislative declarations." Beno has not and cannot proffer such proof; Florida courts have repeatedly found that UK courts are receptive to Section 1782 discovery. Nor has Beno shown that the Application seeks to circumvent any UK privileges that would prohibit the use of discovery in the English Proceedings. Finally, the Application is narrowly tailored to the claims and discovery ordered in the English Proceedings and does not cause any undue burden.

Beno also seeks attorneys' fees and costs because Moussy filed these proceedings after dismissing his prior New York Section 1782 application. That is a non-starter. To start, Beno's motion is premature because this Court does not consider Rule 41(d) requests until the proceedings have concluded. Nor are attorneys' fees even recoverable under Rule 41(d) for Section 1782 proceedings. Finally, Beno has suffered no prejudice from the filing of these proceedings that gives rise to an award of costs.

For these reasons and those set forth below, Moussy respectfully requests that the Court, in the first instance, stay this proceeding pending resolution of the Intervening Action. Should the Court decline to grant Moussy's Motion to Stay, Moussy respectfully requests that the Court grant his Application.

11103470 v1

3

**ARGUMENT**

As a preliminary matter, Applicant reiterates his request for a stay of these proceedings for the reasons set forth in his March 14, 2024, Motion to Stay (Dkt. 41) and for the Court to defer any ruling on Beno's Motion and Opposition until after the Intervening Action is resolved.

**I.      THE PLAIN LANGUAGE OF THE SETTLEMENT DEED DOES NOT BAR MOUSSY'S APPLICATION.**

By its express terms, the April 15, 2016, Settlement Deed's covenant not to sue does not bar Moussy's Application, which asserts no claims against Beno, but rather seeks discovery relating to Moussy's claims against entirely different parties in the English Proceedings based on misconduct that occurred months after the Deed was executed.

**A.      The Settlement Deed Does Not Bar the Application Because the English Claims Arise From Misconduct Postdating the Settlement Deed.**

Pursuant to the Settlement Deed, a "Proceeding" is barred only if it relates to a "Claim," and a "Claim" must "relate to" a "Liability." (*See* Tabaksblat Decl., Ex. 1 § 5.1 (the parties "will not . . . bring any Proceedings in England and Wales or in any other jurisdiction against a Defendant Released Party . . . in relation to any Claims or otherwise assert a Claim against a Defendant Released Party"), § 1.1 ("Claims" defined as "any and all claims relating to any and all Liabilities arising from or related to or in connection with" certain specified facts and matters).) "Liabilities," in turn, are expressly limited to matters or conduct that existed at the time the Settlement Deed was executed: the Deed defines "Liabilities" as "any and all liabilities in respect of any **existing (as at the date of this Settlement Deed)** matter, fact, action or inaction giving rise to any demand, liability, obligation, complaint, claim, counterclaim . . . however arising in whatever capacity and jurisdiction." (*Id.* § 1.1 (emphasis added).)

The crux of Beno's argument hinges on the purported "expansive definition of Liabilities." (Opp. at 5; MTD at 5.) But Beno elides that a "Liability" by its terms must concern

facts or conduct that "exist[ed] (as at the date of this Settlement Deed)," which became effective

on April 15, 2016.  (*See* Tabaksblat Decl., Ex. 1 at 2; *see also* MTD at 2 (misrepresenting

effective date of Settlement Deed as April 7, 2017).)[1]  Moussy's claims in the English

Proceedings arise from the unlawful transfer of Monline International's assets to Monline UK by

his uncle, Freddy, in August 2016, four months after the Settlement Deed was executed.  (*See*

Doc. 4-1 at 2-3, ¶ 10 (Decl. of Simon Goldring) ("[I]n or around August 2016, the provision of

the Parker Services was transferred, on the Applicant's case without consideration and as part of

an unlawful means conspiracy, to Monline UK.").)  Thus, to the extent the English Proceedings

concern a "matter, fact, action, or inaction" giving rise to a "demand," those matters did not exist

"as at the date of this Settlement Deed" and do not constitute a "Liability" within the scope of the

covenant.  *See Redel's Inc. v. Gen. Elec. Co.*, 498 F.2d 95, 98-99 (5th Cir. 1974) (holding

contract only barred claims as of execution date where release expressly limited to "liabilities . . .

as of the date of the execution of this agreement"); *Chigos v. Werner Co.*, 2014 WL 12596525, at

*5-6 (M.D. Fla. Feb. 26, 2014) (holding assumption of liability provision applied only to claims

existing at time of agreement because "a reasonable person would have understood 'products

liability claims . . . that exist immediately prior to the Closing' to encompass claims in which an

injury has already occurred").

