THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:  23-cv-23186-KMM

In Re Application of          )
                              )
MOUSSY SALEM,                 )
                              )
            Applicant,        )          July 8, 2024
                              )
For an Order to Take          )
Discovery Pursuant to 28      )
U.S.C. Section 1782 from      )
BENO SALEM,                   )
                              )          Pages 1 - 100
            Respondent.       )
_____/

MOTION TO DISMISS HEARING

Application for Judicial Assistance/Letter Rogatory
Motion to Stay

BEFORE THE HONORABLE MARTY FULGUEIRA ELFENBEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

Counsel on behalf of the Applicant:

                    FLASTER GREENBERG PC
                    2255 Glades Road
                    Suite 324A,
                    Boca Raton, FL 33431
                    BY:  NICOLE A. JOSEPHY, ESQ.

```
 1
     APPEARANCES CONTINUED:
 2
     Counsel on behalf of the Applicant:
 3
                         BROWN RUDNICK
 4                       7 Times Square, 47th Floor,
                         New York, NY  10036
 5                       BY:  LAUREN TABAKSBLAT, ESQ.
                         BY:  TYLER PURINTON, ESQ.
 6

 7

 8
     Counsel on behalf of the Respondent:
 9
                         STEPTOE LLP
10                       1330 Connecticut Avenue NW
                         Washington, DC 20036
11                       BY:  ELISE K. HAVERMAN, ESQ.

12

13                       STEPTOE LLP
                         1114 Avenue of the Americas
14                       6th Avenue, 35th Floor,
                         New York, NY  10036
15                       BY:  NATHANIEL KRITZER, ESQ.

16

17
     Transcribed By:
18
                         BONNIE JOY LEWIS, R.P.R.
19                       7001 SW 13 Street
                         Pembroke Pines, FL  33023
20                       954-985-8875
                         caselawreporting@gmail.com
21

22

23

24

25
```

```
 1                (Thereupon, the following proceeding was held:)
 2           THE COURTROOM DEPUTY:  All rise.
 3                The United States District Court for the Southern
 4    District of Florida is now in session.  The Honorable Marty
 5    Elfenbein presiding.
 6           THE COURT:  All right.  Good morning, everyone.
 7                Please be seated.  I hope everyone had a good holiday
 8    weekend.  Give me just a minute.  I am going to get into the
 9    computer before we get started.
10                All right.  Go ahead and call the case, please.
11           THE COURTROOM DEPUTY:  Yes, Judge.
12                Calling Case 23-cv-23168-Moore; Moussy Salem.
13                Counsel, please state your name for the record
14    beginning with the Plaintiff.
15           MS. JOSEPHY:  Nicole Josephy on behalf of the
16    Plaintiff.
17           MS. TABAKSBLAT:  Good morning, Your Honor.
18                Lauren Tabaksblat from Brown Rudnick on behalf of the
19    Applicant and with me today is my colleague Tyler Purinton.
20           THE COURT:  Okay.  Good morning, everyone.
21                Before we get appearances from the Defense, Miss
22    Josephy, you said you are here on behalf of the Plaintiff or
23    you are here on behalf of the Applicant?
24           MS. JOSEPHY:  The Applicant.
25           THE COURT:  Okay.  All right.  That is what I wanted
```

1  to make sure.  So all of you are here on behalf of the

2  Applicant Mr. Moussy Salem.

3         Can you pronounce that for me?  How do I say his name

4  again?

5         MS. JOSEPHY:  We were having a discussion, but his

6  first name is Moussy and we believe correct pronunciation of

7  the last name is Salem.

8         THE COURT:  Salem.  Okay.  Great.

9         All right.  Let me get appearances from the Defense.

10        MS. HAVERMAN:  Hi.  Elise Haverman of Steptoe on

11  behalf of the Respondent Beno Salem.

12        THE COURT:  All right.  Good morning.

13        MR. KRITZER:  Good morning, Your Honor.  Nate Kritzer

14  from Steptoe on behalf of Beno Salem.

15        THE COURT:  All right.  Good morning, everyone.

16        We are here this morning on various matters, but they

17  all arise from the application for assistance in aid of foreign

18  proceeding pursuant to 28 USC, Section 1782, filed at Docket

19  Entry 1.

20        In preparation for today's hearing and I reviewed not

21  just the application, but the memo of law that was at Docket

22  Entry number 4.

23        Mr. Beno Salem's opposition to that application,

24  Docket Entry 29.  As well as the motion to dismiss and motion

25  to stay that Mr. Beno Salem filed at Docket Entry 30.

1           Along with the corresponding consolidated brief that
2    was filed at Docket Entry 42 as well as Mr. Beno Salem's reply.
3           Following that, also in connection with setting this
4    hearing, requested some additional documents from the parties.
5    We had questions based on the submissions.  So thank you.  I
6    appreciate that the parties did submit.
7           I did have an opportunity to review the parties'
8    respective notices of filings that were submitted on July 1st
9    along with corresponding declarations that were attached.  And
10   I also saw that you all provided the case law as well with your
11   submissions.
12          So I have had an opportunity to review pretty much the
13   entire record.  I do have questions for the parties, but I want
14   to give the parties an opportunity to go ahead and argue their
15   respective positions.  And I will go ahead and I will just, you
16   know, ask questions as they come up.  I will ask you some of
17   the questions that I have about the case.
18          Being that this is Mr. Beno Salem's motion, and he
19   carries the burden in this case, I am going to have Defense
20   counsel start first.
21          MR. KRITZER:  Thank you, Your Honor.
22          And I have handed up a presentation that hopefully
23   will be helpful just in walking through some of the necessary
24   definitions in the contract and the like.
25          THE COURT:  Yes, I have a copy of it.

1          Does Mr. Moussy Salem's counsel also have a copy of

2     this presentation?

3          MR. KRITZER:  Yes.

4          THE COURT:  Wonderful.  You may proceed.

5          MR. KRITZER:  So, Your Honor, to summarize our

6     argument on the motion that we filed -- and actually this is

7     also in opposition because there are various interlacing

8     factors.

9          Our primary argument is that the case should be

10    dismissed because it violates a settlement agreement.  We also

11    ask that request is not granted.  That fees be awarded for the

12    double filing under Rule 41 and the case be stayed until they

13    are paid.

14         And finally, that the petition should be denied

15    because it is seeking discovery that was denied in the UK

16    proceedings.  So if Your Honor is okay with it, I will take the

17    arguments in that order.

18         THE COURT:  That's fine by me.

19         MR. KRITZER:  So the first argument is that this

20    proceeding violates the covenant not to sue.  And I think that

21    the record is clear that there has been a long-running ongoing

22    series of disputes among these family members.

23         There was a settlement agreement that was entered into

24    on April 16th of 2016 that broadly resolved a wide range of

25    matters that also included a broad covenant not to sue.

1        THE COURT:  So I want to make sure because there were

2  some discrepancies in the record from the briefing on the

3  Defense side as far as when that agreement went into effect.

4        Is everyone and is the Defense in agreement that this

5  settlement deed went into effect on April 16th of 2016?

6        MR. KRITZER:  Yes, that's the date.

7        THE COURT:  Okay.

8        MR. KRITZER:  So that's the date of the settlement.

9        So within that settlement deed there was a covenant

10  not to sue at Section 5.1.  That is on the language of that on

11  slide 3 of the presentation that I handed up and just excerpted

12  it.  The claimants in Robert, I don't think there is any

13  dispute here that Moussy Salem falls within the definition of

14  claimants.

15        Each reviewed it will not bring any proceedings and I

16  think it is not really disputed that this is a proceeding.

17  Proceeding is defined very broadly.  In England or Wales or in

18  any other jurisdiction and this is any other jurisdiction

19  against a Defendant release party.

20        Here Beno Salem is within the definition of the

21  Defendant release party.  In relation to any claims or

22  otherwise asserted claim against a Defendant release party.

23        So the real dispute here boils down to whether this is

24  a claim.  And I want to direct Your Honor to some of the

25  definitions that lay that out because they are quite a bit

1 broader than is suggested in the declaration of Mr. Goldring.

2 And as set out in the declaration of Mr. Marsh, our UK

3 counsel, the task of the U.S. Court is very similar to that of

4 the UK court in terms of interpreting the contract. The goal

5 is to discern the objective meaning and that is in the *Wood v.*

6 *Capita* case that was cited by Mr. Marsh's affidavit.

7 So a claim -- this is slide 5 -- refers to any and all

8 claims relating to any and all liabilities arising from, or

9 related to, or in connection with -- and we're really looking

10 at number 3:

11 Any other matter arising out of or related to or

12 connected with the relationships between the parties, but only

13 in the cases of one, two, and three insofar as those

14 liabilities relate to the African business or SSF.

15 SSF is not really an issue. It is really the African

16 business, which is broadly defined again to include not only

17 the businesses, but any kind of profits or revenues derived

18 therefrom.

19 So now what the argument is on the Petitioner's side

20 is that this is not a claim because there were events that

21 relate to that claim that occurred after the settlement deed

22 and that is incorrect for two reasons. The argument fails for

23 two reasons.

24 First of all, as set out in the affidavit of Mr. Marsh

25 and in our amended defense in the matter, the position is that

1    the Petitioner that there was a conspiracy that took place

2    starting on March 30th that the deprived --

3            THE COURT:  Of what year?

4            MR. KRITZER:  Of 2016.  So March 30th and that is

5    before April 15th that deprived the Petitioner of his rights of

6    management and to receive profits in the African business.

7            THE COURT:  And when you are telling me that the

8    conspiracy took place starting March 30th of 2016, what is that

9    date based on?

10           MR. KRITZER:  That date is based on the pleadings in

11   the matter.  The particulars of claim that allege --

12           THE COURT:  In the English proceedings.

13           MR. KRITZER:  What's that?  I'm sorry.

14           THE COURT:  In the English proceedings.

15           MR. KRITZER:  In the English proceedings, yes.

16           So the particulars of claims -- so let me back up just

17   a little bit.  So in the particulars of claims what they are

18   really saying is that there was this longstanding relationship

19   between a company called Parker Services and Morsgate.

20           And that on March 30th of 2016 there was an expression

21   -- I don't know if it would be an agreement or just a statement

22   that the Parker Services contract would be given to an entity

23   called Monline International.

24           And now the claim is that Monline International now as

25   of that date, March 30th -- and this is very important -- had

1  the right -- they are alleging had the right to do the Parker

2  Services and to be paid for the Parker Services.

3           And then they are alleging that on a later date, as

4  part of the conspiracy that started on that date, on a later

5  date it was transferred to -- their contract was signed with

6  Monline UK, which is another entity and allegedly this right

7  was improperly transferred to Monline UK.

8           THE COURT:  When is the later date?

9           MR. KRITZER:  I believe it is August of 2016.

10          And this is laid out on slide 6.  We have excerpted

11 some of this and how this actually relates to the allegations

12 in this petition.

13          But the most important point in addition to this is

14 that -- first of all, claims are not limited to fully accrued

15 claims.  Claims under the definitions include accrued or

16 unaccrued claims.

17          Also, under liability -- this is the definition from

18 liability.  So slide 7.  Liability is not limited to a claim.

19 Liability and liabilities means any and all liabilities in

20 respect of any existing as of the date of the settlement deed;

21          Matter, fact, action or inaction giving rise to any

22 demand, liability, obligation, complaint, counterclaim,

23 right-off, setoff, right to indemnity, right of contribution,

24 cause of action, administrative or regulatory claim, or

25 infraction petition, right or interest of any kind or nature

1    whatsoever, whether in law or equity, indirect or direct, joint

2    or several, foreseen or unforeseen, contingent or actual,

3    accrued or unaccrued, liquidated or unliquidated... howsoever

4    arising in whatever capacity and jurisdiction.

5          THE COURT:  So why would any facts that took place

6    after April 15, 2016 not fall within the scope of this

7    settlement deed?

8          MR. KRITZER:  Because the matters that are at issue in

9    the underlying UK case, in the Petitioner's allegations are

10   credited are concern, facts, and liabilities, and matters and

11   actions and inactions that supposedly give rise to claims that

12   occurred before April 15th of 2016.

13          So this is the central --

14          THE COURT:  Do they only have a conspiracy claim

15   because I understood that it was more than a conspiracy claim

16   that they had causes of action that were directly related to

17   the transfer that happened in August of 2016.

18          MR. KRITZER:  Conspiracy was one of their claims.

19          THE COURT:  What about the other ones?

20          MR. KRITZER:  The other ones I think is, you know,

21   essentially the equivalent as I understand it of a fraudulent

22   transfer claim.

23          THE COURT:  And when would that fraudulent transfer

24   have taken place?

25          MR. KRITZER:  I think as alleged the transfer was

1  something that occurred in August of 2016.

2          THE COURT:  So how would that be covered by the scope

3  of this?

4          MR. KRITZER:  Because they are bringing claims and

5  they are seeking discovery based on allegations about

6  liabilities and rights that existed as of March 30th of 2016

7  and that they gave rise to a claim whether that was accrued or

8  unaccrued.

9          THE COURT:  How would they have foreseen a fraudulent

10  transfer, an alleged fraudulent transfer that would have

11  happened four months after the --

12          MR. KRITZER:  I'm sorry?

13          THE COURT:  How would they have foreseen an alleged

14  fraudulent transfer in April of 2016 that did not happen until

15  August of 2016?

16          MR. KRITZER:  Well, I think under the definition of

17  liabilities and claims it includes foreseen or unforeseen.

18          THE COURT:  Where?

19          MR. KRITZER:  This is on Page 7 of our slide.

20          THE COURT:  Right.  I am on that slide.

21          MR. KRITZER:  So if you look Monline 1, 2, 3, 4, 5, 6,

22  7, foreseen or unforeseen.

23          So there is not a requirement that something be

24  foreseen.  This is a --

25          THE COURT:  But this isn't foreseen.

1          Okay.  Maybe my question was not foreseeability, but

2    these are acts that have not yet taken place.  A fraudulent

3    transfer that happens in August of 2016, I don't read this as

4    being you are released for all actions that are taken from now

5    until forever the end of time.  You have to read in the

6    language that says in parentheses as of the date of this

7    settlement deed.

8          So whether or not they could have -- I don't know how

9    to reconcile this language.  You are pointing to foreseen or

10   unforeseen.  From what you just told me there is at least one

11   claim that has to do with a fraudulent transfer claim that

12   occurred in August of 2016.

