IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| *In re* Application of<br>MOUSSY SALEM,<br><br>    Applicant,<br><br>FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM BENO SALEM | Case No. 1:23-cv-23186-KMM |

### DEFENDANTS' OBJECTIONS TO THE UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING RESPONDENT BENO SALEM'S MOTION TO DISMISS OR STAY THE APPLICATION AND FOR ENTITLEMENT TO FEES AND COSTS

At some point, litigation must end. This Court thus has a strong policy of interpreting settlement agreements broadly and enforcing them whenever it is reasonable to do so. The Report and Recommendations (the "Report") [ECF No. 79] of the Honorable Marty Elfenbein, United States Magistrate Judge, failed to do so, instead narrowing the express language of an extraordinarily broad covenant not to sue. For this reason, and for the additional reasons explained below, Respondent Beno Salem ("Respondent") objects to the Report pursuant to Fed. R. Civ. P. 72(b), S.D. Fla. Local Magistrate Rule 4(b), and 28 U.S.C. § 636(b)(1)(C) and requests that the Court grant his motion to dismiss [ECF No. 30] (the "Motion"), and deny Applicant Moussy Salem's ("Applicant") application under 28 U.S.C. § 1792 [ECF No. 1] (the "Application").

*First*, the Report misconstrues the breadth of the Settlement Agreement's covenant not to sue (the "Covenant"). While the Report acknowledges that the relevant definitions are broad, it limits the reach of the Covenant's clear and unambiguous language. The plain terms of the Covenant provide comprehensive, mutual protection from future litigation relating to the "African Businesses" at issue in this proceeding. Therefore, the Application violates the terms of the

Settlement Agreement because it constitutes a (i) "Proceeding" (ii) "against" Respondent (iii) "in relation to" a "Claim" (iv) "relating to" a "Liability" (v) "arising out of or related to or connected with the relationships between" the parties to the Settlement Agreement (vi) and which "relate[s] to the African Business," in violation of the terms of the Settlement Agreement. [ECF No. 44-1] at 7, 10 §§ 1.1, 5.1. The Settlement Agreement's definition of "Liabilities" clearly and broadly also applies to unaccrued liabilities. The liability at issue here is Monline International's putative "right" to perform Parker Services for compensation, which existed in March of 2016, prior to the April 2016 execution of the Settlement Agreement. No accrued claim needed to exist on that date for the broad language of the Covenant to apply. The Report would effectively re-write the Covenant in reasoning otherwise.

*Second*, the Report would require a party opposing discovery in § 1782 application proceeding on burden grounds to provide a detailed summary of the scope of responsive documents, an estimate of cost, the hours required to produce, and an approximation of potentially responsive documents to even consider whether requests are "unduly intrusive and burdensome." Such a requirement would defeat the purpose of even considering whether requests are unduly burdensome because it would force Respondent to absorb the brunt of the costs to complete discovery. Placing such a burden on a party simply so it can *assert* burden as an objection would, as a practical matter, eviscerate the right to object on that ground.

*Third*, the Report erroneously interprets the English Court's ruling specifically rejecting discovery related to the African Businesses in the English Proceedings. Respondent objects to that interpretation as not supported by the underlying record in the English Proceedings. Requiring Respondent to produce documents to those requests would violate international comity, as the English Court expressly limited discovery into the African Business.

Accordingly, Respondent respectfully requests that the Court conduct a *de novo* determination of this matter, sustain these Objections, grant Respondents Motion to Dismiss, and deny Applicant's Application.

### I. BACKGROUND

In 2014, Applicant brought claims in England against Respondent, Freddy Salem, and the trustees of certain settlement trusts. Those claims, which concerned a certain business conducted by the Salem family in Africa, and assets related to that business, were resolved by a Settlement Agreement dated April 15, 2016. The Settlement Agreement contained a covenant not to sue, by which Applicant agreed not to "bring any Proceedings in England and Wales or in **any other jurisdiction**" against Respondent or other identified defendants "in relation to any Claims." *See* [ECF No. 44-1] at 12 § 5.1 (emphasis added).

