UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-mc-23186-KMM

*In re* Application of

MOUSSY SALEM,

      Applicant,

FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782
FROM BENO SALEM

_____/

**APPLICANT MOUSSY SALEM'S OPPOSITION TO RESPONDENT BENO
SALEM'S OBJECTIONS TO THE UNITED STATES MAGISTRATE JUDGE'S
<u>REPORT AND RECOMMENDATION</u>**

**FLASTER GREENBERG PC**
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
Tel: (561) 961-4508
Meghan C. Moore, Esq.
Florida Bar No. 668958
Meghan.moore@flastergreenberg.com

**BROWN RUDNICK, LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Lauren Tabaksblat, Esq. (*pro hac vice*)
Tyler D. Purinton, Esq.
(*pro hac vice* forthcoming)
ltabaksblat@brownrudnick.com
tpurinton@brownrudnick.com

*Attorneys for Applicant Moussy Salem*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................4

    A.  Factual Background........................................................................................4

    i.   The Salem Family and the African Businesses...........................................4

    ii.  The English Proceedings. ............................................................................5

    B.  Procedural Background. ................................................................................6

STANDARD OF REVIEW .......................................................................................8

ARGUMENT ............................................................................................................9

I.   THE SETTLEMENT AGREEMENT DOES NOT BAR THE APPLICATION. ............9

    A.  The Magistrate Judge Correctly Determined That The Settlement
        Agreement Does Not Bar the Application Because the English Claims Arise
        From Misconduct Postdating the Settlement Deed........................................9

    B.  The Magistrate Judge Correctly Determined That The Application Is Not A
        "Claim." ....................................................................................................13

II.  THE MAGISTRATE JUDGE CORRECTLY DETERMINED THAT IT COULD NOT
      DISMISS THE APPLICATION EVEN IF THE COVENANT DOES APPLY. .............15

III. THE APPLICATION SATISFIES 28 U.S.C. § 1782 .................................................19

    A.  The Magistrate Judge Correctly Determined That The English Court Did
        Not Reject The Discovery Moussy Seeks Here............................................19

    B.  Beno Misconstrues The Magistrate Judge's Application Of The "Intrusive
        Or Burdensome" Discretionary Factor. ......................................................20

CONCLUSION ......................................................................................................20

i

# TABLE OF AUTHORITES

**Page(s)**

**Cases**

*A.R. v. Dudek*,
  151 F. Supp. 3d 1309 (S.D. Fla. 2015) ........................................................................ 9

*Brown v. J.C. Penney Corp., Inc.*,
  521 F. App'x 922 (11th Cir. June 11, 2013) .............................................................. 9

*Chigos v. Werner Co.*,
  2014 WL 12596525 (M.D. Fla. Feb. 26, 2014) ........................................................ 12

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
  747 F.3d 1262 (11th Cir. 2014) ............................................................................... 14

*Feaz v. Wells Fargo Bank, N.A.*,
  745 F.3d 1098 (11th Cir. 2014) ............................................................................... 14

*Foliar Nutrients, Inc. v. Plant Food Sys., Inc.*,
  2014 WL 3510594 (M.D. Fla. July 14, 2014) .......................................................... 17

*Harris Corp. v. Fed. Exp. Corp.*,
  670 F. Supp. 2d 1306 (M.D. Fla. 2009) ................................................................... 17

*In re Alpine Partners (BVI) L.P.*,
  2024 WL 2868457 (M.D. Fla. May 23, 2024) ........................................................... 8

*In re Bernal*,
  2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) .......................................................... 15

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011) .................................................................................... 19

*In re Clerici*,
  481 F.3d 1324 (11th Cir. 2007) ............................................................................... 19

*In re N.A. Potash, Inc.*,
  2012 WL 12877816, at *8 (S.D. Fla. Nov. 19, 2012), *report and recommendation adopted*,
  2013 WL 12113190 (S.D. Fla. Mar. 13, 2013) ........................................................ 16

*In re Payroll Mgmt., Inc.*,
  630 B.R. 627 (Bankr. N.D. Fla. 2021) .................................................................... 11

*In re Pimenta*,
   942 F. Supp. 2d 1282 (S.D. Fla. 2013) ................................................................... 15

*In re Piper Aircraft Corp.*,
   168 B.R. 434 (Bankr. S.D. Fla. 1994), *aff'd, Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp.*, 58 F.3d 1573 (11th Cir. 1995) ........................................... 11

*In re Pons*,
   614 F. Supp. 3d 1134 (S.D. Fla. 2020) .............................................................. 9, 20

*In re Salem*,
   2024 WL 3026670 (S.D.N.Y. June 17, 2024) ..................................................... 19

*In re Salem*,
   2024 WL 3249355 (D. Conn. July 1, 2024) ......................................................... 19

*In re Seoul Dist. Crim. Ct., Seoul, Korea*,
   555 F.2d 720 (9th Cir. 1977) ............................................................................ 15

*In re Sergeeva*,
   2015 WL 12866970 (N.D. Ga. Feb. 6, 2015) ........................................................ 8

*In re Sveaas*,
   249 F.R.D. 96 (S.D.N.Y. 2008) ......................................................................... 15

*In re W.B. Care Ctr., LLC*,
   419 B.R. 62 (Bankr. S.D. Fla. 2009) .................................................................. 17

*Intel Corp. v. Advanced Micro Devices*,
   542 U.S. 241 (2004) ........................................................................................ 19

*Jones v. Auto. Ins. Co. of Hartford*,
   917 F.2d 1528 (11th Cir. 1990) ......................................................................... 18

*Morissette-Brown v. Mobile Infirmary Med. Ctr.*,
   506 F.3d 1317 (11th Cir. 2007) ........................................................................... 9