  **B.**  **The Application Does Not "Relate To" any "Claims Against Beno."**

  Nor does the Application "relate to" any "claims against Beno."  (*See* Opp. at 6; MTD

at 6 (arguing Application is "in relation to" a "Claim").)  Per the Settlement Deed, "'Claims'

means: **in relation to claims against [] Beno** . . . any and all claims relating to any and all

---

[1] The version of the Settlement Deed appended to Beno's Opposition and Motion to Dismiss is unexecuted and undated.  The executed version dated April 15, 2016 is attached to the Declaration of Lauren Tabaksblat as Exhibit 1.

Liabilities arising from or related to or in connection with . . . any other matter arising out of or related to or connected with the relationships between the Parties." (Tabaksblat Decl., Ex. 1 § 1.1 (emphasis added).) Thus, "Claims" as defined in the Deed requires that there first be a "claim against Beno."

Where a contract contains a "circular definition" that defines a term by using that very term, courts look to dictionaries and common law for the "most commonly accepted definition." *Perkey v. Prudential Ins. Co. of Am.*, 1994 WL 652771, at *8-9 (M.D. Fla. Nov. 10, 1994) (finding contract's definition of "employee" circular and looking to Restatement and case law for commonly accepted definition); *see also Univ. of Fla. Rsch. Found. v. Motorola Mobility, LLC*, 3 F. Supp. 3d 1374, 1377-78 (S.D. Fla. 2014) (in patent action, holding definition of "wireless" as "wireless communication protocol[s]" circular and looking to dictionary definitions). Black's Law Dictionary defines "claim" as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional," or alternatively, as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." Black's Law Dictionary ("claim").

It is undisputed that Moussy has not brought any "claims against Beno" in the English Proceedings. Nor does the Application assert any such claims. Moussy does not assert any "right," make any "demand," or seek any "money," "property" or "equitable remedy" through this Application. He has not filed a "complaint." Rather, Moussy has applied to the Court requesting that it exercise its discretion to allow Moussy to take discovery from Beno to support his *actual* claims in the English Proceedings, which are against entirely different parties.

For these reasons, Moussy's Application is not barred by the Settlement Deed. Likewise, Beno's request for attorneys' fees and costs under the Deed is without merit. (*See* MTD at 6-7.)

11103470 v1

**II.      THE APPLICATION SATISFIES 28 U.S.C. § 1782.**

Beno does not dispute that the Application satisfies the statutory requirements of

28 U.S.C. § 1782.  (*See* Opp. at 6-10.)  Rather, he contends the Court should exercise its

discretion to deny the Application because the English Court purportedly "refused to allow

Applicant to obtain [the requested] information from the parties to the English Proceedings."

(*See id.* at 6.)  Beno is wrong both as a matter of fact and as a matter of law.

Moussy's discovery requests directly map onto the topics of party disclosure permitted by

the English Court.  The Subpoenas request information related to (i) Parker Services provided to

Morsgate and payments made or received for those services (Request No. 1); (ii) the creation and

ownership of Monline UK and Morsgate, Monline UK's operations, and the transfer of Monline

International's assets to Monline UK (Request Nos. 2-4, 9-12); (iii) the Morsgate services

agreement or any similar agreement (Request Nos. 5-8); and (iv) Monline UK's provision of

Parker Services to Gestcom Trading, the subsequent termination of those services, and the

provision of Parker Services today (Request Nos. 13-14, 16).  (*See* Doc. 1-2.)  That is exactly

what the English Court ordered for party disclosure.  (*See* Tabaksblat Decl. ¶ 9 (citing Goldring

Decl. ¶ 14(g) (Parker Services provided to Morsgate and payments made or received for those

services); ¶ 14(d), (f), (g), (h), (i) (transfer of Monline International's assets to Monline UK and

the control and operations of Monline UK and Morsgate); ¶ 14(g) (Morsgate agreement and

services provided under agreement); ¶ 14(h), (i) (Monline UK's provision of Parker Services to

entities other than Morsgate, the termination of those services, Monline UK's business and assets

today, and any subsequent transfers)).)

Even if the English Court *had* denied the categories of information sought through this

Application (it did not), that is irrelevant to whether the information is obtainable under

Section 1782.  The Supreme Court and courts in this Circuit have made clear time and again that

"nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 260 (2004); *see also In re Clerici*, 481 F.3d 1324, 1333 n.12 (11th Cir. 2007) ("§ 1782 does not impose a foreign-discoverability requirement."). Other courts around the nation are in accord. *See, e.g.*, *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011) (holding that "regardless of that [foreign] court's rulings on Chevron's request for documents, it would be a stretch to conclude that the section 1782 proceeding was an attempt to circumvent Ecuadorian restrictions" because "a court might offer limited discovery opportunities yet accept relevant evidence tendered to it if procured without its assistance").