13         So I don't understand how the fault in the liability

14   clause just because it says foreseen or unforeseen.  You are

15   going to have to explain it to me.

16         MR. KRITZER:  Okay.  So going back to the definition

17   of claim, right?  So this is on slide 5.

18         A claim is any and all claims arising from or related

19   to or in connection with number 3 any other matter arising out

20   of or related to or in connection with the relationships

21   between the parties.

22         And then insofar as liabilities relate to the African

23   business.  So that is a definition of claim.

24         So the temporal limit here is on liabilities, right?

25   So the liability to be a claim there must be a liability that

1   is in respect of any existing matter, fact, action or inaction

2   giving rise to... so there are facts.

3          Our position is that there are facts.  There are

4   actions and inactions that are being alleged here.  The due

5   pre-date April 15th of 2016.  It doesn't say the whole action

6   has to have accrued.  It doesn't say the whole action has to

7   have arisen.  It is very broadly written.  Any liabilities in

8   respect of any existing --

9          THE COURT:  Hold on.  If there is a claim that has to

10  do with a specific fraudulent transfer that occurred on a date

11  certain -- and I need you guys to help me because I don't know

12  exactly what the claims are in these English proceedings.  That

13  if there is a specific claim that relates to -- let's forget

14  about the conspiracy for a second.

15          MR. KRITZER:  Okay.

16          THE COURT:  The fraudulent transfer, is it a claim

17  that says that on this date there is a fraudulent transfer on

18  August of 2016?  And is it limited to the transfer that

19  occurred on that date?  Is that one of the claims?

20          MR. KRITZER:  Well, the liability, the issue, the

21  thing that it is claiming was transferred was this supposed

22  right that existed on March 30th of 2016.

23          So it still comes back to and is rooted in something

24  that is an alleged liability that they claim existed as of

25  March 30th of 2016.  Any way you look at it because that's all

1  they are claiming.  They are claiming the value of these, quote

2  unquote, Parker Services if you go through the particular

3  claims.  Everything is about the value of these Parker

4  Services.  The Parker Services were performed by Parker under a

5  contract for a number of years.

6     They allege that on March 30th of 2016 -- and this is

7  the whole thing in the claim that this is something that they

8  were given this right as of that date.

9     Now we deny that.  That is in dispute whether that is

10  actually a liability that happened on that date and the whole

11  case is in respect of that liability.  That is the liability.

12  That is the alleged right that they claim was fraudulently

13  transferred.  It existed on March 30th of 2016.  The claim is

14  in respect of that liability.  That right and that is why

15  there's a claim.

16     THE COURT:  But it does not seem right.

17     You just cashed in terms of them having a right that

18  existed on March of 2016 -- well, March 30th of 2016, but I

19  think we are talking about the date of the contract, which is

20  April 15th of 2016.  It says here:

21     "Liability and liabilities means any and all

22  liabilities in respect of any existing as of the date of the

23  settlement deed matter of fact action or inaction."  It does

24  not say right.

25     MR. KRITZER:  Giving rise to any...right or interest

1   of any kind or nature whatsoever.

2          So to walk through it, the fact or action that

3   occurred and that happened before was the March 30th statement

4   to Monline International allegedly that they would have the

5   right to do the Parker Services.

6          That allegedly gave a right or interest of any kind or

7   nature whatsoever that existed.  And again, it can be any -- it

8   can be contingent or actual, or accrued or unaccrued,

9   liquidated or unliquidated.  All sorts of broad expanders on

10  that.

11         THE COURT:  So I want to make sure I understand.

12         So your position is that because they had a right in

13  that agreement on March 30th of 2016 and that pre-dated the

14  settlement deed on -- which was executed on April 15th of 2016

15  anything having to do with that right or interest that they

16  have in that contract is going to be subsumed within the term

17  liabilities.

18         MR. KRITZER:  Correct.  And the important thing to

19  understand here is this is not --

20         THE COURT:  The reason I am having difficulty with

21  your argument is I don't think any of this was particularly

22  briefed.  So this is my first time hearing it and I am

23  processing the information.

24         MR. KRITZER:  Understood, Your Honor.

25         And the thing to understand is that this is not a

1  settlement of like a one-off thing like a personal injury

2  matter, or even like just two businesses.  It is an ongoing

3  long complex dispute between family members in this complex

4  trust structure where one side had alleged that there was a

5  partnership and that was ultimately agreed to not be the case

6  and now they are trying to really dispose to the greatest

7  extent possible of further litigation over any kind of

8  businesses, rights, you know, issues that exist as of that date

9  and wrap them up in the settlement agreement so there is a

10 process.

11       So they are not just suing each other all over the

12 world like it is happening now.

13       THE COURT:  Okay.

14       MR. KRITZER:  So that's the concept and that's why it

15 is written so broadly.

16       THE COURT:  Okay.  What other claims do they have in

17 the English proceeding that is beyond conspiracy in the

18 fraudulent transfer on August 20th of 2016?

19       MR. KRITZER:  As I understand it, those are the two

20 claims in the Monline proceeding.  So there are some statements

21 which are -- if you look at the particulars of claim in the

22 answers I think are not accurate by Mr. Goldring in the

23 initiating papers.  That this is also about some broader point

24 about the distribution of profits in the African business.

25       I don't think that is part of the Monline proceeding.

1    I also think that candidly if that was part of the Monline

2    proceeding, that would make our argument on the settlement

3    agreement tremendously easy because they are talking about

4    going back to 2013.  If you are talking about that that is dead

5    on captured within the settlement proceeding, but I don't

6    understand that to be what is actually being alleged in the

7    Monline case.

8             I believe, to my understanding, it is a conspiracy

9    claim and effectively a fraudulent transfer claim.  And I think

10   I am doing my best to translate from, you know, English/English

11   into U.S. English.

12             THE COURT:  Where do I get a right of their

13   proceedings.

14             MR. KRITZER:  Yes.

15             THE COURT:  Their pleadings are different and here we

16   are as American lawyers trying to interpret other pleadings in

17   another jurisdiction.  So I appreciate your doing the best that

18   you can.

19             So, as far as you understand, there are no other

20   claims that are the subject of the English proceedings that we

21   need to discuss in relation to --

22             MR. KRITZER:  As far as I understand, if counsel wants

23   to correct me, you know, I am sure she will.  And I would just

24   ask that I have a chance to speak to that if there is an

25   opportunity for rebuttal.

```
 1              THE COURT:  You are the moving party.  You will get
 2   the last word.
 3              MR. KRITZER:  Thank you, Your Honor.
 4              So that is our argument under the settlement
 5   agreement.
 6              THE COURT:  Okay.
 7              MR. KRITZER:  And now Your Honor had also asked us --
 8              THE COURT:  I have some other questions before you
 9   move on.
10              MR. KRITZER:  Okay.
11              THE COURT:  So if I am looking at -- this is part of
12   the struggle that I have trying to figure out where does this
13   fall in my 1782 analysis?
14              MR. KRITZER:  And I appreciate Your Honor -- first of
15   all, thank you for the questions being posed to us before this
16   hearing.  That is always tremendously helpful to us as counsel
17   and I did see that question.
18              Of course Intel was not dealing with the settlement
19   agreement and I don't think either party has found or cited to
20   a 1782 case that had this kind of broad covenant not to sue
21   where someone then brought a 1782.
22              So I think that the most straightforward answer is it
23   is not really clearly addressed.  At least not on point in
24   Intel.  I do think that Intel meant to sculpt the factors
25   broadly because they couldn't foresee everything that would
```

1   come.

2          And I would say if you were going to analyze it under

3   an Intel factor, you would look at factor two, which allows the

4   Court to look at the character of the proceedings under way

5   abroad, right?

6          So is this an overall context of this matter, you

7   know, and this is what we are talking about.  Is the Monline

8   case a claim within this settlement agreement, right?

9          So that goes to the character of the proceedings under

10  way abroad.  But Intel, of course, was talking about 1782

11  against kind of a -- call it a blank slate, right?  There was

12  no settlement agreement there.

13         Where there is a settlement agreement there is a

14  strong policy, of course, in this Court to enforce settlement

15  agreements because as much as we all love to litigate, some day

16  litigation has to end and the only way it ends is if settlement

17  agreements are enforced.

18         THE COURT:  But does it go to a question of

19  jurisdiction or what exactly does it go to?

20         MR. KRITZER:  I do think it goes to the question of

21  jurisdiction.  So we filed our motion ultimately under Rule

22  12(b)(1).

23         Courts in this district have held that an

24  unconditional covenant not to sue divest the Court of

25  jurisdiction and the case should be dismissed under 12(b)(1),

1    which I think is a useful way of looking at it.

2          I mean, I think that this is one of those challenges

3    that are, you know, our Federal Rules sometimes don't perfectly

4    anticipate every possible scenario, right?

5          So where you have a scenario where there is a covenant

6    not to sue and somebody brings a claim or brings a 1782

7    petition, even in a traditional case, a 12(b)(6) motion won't

8    necessarily be of any use to you because the Court can't go

9    beyond the pleadings.

10          On 12(b)(1) the Court can look beyond the pleadings to

11   determine whether it has and has a duty to determine whether it

12   has subject matter jurisdiction.

13          So we have cited in our briefing and also provided

14   with our notice of filing the patent licensing *Investment Co.*

15   *V. Green Jet* case.

16          I think we cited another case as well where it held

17   where there is an unconditional covenant not to sue that

18   divests the Court of subject matter jurisdiction and the case

19   should be dismissed.

20          THE COURT:  Okay.  So is it your position that in

21   analyzing the settlement agreement really this should be a

22   matter of whether the Court has jurisdiction in the first

23   instance, as opposed to under 12(b)(1), as opposed to whether

24   or not this should be considered under the Intel factors?

25          MR. KRITZER:  Yes.  We put forward an argument that

1  could also be considered under the Intel factors in our

2  opposition, of course.

3         And I will, just in all candor, the Intel factors

4  don't really necessarily contemplate this.  It wasn't in front

5  of the Court there.  Neither side has cited a case because I

6  think it hasn't really been litigated before.  Does a covenant

7  not to sue that covers this kind of proceeding, like, how do

8  you enforce that?

9         It only makes sense, though, that it couldn't be some,

10  you know, wormhole in the universe of federal practice, right?

11  You wouldn't want a world where 1782 is somehow something you

12  could never settle away.  You can always bring it regardless of

13  whether you have a covenant not to sue in a settlement

14  agreement.  That would not make a lot of sense.

15         So again, yes, our position is consistent with

16  precedence in this district under Rule 12(b)(1) where there is

17  a valid unconditional covenant not to sue, as there is here,

18  the Court should dismiss for lack of subject matter

19  jurisdiction.

20         THE COURT:  Okay.  All right.  Before you turn to your

21  other argument there are some other questions that I wanted to

22  ask you.

23         MR. KRITZER:  Sure.  Of course.

24         THE COURT:  So I want to ask, I had another question

25  that I had posed in my order.  And then, I think the affidavit

```
 1   of Nicholas Marsh addressed it and I had some difficulty

 2   reconciling it.  It is the question regarding the forum

 3   selection clause.

 4          MR. KRITZER:  Right.

 5          THE COURT:  And at Paragraph 11 he opines that the

 6   English Court would respect any order that this Court makes on

 7   Salem's motion to quash when discussing the forum selection

 8   clause.

 9          But I had a little bit of difficulty reconciling it

10   with Paragraph 20, which says that pursuant to what I have said

11   previously in the affidavit, in light of the forum selection

12   clause, in my opinion the English Court will likely consider

13   that it has exclusive jurisdiction to determine this question.

14   The question being whether or not the Monline claims existed as

15   of the date of the settlement agreement.

16          So I guess I am not understanding how forum selection

17   works in England and why the Court in England would not be of

18   the view that I could decide under the contract one issue and

19   not another.

20          MR. KRITZER:  So I think ultimately the reference --

21   sorry.  Give me one moment.

22          Yes.  So, I mean, I think that the point that is being

23   made between that and then going through Paragraphs 9 through

24   11, which talk about what types of remedies and proceedings are

25   available in England when there is an exclusive jurisdiction
```

1  clause.

2         Mr. Marsh's opinion is that there could be a

3  proceeding to bring an anti-suit injunction, but that

4  proceeding is personal in nature and nobody has brought such a

5  proceeding.

6         So the courts in England don't prevent other courts,

7  foreign courts, from deciding issues even when there is an

8  exclusive jurisdiction clause.

9         And you know, we run into this issue when someone, you

10  know, brings a proceeding that implicates a contract with a

11  jurisdiction clause outside of that jurisdiction, right?

12         So, then, we have to come forward as a party who we

13  are saying we are not supposed to be here.  Here we would say

14  the exclusive jurisdiction for this proceeding pursuant to the

15  covenant not to sue is no jurisdiction because you are not

16  allowed to bring it in England, Wales, or any other

17  jurisdiction that, you know, we have to file -- we have to

18  bring a motion to dismiss in this case violation to the

19  covenant not to sue and some other cases it might be violation

20  of the exclusive jurisdiction clause.

21         And the Court, you know, notwithstanding that has to

22  interpret the agreement and I think what Mr. Marsh is saying

23  here is that is okay.

24         The English Court is not going to say, you know, even

25  though we have jurisdictions over this the other Court does

1  not, or even though the contract says exclusive jurisdiction

2  the other court cannot rule on this because it is not --

3        THE COURT:  It is not before that court.

4        MR. KRITZER:  Because it is not before that court,

5  correct.

6        THE COURT:  And I get that, but my question is what I

7  couldn't reconcile when I get to Paragraph 20 and then he said

8  pursuant to what I previously said in this affidavit, in light

9  of the forum selection clause, in my opinion the English Court

10  will likely consider that it has exclusive jurisdiction to

11  determine this question.  And the question is whether or not

12  the Monline claims existed as of the date of the settlement

13  agreement.

14        So is it Mr. Beno Salem's position that I cannot

15  decide the issue of whether the Monline claims existed as of

16  the date of the settlement agreement or is it just that -- I

17  guess I can't reconcile that language.  I don't understand what

18  that means if the English Court has exclusive jurisdiction to

19  decide that issue.

20        MR. KRITZER:  So, again, I think it would -- so two

21  things to answer both of your questions because you first asked

22  what is our position about whether the Court can decide whether

23  those claims existed.

24        I think in this context it can.  I don't think that,

25  you know, it is -- yeah, I think this Court cannot within the

1  meaning of that clause.