The terms "Proceedings" and "Claims" are defined broadly to include "any legal, arbitral, administrative, regulatory or other action or proceedings" concerning the prior litigation or "any other matter arising out of or related to or connected with the relationships between the Parties … in so far as those Liabilities relate to the African Business," *i.e.*, "any business in Africa which has been carried on, at any time, by any member of the Salem Family or their Connected Parties and any assets held by, or arising or derived from, those businesses." [ECF No. 44-1] at 7 § 1.1.

In 2022, Monline International Ltd. ("Monline International") brought claims in the High Court of Justice in England (the "English Court") against Freddy Salem and several other defendants (the "English Proceedings"). Monline International assigned those claims to Applicant, who took over prosecution of the action in October 2022. Applicant had sought to expand discovery to include the African Business, and made numerous discovery requests relating to the

3

African Business. The English Court expressly rejected those requests, ruling that they were not relevant to the issues in dispute in the English Proceedings. *See generally* ECF No. 4.

Undeterred by this ruling, Applicant filed the pending Application on August 21, 2023, asking this Court to authorize the issuance of subpoenas to Respondent for both documents and testimony concerning the African Business. Applicant specifically asserted that Respondent "has also been responsible since 2013 for, *inter alia* and with others, the management of several of the African Businesses," and sought discovery regarding purported efforts by Respondent and other members of the Salem family "to restructure management of the African Businesses to prevent [Applicant] and his family from receiving the profits owed." ECF No. 4 at 2-3.

**A. The Report's Recommendation on Respondent's Motion to Dismiss**

On August 28, 2024, the Judge Elfenbein issued the Report, which recommended granting Applicant's Section 1782 Application [ECF No. 1], denying Respondent's Motion [ECF No. 30], and denying Respondent's alternative request to stay and for fees and costs associated with a prior filing and dismissal under Rule 41(a). The Report reasoned that the Court has subject-matter jurisdiction over the § 1782 Application despite the broad and express covenant not to sue contained in the Settlement Agreement divesting the jurisdiction of this Court. Report at 10-12. The Report alternatively analyzes Respondent's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). *Id*. The Report reasons that under the 12(b)(6) standard it generally cannot go beyond the pleadings, unless the material is "central to the plaintiff's claim" and its "authenticity is not challenged." *Id*. at 13 (citing *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005). The Report would also decline to convert the Motion into one for summary judgment. *Id*. at 15-16 n.5.

The Report first concludes that the Settlement Agreement is not a central or necessary part of Applicant's § 1782 Application since "[i]t does not support or negate any of the four statutory

requirements of § 1782, nor does it support or negate any of the four discretionary factors the Supreme Court set out in *Intel*." *Id*. at 14. The Report asserts that the Settlement Agreement does not apply because it predates "the transfer upon which the English Proceedings are based . . . [and] [a]t most, the covenant not to sue in the Settlement Agreement may be affirmative defense . . . or the basis for a separate claim by Respondent against Applicant for breaching that provision." *Id*. at 14-15.

Next, the Report considers Respondent's assertion that the Covenant barred the petition such that Petitioner's request for relief should be denied. The Report erroneously finds that the Settlement Agreement does not apply to this litigation. *Id*. at 15. Although it agrees that "definitions of 'Claims' and 'Liabilities' are broad," the Report effectively re-writes those provisions to narrow them. *Id*. at 16. Because § 1782 applications are not a traditional claim, or "bid for relief contained in a pleading," the Report erroneously reasons that the Settlement Agreement's language does not reach this "purely evidentiary proceeding[.]" *Id*. at 16-17. The Report further reasons that the "more traditional claims in the English Proceedings" accrued after the Settlement Agreement took effect on April 15, 2016 because the "allegedly improper transfer" and "the company receiving it did not even exist until June 2016." *Id*. at 17, 18. The Report explained that "a right is a 'condition precedent' to bringing a claim, but a right is not enforceable until there has been a wrong.'" *Id*. at 18. As explained in greater detail below, this reasoning overlooks the fact that the Covenant does not merely bar accrued claims—it bars "unaccrued" rights as well, so long as they relate to some "matter" that existed at the time of the Settlement Agreement.