*Redel's Inc. v. Gen. Elec. Co.*,
   498 F.2d 95 (5th Cir. 1974) ............................................................................... 12

*Rothe v. Aballí*,
   2021 WL 4429814 (11th Cir. Sept. 27, 2021) ...................................................... 8

*Sierra v. City of Hallandale Beach*,
   904 F.3d 1343 (11th Cir. 2018) ......................................................................... 18

*U.S. v. Roseman*,
  2021 WL 2453143 (S.D. Fla. June 16, 2021) ........................................................................... 9

*U.S. v. Zubaydah*,
  595 U.S. 195 (2022) ............................................................................................................. 13, 14

*Ungaro-Benages v. Dresdner Bank AG*,
  379 F.3d 1227 (11th Cir. 2004) .............................................................................................. 16

**Rules**

Fed. R. Civ. P. 12(b) ...................................................................................................................... 13

Fed. R. Civ. P. 7(a) ........................................................................................................................ 13

Applicant Moussy Salem ("Moussy") respectfully submits this Opposition to Respondent Beno Salem's ("Beno") Objections (ECF No. 80) to the Magistrate Judge's August 28, 2024 Report and Recommendation ("Report" or "R&R") (ECF No. 79).

## PRELIMINARY STATEMENT

Moussy seeks evidence from his uncle, Beno Salem, in aid of a proceeding pending in the UK (the "English Proceedings").  The English Proceedings center around the misappropriation by Moussy's other uncle, Freddy, of Monline International's assets – primarily an agreement with Morsgate International ("Morsgate") – in June 2016.  Pursuant to the agreement, Monline International would have had the right to provide logistics and management services ("Parker Services") to other businesses owned by the Salem family in return for substantial fees that were calculated based on the operations and expenditures of those businesses.  Beno, as a manager of several of the businesses that received Parker Services, possesses critical documents relating to the misappropriation and the value of the unlawfully transferred assets.

Beno has made every effort to avoid providing this critical discovery.  Although Section 1782 applications are typically granted *ex parte*, Moussy endeavored to give Beno an opportunity to respond by serving Beno with the Application.  Beno evaded service for months, and Moussy was only able to effectuate service after the Court intervened and issued a summons in January 2024.  Undeterred, Beno then moved to dismiss the Application based on a covenant not to sue in an unrelated Settlement Agreement that was executed in April 2016, months before the June 2016 transfer of Monline International's assets giving rise to Moussy's claims in the English Proceedings.  Beno also argued that the Application should be denied under Section 1782 based on his claim that the English Court had rejected the discovery Moussy seeks here, which, as two federal district courts have already held, is simply untrue.

Following two rounds of briefing and a three-hour hearing, on August 28, 2024, the Magistrate Judge issued a 29-page Report and Recommendation granting Moussy's Application and fully rejecting Beno's defenses. In the well-reasoned Report, the Magistrate Judge correctly determined that the covenant not to sue did not apply because it is expressly limited to "claims" relating to "actions" that "existed" as of the April 2016 Settlement Agreement; in contrast, Moussy's claims did not arise until June 2016. The Magistrate Judge further rejected Beno's position that the English Court would be unreceptive to the Application, finding that not only had the Court never denied similar discovery, it had actually *endorsed* the discovery Moussy seeks here. Finally, after carefully examining the requests, the Magistrate Judge determined they were not unduly burdensome and that Beno had failed to articulate any reasons for denying the Application beyond "boilerplate objections." That decision was correct.

Nevertheless, Beno filed the present Objections ("Obj.") and asks this Court to reject the Report based on a *de novo* review. As a preliminary matter, Beno confuses the applicable standard of review. The Eleventh Circuit has held that Section 1782 applications are non-dispositive matters under 28 U.S.C. § 636 and a magistrate judge's order may be reversed only if clearly erroneous or contrary to law. The Report is not clearly erroneous and should be affirmed.

In any event, Beno's Objections fail even under *de novo* review. To start, Beno contends that the covenant not to sue applies because Monline International received the contractual right to provide Parker Services in March 2016. As the Magistrate Judge correctly determined, however, a right does not "arise" as required under the Settlement Agreement until it has been violated, which did not occur until months after the Agreement was executed. Indeed, under Beno's reading, a party could violate any contract *carte blanche*, including today, so long as it

was entered into before the Settlement Agreement.  If the parties intended for such a wholesale waiver of prospective rights, they would have explicitly said so.

In any event, this Court need not even address the issue of whether the covenant applies. The parties expressly agreed that the English Court, and the English Court only, would have "exclusive jurisdiction" over any disputes concerning the Settlement Agreement, including whether the Agreement applies to Moussy's 1782 proceeding.  Indeed, although Freddy Salem, who is party to the same Settlement Agreement that Beno seeks to invoke here, raised the covenant not to sue as a defense for the first time in the English Proceedings after Beno asserted it in this Section 1782 proceeding, the English Court has not stayed discovery from Freddy on the basis of that Agreement or otherwise ruled that the Agreement barred suit against Freddy.

Deciding this issue, and risking an inconsistent ruling from the U.K. Court which has exclusive jurisdiction, would not only run afoul of comity and the Agreement's plain terms, but would also contravene well-established law holding that courts deciding Section 1782 applications should not wade into foreign legal issues.  This Court should decide the Application on its merits and let the foreign court decide whether to admit the evidence.