Beno completely misunderstands the *Intel* Court's third discretionary factor, *i.e.*, whether the application attempts "to circumvent foreign proof-gathering restrictions." (*See* Opp. at 8). As this Court has held, "the question presented is not whether the [foreign] Court would order the requested discovery if it had jurisdiction over the [respondent]," but rather "whether there are [foreign] proof-gathering restrictions that are akin to privileges that would prohibit the acquisition or use of the items sought." *In re Bernal*, 2018 WL 6620085, at *8 (S.D. Fla. Dec. 18, 2018). Tellingly, Beno does not cite a single case suggesting otherwise, nor does he identify any English privileges that would prohibit the use of the requested materials. (*See* Opp. at 8.)

Beno further argues that the Application should be denied because "[t]here is no evidence that the English Court would be receptive to assistance from a US court in this matter, as the English Court has already determined that discovery concerning the African Business is not relevant to the claims at issue in the English Proceedings." (Opp. at 8-9.) Putting aside that the English Court has never rejected the Subpoena requests, Beno again misstates the law. It is

11103470 v1

8

Beno—not Moussy—who has the heavy burden of putting forth "authoritative proof . . . as embodied in a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *In re Bernal*, 2018 WL 6620085, at \*6.  Florida courts thus examine whether the foreign tribunal has affirmatively rejected the use of Section 1782 as a discovery tool, *not* whether the information requested will ultimately be admissible.  *See id.* at \*7 ("[E]ven if the [foreign] court ultimately rejects the discovery sought, there is discretion to admit the documents if they meet certain procedural requirements.").

Beno has not, and cannot, put forward such authoritative proof.  To the contrary, this Court has repeatedly found English courts to be receptive to U.S. discovery assistance.  *See, e.g.*, *In re Novoship (UK) Ltd.*, 2020 WL 3286308, at \*3 (S.D. Fla. June 18, 2020) ("[T]here is no indication that the courts of the United Kingdom would be unreceptive to American evidence and, in fact, § 1782 is routinely used to obtain evidence for proceedings in that country.").  Left with no authority to support his position, Beno refers to general principles of comity.  (*See* Opp. at 9.)  But as the Supreme Court has made clear, "[w]hile comity and parity concerns may be legitimate touchstones . . . they do not warrant construction of § 1782(a)'s text to include a generally applicable foreign-discoverability rule."  *Intel*, 542 U.S. at 243-244.

Finally, Beno contends the requests are "unduly intrusive or burdensome."  (Opp. at 9-10.)  As noted above, this Court should stay a determination of the scope of the Subpoenas pending a determination of the intervening UK proceedings.  However, Moussy's requests align directly with the scope of discovery ordered by the English Court.  In any event, courts assessing burden under Section 1782 apply FRCP 26 and not the scope of discovery available in the foreign proceeding.  *See Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).  Even if the Court

11103470 v1

9

finds the requests are overbroad, it should first consider whether the defect can be cured through

a more limited grant of discovery rather than denying the Application altogether. *See In re*

*Bernal*, 2018 WL 6620085, at \*9 (narrowing requests and denying remainder of motion to

quash).[2]

### III.    BENO IS NOT ENTITLED TO ATTORNEYS' FEES AND COSTS

Finally, Beno argues that he is entitled to attorneys' fees and costs under FRCP 41(d)

because Moussy filed these proceedings after dismissing his prior New York Section 1782

application.  (MTD at 7-12.)  This Court, however, has held time and again that Rule 41(d)

motions are premature and improper when brought before resolution of the instant action.  *See,*

*e.g.*, *4539 Pinetree LLC v. Certain Underwriters at Lloyd's London*, 2023 WL 4933149, at \*2

(S.D. Fla. July 18, 2023), *report and recommendation adopted*, 2023 WL 4931271 (S.D. Fla.

Aug. 2, 2023) (denying Rule 41(d) motion for fees because "the Court will be in the best position

to determine an award regarding the Defendant's attorneys' fees [under Rule 41] upon resolution

of the instant [action]."); *USA Ent. Grp., Inc. v. City of Pompano Beach*, 2019 WL 498743, at \*2

(S.D. Fla. Feb. 8, 2019) ("[T]he Court defers its ruling as to an award of attorneys' fees as it is

premature at this juncture.").  Beno's Motion should be denied for that reason alone.