2        I also think that the Court, while it may or may not

3  find that -- I don't expect the English Court would find that

4  ruling to be binding I guess I would say.  It wouldn't say,

5  okay, because the Court determined this, you know, we are now

6  bound by it because we have -- you know, there is an exclusive

7  jurisdiction clause that says any dispute, you know, must be

8  brought in the courts of England.

9        However, it would not be put off, or offended, or it

10  wouldn't violate comity.  It wouldn't cause any issue from the

11  issue English court's perspective for this Court to rule on

12  that issue and there is nothing contrary in the opposing

13  affidavit.

14        Nothing in Mr. Goldring's affidavit says, you know,

15  Judge, you can't decide this because the English Court will

16  stop it or would be, you know, offended by it, or would offend

17  comity.

18        I don't think that is the case.  I mean, like

19  sometimes from the comity standpoint we get in that position

20  where it is a little bit like two people on an elevator and it

21  is like who is going to go first, right?

22        And here it is okay for this Court to rule.  It has

23  the issue in front of it.  In our opinion it should not because

24  there is a covenant not to sue.  So it should not have been

25  brought here or anywhere else.

1          However, this case having been brought and us needing

2     to defend it, the Court can decide that question.

3          THE COURT:  Okay.  And that is the discrepancy that I

4     needed you to clarify because I read this and I thought to

5     myself, well, so does this mean that you are taking the

6     position that I cannot decide this issue.

7          And I do not know how one can analyze the word

8     liabilities without figuring out this exact issue as to whether

9     or not the Monline claims existed as of the date of the

10    settlement agreement.

11         MR. KRITZER:  I understand, Your Honor.

12         It is really just a matter of, you know, whether the

13    English Court would still be able to decide the issue itself.

14         You know, it is not -- any ruling by this Court would

15    be good for this proceeding.  I don't think it would

16    necessarily be exclusive in England because that court has

17    jurisdiction over the issue.

18         THE COURT:  And I don't know what the law would be in

19    England at all on that.  Nor am I trying to decide (inaudible),

20    but I have to decide the issues that are in front of me.

21         MR. KRITZER:  Understood.

22         THE COURT:  So as long as we are on the same page, you

23    are telling me that your position is not that I cannot decide

24    the issue.

25         You are telling me that you interpret the forum

1   selection clause, or your client's position is that the forum

2   selection clause does not prevent me from deciding the issue of

3   whether or not the Monline claims existed as of the date of the

4   settlement deed.

5           MR. KRITZER:  Correct.  For purposes of this

6   proceeding that we have right here, correct.

7           THE COURT:  Understood.

8           Okay.  All right.  So go ahead and if you want to turn

9   to your next argument, which I think I interrupted you from

10  doing, which I think might have been the fees issue or was it

11  the comity issue?

12          MR. KRITZER:  Yes, it is the Rule 41 issue.

13          THE COURT:  Okay.

14          MR. KRITZER:  I think just in terms of the order of

15  proof, the next issue would be whether those should be an order

16  requiring attorney fees and whether there should be a stay

17  until those fees are paid.

18          So there is a three-part test that Judge Bloom set

19  forth in Monterey at Malibu Bay Condo Association, which is one

20  case that you cited of many that laid this out.

21          The first question is whether the Plaintiff dismissed

22  a previous action under Rule 41.  That is undisputed.  The

23  Plaintiffs dismissed the Eastern District of New York action

24  under Rule 41.

25          Then did the Plaintiff commence a second action based

1  on or including the same claim against the same Defendants?

2  And here the test is whether it is the same nucleus of

3  operative facts.

4          It also is broad.  It doesn't have to be entirely

5  overlapping.  If it just includes the same claim it is the same

6  proceeding for purposes of 41(d) and many of the questions are

7  the same here.  The matter concerns the same underlying case.

8  It is absolutely the same nucleus of operative facts.

9          And then, finally, the question of whether the

10  Defendant incurred costs in the prior action will not be useful

11  in the newly filed litigation and we moved to dismiss the case

12  in the EDNY for lack of jurisdiction.  That work won't be

13  useful in that case.

14          We cited a number of cases where this similar type of

15  situation has been posed where someone filed in one

16  jurisdiction voluntarily dismissed after a motion to dismiss

17  for lack of jurisdiction filed in another.

18          And the Court found it awarding fees was appropriate

19  because, of course, arguing you are not subject of the

20  jurisdiction of a court you are no longer in is not useful in

21  the new court.

22          So there is no showing of bad faith that is required.

23  There are certainly cases that talk about these kinds of filing

24  in one place and filing in another as being, you know,

25  potentially vexatious or what have you that could warrant fees,

```
 1   but I don't think the Court has to necessarily reach that

 2   point.

 3          There is no showing of bad faith that is required.  It

 4   is really focusing on prejudice to the Defendant that my client

 5   had to expend legal fees to deal with a proceeding that was

 6   brought in the wrong jurisdiction and that fees are appropriate

 7   for that.

 8          So the primary -- sorry.

 9          THE COURT:  Is there a motion that is premature at

10   this time?

11          MR. KRITZER:  No.

12          THE COURT:  What is the order in which you think I

13   need to address these issues?

14          MR. KRITZER:  So the issue of fees can be addressed

15   now because the question of jurisdiction is the point on which

16   we are seeking fees.

17          So, you know, we have requested if the Court finds

18   fees is appropriate that we will put in time sheets and other

19   evidence that shows the fees incurred which is standard

20   practice.  I think all the cases have been decided or most of

21   them at least proceed in that order.

22          And then, 41(d) does allow the Court to stay the case

23   until those fees are paid.  And here the fact that Moussy

24   Salem, you know, he is not in Florida.  He is not in the United

25   States.  He is in the UK, we would ask for a stay to ensure
```

1  that those fees are paid timely before the rest of the case

2  goes forward.

3        THE COURT:  Okay.  All right.  I don't have any

4  further questions.

5        MR. KRITZER:  Okay.

6        THE COURT:  I think this is a straightforward legal

7  issue.

8        MR. KRITZER:  Okay.  Thank you, Your Honor.

9         So, finally, we are asking that if the Court reaches

10  the petition itself today, as opposed to our motion to dismiss,

11  that the petition be denied because ultimately the petitioners

12  are seeking discovery that was not permitted in the UK

13  proceeding.

14         And we have submitted the transcript of that

15  proceeding and the UK court, we've included a quote on Page 9

16  that the Court was not going to direct issue 9(a) to 9(e) to be

17  part of the issues for disclosure and that they are not

18  relevant to the proceedings.  That is the reason.  Just

19  relevance.

20        THE COURT:  And are you raising this under the Intel

21  factor number 2?  Which one are you raising this one under?

22        MR. KRITZER:  It is the factor governing -- and I am

23  not remembering the number, but foreign proof gathering

24  requirements.

25         So the case *In Re Bernal*, which has been cited in the

1  briefing under proof gathering restrictions prong stated that a

2  perception that an applicant has sidestepped less than

3  favorable discovery rulings by resorting immediately to Section

4  1782 can be a factor in a Court's analysis and that the Section

5  1782 applicant's conduct in the foreign proceeding is not

6  irrelevant.

7       So you could look to the conduct in the foreign

8  proceeding.  You could look to the rulings in that foreign

9  proceeding which only makes sense.  I mean, again, this is a

10 unique case.

11      There are not a lot of cases where you have an actual

12 discovery ruling in a foreign jurisdiction and then someone

13 comes over here and seeks something on the same topic that was

14 denied.

15      That is because a lot of the cases under 1782 deal

16 with jurisdictions like Germany where very little discovery is

17 allowed.  And this is a UK case that has been going for a while

18 and there have been discovery rulings, but I do think it fits

19 under the foreign proof gathering restrictions factor.

20      THE COURT:  But I thought there was case law that

21 Moussy Salem's attorneys had cited to that suggested that in a

22 1782 proceeding we have to confine ourselves or try to -- I

23 guess we don't have to guess because we know, but I think the

24 case law suggested we don't have to guess what a foreign court

25 would allow or disallow in discovery, but we are to look at

 1   through a different lens here under 1782 and take a broader

 2   approach.

 3        MR. KRITZER:  So there are a couple of principles that

 4   I think that, again, these have been written against what I

 5   would call a blank slate.  Not in a situation where there was

 6   actually a ruling, a discovery ruling, on point in a foreign

 7   proceeding.

 8        And a couple of those principles are that you don't

 9   have to exhaust your discovery in the foreign proceeding.  That

10   is not really the issue that we are raising here.

11        In other cases people have raised the argument that

12   the foreign jurisdiction would not be receptive to 1782 at all.

13   That they wouldn't like U.S. courts, you know, interfering with

14   the whole system.

15        And that is really under the receptivity factor which

16   is a separate factor under Intel where courts have said you

17   need, I think it is conclusive proof that they would, you know,

18   be unreceptive and that is not what we are arguing.

19        And there are also cases that say, you know,

20   discoverability in and of itself in the foreign jurisdiction

21   generally referring again to these situations where the foreign

22   court does not have discovery mechanisms that look like ours at

23   all is not a factor.

24        But none of those cases address this type of

25   situation.  None of those cases address a case where someone

 1    has sought discovery in the foreign jurisdiction and been

 2    denied it.

 3            And I do think it is important to note that one of the

 4    underlying principles of 1782 has stated that Intel is comity

 5    and cooperation among international courts.  And that does not

 6    seem very compatible with comity to say, on the one hand, the

 7    Court has said, you know, these matters on discovery on these

 8    African businesses, these are relevant and they can all go.

 9    And then, you can come to the U.S. and say that doesn't matter

10    and the precedence don't say that does not matter.  They say

11    the conduct in the foreign proceeding is not irrelevant.

12            And you want to avoid a perception that someone got a

13    bad ruling in one jurisdiction and came to get a different one

14    in another.  That is just not a good way to proceed in a 1782.

15            So, you know, all of these requests go to issues

16    concerning the African business and we have set out an example

17    here on slide 10.

18            The matrix, there is a matrix submitted at ECF 69-7

19    that shows that 9(a) through (e) that the Court is referring

20    to.  One of these matters was the African business.

21            A, what was the composition of the trading business in

22    Africa associated with the Salem family African business from

23    2013 onwards and how did it operate?

24            And that was denied and now they have in their

25    subpoena one of their broadest requests is for all documents

1    such as account statements...evidencing the activities or

2    concerning each of the Salem businesses.

3            And the Salem businesses in the subpoenas are defined

4    as a subset of the African businesses.  So they are still

5    within that scope of African businesses, including but not

6    limited to and then it goes on.

7            So these are really documents they are asking for the

8    composition of the trading business.  They are asking for all

9    the account statements, management account statements, share

10   registers concerning each of these businesses.

11           That is discovery that was explicitly rejected by the

12   UK court and now they are seeking it here.

13           THE COURT:  You didn't make any handy chart for the

14   other requests, did you?

15           MR. KRITZER:  I didn't.  I didn't make a handy chart

16   for all the requests.  This is I think the clearest example.

17           Candidly, there are others that I am happy to walk

18   through, but this is the clearest example of a request that

19   just clearly runs afoul of that ruling on 9(a) through (e).

20           THE COURT:  Are you able to give me other

21   correlations?

22           MR. KRITZER:  Yes, I am happy to.  Give me one moment.

23           I mean, our position is -- first of all, there is a

24   broad statement on the record about discovery about the African

25   business.

1          And also, there is a statement.  There is a

2     representation made.  I want to be clear about the entirety of

3     our argument because some of them, it specifically overlaps.

4     Some of them are, you know, the petition is UK counsel -- and

5     this is on slide 9 of our presentation stated:

6          "The relevance as we see it to the African business

7     allegations is primarily to establish the relationship to the

8     African business of Salim Levy and Ezra Aghai and Salim Levy

9     and Ezra Aghai on the transcript I think is D-3 and D-4, which

10    is kind of confusing because you always have to go back and

11    check who is who, but those are the people that they are

12    referring to.

13         THE COURT:  And are you looking right now to Nicholas

14    Marsh affidavit that we are looking at or are you looking at

15    the actual transcript?

16         MR. KRITZER:  This is the transcript.

17         THE COURT:  Okay.

18         MR. KRITZER:  And this is at ECF number 69-8 at 43 of

19    68.  That's where the statement is made by Petitioner's counsel

20    and it is just right around the same spot in the UK court made

21    the proclamation that we have cited.

22         So they are seeking things that go well beyond that

23    here.  They have represented that's the only relevance and now

24    they are seeking things that go beyond it.

25         As far as things that directly overlap with 9(a)

```
 1   through (d), you know, if you take the matrix -- this is at
 2   Docket 69-7.  That is the one that includes, you know, it is
 3   the proposed one that includes Sections 9 and 9(a) through (e).
 4            And then, if you look at the requests -- so number 2,
 5   all documents that show that --
 6            THE COURT:  Can you slow down, Counsel?
 7            MR. KRITZER:  I'm sorry.  I apologize.
 8            THE COURT:  What page are we on?
 9            MR. KRITZER:  So I am looking at two documents now.
10   The subpoena.
11            THE COURT:  Okay.
12            MR. KRITZER:  This one has been with filed at -- I
13   think it is --
14            THE COURT:  It's at Docket Entry 1.
15            MR. KRITZER:  1-2.
16            THE COURT:  Let me find that real quick --
17            MR. KRITZER:  Sure.  Of course.
18            THE COURT:  -- because I have a lot of pleadings in
19   front of me.
20            All right.  I've got the Schedule A in front of me,
21   the subpoena.  And what am I cross-referencing that with?
22            MR. KRITZER:  You are cross-referencing that with the
23   matrix, which is Document 69-7 filed on the docket.
24            THE COURT:  Okay.  Give me a second.  I am going to
25   pull that up.  Okay.  Well, I don't know why this is not
```

1  uploading.

2       Hold on just one second.  I am having a little bit of

3  a technical issue.  There we go.  Okay.  So what page am I

4  looking at there?

5       MR. KRITZER:  This is Page 7 in the matrix that shows

6  you -- I think it is 7 through 8 will show you the 9(a) through

7  (e) requests.

8       THE COURT:  Okay.  I see it.

9       MR. KRITZER:  So here we have, you know, for example,

10  number 2 is a good example;

11       All documents such as share registers, nominee

12  agreements, or communications evidencing the ownership or

13  controlling minds behind Monline UK Limited, Morsgate or the

14  Morsgate shareholders.

15       And look at 9(d):  What role did -- and they chose a

16  number of different folks, including the Defendants -- play in

17  the African business Morsgate Parker and D-2 from 2013 onwards.