The Settlement Agreement was executed on April 15, 2016, and the "matter" to which this proceeding relates is the putative of right of Monline International to perform (and be compensated

5

for) the "Parker Services" defined in the English Proceedings. *Id*. at 3. As plainly alleged in the operative pleading in the English Proceedings, Petitioner claims that right arose in March 2016. *Id*. at 17. The Report nonetheless reasons that because that putative right was not "transferred" to Monline International until later in 2016, the Covenant does not apply because no claim had "accrued." *Id*. at 16-17. In light of the Covenant's broad language extending to unaccrued claims, the Report's conclusion on this point is plainly erroneous.

### B. The Report's Recommendation on Applicant's § 1782 Application

The Report next finds that the Application satisfied all of the statutory requirements, the *Intel* factors, and the policies underlying § 1782. Report at 18-27. Regarding the *Intel* factors, Respondent objects to the Report's recommendation regarding three out of the four factors. In analyzing the second factor, the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance[,]" the Report applies the standard incorrectly. Respondent argued that the English Court would not be receptive to § 1782 assistance because it already determined that discovery concerning the African Businesses is not relevant to the claims at issue in the English Proceedings." *Id*. at 22 (citing [ECF No. 29] at 9). The Report rejected this argument and instead interpreted the second factor to inquire whether "there is 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782. *Id*. at 22-23 (internal citations omitted).

Third, for the same reasons discussed above, the Report rejects the argument that Applicant's § 1782 Application was "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id*. at 24. In sum, the Court reasoned that "English Court did not reject the very same discovery Applicant seeks here, there is no

6

requirement that he first ask the English Court for that discovery, and there is no indication that the English Court has proof-gathering restrictions that would prohibit the discovery. *Id*. at 24-25. As a result, the third *Intel* factor weighs in favor of granting the Application." *Id*. at 25. This reasoning overlooks the English Court's broad rejection of discovery into the African Business.

Fourth, the Report declines to find in favor of Respondent on the last *Intel* factor because it claims that this factor requires specific information "about the number of potentially responsive documents, the number of hours it would take to produce the documents, the expense associated with the production, or any other tangible information[.]" *Id*. at 25-26.

Finally, notwithstanding the applicable Covenant and the rulings by the English Court, the Report erroneously found that granting the application would "further international comity concerns" by "[a]llowing Applicant to marshal the power of our courts to assist him in gathering evidence to use in the English Proceedings[.]" *Id*., at 26-27.

Respondent respectfully submits that the Report should not be adopted, his Objections be sustained, that his Motion be granted, and the Application be denied

## II.    LEGAL STANDARD

A party may serve written objections to a report and recommendation, which objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made, the specific basis for such objections, and supporting legal authority." S.D. Fla. L. Mag. R. 4(b); Fed. R. Civ. P. 72; 28 U.S.C. § 636. "A District Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." S.D. Fla. L. Mag. R. 4(b);

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court also may refer the matter back to the Magistrate Judge for further consideration. *Id.*

### III.   ARGUMENT

**A. The Report Fails to Enforce the Broad Terms and Definitions in The Settlement Agreement's Covenant Not to Sue**

While the Report acknowledges the breadth of covenant not to sue (Report at 16), it would improperly limit the application of its broad language.

The Report first errs by limiting the type of proceeding to which the Covenant applies. The Covenant expressly bars Applicant: from "bring[ing] any Proceedings," which are defined as "***any*** legal, arbitral, administrative, regulatory, or other action or proceedings," against Respondent "***in relation to*** any Claims." [ECF No. 44-1] at 7, 12 §§ 1.1, 5.1. These plain terms do not require the barred "Proceeding" itself to assert a "Claim"; rather, a "Proceeding"—broadly defined as ***any*** "action or proceedings"—must only be brought "in relation to" a "Claim." *Id.* at 10, § 1.1. Had the parties meant to say that a barred proceeding must ***assert*** a claim, they surely would have said so. They did not. The Report effectively reads the phrase "in relation to" out of the Settlement Agreement.