Even if this Court decides to resolve the issue and finds the covenant applies, it should reject Beno's invitation to dismiss under Rule 12(b)(1).  No court in this Circuit has ever dismissed a claim for lack of jurisdiction in this context based on a covenant not to sue.  Rather, putative breaches of a covenant are addressed through a damages claim.  The two unpublished cases Beno relies on involve patent-invalidity claims, which, as Florida courts have held, involve "unique justiciability requirements" not applicable here.  Nor should this Court treat Beno's Rule 12(b)(1) Motion under Rule 12(b)(6) – which Beno himself opposed at the hearing – and

convert it into a motion for summary judgment.  The Magistrate Judge was well within its discretion not to do so, especially considering a court's limited role in Section 1782 proceedings.

Finally, Beno raises the same arguments concerning the English Court's receptivity to the requested discovery that have now been rejected by three different federal courts.  The Magistrate Judge's independent assessment of the record from the English Proceedings was not clearly erroneous.  Nor has Beno made any showing that the requests are unduly burdensome.

For these reasons and those set forth below, this Court adopt the Report.

## BACKGROUND

### A.     Factual Background.

#### i.      The Salem Family and the African Businesses.

The Salem family operates a trading business in West Africa, known as the "African Businesses," which are beneficially owned in equal parts by Moussy's, Beno's, and Freddy's branches of the family.  (ECF No. 4 at 5.)  Historically, the three branches managed the African Businesses equally.  In 2013, however, Moussy was ousted from the businesses, which have since been controlled by Freddy and Beno.  Accordingly, from 2013 onward, Moussy has had minimal insight into the operations of the African Businesses, including the provision of Parker Services, though he remains entitled to his share of profits from the businesses.  (*Id.* at 5-6.)

The Salem family trusts receive profits from the African Businesses through a corporate structure involving several offshore companies.  Once Moussy was ousted, however, profits paid out to Moussy suffered a sudden and inexplicable decline.  (*Id.* at 6.)  Moussy alleges in the English Proceedings that Beno and Freddy have altered the management of the African Businesses in order to divert profits away from Moussy.  (*Id.*)

Historically, one of the primary ways that the Salem family operated the African Businesses was through Parker Logistics, which had a logistics agreement with Morsgate.  As

alleged in the English Proceedings, in March 2016, Beno and Freddy transferred management of the African Businesses, including the right to provide Parker Services to those businesses through Morsgate, from Parker Logistics to Monline International.  (*Id.* at 6-7.)  Freddy owns 50% of Monline International, and Moussy and his mother own the remaining 50%.  (*Id.* at 7.)

On or about June 7, 2016, Freddy – without disclosure to Moussy – transferred the assets of Monline International (including the right to provide Parker Services) to Monline UK, in which Moussy has no ownership interest or control, without any consideration.  Thus, beginning in June 2016, Monline UK became the sole provider of Parker Services.  (*Id.*)

After the English Proceedings had commenced, the English Defendants admitted that Monline UK had ceased providing Parker Services to Morsgate in or around July 2017.  Instead, Monline UK began providing Parker Services to a newly formed Lebanese company called Gestcom Trading.  (*Id.* at 7-8.)  This continued until around March 2021, when Monline UK ceased providing Parker Services altogether.  Based on these admissions, Gestcom Trading effectively replaced Morsgate in the African Businesses structure – including with respect to the receipt of Parker Services until at least March 2021 – and Gestcom Trading or other unknown third parties may still be providing Parker Services to other unknown third parties.  (*Id.* at 8.)

  **ii. The English Proceedings.**

The English Proceedings involve three core claims: (i) breach of duty by Freddy; (ii) gratuitous transfer by Freddy; and (iii) conspiracy to divest Monline International of its assets to place those assets out of Moussy's reach.  (*Id.*)

Based on Beno's close relationship with Freddy and role in managing the African Businesses, Beno has critical information concerning, *inter alia*, the English Defendants' efforts to restructure management of the African Businesses to prevent Moussy from receiving his duly-owed profits; the June 2016 transfer from Monline International to Monline UK of the right to

provide Parker Services under the Morsgate Agreement; the value of the unlawfully transferred assets; and the subsequent transfers to Gestcom Trading and beyond.  (*See id.* at 8-10.)

  **B.**  **Procedural Background.**

  Moussy filed his Application on August 21, 2023.  (ECF No. 1.)  On January 25, 2024, Beno filed his Opposition.  (ECF No. 29.)  The next day, Beno filed a Motion to Dismiss, arguing that the Application is barred by a covenant not to sue in an unrelated Settlement Agreement between Moussy, Beno, Freddy, and others to resolve claims filed in 2014 by Moussy in an entirely separate action.  (ECF No. 30; *see also* Obj. at 3.)  That Agreement was executed on April 15, 2016, months before the unlawful transfer in June 2016 giving rise to Moussy's claims in the English Proceedings.  (*See* ECF No. 44-1 at 6.)  Although Freddy Salem is also a party to that same Agreement, he never once invoked it in the English Proceedings until after Moussy commenced these Section 1782 proceedings.  (*See* ECF No. 69-1 ¶ 21; ECF No. 69-5 ¶ 21(c) (Freddy's Re-Amended Defence dated May 14, 2024).)  On March 14, 2024, Moussy filed his Response to Beno's Opposition and Motion to Dismiss.  (ECF No. 42.)