Nor are attorneys' fees recoverable "costs" under Rule 41(d) for Section 1782

proceedings.  *See* Fed. R. Civ. P. 41(d) (permitting recovery of "costs" without mention of

"attorneys' fees").  Because parties must typically bear their own attorneys' fees under the

American Rule, Florida courts define "costs" to include fees "only when the underlying

substantive statute so defines 'costs.'"  *MSP Recovery Claims, Series LLC v. Northland Ins. Co.*,

---

[2] Although Moussy believes Subpoena Request No. 15 is neither overly broad nor unduly burdensome, in the interest of compromise, Moussy is willing to exclude this Request if the Court grants his Application.  (*See* Opp. at 9-10 (arguing Request No. 15 is "unduly intrusive or burdensome").)

11103470 v1

10

2021 WL 3410390, at *5 (S.D. Fla. Aug. 4, 2021).  Section 1782 says nothing about costs, let alone attorneys' fees.

Nor has Beno suffered any prejudice from the filing of these proceedings that would give rise to Rule 41(d) costs.  "By its terms, imposition of costs under Rule 41 is a decision vested in the discretion of the trial court," and prejudice is the primary consideration.  *USA Ent. Grp*, 2019 WL 498743, at *2.  "[I]n deciding whether to exercise its discretion to assess Rule 41(d) costs, the Court may consider [Applicant's] motivation in dismissing and then re-filing the action."  *Id.*; *see also Wolf v. Pacific Nat. Bank, N.A.*, 2010 WL 1462298, at *4 (S.D. Fla. Mar. 18, 2010) (noting "bad faith or abuse of the judicial process" are relevant to a Rule 41(d) determination). Moussy originally filed a Section 1782 application in the Eastern District of New York based on representations from Beno himself that he resided in Brooklyn.  (*See* Tabaksblat Decl. ¶ 3 & Ex. 1 (Settlement Deed listing Beno's address in Brooklyn), ¶ 4 & Ex. 2 (email from Beno to Moussy noting address in Brooklyn.)  Moussy decided to dismiss his New York application and refile before this Court only after Beno represented that he lived in Florida (contrary to the records stating otherwise) and expressly invited Moussy to submit a new application herein. (*See id.* ¶ 5 & Ex. 3 (Beno's Br. In Supp. of Mot. to Quash from EDNY proceedings) at 7 ("Movant can be served in the Southern District of Florida, which is certainly capable of resolving issues relating to the Application."), 8 ("[T]he relevant private interests clearly show that the Southern District of Florida would be a more convenient forum.").)  Moreover, Moussy informed Beno of his intent to file a new application in Florida before dismissing the New York proceedings.  (*See* Dkt. 16-2 at 3-4); *see also USA Ent. Grp.*, 2019 WL 498743, at *2 (finding plaintiff's failure to inform defendant that it intended to refile application relevant to prejudice determination).

11103470 v1

11

Moreover, at the time of the dismissal, Beno's work in the New York proceedings was minimal—he had filed only one eight-page motion to quash and three short declarations totaling six pages.  (*See* Tabaksblat Decl. ¶¶ 5-8 & Exs. 3-6); *see also USA Ent. Grp.*, 2019 WL 498743, at \*2 (finding prejudice where prior dismissal of "a heavily litigated case").  Additionally, a significant amount of that work is recycled in Beno's opposition to the instant proceedings with respect to his contention that the English Court previously rejected the requested discovery; none of those costs are recoverable.  (*See* Tabaksblat Decl. ¶ 5 & Ex. 3 at 4-6, ¶ 8 & Ex. 6); *Wolf*, 2010 WL 1462298, at \*4 (finding "much of the legal work reflected in the attorney billing statements submitted for the Court's consideration are clearly 'recyclable' and, therefore, not compensable").

In sum, the circumstances of Moussy's dismissal of the New York proceedings and filing of this Application are nothing like the cases where Florida courts assess Rule 41(d) costs.  His Motion should be denied.

## CONCLUSION

For the foregoing reasons, Moussy respectfully requests that the Court stay this proceeding pending resolution of the Intervening Action for the reasons set forth in his Motion to Stay.  Should the Court decline to stay, Moussy respectfully requests that the Court grant his Application and for such other and further relief as this Court deems just and proper.

11103470 v1

Dated: March 14, 2024

Respectfully submitted,

**FLASTER GREENBERG PC**
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
Tel: (561) 961-4508

*/s/ Meghan C. Moore*
**Meghan C. Moore, Esq**.
Florida Bar No. 668958
Meghan.moore@flastergreenberg.com

Lauren Tabaksblat, Esq.
(*pro hac vice* forthcoming)
Tyler D. Purinton
(*pro hac vice* forthcoming)
Brown Rudnick LLP
7 Times Square
New York, NY 10036
Tel: 212-209-4800
Fax: 212-209-4801
ltabaksblat@brownrudnick.com

*Counsel for Applicant Moussy Salem*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Meghan C. Moore*

11103470 v1

13