18  So that one runs into that one.  If you look at another good

19  example being number 6:

20       All communications between Beno Salem or the Salem

21  businesses with Morsgate International Limited from 2013 to

22  August 31, 2016, concerning the Morsgate agreement.

23       Again, 9(d), 9(b), that falls within those categories

24  as well.  So number 7:  All communications between Beno Salem

25  and the Salem businesses with Parker Logistics Limited from

 1    January 2013 through August 31 of 2016 concerning the Morsgate

 2    agreement.

 3         Again, this goes to D, what role did these folks play

 4    in the African business Morsgate, Parker, and D-2 from 2013

 5    onward.  What role did Parker play in the African business?

 6         So, you know, not all of them fit exactly within these

 7    categories.  And again, our position there is a representation

 8    on the record of what is relevant.

 9         None of these go notably to what role did Mr. Ezra

10    Aghai and Salim Levy play in the management, which is the point

11    that counsel said was relevant for the African businesses.

12         So our position is that they are all ultimately

13    inconsistent with the English court's ruling.  Some more

14    explicitly so than others, but that they are outside of the

15    scope of what was permitted.

16         THE COURT:  Do all these requests pertain to the

17    African businesses or are there any requests that do not

18    pertain to the African businesses?

19         MR. KRITZER:  I think that within the scope of what

20    was being referred to as the African business, be it in the

21    settlement agreement or within the subpoena, I think they all

22    do.

23         THE COURT:  So if I go to the definition section --

24         MR. KRITZER:  The definition section African

25    businesses is probably defined to refer to set of trading

1  businesses owned by the Salem family and held through a series

2  of trusts.

3         And then, the Salem businesses is a subset of

4  entities, which are part of the business beneficially owned...

5  and is defined as the African businesses which are connected to

6  Morsgate International, which acted as *inter alia*, a treasury

7  company to the Salem businesses.

8         So they are alleging that the Morsgate business was

9  this treasury business for the African businesses that Monline,

10  Parker provided services to Morsgate and consistent as part of

11  that role so that it all is part of the African business.  That

12  is my understanding.

13         THE COURT:  Okay.  Were there any other points that

14  you wanted to raise with respect to the argument?

15         MR. KRITZER:  I just want to make sure that I have

16  answered all of Your Honor's questions.  I know that you have

17  posed questions to us and I want to be diligent in making sure

18  that I responded to all of those.

19         THE COURT:  Yes.  So I did want to ask because you

20  also raised -- you didn't raise it today, but to the extent

21  that in the analysis that I go through it, you did raise an

22  undue burden argument under the fourth Intel factor.

23         MR. KRITZER:  Yes.

24         THE COURT:  But you didn't really elaborate on the

25  undue burden argument.

1          MR. KRITZER:  I think, candidly, the reason for that

2   is that courts have generally found that -- yes, I do think

3   that the requests as a whole are unduly burdensome, but courts

4   have generally said that is something really to be dealt with

5   under the Federal Rules as opposed to 1782.

6          THE COURT:  Correct.

7          But this is the only hearing that I am going to have

8   on this.  So to the extent that there is an undue burden

9   argument and let's assume for the sake of completeness that

10  I --

11         MR. KRITZER:  Sure.

12         THE COURT:  -- reach that issue, why don't you go

13  ahead and tell me why it is that you think the requests are

14  unduly burdensome.

15         And perhaps if you can address under our federal

16  discovery rules tell me about -- well, first of all, does your

17  client have documents?

18         I want to make sure this isn't an exercise in futility

19  that later you come back and say that you've got nothing that

20  would be responsive.

21         Number two, what is the volume of what we are talking

22  about, the breadth?  How long would it take him to review these

23  documents and to find these documents and determine what is

24  responsive?  Give me an undue burden analysis so that I can

25  understand what we are talking about.

1          MR. KRITZER:  So my client has documents.  I don't

2  know the volume of documents he would have that would be

3  responsive to these requests because for us to present that

4  would require us to basically undertake the full burden of the

5  search that has been requested and that we take the position

6  would be improper.

7          So our position is that we would certainly have the

8  right.  So today if the Court or, you know, later the Court

9  grants the application, the only thing pending before the Court

10  right now is an application.

11          We have, you know, if a subpoena is issued to our

12  client at that time we can issue objections.  We can try to

13  negotiate with opposing counsel to resolve any issues.

14          As far as the undue burden for the 1782 analysis, you

15  know, that is not based on like a whole e-discovery search.  It

16  is based on the overbroad and unduly burdensome nature of the

17  requests such as requests, for example, number 15 which I

18  highlighted before.

19          Number 14, all documents evidencing or concerning the

20  ownership of just Monline International trading offshore.  You

21  know, certainly if I was meeting and conferring with opposing

22  counsel a proposal might be to say, well, wouldn't it be

23  adequate to say documents sufficient to show.

24          On other requests, you know, number 2, all documents

25  evidencing the ownership or controlling minds behind Monline UK

1   Limited.  So basically everything about their management is

2   overbroad, unduly burdensome, and not proportional to the needs

3   of the case.

4       And account statements, management account statements,

5   business statements -- this is request number 1 -- concerning

6   payments received or made by Morsgate or the Morsgate

7   shareholders.

8       Again, similarly that is very overbroad.  This is

9   third party discovery.  So, you know, separate and apart from

10  1782 limits under Rule 45 apply.  We are not really able at

11  this stage in opposition to a 1782 position to argue those

12  limits, but those limits are important and we do think that

13  these go beyond them.

14      THE COURT:  But how do I determine whether or not this

15  is unduly burdensome without more information?

16      How do I look at the fourth Intel factor without a

17  little bit more detail?  I mean, I don't know how voluminous

18  this is without any information from you.  I am guessing.

19      MR. KRITZER:  So, I mean, I am just going back to what

20  the cases have generally said on this which is where there is

21  an undue burden argument -- and this is why we do believe it is

22  unduly burdensome.

23      So we did raise it, but, you know, as you point out it

24  is not something we harp on so much in our papers.  It is a

25  general approach within this district is where there is an

1  undue burden argument that is dealt with through, you know,

2  Rule 45 and rules and procedures under the Federal Rules of

3  Civil Procedure upon a later date.

4        Because the only thing before the Court right now is

5  whether to grant a petition under Section 1782, which would

6  allow the issuance of a subpoena.  Then once that --

7        THE COURT:  I'm sorry.  What cases are you directing

8  me to?  Because right now I am looking at your opposition to

9  the application and you only cite Intel to me.

10        So is there a different pleading?

11        MR. KRITZER:  It's really the cases -- the cases that

12  I am referring to candidly are the cases that are cited in our

13  opposing party's brief.

14        So they discuss that undue burden can be dealt with

15  through ordinary discovery practice.  And I can find one or

16  more if Your Honor needs --

17        THE COURT:  That would be helpful, yes.

18        MR. KRITZER:  Give me one moment.

19        So this is a case by the Eleventh Circuit, *Consorcio*

20  *Ecuatoriano de Telecommuniciones S.A.*, 747 F3d 1262 and this

21  case --

22        THE COURT:  I was pulling it up and I was looking at

23  their consolidated brief.  So that is not something cited to in

24  their consolidated brief.  Might you look in their memo, do you

25  know?

1        MR. KRITZER:  I'm looking in the notice of filing.

2   This is Moussy Salem's notice of filing.  I believe this is --

3   I have it as tab number 29 and I think that probably means

4   Exhibit 29.  Let me just double-check.

5        It is in their index -- I'm sorry.  It is Exhibit

6   number 28.  Exhibit number 28 to their notice of filing.  And

7   this case holds that once the Section 1782 factors are met and

8   the District Court is therefore authorized to grant the

9   application, the federal discovery rules contain the relevant

10  practices and procedures for taking testimony and production of

11  documents.

12       So that is how these cases are generally dealt with.

13  I will see if I can find another case that speaks to the point.

14       So, Your Honor, I do not want to take too much time.

15  I can also address this and search for this while opposing

16  counsel is arguing.

17       THE COURT:  Yes, that would be helpful.

18       I struggle with the fact that how am I to analyze the

19  fourth Intel factor, which is whether the request is unduly

20  intrusive or burdensome without any substantive information as

21  to whether or not it is intrusive or unduly burdensome.

22       It just seems to me that the fourth factor of the

23  record is meaningless if I was just to take a party at their

24  word for it without having any information to support it.  One

25  way or the other I just don't know how I would make a finding

1  one way or the other without more information.

2      MR. KRITZER:  So an example of that would be -- this

3  is *In Re Bernal*, 2018 WL-6620085.

4      And in that case, the Court considered the unduly

5  burdensome factor.  And just, you know, it looked through the

6  requests and held that some of the requests were overbroad.

7      And some of them were narrowly tailored, but some of

8  them were improper because they seek all communications

9  relating to various individuals or entities such as, I think it

10 was request number 15 that we pointed out.

11     And also, limited the term communications to

12 incorporate the same definition of document and that they would

13 limit the correspondence that needed to be produced in response

14 to correspondence between entities or people found in specific

15 topics.

16     So, you know, it is not generally the practice in

17 other cases that the 1782 stayed.  The 1782 petition stayed to

18 say, well, you know, let's go -- I mean, there are cases where

19 people say affirmatively that they have no documents.

20     I am not prepared to make that representation and the

21 Court says, well, then it is not a factor, but there are cases

22 that look at the breadth of the request relative to --

23     THE COURT:  On their face.

24     MR. KRITZER:  Sorry?  What is that?

25     THE COURT:  On their face.

1        MR. KRITZER:  On their face.

2        The breadth of the request on its face.  And courts do

3    this, you know, frequently in other discovery contexts.  You

4    know, it is not necessarily the case that the Respondent to the

5    discovery request needs to come forward with, you know, a full

6    discussion of how many documents would be responsive because

7    then we would have to do all the work that we are saying is

8    unduly burdensome just to provide that answer.

9        So the Court can look at the request on their face and

10   determine whether they are overbroad.  I think particularly the

11   ones that I have highlighted to Your Honor are especially

12   overbroad.  I would hope that --

13       THE COURT:  Those were 2, 14, and 15?

14       MR. KRITZER:  No.  We also highlighted -- I think it

15   should be on the transcript, but 14 and 15.  Also 1 and 2 are

16   extremely broad.  The request number 13 is also very, very

17   broad.  I mean, I think those are the broadest ones.

18       Some of them are a bit -- number 12, all

19   communications concerning the operation of Monline UK Limited

20   from August 1, 2016, to the present.  That is very much like

21   the request *In Re Bernal*.  Those are found to be overbroad

22   because it is basically just tell me everything about your

23   business.  Same with number 11.

24       And number 8, all communications between Beno Salem or

25   the Salem businesses and Monline UK concerning the Morsgate

1  agreement or any agreement on similar terms with any other

2  companies connected to the Salem businesses.

3         So it is going way beyond the context that we are

4  talking about and this is number 5.  All documents evidencing

5  or concerning the Morsgate agreement from 2013 to August 31,

6  2016, including without limitation, any and all amendments,

7  modifications, et cetera.

8         So these are the broader requests.  So, I mean, and

9  some of these could be limited.  For example, like documents

10 sufficient to show.  Documents sufficient to show the creation

11 of Monline UK Limited.  Why do you need all documents to meet

12 all communication about the creation of an entity?

13        All communications, you know, like -- anyway, I think

14 I have walked through the ones I think are the most egregious.

15        THE COURT:  Okay.

16        MR. KRITZER:  Those are the ones that are the most

17 overbroad.  I think they can be analyzed on their face.  I

18 think a number of them go beyond what is even, you know,

19 appropriate and proportionate and relevant in this matter

20 because the Federal Rules of Procedure apply and so that is our

21 position on unduly burdensome.

22        THE COURT:  Now I want you to subsume for a second

23 let's say that I go through all the different factors.

24        Let's just say that I say motion to dismiss is denied.

25 I am going to allow the application to go forward, but I am

1  going to kick it back to the parties because I think this needs

2  to be more narrowly tailored.

3  　　　　What would your position be on that?

4  　　　　MR. KRITZER:  Well, I mean, obviously we would object

5  to the ruling that the motion to dismiss was denied.

6  　　　　THE COURT:  Well, I know.  I get it.  I assume that

7  you would object to that, of course.

8  　　　　MR. KRITZER:  As far as I always welcome the

9  opportunity to meet and confer on document requests.  You know,

10 I would have to obviously take feedback from my client on that

11 because it is not the primary point that we have argued here.

12 　　　　But I do think that -- well, I mean, I expect as in

13 most cases if we sit down and hash this out we will probably

14 resolve some of the issues.  Maybe we won't resolve them all,

15 but that there could be some productive discussions had.

16 　　　　THE COURT:  Okay.  All right.  Well, thank you.

17 　　　　Oh, I did want you to address while you are here

18 because I did see that on a Friday --

19 　　　　MR. KRITZER:  Yes.

20 　　　　THE COURT:  Moussy Salem's counsel filed a response to

21 your motion to seal.

22 　　　　MR. KRITZER:  Yes.

23 　　　　THE COURT:  And I do want to give you an opportunity

24 to address those issues.  I mean, the settlement deed has been

25 in the record and probably available to anyone who wants it for

1    the last five months.  It was something that your client

2    specifically filed in the case.

3              Why is it that I should seal that document?

4              MR. KRITZER:  So the issue is that it has now been

5    sealed in the UK proceeding.

6              THE COURT:  Well, I see that.

7              I think there was a little bit of an overbroad

8    statement in the motion as to what the English Court said

9    because I read the order from the English Court and that did

10   not really jive with the representation that was made in the

11   motion to seal.

12             MR. KRITZER:  So the important thing is that the

13   proceedings had been ordered to be sealed and that is plain on,

14   I think, the face of --

15             THE COURT:  Permanently, temporarily?  For how long?

16             MR. KRITZER:  I don't know exactly for how long.

17             You know, I understand that it could be revisited, but

18   it is at this time those proceedings are under seal.  I don't

19   think that there is any great public interest in this document.

20             I understand the Court has to weigh the public

21   interest.  I don't think there is any great public interest in

22   this document.  It does have information in it that is private

23   and personal to the family.

24             We are not arguing that.  They argued that it is

25   permitted to file it under 9.2.1.  No one is arguing that

1   anyone breached the contract by filing it.  We are not arguing

2   that.  They are not arguing that.