Reasoning from this error, the Report erroneously interprets the agreement to bar only "Proceedings" for "traditional types of relief"—a concept that appears ***nowhere*** in the Settlement Agreement's plain language. Report at 17-18. The Report cites Fed. R. Civ. P. 12(b) and 7(a) in determining that the Application is not "a traditional type of relief" contained "in a pleading." *Id.* at 17. This § 1782 proceeding, in which Applicant initiated legal process against Respondent, seeking issuance of subpoenas to compel Respondent to produce documents and testify at a deposition, is without a doubt a "Proceeding" under the Settlement Agreement. Indeed, the

8

Application itself refers to the litigation as "this proceeding." ECF No. 1 at 2. The Report errs in suggesting otherwise.

The Report next errs in construing the definition of "Claim" in a way that is flatly inconsistent with the Settlement Agreement's language.

The Report's interpretation of the Covenant as applying *only* to claims that "accrued" by the date the Settlement Agreement was executed (April 15, 2016) directly contradicts its plain language. Report at 17-18. Under the Settlement Agreement, "Claims" are explicitly defined to include "any and all Liabilities arising from or related to or in connection with … any [] matter arising out of or related to or connected with the relationships between the Parties … in so far as those Liabilities relate to the African Business." *Id*. § 5.1. And "Liabilities" are defined broadly to mean "any and all liabilities in respect of any existing … matter, fact**, action, or inaction** giving rise to any demand, **liability, obligation,** complaint, claim, counterclaim, … petition, [or] right of interest of any kind or any nature whatsoever, whether in law or equity, direct or indirect, joint or several, foreseen or unforeseen, contingent or actual, **accrued or unaccrued**, liquidated or unliquidated, known or unknown, disclosed or undisclosed, suspected or unsuspected, howsoever arising in whatever capacity or jurisdiction." *Id*. § 5.1 (emphasis added). It is thus ***explicitly clear*** that the Covenant applies to Proceedings brought "in respect of" any "Liabilities," which explicitly includes **unaccrued** rights arising from any "matter" existing at the time of the Settlement Agreement (April 15, 2016).

Contrary to this express language, the Report reasons that because the "claim" in the English Proceeding did not accrue until the transfer happened, it is not a claim or liability covered under the Covenant. Report at 18. That is simply incorrect. The Settlement Agreement's definition of "Liabilities" expressly applies to unaccrued liabilities.

9

When the proper scope of the Settlement Agreement is applied, the central "matter" at issue here—the "right" claimed by Monline International to perform Parker Services for compensation–plainly existed in March of 2016, a month before the Settlement Agreement was executed. Nowhere in the definition of "Liability" is there a requirement that it be an accrued liability—to the contrary, the language specifically applies to "unaccrued" rights. Therefore, the central fact relied on in the Report—the fact that the alleged transfer from Monline International to Monline UK occurred after the Settlement Agreement was executed—is irrelevant.

Applying all definitions correctly, the plain terms of the Settlement Agreement show that the Application constitutes a (i) "Proceeding" (ii) "against" Respondent (iii) "in relation to" a "Claim" (iv) "relating to" a "Liability," i.e., the putative "right" of Monline International to perform and receive payment for the Parker Services, which Applicant alleges existed in March 2016; (v) "arising out of or related to or connected with the relationships between" the parties to the Settlement Agreement (vi) and which "relate[s] to the African Business," in blatant violation of the terms of the Settlement Agreement. [ECF No. 44-1] at 7, 12. §§ 1.1, 5.1.

Furthering this conclusion, the Application seeks discovery which pre-dates the Settlement Agreement. Of the sixteen requests in the Proposed Subpoena, five requests specifically call for documents dating all the way back to January 2013. *See* [ECF No. 1-2] at Requests Nos. 1, 5, 6, 7, and 15. Another five requests specifically call for documents dating back to either January or March 2016. *See id*. at Requests Nos. 3, 4, 8, 9, 10. Two other requests have no date limitation at all. *See id*. at Requests Nos. 2, 16. Applicant, and the Report for that matter, makes no attempt to reconcile Applicant's arguments that the Settlement Agreement only applies to pre-April 2016 matters with the fact that his Application demands documents which go back more than three years earlier. Nor does Applicant deny that the Application seeks discovery from as early as 2013.