  On July 8, 2024, the Magistrate Judge held a hearing on Moussy's Application and Beno's Opposition and Motion to Dismiss.  (*See* ECF No. 78.)  With respect to Beno's Settlement Agreement defense, the primary issue was whether Moussy's Application constitutes a "Claim" under the Agreement, which is defined as "relating to" a "Liability."  (*See* ECF No. 78 at 7-8.)  "Liability," in turn, is defined as "any and all liabilities in respect of any existing (as at the date of this Settlement [Agreement]) matter, fact, action or inaction giving rise to" a recoverable right.  (ECF No. 44-1 at 10, § 1.1.)  Moussy argued that the Application did not constitute a "Claim" because the relevant "action" "giving rise to" his claims in the English Proceedings – *i.e.*, the June 2016 transfer of the right to provide Parker Services from Monline International to Monline UK – did not "exist" when the Settlement Agreement was executed in

6

April 2016. (*See* ECF No. 78 at 75-76, 78-79.) In response, Beno argued that the relevant "action" was Monline International's receipt of the right to provide Parker Services in March 2016. (*See id.* at 16.) Beno further argued that if the covenant not to sue applied, the Magistrate Judge should dismiss the case for lack of jurisdiction under Rule 12(b)(1). (*Id.* at 20-22.)

With respect to the merits of Moussy's Application, Beno did not dispute that Moussy met the statutory requirements under Section 1782. (*See* R&R at 21.) He also did not dispute that he had responsive documents. (ECF No. 78 at 42.) Instead, Beno argued that the English Court would not be receptive to the discovery sought because it had purportedly rejected similar discovery in the English Proceedings. (*See* ECF No. 78 at 33-40.) In response, Moussy noted that two separate U.S. district courts had already rejected Beno's position, and in any event, a foreign court's discovery limitations are irrelevant under Section 1782. (*Id.* at 55-60.) Beno also argued that the requests were overbroad. (*Id.* at 42-48.)

Following supplemental briefing requested by the Court and a three-hour in person hearing, on August 28, 2024, the Magistrate Judge issued its Report recommending that this Court grant Moussy's Application. (ECF No. 79.) The Magistrate Judge determined that the Settlement Agreement could not bar the Application because the misconduct giving rise to Moussy's claims did not occur until after the Agreement was executed. (R&R at 17-18.) Alternatively, the Magistrate Judge found that the Application – which seeks nothing but discovery – was not the type of "Claim" contemplated by the covenant not to sue. (*Id.* at 16-17.)

Based on its finding that the covenant does not apply, the Magistrate Judge determined that it had jurisdiction to decide the Application. But even if the covenant did apply, the law is clear that such covenants do not divest a court of jurisdiction in this context; rather, they give rise

to a damages claim.  (*Id.* at 10-13.)  The Magistrate Judge further declined to exercise its

discretion to convert Beno's motion into a motion for summary judgment.  (*Id.* at 13-16 & n.5.)

Finally, the Magistrate Judge found that Moussy had satisfied Section 1782.  With

respect to Beno's challenges under the discretionary factors, the Magistrate Judge agreed with

Moussy and the two district courts that the English Court had not rejected the discovery Moussy

seeks here; in fact, the requested discovery "encompasses much of what the English Court

allowed" in the English Proceedings.  (*Id.* at 22-24.)  After carefully reviewing the subpoena

requests, the Magistrate Judge further determined that they were not unduly burdensome and that

Beno's "boilerplate objections" did not justify denying the Application.  (*Id.* at 25-26.)

On September 11, 2024, Beno filed the present objections.  (ECF No. 80.)

**STANDARD OF REVIEW**

Although Beno insists that this Court should apply *de novo* review (Obj. at 7-8), the

Eleventh Circuit has held that "§ 1782 motions are non-dispositive matters within the meaning of

28 U.S.C. § 636(b)(1)(A), and orders on such motions are set aside or modified [by the district

court] only if clearly erroneous or contrary to law."  *Rothe v. Aballí*, 2021 WL 4429814, at *2

(11th Cir. Sept. 27, 2021); *see also In re Alpine Partners (BVI) L.P.*, 2024 WL 2868457, at *1

(M.D. Fla. May 23, 2024) (holding "an order granting § 1782 relief is non-dispositive for

purposes of 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72"); *In re Sergeeva*, 2015 WL

12866970, at *1-2 (N.D. Ga. Feb. 6, 2015) (collecting cases and applying the "more deferential

clearly erroneous or contrary to law standard" to magistrate judge's order denying motion to

quash discovery under § 1782).  That is because a Section 1782 order "does not address the

8

ultimate merits of the underlying claims" in the foreign proceeding.  *In re Pons*, 614 F. Supp. 3d 1134, 1140-43 (S.D. Fla. 2020) (collecting cases and reviewing for clear error).[1]

"Clear error is a highly deferential standard of review."  *Morissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007).  A magistrate judge's finding is clearly erroneous only "if the reviewing court, after assessing the evidence in its entirety, is left with definite and firm conviction that a mistake has been committed."  *A.R. v. Dudek*, 151 F. Supp. 3d 1309, 1312 (S.D. Fla. 2015).  "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law," and "[i]n the absence of a legal error," a district court may reject the magistrate judge's finding "only if there was an abuse of discretion."  *Id.*

## ARGUMENT

## I.     THE SETTLEMENT AGREEMENT DOES NOT BAR THE APPLICATION.

### A.     The Magistrate Judge Correctly Determined That The Settlement Agreement Does Not Bar the Application Because the English Claims Arise From Misconduct Postdating the Settlement Deed.