3          We are simply asking that consistent with the order of

4   the English Court that it be sealed.  That is our request.  We

5   do think that --

6          THE COURT:  What is the reason that it was filed in

7   England?  Because my question is I don't know what the rules

8   are in England as far as sealing or not sealing things.

9          I do not know if they are more permissive in sealing

10  documents that are filed in the court record.

11         MR. KRITZER:  So as I understand it, and I am just

12  trying to answer Your Honor's question.

13         We haven't filed a reply and I don't think it is

14  actually currently in the record, but there were some efforts

15  by counsel in the UK to get press coverage of the matter and

16  there was a desire to make the matter private so it does not

17  end up, you know, in the tabloids.

18         That is my understanding of why the application was

19  made.  The Court's order, you know, it is an order.  It is a

20  summary order.  It does not go through a great deal of

21  analysis, but it does order that those proceedings be sealed.

22         THE COURT:  Okay.  And what was the reason why there

23  was a five-month delay in seeking to seal this document?

24         MR. KRITZER:  It just corresponds with the timing of

25  the order in the UK case and the issues that came up with the

1    UK case.

2             THE COURT:  When was the order in the UK case?  When

3    did that come out?

4             MR. KRITZER:  I believe it was in April of 2024.

5             THE COURT:  So two months ago; two and-a-half months

6    ago.

7             MR. KRITZER:  I think about two months ago.

8             THE COURT:  Okay.  So part of me thinks, you know, how

9    can this document be something that has to be so confidential

10   when it has been out there for five months.  The UK order came

11   out two and-a-half months ago.

12            I am not fully grasping -- and what is it about the

13   confidential agreement itself, or the agreement itself, the

14   settlement deed that would, I think there was an argument made

15   that to suggest there was maybe like confidential information

16   within it.

17            Like is there trade secrets?  Proprietary information?

18   What is it about the settlement deed itself that under our law

19   here would require that I seal it?

20            Put aside for a second the England order.  I am just

21   going to assume for a second that they have completely

22   different standards on what to seal or not to seal.

23            MR. KRITZER:  Okay.  I think there is -- I mean, I

24   don't believe there is anything in there that we would call a

25   trade secret.

1          I do think that there is, you know, confidential

2    business information about the structure of the business, who

3    is managing it, the way that the parties are allocating

4    responsibilities, liabilities, rights.  And that is in the

5    nature of confidential business information that can be sealed.

6          THE COURT:  Okay.  And I know I've put you on the spot

7    with this and you were not ready to address this, but I would

8    like you to answer.  Give me an answer even if the Respondent

9    had an opportunity to brief this.

10         When you come back on rebuttal, I would like you to

11   just point to me whatever there is in the settlement deed that

12   would suggest that there is information in there that would

13   rise to the level that I should seal it.

14         That if it has any proprietary information in there,

15   you know, specifics.  Not just like a broad stroke and it has

16   this kind of information.

17         MR. KRITZER:  Understood, Your Honor.

18         THE COURT:  Okay.

19         MR. KRITZER:  Thank you, Your Honor.

20         THE COURT:  All right.  Who is arguing on behalf of

21   the Moussy Salem?

22         MS. TABAKSBLAT:  I will be, Your Honor.

23         THE COURT:  All right.

24         MS. TABAKSBLAT:  So, Your Honor, my plan was to start

25   with the motion to dismiss, but given that we just addressed

1 the motion to quash in this specific request and the scope of

2 the English ruling in detail, I am going to actually flip it

3 and start there since it is fresh in the Court's mind.

4         And I guess my first point would be to just direct the

5 Court to on our consolidated opposition Docket 42, Footnote 2

6 on Page 10 where in our responsive papers in March we actually

7 withdrew request number 15, which we have spent a very

8 significant amount of the Court's time this morning speaking

9 about it.

10        We did this because the requests were initially

11 requested by predecessor counsel in connection with an earlier

12 application where we still think it would potentially be

13 argument with respect to that request.

14        After taking a closer look at the hearing transcript

15 from the UK court we did actually withdraw that.  So to the

16 extent that you are hearing all these arguments about the

17 overbreadth of Footnote 15 that has been specifically

18 considered and addressed.

19        But more importantly --

20        THE COURT:  You mean request 15?

21        MS. TABAKSBLAT:  Correct.

22        THE COURT:  Okay.  You said footnote.  That's why I

23 want to make sure.

24        MS. TABAKSBLAT:  My apologies.

25        THE COURT:  Okay.

1          MS. TABAKSBLAT:  It is Footnote 2 in our brief on Page

2    10 it is Docket 42.

3          THE COURT:  Okay.

4          MS. TABAKSBLAT:  And Your Honor, you heard a lot --

5    and I think the Court said it really well when you said there

6    was -- I wrote the word down.  Give me one second.

7          An overbroad statement about what happened in the UK

8    and I think that applies with equal force to the scope of the

9    discovery in the UK proceeding.

10          You heard counsel say, well, nothing related to the

11   African businesses is allowed.  The Court specifically rejected

12   it and our whole effort here is to circumvent an order by the

13   UK court.

14          Well, respectfully, I mean, counsel was up here for an

15   hour and-a-half and I fully appreciate how much time, as I can

16   tell, that the Court has put into reviewing the docket and all

17   the filings that were filed.

18          And I know that you will reach your own conclusion,

19   but two separate District Courts have already analyzed and

20   rejected this argument and we attach both of those decisions.

21   Judge Cronan's decision from the Southern District of New York

22   as well as a subsequent decision from the U.S. District Court

23   of Connecticut.

24          But, specifically, I would like to direct the Court's

25   attention to Page 22 of Judge Cronan's decision where he

```
 1   specifically --

 2            THE COURT:  Tell me where to find it right now.

 3            MS. TABAKSBLAT:  Sure.

 4            THE COURT:  Is this part of the recent filing?

 5            MS. TABAKSBLAT:  Correct.

 6            THE COURT:  I do remember reading this somewhere in

 7   reference in the record.

 8            MS. TABAKSBLAT:  It is Exhibit 17 to our notice of

 9   filing.

10            THE COURT:  Okay.  So 66-17.  Give me a second.

11            MS. TABAKSBLAT:  Sure.

12            THE COURT:  Let me have that load up.

13            Okay.  What page am I going to?

14            MS. TABAKSBLAT:  22, please.

15            And I will begin to read to you the paragraph that

16   begins Freddy appears.  Let me know when you are with me.

17            THE COURT:  I'm ready.

18            MS. TABAKSBLAT:  "Freddy appears to interpret the

19   English court's determination that, quote, the broad issues of

20   the African businesses are not a key issue in this English

21   proceedings as a categorical bar to any discovery relating to

22   the African businesses.

23            But the English Court made that determination solely

24   in the context of considering proposed issue 9, which once

25   again concerns Moussy's request for information and the
```

1  composition and general operation of the African businesses.

2          Far from announcing a blanket prohibition on all

3  discovery related to the African businesses, the English Court

4  appeared to recognize the relevance of discovery related to the

5  African businesses' trading activity.

6          For instance, the English Court acknowledged Moussy's

7  need to assess, quote, the benefits that the English defendants

8  have received from the supply of Parker Services under the 2016

9  agreement, or otherwise to other companies within the African

10 businesses, or from the activities of Monline UK in approving

11 proposed issues 8-G concerning whether Monline UK supplied the

12 Parker Services or other services to persons other than

13 Morsgate.

14         And if so, under what terms and in what circumstances

15 Monline UK supplied its services.  And 8-H concerning what

16 payment Monline UK has received since June 7, 2016, from

17 entities other than Morsgate.

18         And the English Court further agreed that the extent

19 of the business opportunity lost to the UK transfer was ,

20 quote, relevant to, quote, quantum and would require

21 information about what Parker Services were being supplied and

22 to whom.

23         The suggestion that the English Court, in rejecting

24 the specific set of requests under proposed issue 9, deemed

25 irrelevant all disclosure concerning the African Businesses is,

1    at best, misguided."

2          And so we spent a lot of time talking about request

3    number 9.  What we did not discuss, Your Honor, are all the

4    requests that the English Court allowed.  And so I will direct

5    your attention to Exhibit E to our notice of filing, which I

6    believe is Docket 67.

7          And this goes through all of the actual allowed

8    requests.  And specifically, if I can direct the Court's

9    attention -- and I won't read them all into the record, but

10   request number 4.  The company supplied Parker Services to

11   Morsgate and other descriptives underneath that.

12         Number 5, the UK transfer, what hearings were there

13   between the company that the parties Morsgate with respect to

14   the UK transfer.  And again, the Court has the exhibits.  So I

15   won't spend the time reading it all in.

16         And then number 8, which Judge Cronan referenced in

17   his decision which goes through a wide list of other types of

18   information that is discoverable in the UK action.  And plainly

19   encompassed within the request and married by the request we

20   ask here as well as number 10."

21         And so again, Your Honor, I do believe this was again

22   another overbroad statement concerning the scope of the UK

23   ruling, but I think that the Court is also correct because --

24   just bear with me for one second.

25         Beyond the fact that the English Court here clearly

```
 1    not only did not disallow, but actually allowed the specific
 2    categories of discovery that we are seeking here in this
 3    application, Judge Cronan, as Your Honor correctly recognized a
 4    little bit earlier, went on to correctly observe that the fact
 5    that a country does not enable broad discovery within a
 6    litigation does not mean that it has a policy that restricts a
 7    party from obtaining that evidence through unlawful means.
 8            So, again, the relevant inquiry here, again, the
 9    English Court actually allowed it --
10            THE COURT:  Could you back up for a second --
11            MS. TABAKSBLAT:  Sure.
12            THE COURT:  -- on the statement you just quoted.
13            I seem to remember that there was an Eleventh Circuit
14    case that said something along those lines.  Are you quoting
15    from the Eleventh Circuit case?
16            MS. TABAKSBLAT:  I am quoting from Judge Cronan, but I
17    believe we cite In Re Bernal, which quotes an Eleventh Circuit
18    case.  One second.
19            I believe it is In Re Clerici, 481 F3d 1324 and the
20    quote is:  "Section 1782 does not impose a foreign
21    discoverability requirement."
22            THE COURT:  Okay.  I think that might have been what I
23    was thinking.  I do remember reading that in your -- I don't
24    know if it was memorandum, but I definitely remember reading
25    that in your submission.
```

1          MS. TABAKSBLAT:  That's correct.

2          And the citation I have here is *In Re Bernal,* which is

3    a Southern District of Florida case, but I don't really think

4    that that law is in dispute.

5          So here we have, you know, when you look closely at

6    the requests that are actually allowed in the July 23rd, 2023,

7    transcript from the UK court, it is plainly clear that the

8    discovery we are seeking is plainly allowed by that Court and

9    actually married.

10         And to the extent that I indicated earlier, there was

11   a close reading and a suggestion that maybe this was somewhat

12   outside of the scope of what that was allotted.

13         That hearing we actually went back and took that extra

14   step of actually withdrawing request 15.  But, in any event,

15   even if you didn't have that clear direction from the UK court,

16   this Court does not need to make a determination of what would

17   be admissible.  It just needs to apply the Rule 45 factors as

18   to relevancy.

19         Once those factors are applied and as the Court

20   properly recognized burden and that the Defendant's have failed

21   to show any showing as to burden here, the application should

22   be granted.  And then, the UK court could ultimately make a

23   determination as to admissibility.

24         THE COURT:  Can you address for me because we are kind

25   of stalled on this subject on the back end of Mr. Beno Salem's

1  argument.  What is your position as to how I should look at the

2  request and the application and analyze that under the fourth

3  Intel factor involving undue burden?

4        MS. TABAKSBLAT:  So, Your Honor, I think in the first

5  factor the Court's question is correct.  The burden is on the

6  movant to show undue burden.  There has been absolutely no

7  showing here.

8        And so in light of the fact that they have not met

9  their burden, there is really nothing to assess.  That said,

10 you know, as counsel indicated, we are happy to meet and

11 confer.

12       I mean, we have drafted the requests obviously not

13 knowing what documents they have in their possession or whether

14 or not there are thousands of documents about the formation of

15 Monline UK.

16       Obviously once there is an understanding of what

17 actually exists, we can have a meet and confer about what we

18 actually need.  Our client is also not interested in, you know,

19 a room full of documents.  We are really trying to get to the

20 heart of what we are looking for.

21       So for purposes of this particular motion, I think

22 there is no information in front of the Court that is relevant

23 to that factor.  So I think that factor just has not been

24 satisfied.

25       That as a practical matter, once the application is

1  granted, if the application is granted we are happy to meet and

2  confer to get to the heart of the documents of what we are

3  actually looking for.

4      THE COURT:  Okay.  But do you agree with the statement

5  that was made that I could just look at the requests on their

6  face in relation to what I know about the claims in the English

7  proceeding and say, whoa, that category is really overbroad?

8      And so, therefore, conclude that this must be unduly

9  burdensome.

10     MS. TABAKSBLAT:  I think no because, as I just

11 articulated to you, we have no idea if there is one document

12 related to the formation of the business or if this was, you

13 know, a subject of months long discussion between Mr. Freddy

14 Salem and Mr. Beno Salem.

15     So you can't assess that without an understanding of

16 what actually exists.  And we have, you know, no record to

17 assess that and be able to be in a position to respond to these

18 arguments and so there is just no basis to do that.

19     I will say there were similar requests made in

20 obviously other courts.  I understand that is not binding here,

21 but in all of those cases, you know, the Court allowed the

22 requests to proceed.  Except in the case of Connecticut where

23 it did strike two requests, I believe.

24     And then, in the case of Connecticut, the third party

25 had actually responded and described in which cases they had

1  documents and in which case they didn't.  So they did have the

2  full record that the Court does not have the benefit of here.

3       THE COURT:  Okay.  And so, for example, if I go and I

4  read Judge Cronan's decision, this issue of undue burden, what

5  am I going to find?

6       MS. TABAKSBLAT:  Well, if you look at Judge Cronan's

7  decision, you will see that he just granted the application

8  without splicing and dicing any decision or any request.

9       I will, in the interest of candor, that the posture in

10  that case was a little bit different in that the application

11  had been served *ex parte* and that documents had been produced.

12  So we understood what the scope of the response was.

13       So the posture was slightly different.  And as I said,

14  in Connecticut as well there had been a response to the

15  subpoena.  Not in the form of a production, but in the form of

16  an objection which articulated which categories they did have

17  responsive documents for.