This proceeding is plainly barred by the Covenant. The Report's recommendation to grant the Petition notwithstanding the Covenant would be error, and it should not be adopted.

### B. The Report's Procedural Justifications for Denying the Motion Are Insufficient

Neither counsel nor the Report cited any case in which a §1782 proceeding was, like this one, brought in violation of a covenant not to sue. The issue of the proper procedure for dismissing such a case is thus an issue of first impression. As explained by Respondent's counsel at oral argument, the Supreme Court's *Intel* decision did not face such a scenario and thus did not address it. That, of course, does ***not*** mean that § 1782 creates some type of overriding exception the principle that parties may choose to stop litigating with each other through enforceable settlement agreements containing covenants not to sue. The Report errs in effectively concluding otherwise.

As courts in this District have held, "[a]n unconditional promise not to sue by one party onto another divests a trial court of subject matter jurisdiction." *Patent Licensing and Investment Co., LLC v. Green Jets Inc.*, No. 11-80689-CIV, 2012 WL 13019189, at *1 (S.D. Fla. May 9, 2012); *see also PayRange, Inc. v. KioSoft Technologies*, No. 20-cv-24342, 2022 WL 823885, at *7 (S.D. Fla. Mar. 18, 2022). While those cases involved claims for patent invalidity, no case in this jurisdiction has previously limited them to that specific context. Doing so would be a mistake, throwing open the court doors to all manner of claims and proceedings that parties agreed they would not bring.

This would also be contrary to the strong public policy in the Southern District of Florida, which the Report fails to acknowledge or consider, that courts must "strongly favor[] the enforcement of settlement agreement in all types of litigation. Accordingly, any consideration of a settlement agreement must commence with an understanding that compromise of disputed claims is favored by the Court and will be enforced if at all possible." *In re Managed Care Litigation,* No.

11

00-MD-1334, 2010 WL 6532982, at *13 (S.D. Fla. Aug. 15, 2010) (internal quotations and citations omitted), report and recommendation adopted, 2011 WL 1522561 (Mar. 8, 2011).

Not only does the Report misapply Rule 12(b)(1), it sets a standard that leaves no procedural avenue to dismiss a § 1782 application that a party agreed not to bring. After rejecting application of Rule 12(b)(1), the Report asserted that the Settlement Agreement could not be considered on a Rule 12(b)(6) motion, while also declining to convert the motion to one for summary judgment. Report at 15-16, n. 5. In limited scope proceedings like those under § 1782, that leaves no effective path to dismissal. Bringing a standalone motion for summary judgment, which typically follows discovery, is not a feasible means to defeat a case that itself exists for a party to seek discovery. The Court should either dismiss under Rule 12(b)(1), or convert the motion to one for summary judgment (and grant it), as the Report declined to do.

### C. The Report Erroneously Requires Respondent to Complete A Full Review of his Documents to Establish Undue Burden Under the Fourth *Intel* Factor

The Report further applied an unreasonable standard by which discovery requests are determined to be "unduly intrusive or burdensome" under the fourth *Intel* factor. Report at 25 (requiring "substantive information from Respondent about the number of potentially responsive documents, the number of hours it would take to produce the documents, the expense associated with the production[.]"). The Report's reasoning would require any party opposing discovery in a §1782 proceeding on burden grounds to do a full-scale review of all documents, relevant or irrelevant, responsive or non-responsive, and undertake the entire cost and effort, in order for a court to evaluate whether requests are "unduly intrusive and burdensome." That would involve a costly collection and review of documents that may not need to ever be produced. The cases identified by the Parties do not require the a party opposing a §1782 application to come forward with specific numbers of potentially responsive documents, hours required to review and produce,

and detailed estimate of the expensive associated with review and production. That in it of itself would defeat the purpose of the fourth *Intel* factor of avoiding "unduly intrusive or burdensome" requests because it would require Respondent to undertake the brunt of the burden and expense of discovery, simply to be able to argue that it will be expensive and burdensome. A party opposing discovery should not have to bear that cost up front, particularly where the requests violate a covenant not to sue.