Pursuant to the Settlement Agreement, a "Proceeding" is barred only if it relates to a "Claim," and a "Claim" must "relate to" a "Liability."  (ECF No. 44-1 at 12, § 5.1 (the parties "will not . . . bring any Proceedings . . . in relation to any Claims or otherwise assert a Claim against a Defendant Released Party"), 7, § 1.1 ("Claims" defined as "any and all claims relating to any and all Liabilities arising from or related to or in connection with" certain facts and matters).)  "Liabilities" are limited to matters, facts, or conduct that both (i) existed at the time of the Agreement; and (ii) "give rise" to a recoverable right:

---

[1] Even if this Court applies *de novo* review, "[t]he Court need not do over every step done by a magistrate judge on which there was some objection."  *U.S. v. Roseman*, 2021 WL 2453143, at *1 n.1 (S.D. Fla. June 16, 2021).  Rather, this Court may credit credibility or fact determinations.  *See, e.g.*, *Brown v. J.C. Penney Corp., Inc.*, 521 F. App'x 922, 925 (11th Cir. June 11, 2013)

"Liability" and "Liabilities" means any and all liabilities in respect of any **existing (as at the date of this Settlement [Agreement])** matter, fact, action or inaction **giving rise to** any demand, liability, obligation, complaint, claim, counterclaim, right of set-off, right to net, indemnity, right of contribution, cause of action (including, without limitation, in negligence), administrative or regulatory claim or infraction, petition, right or interest of any kind or nature whatsoever, whether in law or equity, direct or indirect, joint or several, foreseen or unforeseen, contingent or actual, accrued or unaccrued, liquidated or unliquidated, known or unknown, disclosed or undisclosed, suspected or unsuspected, howsoever arising in whatever capacity and jurisdiction.  (*Id.* at 10, § 1.1.)

The Magistrate Judge correctly determined that the Settlement Agreement does not bar the Application because the relevant "action or inaction giving rise to" Moussy's claims in the English Proceedings – *i.e.*, the transfer to Monline UK of Monline International's right to provide Parker Services on June 7, 2016 – did not "exist" when the Agreement was executed on April 15, 2016.  (R&R at 17-18.)  To the contrary, Defendant Monline UK "did not even exist" until June 2016.  (*Id.* at 18.)  That determination was correct and certainly not clearly erroneous.

Nevertheless, Beno attempts to circumvent this plain language by moving the target.  He contends that the "central 'matter' at issue" isn't the unlawful transfer giving rise to Moussy's claims, but rather "the 'right' claimed by Monline International to perform Parker Services for compensation," which "existed in March of 2016."  (Obj. at 9-10.)  According to Beno, this was an "unaccrued right" that existed before the Agreement and therefore is a "Liability."  (*Id.*)

As the Magistrate Judge correctly found, the problem with Beno's position is that he misconstrues the scope of the definition's temporal limitation.  Whether or not the "right" existed as of the April 2016 Settlement Agreement is completely irrelevant; what matters is whether the wrongdoing "giving rise" to recovery under that right existed in April 2016.  (R&R at 17; *see also* ECF No. 44-1 at 10, § 1.1.)  In effect, Beno's position is that Monline International's receipt of the right to provide Parker Services in March 2016 is the relevant "action" under the "Liabilities" definition.  But that action "gave rise" to nothing until that right was taken away.

10

(*See* R&R at 18 ("[T]he relevant action here . . . is the allegedly improper transfer of the logistics agreement to Monline UK. . . .  [A] right is not enforceable until there has been a wrong.").) Indeed, the fundamental purpose of a covenant not to sue is to foreclose a party's ability to exercise a right and seek a remedy from the counterparty when there has been an injury.  That is precisely why the "Liabilities" definition requires that there be "liabilities" to begin with (*see* ECF No. 44-1 at 10, § 1.1 ("'Liabilities' means any and all liabilities . . . .")), and there cannot be a liability without a wrong.  *See In re Piper Aircraft Corp.*, 168 B.R. 434, 436-438 (Bankr. S.D. Fla. 1994) (under Bankruptcy Code definition of "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, secured or unsecured," holding "right to payment" does not arise if the wrongdoing "did not result" in injury, and rejecting argument that this "effectively disregards and removes the words 'contingent' and 'unmatured' from the statutory definition"), *aff'd*, *Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp.*, 58 F.3d 1573 (11th Cir. 1995).

That the "Liabilities" definition contemplates recoverable rights is further evidenced by the plain text of the definition.  Florida courts construe contractual terms "in context," and "words that are listed together should be given similar meanings."  *In re Payroll Mgmt., Inc.*, 630 B.R. 627, 640-41 (Bankr. N.D. Fla. 2021).  The definition of "Liabilities" lists a series of rights to recovery that "rise" from a defendant's "action or inaction."  (*See* ECF No. 44-1 at 10, § 1.1 (in addition to a "right," "Liabilities" include a "demand, liability, obligation, complaint, claim, counterclaim, right of set-off, right to net, indemnity, right of contribution, cause of action . . . administrative or regulatory claim or infraction, petition," or "interest").)  Consistent with these other terms, "rights" can only mean an enforceable right that arose from misconduct that occurred by the time of the Settlement Agreement.

Beno attempts to elide this plain language by arguing that the definition encompasses "unaccrued rights," which purportedly includes Monline International's then-unenforceable right "to perform Parker Services for compensation." (Obj. at 9-10.) However, Beno's position that Monline International's right to provide Parker Services "plainly existed in March of 2016" is irreconcilable with his position that this right was "unaccrued." If the right existed in March 2016, then it was fully accrued by that date. No further action was needed to vest that right. This in itself highlights the very issue with Beno's framing: he focuses on the wrong "action" giving rise to the liability. His position that the "Liabilities" definition "specifically applies to 'unaccrued' rights" (*id.* at 10) is nothing but a red herring.