18       So here, you don't have the benefit of the Respondent

19  coming forward and giving you that information for you to

20  assess with respect to a factor that they are seeking either a

21  dismissal or a limiting determination on.

22       THE COURT:  Okay.  And perhaps I misunderstood.

23       I thought your suggestion was that there are some

24  other cases that you have filed that where there were similar

25  requests and the Court did not splice and dice, I think is what

1  you said.

2       MS. TABAKSBLAT:  So in the SDNY case, the Court

3  granted the application.  Salem did not disallow any requests,

4  but procedurally because the application was filed *ex parte* and

5  Mr. Freddy Salem intervened after, the documents had already

6  been produced, we knew what the scope of the production was,

7  but the Court ultimately looked at it anew and said I am

8  allowing this entire application to proceed.

9       THE COURT:  Okay.

10      MS. TABAKSBLAT:  Does the Court have any other

11  questions with respect to the scope?

12      THE COURT:  No, not as to that fourth Intel factor.

13       So if you want to address some of the other arguments.

14  I know we have the actual settlement deed is still at issue

15  that is one of the arguments.

16       Go ahead and continue going.  I don't want to cut off

17  your response.  I mean, I have questions that I am going to ask

18  you if you don't address them on your own.

19      MS. TABAKSBLAT:  I was going to go back and address

20  the motion to dismiss, but I just wanted to, before I circled

21  back, I was going to address the motion to dismiss.  And

22  obviously, I am going to address the fees, but before I did

23  that I wanted to make sure that there were no more questions on

24  the scope.

25       Okay.  Bear with me a minute.

1        So, Your Honor, now I will address the argument on the

2   motion to dismiss with respect to the settlement agreement and

3   the fact that that bars the discovery that we are seeking here.

4        So I think it is important -- and I am really not one

5   to be, you know, pointing fingers.  And I really do like to

6   focus on the merits, but for the Court to really understand

7   what the procedural posture is here, our client initially filed

8   an application in New York.

9        We made eleven separate attempts to serve the

10  Respondent.  It was only after those eleven attempts that they

11  moved to quash on the basis that the case was improperly

12  venued.  It should have been in this court as opposed to in

13  New York.

14       I know this is set forth in our papers, but the basis

15  for the application in New York was posed in an earlier e-mail

16  from the Respondent with his address as well as the address

17  from the 2016 settlement agreement.

18       We then voluntarily withdrew.  Rather than fighting

19  bad jurisdiction, we filed in Florida.  And then, again, the

20  Section 1782 rule allows us to file *ex parte*, but rather than

21  file *ex parte*, we decided that we were going to go ahead and

22  try to serve the Respondent and we spent more than five months

23  trying to do so.

24       And it was only after we were able to come to this

25  Court in January and the Court deemed service effective that we

1  were ultimately able to proceed and get to the place we are at

2  here.

3        And then, only two years after the Monline UK action,

4  the international action, was assigned to our client.  For the

5  first time any party raises that there is this settlement

6  agreement, an unrelated settlement agreement that was entered

7  into 2016 between our client, Mr. Beno Salem and their other

8  brother Freddy Salem, who is a Defendant in the Monline action

9  that completely bars the discovery that we are seeking here.

10        Now this is particularly relevant, Your Honor, because

11  Mr. Freddy Salem is also a party to that settlement agreement

12  and in two years in litigating the Monline International

13  action, he has never once claimed that it was a bar.

14        So I reference earlier the Court's rulings with

15  respect to the scope of the discovery in the UK hearing in July

16  of 2023.  There was no argument, okay, this claim can't go

17  forward.  You can't get this discovery.  It is barred by some

18  relief.

19        The Court went through and addressed the scope of

20  discovery and what discovery with respect to another party to

21  that very same settlement agreement that the Respondent is

22  seeking to invoke here.

23        So the Court in issuing its questions asked us, well,

24  how is the UK court going to perceive this Section 5 to the

25  settlement agreement?  We know how the Court is going to

1  perceive it.  We know how the Court is going to perceive it

2  because the Court has allowed the discovery to go forward.

3        And interestingly, Your Honor, and again not to borrow

4  too much --

5        THE COURT:  Was this issue raised at the time of the

6  discovery issue and was the settlement deed and how to

7  interpret the claim and liabilities, was that before the

8  English Court?

9        MS. TABAKSBLAT:  Excellent question, Your Honor.

10       No, it wasn't.  The first time it was raised was three

11 weeks after this Court, Your Honor asked this question for the

12 first time.  So it was never pled as a defense in that case.

13       This Court asked that question.  And all of a sudden,

14 for the first time, Mr. Freddy Salem amended his defense in the

15 UK action in May of 2024 to assert this.  And let me just tell

16 you exactly where that was in one of the documents we filed.

17 Just give me one second.

18       I believe it is Exhibit B to their notice of filing

19 and it is their green insertions.  So he amended his defense

20 three weeks after this Court first asked the questions in

21 April.  I will also note that -- and again not to bar --

22       THE COURT:  Is that in the record?

23       MS. TABAKSBLAT:  It is.  It is Exhibit B to their

24 notice of filing from July 1st.  And if you look at it, there

25 are different colors; like redline and the green insertions are

1  the insertions that were added in the 2024 and it is Docket 69,

2  Exhibit 5.

3          And Your Honor, before I get into the merits of that

4  newly added defense and their arguments that are being raised

5  here -- and again not to bar too much from Judge Cronan, but

6  just to aid the Court in the sense that a number of other

7  courts have scoured this record.

8          Judge Cronan, in his same decision as I said earlier

9  in the Southern District of New York, which is again Exhibit 17

10 in our notice of filing said on Page 27, Footnote 7 -- and he

11 specifically was citing the July 19, 2023 transcript from the

12 English Court hearing.  The same one that justifies discovery.

13         And interestingly, when Freddy's English counsel

14 raised the issue of Moussy seeking discovery on the African

15 businesses through his Section 1782 application pending before

16 the Southern District of Florida, I actually think at that time

17 it was pending before the Southern District of New York, the

18 English Court expressed no disapproval as to Moussy making such

19 request.  And insisted that Freddy's English counsel allowed

20 the United States court to resolve any issues arising in the

21 Section 1782 action.

22         And so, Freddy's counsel raised the fact that we had

23 filed this application in the U.S. and they said -- and Your

24 Honor, if you want to take a look, it is on Pages 39 to 40 to

25 41 of Docket 69-8.

1        THE COURT:  Hold on.

2        MS. TABAKSBLAT:  Sure.

3        THE COURT:  I can't pull it up that fast.

4        Okay.  69- what?

5        MS. TABAKSBLAT:  It is 8 and it is at the bottom of

6   Page 40 and it begins around letter F.  It appears that the

7   transcript in the UK looks different, too.

8        THE COURT:  Okay.  I am at 40.

9        MS. TABAKSBLAT:  So around F, between F and G, they

10  raised this.  Counsel, Mr. Al-Attar for Mr. Freddy Salem, says:

11       "We have highlighted this Section 1782 application

12  against the claimant's other uncle in the United States."  That

13  is referring to Mr. Beno Salem.

14       I do not want to spend too much time on this.  The

15  only reason I want to highlight it, I mean there is some

16  colloquy and it is actually relevant and I will just go through

17  it.

18       "I have not looked at the U.S. thing.  I do not find

19  that it is helpful.  I recognize your allegation that the

20  claimant is looking for information about the African business.

21  All I need to decide is whether it is a key issue in this case

22  or not."

23       And then counsel says:

24       "Exactly, you only need to decide the question of

25  relevance, you do not need to decide the issue of collateral

1  purpose and subjective intent, I entirely accept.".

2        All I want to do is in relation to the Section 1782

3  application and I will make the point.

4        We can go to the document if we need to, but you have

5  read what I say about it in my skeleton.  The case in this

6  court, as described to the US court is inaccurate.  We have

7  highlighted the quotations and what they say is that there is a

8  conspiracy about ouster from 2013."

9        And the Court says:

10        "As I say, Mr. Al-Attar, that is not for me to decide

11  and we are running short on time.  You could take that up with

12  the American courts if you want."

13        So it is a license to go have the American courts go

14  and determine whether or not it is relevant under Rule 45 and

15  grant the Section 1782 proceeding and then you could go back

16  and determine admissibility consistent with the Eleventh

17  Circuit case as Your Honor pointed out.

18        And I think the other point that is relevant here and

19  we will get to this in a second when we talk about whether or

20  not this is a claim that existed as of the time of the

21  settlement agreement is what the counsel for Freddy Salem said

22  here.

23        And he specifically says this is not a case about

24  conspiracy going back to 2013.  Now, Your Honor, there is a

25  count for conspiracy, but they can't have it both ways.  They

 1    can in some context argue that this isn't about 2013 and in

 2    some cases argue that this is after 2013.

 3          So what we are hearing a lot of is, you know, trying

 4    to leverage maybe statements made in a different court where we

 5    don't have the full record before this Court, but we can't have

 6    all these inconsistencies.

 7          So now turning to the actual language of the

 8    settlement agreement that they now for the first time in 2024,

 9    two years after, argue bars the case or bars our claim here.

10          I think as an initial matter, you know, the question

11    of whether or not this case is a claim and counsel goes to

12    great lengths to say the word proceeding bars this.  They did

13    excerpt it.  So we will just refer to their slides.

14          I think the first interesting point is that, you know,

15    the title of their own slide -- and I am looking at slide

16    number 3 -- is Moussy's petition violates its covenant not to

17    sue.  This isn't a suit where we are seeking damages.  This is

18    a suit where we are seeking discovery as a third party.

19          In the U.S. no one would ever call a subpoena to a

20    third party a lawsuit if that is barred by a release.  And

21    counsel's, you know, own heading that he wrote in himself, like

22    clearly it shows exactly what the settlement bar was intended

23    to be.  This is just plainly not that.

24          But, you know, and we obviously attach black slides to

25    explain the definition of claim and why do you think that in

1    and of itself is dispositive of their argument.  I think the

2    other important argument is whether or not this claim existed

3    at the time that agreement was signed.

4           And so counsel went to great lengths to argue that

5    there was --

6           THE COURT:  Before you move on to that argument, I

7    want to understand your argument on this point because the

8    language in the settlement deed is expansive and I think

9    intentionally written to be expansive.

10          So what language would I be looking at to determine

11   that?  Because this is a 1782 proceeding, which is equivalent

12   to a foreign subpoena that the settlement deed would not apply

13   to this type of proceeding.  What language would I look at?

14          MS. TABAKSBLAT:  If you look at the definition of

15   liability it says -- and conveniently counsel did not highlight

16   this part, but it says:

17          "Means any and all liabilities in respect of any

18   existing (as at the date of this Settlement Deed) matter, fact,

19   action or inaction giving rise to any demand, liability,

20   obligation, complete claim."  There is no damages we are

21   seeking from Mr. Beno Salem here and so "counterclaim, right of

22   set-off, right to net, indemnity, right of contribution, cause

23   of action."

24          There is no damages we are seeking from Mr. Beno Salem

25   here.  So, again, I think it is just plainly common sense and

1  intuitive that if there was a release against a party that

2  releases all claims that no one would ever interpret a third

3  party subpoena to be barred by that release.

4       THE COURT:  So is it because the words here in this

5  definition such as demand, liability, allegation, complaint,

6  claim, counterclaim, right of setoff, right to net, indemnity,

7  right of contribution, cause of action, administrative or

8  regulatory claim, or infraction, petition, right of interest.

9       Those words are suggestive that one is seeking damages

10  as opposed to documents that this proceeding would not be

11  encompassed by the word liability or liabilities?

12       MS. TABAKSBLAT:  That's our position.

13       THE COURT:  Okay.

14       MS. TABAKSBLAT:  And I think, look, if they are

15  seeking injunctive relief that would be something that would

16  fall within the scope of the settlement agreement, but this is

17  just not that.  They are not asserting a legal claim against

18  Mr. Salem here.

19       But, Your Honor, you should reject their argument with

20  respect to settlement agreement for the independent reason that

21  this claim just does not fall underneath the agreement because

22  as counsel plainly admitted, the transfer occurred after the

23  agreement was executed.

24       There is no dispute that the fraudulent transfer at

25  issue in the Monline International action occurred after

1  April 2016.  What you heard counsel argue was that because

2  Monline International -- and that claim was ultimately assigned

3  to my client, Mr. Moussy Salem -- had an interest and had that

4  interest before the agreement, the fact that it was then

5  breached, transferred after the agreement that that somehow

6  bars that claim and that just -- I'm sorry -- makes absolutely

7  no sense.

8           It is equivalent to arguing that if you had a contract

9  that you signed in 1990 and then there was no breach of that

10 contract until 2000, that the claim arose in 1990 when you

11 signed that contract and not when the breach and it is just not

12 the law anywhere.

13          It is a claim that arises at the time when there is

14 wrongdoing and there is clearly no dispute here that the

15 wrongdoing occurred at the time of that transfer.  And Your

16 Honor --

17          THE COURT:  Which happen in August of 2016?

18          MS. TABAKSBLAT:  That's correct.

19          And I think what is really dispositive of this is if

20 we take a look at the notice of claim in the UK action, which

21 is Docket 4-1, there are three claims in that action.

22          I am not sure it entirely changes any of the points

23 that counsel made, but there is a claim for breach of fiduciary

24 duty.  There is a claim for conspiracy and there is a claim for

25 fraudulent transfer or the equivalent in the UK.

```
 1          THE COURT:  Sorry.  You said conspiracy, fraudulent
 2  transfer and what was the third one?
 3          MS. TABAKSBLAT:  Breach of duty.
 4          THE COURT:  I know I had seen three.
 5          Okay.  And this is at Docket Entry 4-1?
 6          MS. TABAKSBLAT:  Correct.  And this is the initial
 7  commencement papers in the Monline action.
 8          THE COURT:  Okay.
 9          MS. TABAKSBLAT:  And what is particularly interesting,
10  if I can direct your attention to Paragraph 11.
11          Let me know when are with me.
12          THE COURT:  Okay.  I'm with you.
13          MS. TABAKSBLAT:  The second Defendant, which if you
14  scroll up for the first two UK -- so the allegations in the
15  Monline case on --
16          THE COURT:  Am I in Exhibit A to that particular
17  document?  The amended notice of claim where --
18          MS. TABAKSBLAT:  I believe that is right.
19          THE COURT:  Okay.
20          MS. TABAKSBLAT:  So just to orient the Court and I am
21  sure you are aware of this, the claims in the Monline
22  International case was that there was this Morsgate agreement
23  to provide Parker Services that was with Monline International
24  was fraudulently transferred to Monline UK without adequate
25  consideration.
```

1          The Defendants in that case are Mr. Freddy Salem, who

2     is the first Defendant.  Monline UK, which is the new entity to

3     which the Moussy agreement was assigned to without

4     consideration and then two directors of Monline UK.