As previously explained, the Subpoenas identify thirteen businesses in seven jurisdictions that are part of the broader African Business and seek broad categories of documents regarding them. Even if such requests were not addressed to the African Business—and thereby foreclosed by both the Settlement Agreement and the English Court's July order (as explained below)—such requests would vastly exceed the scope of permissible discovery, they are overly broad, and they are unduly burdensome.

The Report should be rejected, and Objections sustained, for this reason as well.

**D. The Report Incorrectly Interprets the English Court's Determination Regarding Discovery Related to the African Business under the Second and Third *Intel* Factors**

The Report misinterprets the English Court's determination that discovery concerning the African Business is not relevant to the claims at issue in the English Proceedings. Respondent does not dispute that the English Court uses a similar "adversary system" in which discovery is permitted. Report at 22. Prior to his Application in this Court, Applicant asked the English Court for discovery specifically into the African Businesses. *See* [ECF 29-3] at ¶¶ 8. Had that discovery been relevant, the English Court could and would have allowed Applicant to take it in that Court. It did not. *Id*. at ¶¶ 8-9; *see also generally* [ECF Nos. 69-7, 8, 10]. Thus, the Report's interpretation of the English Court ruling is erroneous.

Plainly, by order dated July 19, 2023, the English Court rejected Applicant's attempt to expand discovery in the English Proceedings to include the African Business, denying these requests as not relevant to the issues actually in dispute in the English Proceedings. [ECF No. 29]. Applicant's renewed attempt to obtain this same information in the United States under the guise of a 28 U.S.C. § 1782 application is improper and inconsistent with the statute's purpose.

Indeed, it is a violation of internal comity, a guiding factor in which the Court should give appropriate recognition and deference to the English Court's own determination. [ECF No. 29]. "Comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of anther nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *ASI Diamonds, Inc. v. Allianz Versicherungs-Aktiengesellschaft*, No. 1:18-cv-20680, 2018 WL 8193867, at *4 (S.D. Fla. Aug. 16, 2018), quoting Hilton v. Guyot, 159 U.S. 113, 164 (1895); *see Ungaro-Benages v. Dresdner Bank* AG, 379 F.3d 1227, 1238 (11th Cir. 2004) (courts may apply the "doctrine of international comity … to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings").

The Application clearly seeks to circumvent the strong public policy interest of the United States (and other jurisdictions) in the enforceability of settlement agreements—like the one here—which expressly prohibits new proceedings relating to the African Business. *See* [ECF No. 44-1] at 17, 12§§ 1.1, 5.1 (barring Applicant from asserting any petition or right in any legal proceeding that "relate[s] to the African Business"); *In re Managed Care Litigation*, 2010 WL 6532982, at *13 ("The Southern District of Florida has made it clear that public policy strongly favors the enforcement of settlement agreement in all types of litigation.") (quotation omitted).

Because the Application seeks discovery previously rejected by the English Court, in the same English Proceeding for which Applicant purports to seek assistance by this Court, the Report should not be adopted.

## IV.   CONCLUSION

Respondent respectfully objects to the Report, which should not be adopted for the reasons stated above. Instead, the Court should dismiss this proceeding, with prejudice.

Respectfully submitted,

Dated: September 11, 2024

STEPTOE LLP
By: /s/ *Nathaniel J. Kritzer*

Nathaniel J. Kritzer (appearing *pro hac vice*)
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
nkritzer@steptoe.com
jmeade@steptoe.com

Elise Haverman
Florida Bar No. 1003004
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-8000
Fax: (202) 429-3902
ehaverman@steptoe.com

*Counsel for Respondent, Beno Salem*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Nathaniel J. Kritzer*
Nathaniel J. Kritzer