Beno effectively urges this Court to endorse a prospective release that would immunize him from any claims related to the African Businesses until the end of time. Under Beno's interpretation, Moussy would have no recourse whatsoever under any contract entered into before April 2016 – even if Beno breached today – simply because entering the contract was an "action" that "exist[ed] (as at the date of this Settlement [Agreement])." The parties could not have intended such a wholesale abandonment of rights without explicitly saying so. *See, e.g.*, *Redel's Inc. v. Gen. Elec. Co.*, 498 F.2d 95, 98-99 (5th Cir. 1974) (holding release only barred claims as of execution where limited to "liabilities . . . as of the date of the execution of this agreement"); *Chigos v. Werner Co.*, 2014 WL 12596525, at *5-6 (M.D. Fla. Feb. 26, 2014) ("[A] reasonable person would have understood 'products liability claims . . . that exist immediately prior to the Closing' to encompass claims in which an injury has already occurred.").

Finally, Beno argues that Moussy's claims in the English Proceedings must have existed as of April 2016 because the Application seeks discovery pre-dating the Settlement Agreement. (Obj. at 10.) That makes no sense. As Moussy's UK counsel explained in his declaration,

litigants in English proceedings regularly seek discovery pre-dating the existence of the claim. (*See* ECF No. 66-4 at 3, ¶ 10.)  Here, the discovery Moussy seeks is relevant to proving, among other things, his damages vis-à-vis the historical revenues generated by the provision of Parker Services.  That does not mean the claims existed before the unlawful transfer in June 2016.

### B.    The Magistrate Judge Correctly Determined That The Application Is Not A "Claim."

As an alternative grounds for its decision, the Magistrate Judge correctly determined that Moussy's Application is not a "Claim" under the Settlement Agreement.  To the contrary, an "application for discovery under § 1782" is a "purely evidentiary proceeding and thus unlike most litigation."  *U.S. v. Zubaydah*, 595 U.S. 195, 214 (2022) (cited at R&R at 16-17).  A Section 1782 application is "not a bid for relief contained in a pleading, as the Federal Rules describe."  (R&R at 17 (citing Fed. R. Civ. P. 7(a), 12(b)).)  Nor does it comport with the various types of relief and pleading components expressly contemplated in the Settlement Agreement's definition of "Liabilities."  (*Id.* (citing ECF No. 44-1 at 10 § 1); *see also supra* at 10.)

Beno contends that the Magistrate Judge's interpretation "appears nowhere in the Settlement Agreement's plain language."  (Obj. at 8.)  According to Beno, because this Section 1782 proceeding involved "legal process against Respondent, seeking issuance of subpoenas to compel Respondent to produce documents and testify at a deposition," it *ipso facto* constitutes a barred "Proceeding" under the Agreement.  (*Id.* at 8-9.)  Beno is wrong.

First, contrary to what Beno says, the Magistrate Judge explicitly cited the Agreement's definition of "Liabilities" – which omits "discovery requests" from the 15 different types of contemplated relief – as relevant to its determination that Moussy's Application is not a "Claim" against Beno.  (*See* R&R at 17; *see also* ECF No. 44-1 at 7, § 1.1 (defining "Claims" as "claims relating to any and all Liabilities")); *see also Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098,

1104 (11th Cir. 2014) (courts must "read[] the words of a contract in the context of the entire contract and constru[e] the contract to effectuate the parties' intent").

To the extent Beno contends that the covenant not to sue applies notwithstanding that Moussy did not "assert a claim" against Beno, that is also wrong.  (*See* Obj. at 8.)  Although the covenant not to sue bars "Proceedings" brought "in relation to any Claims," a "Claim" is defined as: "**in relation to claims against [] Beno** and Freddy . . . any and all claims relating to any and all Liabilities arising from or related to or in connection with [various facts and circumstances]." (ECF No. 44-1 at 7, § 1.1 (emphasis added).)  Thus, the Agreement's definition of "Claims" contemplates that there first be a "claim against Beno."  Moussy has brought no such claims.[2]

Finally, Beno elides that the Agreement's covenant not to sue is expressly limited to "Proceedings . . . **against** a Defendant Released Party."  (ECF No. 44-1 at 12, § 5.1 (emphasis added).)  Unlike a typical litigation, a Section 1782 proceeding is not "against" an adversary; it is a "purely evidentiary proceeding."  *Zubayduh*, 595 U.S. at 214.  For that reason, Section 1782 applications are routinely filed and granted *ex parte*.  *See, e.g.*, *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1266-67 (11th Cir. 2014) (affirming grant of *ex parte* application).  Although Moussy voluntarily served Beno with the Application, that cannot alone render this proceeding barred by the Agreement.

---

[2] To the extent Beno contends that this Section 1782 action "relates" to a "claim against Freddy," that also fails.  The definition of "Claims" uses the conjunctive "and" rather than the disjunctive "or," indicating that the parties intended the definition to apply to lawsuits or claims involving both parties.  (*See* ECF No. 44-1 at 7, § 1.1 ("in relation to claims against the Beno and Freddy Parties by the Raymond Parties . . . .").)  Where the parties intended to use "or" instead of "and," they expressly did so.  (*See id.* at 8, § 1.1 ("in relation to claims against the R1 Trustees by the Beno and Freddy Parties or the Raymond Parties . . . .").)  In any event, Moussy's claims against Freddy in the English Proceedings do not "relate to" any "Liabilities."

## II.     THE MAGISTRATE JUDGE CORRECTLY DETERMINED THAT IT COULD NOT DISMISS THE APPLICATION EVEN IF THE COVENANT DOES APPLY.

Even if this Court determines that the covenant not to sue applies, it cannot dismiss the Application.  The settling parties agreed that the English Court has "exclusive jurisdiction to settle any Dispute" arising out of the Agreement, including disputes over the covenant's scope, and that they would "not argue to the contrary."  (ECF No. 44-1 at 19, § 18.)  For this reason, the Magistrate Judge correctly recognized that the "English Court must make the ultimate decision about the applicability of the Settlement Agreement."  (R&R at 18 n.6.)  Accordingly, the only issue before this Court is whether Moussy's Application satisfies the requirements of Section 1782, which, as Beno admits, do not "contemplate" whether "a covenant not to sue . . . covers this kind of proceeding."  (*Id.* at 14 & n.4 (quoting ECF No. 78 at 22).)