5          If you look at Paragraph 11 to the notice of claim, it

6     is referring to the second Defendant, which is Monline UK.  The

7     second Defendant is a company incorporated in June 7th of 2016.

8     And I apologize it should say on June 7 of 2016.

9          This is dispositive of the argument.  Monline UK was

10    not even formed until after the settlement agreement was

11    executed.  There is no dispute that the settlement agreement

12    was executed on April 2016 and the company for which their

13    asset, which is wholly at issue in this case was transferred,

14    was not even formed until afterwards.

15         So there can be no dispute that the claim did not

16    exist at that time and that is really just dispositive of their

17    whole argument.

18         THE COURT:  What about the conspiracy?  When is the

19    conspiracy supposed to have started?

20         MS. TABAKSBLAT:  Well, the conspiracy, Your Honor,

21    goes more broadly to the fact that or client was ousted from

22    the business in 2013.  And at some point, a number of years

23    later because they didn't have access to the documents, they

24    still held an ownership interest and they saw that their

25    profits started to decline.

1           So I couldn't give you an exact date as to when the

2    conspiracy did start and you saw counsel's, Mr. Freddy Salem's

3    counsel own word in the Monline action that this isn't a case

4    about going back to 2013.  I wanted to central action in

5    furtherance of the conspiracy was the misappropriation of this

6    business.

7           THE COURT:  Which happened in August of 2016

8    allegedly?

9           MS. TABAKSBLAT:  Correct.

10          THE COURT:  And I get the fraudulent transfer.

11          I get that the conspiracy ultimately it seems like the

12   acts of furtherance of the conspiracy would be this fraudulent

13   transfer or --

14          MS. TABAKSBLAT:  That would be one act, correct.  That

15   would be a main act relevant to the conspiracy claim.

16          THE COURT:  What about the claim of breaches of duty?

17   What is that about and how does that relate to any of this and

18   what is the timing of it?

19          MS. TABAKSBLAT:  Well, those claims are specific to --

20   those are only asserted against the first Defendant, Mr. Freddy

21   Salem.

22          So if you look at the counts -- it's on Page 6 of that

23   same Document 4-1 that we were looking at and under A the first

24   basis for the breach of duty is diverting the business of the

25   company and their corporate opportunity of the company to the

1  second Defendant Monline UK.

2          So, again, many of these claims are maybe other

3  factors that go to them.  Central to each of these claims is

4  this transfer of this Monline UK.

5          So even if the Court were to determine that there were

6  other aspects of the conspiracy or the claim, this one aspect

7  that postdated goes to every single cause of action and it is

8  really the basis for the filing.

9          I mean, just to orient the Court, this case was

10  initiated after Monline International was ordered to be unwound

11  and a receiver was appointed.  In connection with the

12  appointment of the receivership, it was discovered that this

13  asset was improperly transferred and that is why the profits

14  from the businesses were reduced in the way that they were.

15          And then the receiver initially commenced this action

16  and it was ultimately transferred to our client a few months

17  after the case was filed.

18          So the basis for this claim and the reason why it was

19  initially filed was this fraudulent transfer related to the

20  Monline International Morsgate agreement to Monline UK.

21          THE COURT:  Can you address for me the argument that

22  was made with regard to -- going back to liability and

23  liabilities in the definition that there is language that I

24  have to give meaning to here.

25          The fact that there was a right or an interest that

1  existed as of March 30th, 2016, in the Monline International

2  agreement.  I hope I am not misspeaking, but the March 30,

3  2016, interest that existed.

4       Why that anything that derives from that would be

5  covered by the definition of liability and liabilities?

6       MS. TABAKSBLAT:  I think there is just a complete

7  misstatement of what the right or an interest of any kind or

8  nature whatsoever.

9       I mean, you could have any number of rights, but there

10 is only a right to enforce that right once that right has been

11 taken away from you.

12      And so, I mean, you can have, as I said before when I

13 gave the example, when you have a contract that's a right.  You

14 can't bring a claim to enforce that right until that right has

15 actually been taken away.  So the right is the condition

16 precedent to bringing the claim, but you can't enforce a right

17 if there is no wrong.

18      And again, as I explained here, there was no claim

19 that could possibly exist here to enforce because the entity to

20 which it was transferred did not actually even exist as of the

21 date of the agreement.

22      THE COURT:  Okay.

23      MS. TABAKSBLAT:  Does the Court have any other

24 questions about the settlement agreement before I move on to

25 the fees?

1          THE COURT:  Just a second.

2          Yes, the same question that I asked and I posed this

3    in my order.  From your client's perspective this argument has

4    been raised with regard to the settlement deed and what impact

5    it has on these proceedings.

6          Do you view this as a jurisdictional question that has

7    to be addressed from the outset or do you view this as to

8    whether or not it fits at all in any of the 1782 factors?

9          MS. TABAKSBLAT:  I do agree it is a jurisdictional

10   question.  I think the Court has the authority.  I agree with

11   counsel that -- well, I disagree with how he gets there, but I

12   do think the Court has the authority to decide this issue.

13         Our position is that when you look at the plain

14   reading of the settlement agreement and the context of the

15   facts and pleadings in both cases, the settlement agreement has

16   that application here.

17         So the Court does, as a jurisdictional matter,

18   determine whether or not the settlement agreement applies, I

19   think the other relevant factor here is the one we talked about

20   earlier, which is that ultimately this Court under Rule 45 can

21   determine that this discovery is relevant and may proceed and

22   then the English Court can make an admissibility determination

23   prior to any trial or use of these documents in that court.

24         THE COURT:  Right.  I just want to understand this.

25         Particularly it sounds like both sides agree that

whether or not the settlement agreement impacts these

proceedings is a jurisdictional question that I have to answer

in the first place really before I can get to the 1782 factors.

MS. TABAKSBLAT:  I'm sorry.  I think I answered a

little bit of a different question.  I actually don't think

this Court needs to decide that.  I think the answer is that it

doesn't apply.

I thought the question was can this Court decide it as

opposed to UK having jurisdiction.  Our position is that this

Court can look at it on its plain terms and determine that it

has no relevance.

Whether or not this Court needs to determine, our

position is that the Court does not.  It just needs to look at

it on its face and determine if there is any relevancy to the

requests in the discovery.  The Court should treat it as any

other third party subpoena.  So apply Rule 45.

The Court in the UK can ultimately determine whether

or not this discovery is admissible and whether or not the

settlement agreement has any interplay as to admissibility, but

this Court should look at this under the lens of Rule 45 and

the Intel factors.

And so long as it is not contravening any discovery

rules, such as privilege in the UK as articulated by the

Eleventh Circuit, the Court may grant the subpoena.

THE COURT:  So you are looking at it through an Intel

1   factor lens, which was one of the questions that I asked, but I

2   guess more broadly from a jurisdictional perspective, right,

3   before I even get to the Intel factors.

4        What is your position as to whether or not I should be

5   looking to or what the impact is the settlement agreement as to

6   whether or not I can even consider these claims.

7        I mean, it seems to me that at some point whether I

8   find the settlement agreement has any bearing on this at all, I

9   have to look at the settlement agreement, right, to actually

10  read its terms.

11       That is the whole point of what we have been

12  discussing that does this fall within the scope of the

13  settlement agreement.  Does this subpoena fall within the

14  definition of liabilities or claims.  And if so, do the

15  particular claims that are raised in the English Court, do they

16  fall within liabilities.

17       So my question for you is do you solely view this as

18  something that falls within the Intel factors, or do I need to

19  breach this, look at this as a threshold issue before I get to

20  the Intel factors ?

21       MS. TABAKSBLAT:  I think it is an Intel factor

22  question, Your Honor.  And respectfully, Your Honor, I don't

23  really need to address it.

24       I think ultimately you need to look at Intel and

25  determine whether or not this is for use.  It is whether or not

1    it is third party discovery.  Whether or not it contravenes any

2    foreign discovery.  Whether or not there is undue burden and

3    that's where the Court's analysis ends.

4         Ultimately, whether or not this settlement agreement

5    bars the admissibility of discovery from Mr. Salem, that is a

6    question for the UK court.

7         And again, you know, counsel as you pointed out, Mr.

8    Marsh makes some inconsistent points in his agreement.  The UK

9    court has jurisdiction to determine whether or not there is any

10   application to the settlement agreement.

11        Here the Court just needs to determine whether or not

12   this application needs the 1782 factors.  The Court can make

13   that determination here.

14        Mr. Marsh told you so in his declaration and that's I

15   think how you reconcile those inconsistencies.  And then, the

16   issue of admissibility is deferred to the English Court and the

17   English Court has the jurisdiction to determine that

18   application of this agreement.

19        THE COURT:  Okay.

20        MS. TABAKSBLAT:  So just briefly, Your Honor, if I can

21   address fees.

22        THE COURT:  No, before we move on to fees --

23        MS. TABAKSBLAT:  Sure.

24        THE COURT:  -- I wanted to ask you a few things.

25        One just the threshold issue.  To the extent that I

 1    look -- this is some of the questions I had in my order.  The I

 2    did not see this addressed in Mr. Goldring's affidavit.

 3         Do you agree that to the extent I look at the

 4    settlement agreement that it is going to be governed by English

 5    law given it has a choice of law provision in it?

 6         MS. TABAKSBLAT:  Is the settlement agreement governed

 7    by -- yes.

 8         THE COURT:  My interpretation, my reading of it.

 9         Do you agree with that point that it is governed by

10    English law given that it has a choice of law provision?

11         MS. TABAKSBLAT:  I agree with that.

12         And I think Mr. Goldring did address in his affidavit

13    how the English Court would interpret the term claim.

14         THE COURT:  And he did.

15         MS. TABAKSBLAT:  Yes.

16         THE COURT:  I just wanted to make sure that there

17    wasn't a dispute to that baseline question of everyone in this

18    courtroom agrees that this needs to be interpreted under

19    English law.

20         Okay.  My second question is -- and I don't know if it

21    was addressed in the affidavit, unless I missed it, but what is

22    your client's position with regard to the forum selection

23    clause?  Does it have any impact?  The forum selection clause

24    that is within the settlement agreement.

25         MS. TABAKSBLAT:  Our position is that the settlement

1   agreement is completely irrelevant.  It is literally just being

2   lodged into this case to avoid discovery.  It is a last ditch

3   effort.

4          There were efforts to evade service in two different

5   jurisdictions.  And now it is just being invoked when it has

6   never been invoked before by any party over any time over a

7   course of a two-year litigation.

8          It clearly does not bar this claim that occurred after

9   the date of the agreement.  And it is just being used as a tool

10  to try to avoid discovery one more time.

11          THE COURT:  All right.  Now and likely there is an

12  argument and I did not hear in the courtroom today, but I did

13  see it in the papers.  Some of the requests in the proposed

14  subpoena go back to 2013.

15          And so explain to me how some of these acts or facts

16  that you are seeking to obtain by way of the subpoena they

17  wouldn't be subsumed within the settlement agreement or the

18  definition of liabilities, why are you going that far back?

19          And specifically in Mr. Goldring's affidavit I read

20  that he said the following, quote:

21          "The facts and conduct giving rise as to Moussy

22  Salem's claims in the English proceedings had not occurred as

23  of 15 April 2016 and, therefore, his claims did not exist as of

24  the execution of the deed."

25          So I am trying to understand if the facts and conduct

1  giving rise to his claims in the English proceedings had not

2  occurred as of April 15, 2016, why does the subpoena seek

3  information about facts that took place between 2013 and

4  April 15th of 2016?

5      MS. TABAKSBLAT:  Thank you for raising that.

6      And Your Honor, this happens in discovery all the

7  time.  There could be a breach of a contract that occurred on

8  ex-date, but the parties look at discovery with respect to

9  their relationship and the circumstances that predate that.

10     And I believe Mr. Goldring gave a very simplistic

11 example in his affidavit, which is you have a car accident that

12 occurs on January 1st of 2017.  There is no dispute that even

13 if you go back and look for discovery about a vision test by

14 the driver, or a past driving record by that driver, that does

15 not transform the date of the actual incident to before

16 January 1st of 2017.  It just means that there is relevant

17 information in that predates it.

18     As the Court is aware, when we are dealing with claims

19 like breach of fiduciary duty, or dealing with claims like

20 fraudulent transfers, or dealing with claims like conspiracy,

21 it is rarely the case where you are going to get a smoking gun

22 document.

23     Typically those cases are proved by circumstantial

24 evidence and that requires, again, a look at the totality of

25 the circumstances.  And so what we are looking for here is the

1    nature of a relationship between the parties.  What types of

2    communications they were having.  Whether or not there was, you

3    know, a dwindling of the funds.

4         Those types of inquiries are directly relevant to

5    whether or not this was a fraudulent transfer, how it was

6    planned, and why it was planned.  The fact that we are looking

7    before the date, that does not transform the date of the actual

8    injury.  This is the type of discovery that occurs in almost

9    every single case in this country.

10        It is rare that you have a date of an injury and then

11   the relevant time period for that discovery is that particular

12   date.

13        THE COURT:  Right.  But the reason I raised that

14   question and I don't disagree at all with that proposition.  We

15   deal with that in discovery all the time.  The reason I raise

16   this is Mr. Goldring's affidavit says:

17        "The facts and conduct giving rise in Moussy's claim

18   in the English proceedings had not occurred as of April 15,

19   2016."

20        So I read that, interpret that as saying the operative

21   facts.  Unless what he is saying that the facts in that relate

22   directly to the fraudulent transfer as opposed to other

23   evidence that may have been a motivation for the alleged

24   fraudulent transfer, which requires that you go further back in

25   time, for example.

1          MS. TABAKSBLAT:  So, again, obviously Mr. Goldring is

2     not here.  So we can just interpret what he is saying, but that

3     is my understanding.  It may have not been as eloquently as it

4     could have been, but what he is saying is that the actual

5     transfer occurred after.

6          And so to Mr. Kritzer's point, the fact that they held

7     this interest as of March 2016 is clearly relevant discovery

8     that predate the agreement.  But that does not transform the

9     fact that the actual claim arose as of the date of the

10    transfer, which was after.