This makes plain sense.  It is well-established that a court deciding a Section 1782 application "is called upon only to resolve a discovery issue that arises from underlying litigation in foreign jurisdictions."  *In re Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008).  For that reason, U.S. courts refrain from "conduct[ing] a detailed analysis of foreign law, but rather focus[] primarily on fostering the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts."  *In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013).  And, critically, courts "should not feel obliged to involve themselves in technical questions of foreign law relating to subject-matter jurisdiction of foreign or international tribunals."  *In re Bernal*, 2018 WL 6620085, at *7 (S.D. Fla. Dec. 18, 2018) (quoting *In re Seoul Dist. Crim. Ct., Seoul, Korea*, 555 F.2d 720, 723-24 (9th Cir. 1977)).

This Court's role is simply to decide Moussy's Application on the merits and not insert itself as the arbiter of whether a foreign agreement, governed by foreign law, which must be

"exclusively" interpreted by a foreign court, applies to foreign claims pending in a foreign jurisdiction.  That is especially true here given that Freddy Salem recently – for the first time in nearly two years of litigation and only after Moussy filed his Application – asserted the same defense in the English Proceedings that Beno raises here.  (*See* ECF No. 69-1 at 4, ¶¶ 20-21.)  In any event, notwithstanding Freddy's defense, the English Court has not dismissed Moussy's claims on jurisdictional grounds and discovery continues.  Thus, this Court should proceed to the merits of Moussy's Application and refrain from wading into a foreign dispute with the risk of issuing an inconsistent decision.  *See Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004) (courts may apply the "doctrine of international comity . . . to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings").  If the English Court ultimately decides that the Settlement Agreement applies, it is free to reject any discovery granted by this Court.  But that is irrelevant to this Court's analysis.  *See In re N.A. Potash, Inc.*, 2012 WL 12877816, at *8 (S.D. Fla. Nov. 19, 2012) ("[C]ourts should err on the side on ordering discovery, since foreign courts can easily disregard any material that they do not wish to consider."), *report and recommendation adopted*, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013).

Beno fully acknowledges the Settlement Agreement's exclusive jurisdiction clause.  (*See, e.g.*, ECF No. 69-1 at 4, ¶ 20 (affidavit submitted by Beno stating "in light of the forum-selection clause in my opinion the English Court will likely consider that it has exclusive jurisdiction to determine [whether the covenant not to sue applies]").)  However, recognizing that the proper procedure would be for this Court to order discovery and let the English Court decide whether to accept it, Beno instead urges this Court to dismiss for lack of jurisdiction under Rule 12(b)(1).

However, as the Magistrate Judge correctly determined, Rule 12(b)(1) provides no basis to dismiss under a covenant not to sue.  "A covenant not to sue constitutes a promise not to sue a

party on a claim, but does not modify or extinguish the claim itself." *In re W.B. Care Ctr., LLC*, 419 B.R. 62, 73 (Bankr. S.D. Fla. 2009) (cited at R&R at 6, 12).  Accordingly, rather than divest a court of subject-matter jurisdiction, a party's breach of a covenant not to sue merely "gives rise to a counterclaim for damages." *Id.*; *see also Harris Corp. v. Fed. Exp. Corp.*, 670 F. Supp. 2d 1306, 1310 (M.D. Fla. 2009) (covenant did not divest court of jurisdiction over counterclaims of patent unenforceability and inequitable conduct); *Foliar Nutrients, Inc. v. Plant Food Sys., Inc.*, 2014 WL 3510594, at *3-4 (M.D. Fla. July 14, 2014) (covenant did not divest jurisdiction over breach of contract and patent infringement claims).  Moussy is not aware of a single case in this Circuit outside of the patent-invalidity context where a claim was dismissed on jurisdictional grounds based on a covenant not to sue.  Nor does Beno cite any.[3]

Beno acknowledges that courts have never dismissed for lack of jurisdiction beyond the unique patent-invalidity context, but nevertheless contends that "no case in this jurisdiction has previously limited them to that specific context."  (Obj. at 11.)  But courts in this Circuit have. In *Foliar Nutrients*, for example, the Middle District of Florida rejected the argument that a covenant not to sue divested the court of subject matter jurisdiction over the plaintiff's breach of contract and patent infringement claims.  In so holding, the court noted the Declaratory Judgment Act's "unique justiciability requirements" with respect to patent-invalidity claims and held that those requirements "do not extend to patent-infringement claims," which arise under a separate, "independent statutory basis." *Foliar Nutrients*, 2014 WL 3510594, at *3-4.  So too here.

In fact, Beno previously took the position that this Court *does* have jurisdiction.  In an affidavit from UK counsel proffered by Beno, counsel stated that "the English Court would not

---

[3] As the Magistrate Judge explained, patent-invalidity claims are unique because they proceed under the Declaratory Judgment Act, and "[s]ubject matter jurisdiction in a declaratory judgment suit depends upon the existence of a substantial controversy."  (R&R at 6 n.3.)

take the view that this Court has no jurisdiction to quash the 1782 Application.  It would respect any order that this Court makes on Beno Salem's motion to quash."  (ECF No. 69-1 at 2, ¶ 11.) Counsel further stated that the proper remedy for any alleged breach of the covenant would be "an anti-suit injunction as a personal remedy against [Moussy]," which "is not directed to [the Florida] court."  (*Id.* at 2, ¶ 10.)  Beno cannot change course only now that he lost.