11         THE COURT:  All right.  I think you have answered all

12    the questions that I had.  Was there anything else?  Did you

13    want to move on to talk about the issue of fees?

14         MS. TABAKSBLAT:  I do want to move on to the issue of

15    fees and if there is anything else that comes up, just please

16    let me know.

17         So under 41(d) -- one second.  Okay.  So Rule 41(d)

18    says the Court may order the Plaintiff to pay or part of the

19    cost of the previous action.  It is permissive.  It doesn't

20    require the Court to order it.

21         So as an initial matter, there is no requirement that

22    the Court order fees.  I'm sorry.  The costs.  The rule says

23    costs.  There is no requirement that the Court do so.  It may.

24    And so there is just two points that I would like to make here.

25         First, one of the things while we agree that the case

1   law does not require that there is a showing of bad faith.  One

2   of the factors that the Courts do look at in assessing whether

3   or not to grant fees is motive.

4         And here it is just a very simple story.  We filed in

5   New York.  We will filed based on reasonable belief.  We

6   attempted to serve eleven times and in response to those eleven

7   separate attempts, there was a motion to quash.

8         The total briefing was eight pages.  A portion of

9   those eight pages related to the scope issues that we discussed

10  today and a portion did relate to jurisdiction.

11        But, again, something less than eight pages related to

12  jurisdiction.  There were three affidavits within eight pages

13  essentially saying that Mr. Beno Salem is a resident now of

14  Florida and that he intends to live here.  There was no major

15  lift.

16        So we think under the permissive standard under 41(d)

17  that the Court should exercise its right given, you know, the

18  reasonable belief for filing in New York not to grant costs in

19  any event.

20        To the extent that the Court does determine that costs

21  are appropriate here, the word costs is very important and

22  counsel just completely skipped over this.  He got up here and

23  he equated costs with fees.

24        Now it is beyond dispute that the Eleventh Circuit has

25  not specifically addressed whether or not the term costs under

1   41(d) encompasses legal fees and there are two cases on that

2   that we cite.

3           It is the *Wolfe* case from 2010 and the MSP case,

4   which I believe is more recent from 2021.  And then, MSP, the

5   cite is 2021 WL 3410390.  The Court actually goes through this

6   analysis to determine how the Eleventh Circuit will rule.

7           And it goes through other circuits amongst how other

8   circuits have determined whether or not legal fees are

9   encompassed within costs and fees as well needs to have a

10  showing bad faith and ultimately rejects that analysis.

11          But what the Court does say is that in the case of

12  statutory claims it would be a departure from the presumptive

13  Federal Rules, the American Rule that each party bears their

14  own costs to interpret costs to include legal fees and

15  determines both in their MSP case and the *Wolfe* case by looking

16  at decisions from other circuits that it is only appropriate to

17  impose legal fees where the statute actually provides for legal

18  fees for the prevailing party.

19          Here Section 1782 does not say that.  They don't cite

20  a single case where there is attorney's fees awarded in the

21  context of 41(d) in a Section 1782 proceeding.

22          The only cases that they cite are common law claims

23  and MSP addresses this.  It says the Court actually has more

24  discretion in the context of common law claims than it does

25  under statutory claims.

1        And respectfully, Your Honor, even to the extent that

2   the Court does determine that costs are appropriate here, we

3   think there is no basis to award legal fees.

4        THE COURT:  Okay.

5        MS. TABAKSBLAT:  And sorry, the last point is that

6   even if the Court does award some legal fees, they should be

7   limited only to those portions of the argument with respect to

8   jurisdiction.  Anything that is recycled the law is clear there

9   should be no award.

10        So with respect to any of the arguments about scope

11   that were then used in this motion sequence those would not be

12   properly recoverable.

13        THE COURT:  All right.

14        MS. TABAKSBLAT:  Thank you.

15        THE COURT:  All right.  Is it Kritzer or Kritzer?

16        MR. KRITZER:  Kritzer.

17        THE COURT:  Mr. Kritzer.

18        MR. KRITZER:  Thank you, Your Honor.

19        I am sensitive to time of the lunch hour so I will do

20   my very best to be brief to a few points.

21        THE COURT:  You get the last word.

22        MR. KRITZER:  I want to address first just very

23   quickly on a motion to seal in terms of the confidential

24   information, I would direct Your Honor to Section 6, which is

25   the division of the African business.  I don't want to spend a

 1  lot of time on that.  I would rather focus on the settlement

 2  agreement and responding to the points that were just made.

 3          So, first of all, the argument that we somehow waited

 4  too long to raise the settlement agreement has no merit.  I

 5  mean, we responded to the case in New York that there was no

 6  jurisdiction.

 7          So the court not having jurisdiction we didn't raise

 8  substantive issues because there was absolutely no basis for

 9  jurisdiction.  It was undisputable.  Mr. Salem did not live in

10  New York.  The case was going to be dismissed on that basis.

11  So that was the only defense we raised or needed to raise.

12          When this case was brought and after my client was

13  served, there was no evidence of any effort to evade service.

14  They had to make multiple attempts and that happens sometimes.

15          The court allowed service by alternative means.  We

16  appeared.  We didn't move to quash or hear.  So when we

17  appeared we raised that argument immediately when we were in

18  front of the proper court.

19          So they argue that Freddy Salem did not claim this as

20  a bar until I guess they tried to make something of the timing

21  of three weeks after it was raised in this case.  It did not

22  have to do with this case.  It was amended particular of claims

23  that he was responding to.

24          So it was actually the Plaintiff's decision in the UK

25  to amend their case, which then gives the Defendant an

```
 1   opportunity to amend.  That is why the timing came down that

 2   way.

 3            THE COURT:  But that was the first time you raised the

 4   issue?

 5            MR. KRITZER:  That was the first time that it was

 6   raised in the UK case, correct.

 7            THE COURT:  Okay.

 8            MR. KRITZER:  Correct.

 9            Now counsel alleges that there is some inconsistency

10   between our argument about the conspiracy allegations in this

11   case and some other statement on the record that there was no

12   conspiracy back to 2013.

13            That is just mischaracterizing it because as the

14   record will show what I was arguing with Your Honor was a

15   conspiracy dating back to March of 2016 and not 2013.  So those

16   are not inconsistent statements.

17            The argument that counsel made here about a

18   proceeding, I want to address that because a proceeding does

19   not need to be a claim.  If the proceeding was a claim, this

20   settlement agreement would have been written very differently.

21            Turning back to slide 5 and the blowup of that

22   language this bars -- I'm sorry.  I think it is the -- this is

23   going to be the actual language of the covenant.  This is slide

24   3 that the covenant is against bringing any proceedings in

25   relation to any claims or otherwise asserting a claim.
```

1              So if it was only barring assertion of a claim in

2       relation to any claims that do no work.  So it is written

3       considerably broader.  The definition of proceeding is written

4       considerably more broadly than counsel is trying to say.

5              THE COURT:  Let me make sure I understand your

6       argument there.

7              So in response to Moussy Salem's argument that the

8       1782 proceeding is not something that is contemplated by the

9       settlement agreement, your argument is that if you look more

10      broadly in the language of the covenant not to sue, it does not

11      just limit it to asserting a claim, but in relation to any

12      claim.  So that is broader language.

13             MR. KRITZER:  Correct.  Proceedings is broadly defined

14      in itself, but also the covenant is broad in addition to that.

15             Each layer of this is broad and that is part of what

16      makes it, you know, that is why I wanted to bring these blowups

17      and walk through it because it can be tricky to follow.

18             But if you follow through 5-1, it is any proceeding --

19      and proceedings are defined very broadly -- in relation to any

20      claims or otherwise assert a claim.

21             So it really does not work to say, okay, this isn't

22      the claim for damages, or injunctive relief, or just seeking

23      discovery.  It is a proceeding in relation to a claim so long

24      as the Monline proceeding is a claim and that is where I want

25      to go next.

1          So the argument that the liabilities paragraph must be

2     construed, I guess somewhat narrowly or there must be an

3     accrued claim that existed for this covenant to be triggered,

4     ignores the breadth of the language of this definition of

5     liabilities on Page 7.

6          It is not only expanded at the final clause on line 5

7     to any right or interest of any kind or nature whatsoever, it

8     goes on to say that that can be direct or indirect.  It can be

9     foreseen or unforeseen, contingent or actual, accrued or

10    unaccrued, liquidated or unliquidated, et cetera.

11         Howsoever arising in whatever capacity in jurisdiction

12    -- howsoever arising.  I mean, it is just extremely broad.

13    This is meant to slam the brakes on claims based on the

14    relationships of the parties.

15         This is why the car accident, with respect to Mr.

16    Goldring, is not a good analogy.  This is not a case about a

17    car accident where two people who don't know each other have a

18    bad interaction on one day.

19         This is a family that has had disputes going back many

20    years that have been very complex and intertwined.  And they

21    are trying to reach a global resolution and they don't want

22    people arguing about liabilities, contracts, agreements,

23    alleged rights that existed at this time.

24         That is all going to get whacked out through this

25    settlement agreement and the process that is contemplated by

1   the settlement agreement in Section 6.

2           That is the idea.  It all comes within that.  It is

3   not to allow further perpetuation of proceedings and lawsuits

4   here, in England, Wales, or any other jurisdiction.

5           So that is the purpose of the covenant.  And that is

6   why it is written so broadly and the breadth of that language,

7   we submit, should be applied.

8           With respect to fees, I think the best case -- this is

9   a bit of authority, right, in the Southern District of Florida.

10  I think the cases that go through and say what is the majority

11  position.  The majority positions is very clearly fees are part

12  of the costs under Rule 41(d).

13          And the case I think that really spells it out the

14  best is the *Cadle Company* case that we cite in our --

15          THE COURT:  What is it again?

16          MR. KRITZER:  *Cadle Company.*

17          I could give you the full cite if Your Honor would

18  like.  Give me one moment.  C-A-D-L-E Company.  It really does

19  a very nice thorough analysis of this.

20          This is the *Cadle Company v. Beury;* B-E-U-R-Y and this

21  is 242 FRD 695 and this one is within circuit.  It is actually

22  out of this district, but this one has a really, really clear

23  analysis.  It talks about the amendment of the Federal Rules

24  and how in 1993 before that amendment, 54(d) and 41(d) had

25  similar language around costs.

1           The Rules Committee then amended 54(d) to say costs

2     other than attorney's fees and left 41(d) untouched so that the

3     clear intent was you had two phrases that were previously the

4     same and now are different.

5           And if it had meant for them to be the same and for

6     costs under 41(d) to exclude attorney's fees, surely the

7     Committee would have also amended that section similarly.

8           So there are a lot of cases that -- and I am citing

9     this case, Your Honor.  It just, I think, gives the best

10    analysis and I know you were not having guidance from the

11    Eleventh Circuit has to come to your own conclusion.

12          That was the one I found to be most helpful and

13    actually talking through the issue and deciding it on a very

14    well-reasoned ground.

15          Also, with respect to the argument around

16    jurisdiction, we cited the *Groom* case and I can provide the

17    full cite for that as well, if Your Honor would like.

18          Where the Court held that, you know, filing in one

19    jurisdiction, dismissing and filing in another because of lack

20    of personal jurisdiction was something that did justify an

21    award of fees.  And that is exactly what happened here.  This

22    is completely on point with that.

23          Counsel asserts that there was not, you know, a lot of

24    work done to dismiss the case.  I guess from our standpoint

25    that that really cuts both ways and what you are telling us is

1     that the fee award won't be gigantic.

2           And the *Groom* case is 2010 WL 627564 that talks about

3     the dismissal for lack of jurisdiction and then re-filing and

4     not justifying fees.

5           THE COURT:  But you agree that the issue of attorney's

6     fees is discretionary?

7           MR. KRITZER:  It is discretionary.

8           And it is targeted towards the factors of the

9     frequently cited multi-factor tests that I mentioned in my

10    opening and I do think that we meet all of those factors.

11          So I don't think there are many cases that say we meet

12    all these factors and our discretion will be denied, but, yes,

13    it is discretionary.

14          THE COURT:  Okay.  Did you have anything else you

15    wanted to add?  I know you cut you off and you were on a roll.

16    So if you have more go ahead.

17          MR. KRITZER:  I am just trying to be brief because I

18    am sensitive to the hour.

19          I think with that we will otherwise stand on our

20    briefing and we appreciate Your Honor's close attention to the

21    record and for the time today.

22          THE COURT:  All right.  Well, thank you to both sides.

23    Thank you for your level of preparation today and your

24    professionalism here today.

25          I do want to direct Mr. Kritzer, if you can, since

 1  there has been so many references to this PowerPoint --

 2          MR. KRITZER:  Yes.

 3          THE COURT:  -- so we have a complete record.

 4  Especially when we are talking about on Page 5, on Page 7.

 5          MR. KRITZER:  Yes.

 6          THE COURT:  So if someone is reading this transcript

 7  they know what we are talking about.  So under the notice of

 8  filing --

 9          MR. KRITZER:  We will.

10          THE COURT:  -- please file this document.

11          MR. KRITZER:  Absolutely, Your Honor.  Thank you.

12          THE COURT:  All right.  Before we recess on this

13  matter is there anything else we need to take up?

14          Since you are at the lectern, let me ask you, Mr.

15  Kritzer.

16          MR. KRITZER:  I don't believe so, no.

17          THE COURT:  All right.  And I want to pronounce it

18  correctly.  Miss --

19          MS. TABAKSBLAT:  Tabaksblat.  And there is nothing

20  further from us today.

21          THE COURT:  Okay.

22          MS. TABAKSBLAT:  -- as well for that.

23          Thank you to the Court for the extensive argument.  We

24  appreciate that.

25          THE COURT:  All right.  Thank you everyone.  We will

1    issue a report and recommendation in due course.

2            MS. TABAKSBLAT:  Thank you.

3            MR. KRITZER:  Thank you, Your Honor.

4            THE COURTROOM DEPUTY:  All rise.  Court is adjourned.

5            (Thereupon, the following proceedings concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I hereby certify that the foregoing transcript is an accurate transcript of the audiotape recorded proceedings in the above-entitled matter.

07/16/24                    Bonnie Joy Lewis,
                    Registered Professional Reporter
                      CASE LAW REPORTING, INC.
                      7001 Southwest 13 Street,
                    Pembroke Pines, Florida 33023
                         954-985-8875