Despite making abundantly clear that he brought his Motion to Dismiss exclusively under Rule 12(b)(1), Beno now argues that the Magistrate Judge should have considered his Motion under Rule 12(b)(6) and "convert[ed] [it] to one for summary judgment."  (Obj. at 12; R&R at 13 ("Respondent made clear at the Hearing that he filed the Motion 'under Rule 12(b)(1).'"); ECF No. 78 at 20-22.)  As a preliminary matter, Beno waived this position by not only failing to raise it before the Magistrate Judge, but also affirmatively rejecting it.  *See Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1348 n.6 (11th Cir. 2018) ("As City chose not to include a 12(b)(6) motion along with its 12(b)(1) motion, it has waived the issue.").

In any event, as Beno admits, courts assessing Rule 12(b)(6) motions generally cannot look beyond the pleadings.  (*See* R&R at 13; ECF No. 78 at 21.)  Accordingly, the Magistrate Judge could not consider the Settlement Agreement without converting Beno's Motion to a motion for summary judgment, which it declined to do in its broad discretion.  *See, e.g.*, *Jones v. Auto. Ins. Co. of Hartford*, 917 F.2d 1528, 1531-32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court.").  That exercise of discretion should not be disturbed; indeed, it respects the English Court's exclusive jurisdiction over all disputes relating to the Settlement Agreement.

18

### III.     THE APPLICATION SATISFIES 28 U.S.C. § 1782.

#### A.     The Magistrate Judge Correctly Determined That The English Court Did Not Reject The Discovery Moussy Seeks Here.

Beno objects to the Magistrate Judge's determination that the English Court did not previously reject the type of discovery that Moussy seeks here.  (*See* Obj. at 13-14.)  This is now the third time that Beno or Freddy have raised this defense.  All three courts have unanimously rejected Beno's mischaracterization of the record.  (*See* R&R at 23-24 ("After comparing the discovery requested in the Application to the disclosure disallowed by the English Court, the Court notes that the topics are not identical.  In fact, many of the topics in Applicant's § 1782 subpoena requests were also included in the disclosure the English Court allowed[].")); *In re Salem*, 2024 WL 3026670, at *12 (S.D.N.Y. June 17, 2024) ("Far from announcing a blanket prohibition on all discovery related to the African Businesses, the English Court appeared to recognize the relevance of discovery related to the African Businesses' trading activity. . . .  The suggestion that the English Court . . . deemed irrelevant *all* disclosure concerning the African Businesses is, at best, misguided."); *In re Salem*, 2024 WL 3249355, at *2 (D. Conn. July 1, 2024) (holding the English Court "did not rule that all discovery into the African Businesses is irrelevant").  The Magistrate Judge's factual determination was not clearly erroneous and should not be disturbed even under a *de novo* review.

Even if the English Court had denied the discovery sought through the Application (it did not), that is irrelevant to whether the information is obtainable under Section 1782.  It is black-letter law that "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 260 (2004); *see also In re Clerici*, 481

F.3d 1324, 1333 n.12 (11th Cir. 2007) ("§ 1782 does not impose a foreign-discoverability requirement."); *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011).

> **B.** **Beno Misconstrues The Magistrate Judge's Application Of The "Intrusive Or Burdensome" Discretionary Factor.**

Despite "repeated questioning from the Court" at the merits hearing, Beno "failed to explain exactly how [Moussy's] requests are unduly intrusive or burdensome." (R&R at 25 (citing ECF No. 78 at 40-49).) The Magistrate Judge rejected Beno's "conclusory" objections and found that he could not adequately articulate any undue burden justifying denial of the Application. (*Id.* at 25-26.) Thus, after conducting its own independent analysis of the requests, the Magistrate Judge determined that the requests were "narrowly tailored" and "proportional to [Moussy's] needs." (*Id.* at 26.) That determination was not clearly erroneous.

Nevertheless, Beno contends that the Magistrate Judge "applied an unreasonable standard" that required him to "complete a full review of his documents to establish undue burden." (Obj. at 12-13.) That is a complete mischaracterization of the Report. What the Magistrate Judge actually said was that without "any other tangible information beyond boilerplate objections," it was left with no choice but to base its decision on the language of the requests themselves. (R&R at 25-26.) That is precisely what Beno suggested the Magistrate Judge should do at the hearing. (ECF No. 78 at 46-47.) And, notably, Beno makes the same exact boilerplate objections here. (*See* Obj. at 13 (arguing that the "requests would vastly exceed the scope of permissible discovery, they are overly broad, and they are unduly burdensome")); *see also Pons*, 614 F. Supp. 3d at 1156 (affirming fourth *Intel* factor because "[opponent] still has not identified <u>how</u> complying with the subpoena would be unduly intrusive or burdensome").

## CONCLUSION

For these reasons, Moussy respectfully requests that this Court adopt the Report.

Dated: September 25, 2024

Respectfully submitted,

**FLASTER GREENBERG PC**
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
Tel: (561) 961-4508

*/s/ Meghan C. Moore*
**Meghan C. Moore, Esq**.
Florida Bar No. 668958
Meghan.moore@flastergreenberg.com

Lauren Tabaksblat, Esq.
(admitted *pro hac vice*)
Tyler D. Purinton
(*pro hac vice* forthcoming)
Brown Rudnick LLP
7 Times Square
New York, NY 10036
Tel: 212-209-4800
Fax: 212-209-4801
ltabaksblat@brownrudnick.com

*Counsel for Applicant Moussy Salem*

### CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Meghan C. Moore*