IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| *In re* Application of<br><br>MOUSSY SALEM,<br><br>  Applicant,<br><br>FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM BENO SALEM | Case No. 1:23-cv-23186-KMM |

**BENO SALEM'S MOTION TO STAY LITIGATION PENDING APPEAL AND
INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................ 1
II.    BACKGROUND ................................................................................................................. 2
III.   LEGAL STANDARD.......................................................................................................... 4
IV.    ARGUMENT....................................................................................................................... 5
       A.    Beno Is Likely to Succeed—Or At Least Presents A Substantial Case on the
             Merits—On Appeal........................................................................................................ 5
       B.    Beno Faces Irreparable Harm If Required to Respond and Testify Pending
             Appeal. .......................................................................................................................... 9
       C.    The Balance of Equities Favors a Stay. ...................................................................... 11
       D.    This Court Can Condition a Stay Appropriately......................................................... 12
V.     CONCLUSION.................................................................................................................. 12
       CERTIFICATE OF SERVICE..………………………………………………………….14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*,
 713 F.2d 494 (9th Cir. 1983) ....................................................................................................4

*Alan v. Tyz*,
 No. 08-80935-CIV, 2009 WL 10701024 (S.D. Fla. Apr. 23, 2009)..........................................4

*In re Application of Alves Braga*,
 789 F. Supp. 2d 1294 (S.D. Fla. 2011) .....................................................................................4

*Application of Furstenberg Fin. SAS v. Litai Assets LLC*,
 877 F.3d 1031 (11th Cir. 2017) ................................................................................................4

*Bales v. Bright Solar Mktg. LLC*,
 No. 5:21-CV-496-GAP-PRL, 2022 WL 17718503 (M.D. Fla. Dec. 15, 2022) ..................9, 11

*Bank of New York Mellon v. Figueroa*,
 299 So. 3d 430 (Fla. Dist. Ct. App. 2019) ..............................................................................11

*In re Dennis*,
 330 F.3d 696 (5th Cir. 2003) ....................................................................................................4

*Fuhr v. Credit Suisse AG*,
 687 F. App'x 810 (11th Cir. 2017).............................................................................................4

*Harrison v. Prather*,
 404 F.2d 267 (5th Cir. 1968) ....................................................................................................4

*IPN, LLC v. Bloom*,
 No. 9:24-CV-80453, 2024 WL 3650421 (S.D. Fla. July 10, 2024).........................................10

*Kang v. Noro-Moseley Partners*,
 246 F. App'x 662 (11th Cir. 2007) ........................................................................................8, 9

*In re Kidd*,
 No. 3:20-MC-00016 (KAD), 2020 WL 3035960 (D. Conn. June 5, 2020)............................10

*In re Managed Care Litigation*,
 No. 00-MD-1334, 2010 WL 6532982 (S.D. Fla. Aug. 15, 2010)............................................12

*In re Newbrook Shipping Corp.*,
 31 F.4th 889 (4th Cir. 2022) .....................................................................................................4

*Perma-Liner Indus., LLC v. D'Hulster*,
  No. 8:21-CV-715-CEH-TGW, 2022 WL 1620234 (M.D. Fla. Feb. 3, 2022) ......................... 10

*In re Pros. Direct Ins. Co.*,
  578 F.3d 432 (6th Cir. 2009) ................................................................................................. 11

*Sec. & Exch. Comm'n v. Nat. Diamonds Inv. Co.*,
  493 F. Supp. 3d 1260 (S.D. Fla. 2020) ................................................................................ 4, 5

*Shiman v. Nissan Motor Co.*,
  No. 08-60052-CIV, 2009 WL 10699121 (S.D. Fla. Jan. 8, 2009) ........................................... 4

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) ................................................................................................. 5

*Teamsters Loc. 177 v. United Parcel Serv.*,
  966 F.3d 245 (3d Cir. 2020) .................................................................................................... 5

*Ungaro-Benages v. Dresdner Bank AG*,
  379 F.3d 1227 (11th Cir. 2004) ............................................................................................... 9

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987) .................................................................................................... 11

*ZF Auto. US, Inc. v. Luxshare, Ltd*,
  142 S. Ct. 416 (2021) ............................................................................................................... 9

**Statutes**

28 U.S.C. § 1782 .................................................................................................................... *passim*

**Other Authorities**

Fed. R. App. P. 8 ...................................................................................................................... 1, 4

Fed. R. Civ. P.  45(b)(1) ............................................................................................................... 4

Respondent Beno Salem ("Respondent"), by and through his undersigned counsel and pursuant to Fed. R. App. P. 8, hereby moves for this Court for a stay pending the resolution of its appeal to the United States Court of Appeals for the Eleventh Circuit from its Order (ECF No. 84) ("the Order) entered on September 27, 2024 granting Applicant Moussy Salem's Application for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, (the Application") (ECF No. 1), and denying Respondent Beno Salem's Motion to Dismiss or Stay the Application and for Entitlement to Fees and Costs (ECF No. 30). In support, Respondent states:

## I.   INTRODUCTION

This Section 1782 discovery application comes amid a longstanding dispute between Moussy Salem and his uncles, including Beno,[1] which involved a number of businesses that the family or family-affiliated trusts and other entities own in Africa (the "African Business"). Members of the family executed a settlement agreement with a broad covenant not to bring any more proceedings in respect of any then-existing facts concerning the African Business. Moussy nonetheless asserted a claim that another uncle, Freddy, diverted a supposed contractual right to earn a cost-plus fee for certain services provided to the African Business, calculated purely based on the expenditures incurred in providing those services. Moussy then filed this Section 1782 proceeding against Beno, seeking a wide range of internal documents and a deposition.

In response, Beno both opposed the Section 1782 application and moved to dismiss it, based on, *inter alia*, the settlement agreement (and its covenant not to sue) and the fact that the English Court had previously denied broad requests for information about the African Business as irrelevant. This Court ruled against Beno on these issues, but as set forth below, Beno has strong

---

[1] Because many of the relevant people have the same last name, we refer to them by their first names. This is done merely for clarity, and no disrespect or undue informality is intended.

1

arguments in favor of his reading of the agreement. Further, Beno will lose his ability to appeal if he is compelled to produce documents or attend a deposition on pain of contempt while his appeal is still pending. He thus faces irreparable harm. He is proceeding expeditiously with his appeal in the Eleventh Circuit and Moussy faces no prejudice from a stay.

## II.   BACKGROUND

On April 15, 2016, Moussy, Beno, and other members of the Salem family and entities and trustees associated with them entered into a Settlement Deed to resolve disputes over the African Business. Doc. 30-2. That settlement included a covenant not to sue providing that:

> The Claimants and Robert each agree that they will not (and will procure that their respective Connected Parties will not) bring *any Proceedings* in England and Wales *or in any other jurisdiction against a Defendant Released Party* [which Beno is] *\*\*\* in relation to any Claims* or otherwise assert a Claim against a Defendant Released Party \*\*\*.

Doc. 30-2 at 9-10 (emphasis added).

Moussy thus agreed both (1) not to assert Claims and also (2) to refrain from bringing any Proceedings that even relate to any Claims. This obligation is expressly stated to be enforceable by specific performance, not just by damages. Doc. 30-2 at 10 § 5.4.

Proceedings are defined as "any legal, arbitral, administrative, regulatory or other action or proceedings. Doc. 30-2 at 7 § 1.1. And a Claim is defined expansively as "in relation to claims against the Beno and Freddy Parties by the Raymond Parties, *any and all claims relating to any and all Liabilities arising from or related to or in connection with*," among many other things "*any other matter arising out of or related to or connected with the relationships between the Parties*," provided that the Liabilities "relate to the African Business or to SSF." Doc. 30-2 at 4-5 § 1.1 (emphasis added). And Liabilities, in turn, mean:

> "*any and all liabilities in respect of any existing (as at the date of this Settlement Deed) matter, fact, action or inaction giving rise to*

2

> *any demand*, liability, *obligation*, complaint, *claim*, counterclaim, right of set-off, right to net, indemnity, right of contribution, cause of action (including, without limitation, in negligence), administrative or regulatory claim or infraction, *petition, right or interest of any kind or nature whatsoever*, whether in law or equity, direct or indirect, joint or several, foreseen or unforeseen, *contingent or actual, accrued or unaccrued*, liquidated or unliquidated, *known or unknown*, *disclosed or undisclosed*, *suspected or unsuspected*, however arising in whatever capacity and jurisdiction."

Doc. 30-2 at 7.

Moussy nonetheless bought a claim from the liquidators of a company called Monline International which Moussy alleges (and the English defendants deny) had acquired a contract from a company called Parker to supply services to certain entities under a "cost-plus" fee based solely on expenses incurred in providing those services. *Compare* Doc. 4-1 at 11, with Doc. 69-5 at 5-7, 10-12. The alleged transfer of the contract was in March 2016, the month before the settlement date. Doc. 4-1 at 11. Moussy alleges that the consequence of this is that providing these services and obtaining this cost-plus fee was a corporate opportunity of Monline International, and that it was a breach of fiduciary duty (or a tortious conspiracy to do so) for the English defendants to let an English company called Monline UK allegedly provide services previously provided by Parker instead. Doc. 4 at 9; Doc. 4-1 at 13-15.

Just before a discovery hearing in the English proceeding, Moussy filed this application. Doc. 1. The English court then ruled against broad discovery about the African Business "based on relevance," limiting disclosure there to a few key points such as what the services provided to the African Business were and how much Monline UK had been paid under the cost-plus contract to provide them. *See* Doc. 69-7 at 6-9 (discovery dispute chart); Doc. 69-8 at 29, 31, 43-44.

Magistrate Judge Fulgueira Elfenbein recommended granting the application. Doc. 79. This Court then overruled objections to the report and recommendation and entered an order

3

granting the application. Doc. 84. Beno timely appealed. Doc. 85.[2] Earlier this week, Beno filed his appellate brief. Haverman Decl. Ex. A. The next day, November 21, 2024, during a meet and confer, Moussy's counsel took the position that a October 31 email to Beno's counsel (who were not asked to accept service) attaching the subpoenas and containing no tender of a witness fee for the deposition subpoena was in fact sufficient service of the subpoenas. On the same call, Moussy's counsel refused to agree to stay the subpoenas until the Eleventh Circuit can rule on the appeal, and threatened to file a motion to enforce them.[3] Haverman Decl. ¶ 5. Beno thus now moves for a stay pending appeal.

### III.    LEGAL STANDARD

Pursuant to Fed. R. App. P. 8, this Court has the authority to grant a stay pending an appeal of its orders. "The broad authority to grant a stay extends to 28 U.S.C. § 1782 proceedings." *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1307 (S.D. Fla. 2011). "A party seeking a stay pending appeal must show (1) likelihood of success on the merits of the appeal, (2) irreparable injury to the appellant absent a stay, (3) lack of substantial prejudice to the appellee, and (4) the stay would serve the public interest." *Sec. & Exch. Comm'n v. Nat. Diamonds Inv. Co.*, 493 F.

---

[2] An order granting or denying a Section 1782 application is appealable. *Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1033 (11th Cir. 2017) ("Many of our sister circuits have determined that an order granting or denying a § 1782 application is immediately appealable."); *Fuhr v. Credit Suisse AG*, 687 F. App'x 810, 814 (11th Cir. 2017).

[3]     While Plaintiff has not yet moved to enforce the subpoenas, this position is simply wrong. Rule 45(b)(1) states that "[s]erving a subpoena requires *delivering a copy to the named person* and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." (Emphasis added.) Emailing an attorney is not sufficient service of a subpoena. *See Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968); *In re Newbrook Shipping Corp.*, 31 F.4th 889, 897 (4th Cir. 2022). Additionally, no witness fee or mileage was tendered at the time of service, which renders a subpoena for personal appearance void.  *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003); *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir. 1983); *Shiman v. Nissan Motor Co.*, No. 08-60052-CIV, 2009 WL 10699121, at *4 (S.D. Fla. Jan. 8, 2009); *Alan v. Tyz*, No. 08-80935-CIV, 2009 WL 10701024, at *6 (S.D. Fla. Apr. 23, 2009).

Supp. 3d 1260, 1262 (S.D. Fla. 2020). Alternatively, "if the balance of the equities weighs heavily in favor of granting the stay," then a stay may be granted "if there is a substantial case on the merits presented by the appeal...." *Id*.

### IV.  ARGUMENT

**A.  Beno Is Likely to Succeed—Or At Least Presents A Substantial Case on the Merits—On Appeal.**

As addressed at length in Beno's appellate brief, Beno has a real likelihood of success on appeal, and at a minimum presents a substantial case on the merits that this Court should allow to be litigated as expeditiously as the Eleventh Circuit permits in the Court of Appeals.

*First*, this Court's ruling that the covenant to sue could not be grounds to deny a Section 1782 proceeding because it was not the sort of document central to a complaint that can be considered on a motion to dismiss is wrong. A Section 1782 proceeding is a summary proceeding that is like a motion and has no complaint or other pleadings, and "courts do not resolve these applications for relief using procedures for ordinary civil actions because [the statute] provides for applications to be made and heard as motions rather than the filing of a complaint." *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 254–55 (3d Cir. 2020) (discussing analogous summary proceeding to confirm an arbitration award). The question should have been whether the covenant not to sue was a defense, not whether it was central to a pleading. And it is a defense. "[U]nder the modern view a covenant not to sue, like a release, operates as a complete bar to the underlying litigation." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 n.10 (9th Cir. 2012). Especially where, as here, Section 5.4 of the Settlement Deed provides for the covenant not to sue to be specifically enforceable and not just remediable in damages, it provides grounds to dismiss or deny the application, not for yet more litigation over damages for bringing it.

5

***Second***, this Court's alternate holding that this proceeding is outside the covenant cannot be squared with the Settlement Deed's layers of definitions that are designed to give an expansive reading to the covenant. The covenant provides only that facts creating a "Liability" (which may be unaccrued, contingent on future circumstances, and unknown) need to exist as of the settlement date; once they do, a claim even relating to such a Liability is barred, and the term "Proceeding" exists to clarify that not just the underlying claim but any ancillary proceeding related to it violates the covenant.

Moussy agreed to forswear not just Claims, but also Proceedings "in relation to any Claims." Doc. 30-2 at 9-10 § 5.1. The point of including Proceedings as distinct from claims is precisely to cover ancillary applications like this one that may exist to *assist* with bringing claims but are not within the underlying case where the Claim is being litigation. That is precisely what a Section 1782 proceeding is—a legal proceeding that relates to a foreign claim.

Next, the textual structure of the Settlement Deed covers the English Proceeding within its definition of Claim. The English Proceeding need not itself have existed as of the settlement date; it need only relate to facts that existed as of that date, even if it also relates to other facts.

Here, the definition of "Claim" includes "any and all claims relating to"—a broad phrase— "any and all Liabilities arising from or related to or in connection with"—again, a broad phrase— a list that includes "any other matter arising out of or related to or connected with the relationships between the Parties." Doc. 30-2 at 4-5 § 1.1. There is a qualifier that it has to "relate to the African Business," but that is obviously satisfied here. *Id.* So, if the English Proceeding even just *relates* to Liabilities, as defined by the Settlement Deed, it is a Claim.

And it does relate to Liabilities. Liabilities are "any and all liabilities in respect of any existing (as of [April 15, 2016]) matter, fact, action or inaction giving rise to" a long list of things

6

including sweepingly broad ones like "demand," "obligation," "claim," "petition," and "right or interest of any kind whatsoever." Doc. 30-2 at 7. The English Proceeding falls within this definition because it plainly relates to a "Liability" in respect of facts that existed as of April 15, 2016—the disputed fact as to whether the Parker contract was transferred to Monline International in **March 2016**. Doc. 4-1 at 11. That alleged transfer gives rise to an alleged "obligation," "claim," or "right or interest" to pay fees under that agreement. Doc. 30-2 at 7. The claims in the English Proceeding relate directly to the alleged transfer of this agreement in March 2016 and the fees Moussy claims Monline International should have earned under it. *Compare* Doc. 4-1 at 11, with Doc. 69-5 at 5-7, 10-12. Without that transfer, there is no English case.

And, by the plain text of the provision, it is the "matter, fact, action or inaction" that must exist as of April 15, 2016. Doc. 30-2 at 7. The liability need not exist by then; the liability need only be "in respect of" a fact that existed then. *Id.* And here, in any event, the alleged "Liability" to pay fees under the Parker contract, and the alleged transfer of that right, existed as of March 2016. Doc. 4-1 at 11.

Any contention that the actual cause of action in England had to be complete as of the settlement date is untenable in light of the Settlement Deed's language clarifying that that the obligation, claim, interest, or right, need not even have accrued or may depend on additional facts that did not yet exist. It is "of any kind or nature whatsoever," and specifically includes "contingent" rights—ones that depend on facts that have not yet happened. Doc. 30-2 at 7. It specifically includes "unaccrued" rights, meaning ones that cannot yet be sued upon because additional things have to happen for the cause of action to be complete. *Id.* And it specifically includes "unknown," "undisclosed," and "unsuspected" rights, so none of this turns on whether Moussy knew or even could possibly have known the facts. *Id.* These are the broad terms to which

7

Moussy agreed in the settlement, and they cover the alleged transfer of the Parker contract in March 2016 on which the English litigation depends.

***Third***, even if the covenant did not cover this proceeding, this Court's order authorized discovery that the English court had held was irrelevant to the narrow issues before it, which focus on what services Monline UK provided to the African Business and what it was paid on its 15% cost-plus contract for doing so, not any broader issues about the African business. Section 1782 assistance should have be denied based on "the irrelevance of the requested discovery to the nature of the foreign proceedings." *Kang v. Noro-Moseley Partners*, 246 F. App'x 662, 664 (11th Cir. 2007).

The English case is not about Moussy's supposed rights to the African Business or its profits; it is a case saying that *Monline International* supposedly should have earned some profits on a cost-plus contract for providing services to the African Business. Doc. 69-5 at 13-14; Doc. 69-8 at 31. That is why the English Court ruled that discovery about what services Monline UK provided and how much they cost were relevant. Doc. 69-8 at 43-44. And it is likewise why it *denied* discovery seeking anything else about the African Business as irrelevant, because it does not matter at all what the African Business's revenues, profits, activities, or operations are. *Id.* That is why the English Court said that Issue 9—the request for broad discovery of the African Business—did not matter "based on relevance." Doc. 69-8 at 44. As Deputy Master Scher said, "I do not consider the broad issues of the African business to be a key issue in these proceedings." Doc. 69-8 at 43.

This Court erred in focusing on whether the English Court had enjoined all discovery about the African Business rather than looking at what topics were actually at issue in England because

Section 1782 discovery ultimately must be relevant. As cases like *Kang* hold, foreign irrelevance is a proper basis to deny Section 1782 assistance.

**Fourth**, even if there were any minimal relevance to what Moussy seeks, there is a strong public policy against relitigation and collateral attacks on foreign courts' orders about what is relevant to their own proceedings. These are relevant to, among other things, the third *Intel* factor that covers public policy grounds, both domestic and foreign, and the fourth, which covers issues like proportionality and cumulativeness. Courts here should not encourage shopping for a forum less familiar with the precise issues of the foreign litigation to relitigate relevance, and once the English Court's order is construed correctly, that is what Moussy is doing. Rather, the correct path is to "respect the judgment of [the] foreign tribunal [and] to defer to parallel foreign proceedings." *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004).

In short, there is a likelihood that the Eleventh Circuit will find that this Court either misconstrued the covenant not to sue or that it authorized discovery that the court overseeing the foreign litigation found irrelevant. Either would mean that Beno would prevail at least in part in obtaining reversal of this Court's order granting the Section 1782 application.

> **B.** **Beno Faces Irreparable Harm If Required to Respond and Testify Pending Appeal.**

Next, Beno faces irreparable injury, in the form of losing his ability to obtain review absent a stay. Courts grant stays of Section 1782 orders to prevent parties from having their statutory appeal rights effectively nullified. *See Bales v. Bright Solar Mktg. LLC*, No. 5:21-CV-496-GAP-PRL, 2022 WL 17718503, at *2 (M.D. Fla. Dec. 15, 2022) (granting stay where party would be "unable to timely appeal or object" absent a stay, such that it would suffer irreparable harm); *see also ZF Auto. US, Inc. v. Luxshare, Ltd*, 142 S. Ct. 416 (2021) (granting stay of Section 1782 order

9

sought to prevent mootness of appeal)[4]; *In re Kidd*, No. 3:20-MC-00016 (KAD), 2020 WL 3035960, at *4 (D. Conn. June 5, 2020) (granting stay of Section 1782 subpoenas because otherwise respondents would have to face contempt to obtain review and there was a prospect of the subpoenas being at least narrowed).

Here, Beno faces precisely this dilemma: this Court's order is appealable, but his right to appeal will be rendered moot if he is compelled to comply before his appeal can be heard. Indeed, this case is even clearer than most. Moussy has already agreed that, in the event of a breach of the settlement agreement, "damages are not an adequate remedy" and "injunctive or similar relief is appropriate to restrain" such a breach. Doc. Doc. 30-2, Settlement Agreement § 5.4. This Court accepts and enforces such stipulations. *IPN, LLC v. Bloom*, No. 9:24-CV-80453, 2024 WL 3650421, at *3 (S.D. Fla. July 10, 2024) ("[B]ecause the NDCA contains an acknowledgement by Defendant Safe Payments that 'a violation of the obligations of non-disclosure and confidentiality is likely to lead to irreparable harm,' I accept Plaintiff's contention that injunctive relief is an appropriate remedy, should I find that it has stated a claim for relief."); *Perma-Liner Indus., LLC v. D'Hulster*, No. 8:21-CV-715-CEH-TGW, 2022 WL 1620234, at *11 (M.D. Fla. Feb. 3, 2022) ("This contractual stipulation further supports a finding of irreparable harm.").

Beno recognizes that the Court has disagreed with his positions regarding the settlement agreement and the scope of the English Court's relevance ruling. As set forth above, however, Beno has a likelihood of success on the merits, or at minimum presents a substantial case on the

---

[4] While the Supreme Court's order was unreasoned, the briefs on the stay application and the ruling below make clear that irreparable injury was an issue disputed by the parties, principally regarding the irreparable loss of confidentiality and the risk of mootness absent a stay.

merits, on these two points. Allowing discovery to proceed would cause him irreparable harm because his right to appeal would nullify his appellate and contractual rights without full review.

Finally, irreparable harm is further demonstrated by the fact that the subpoenas seek disclosure of financial information that the English Court has found is not relevant. *See* Part IV.A, *supra*. "[T]he disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant." *Bank of New York Mellon v. Figueroa*, 299 So. 3d 430, 433 (Fla. Dist. Ct. App. 2019). Confidentiality, moreover, is lost once production occurs; the cat cannot be put back in the bag. *See In re Pros. Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) ("[A]n erroneous forced disclosure of confidential information could not be adequately remedied on direct appeal because a court cannot restore confidentiality to documents after they are disclosed"); *In re von Bulow*, 828 F.2d 94, 99 (2d Cir. 1987) ("Although petitioner may ultimately succeed on appeal, his confidential communications will already have been exposed during the trial."). A finding of irreparable harm is warranted on this additional ground.

### C. The Balance of Equities Favors a Stay.

Similarly, the balance of the equities weighs in favor of a stay. Beno faces the loss of his ability to appeal, and the loss of the benefit of his bargain in the settlement agreement to be free of litigation relating to old Liabilities of the African Business and injunctive relief to enforce that bargain. Moussy, meanwhile, faces only having to wait a little longer for discovery. If any hard deadline exists in England, then Moussy can move for expediting the appeal so that it is resolved in time, although his unhurried litigation of this request and lack of any request for expedited proceedings in this Court places the responsibility for much of the wait on him.

The public interest also favors a stay, so that Beno can exercise his statutory right to review of the orders of this Court. *Bales*, 2022 WL 17718503, at *2. The public interest also favors a stay

because there is a strong public interest in enforcing settlement agreements. *See e.g.*, *In re Managed Care Litigation*, No. 00-MD-1334, 2010 WL 6532982, at *13 (S.D. Fla. Aug. 15, 2010) (internal quotations and citations omitted), *report and recommendation adopted*, 2011 WL 1522561 (Mar. 8, 2011). (Florida courts "strongly favor[] the enforcement of settlement agreement in all types of litigation.").

        **D.**    **This Court Can Condition a Stay Appropriately.**

While Beno believes that a stay of all proceedings on the subpoenas is appropriate pending appeal, if the Court believes that some aspects of these proceedings should continue, it has broad discretion to order a partial stay, such as staying the deposition subpoena and directing the parties to continue to meet and confer on the document requests while staying the obligation to actually produce documents for a reasonable time to allow the Eleventh Circuit to act.

In any event, if the Court denies a stay, Beno respectfully requests that it issue a temporary administrative stay for 28 days to permit Beno to seek a stay from the Eleventh Circuit and to allow the Eleventh Circuit to act on that request in an orderly manner.

        **V.**    **CONCLUSION**

For the foregoing reasons, Respondent respectfully requests this Court stay its order pending the resolution of his appeal to the United States Court of Appeals for the Eleventh Circuit.

Respectfully submitted,

Dated: December 3, 2024

STEPTOE LLP
By: */s/ Elise K. Haverman*

Elise K. Haverman
Florida Bar No. 1003004
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-8000

12

        Fax: (202) 429-3902
        ehaverman@steptoe.com

        Nathaniel J. Kritzer (appearing *pro hac vice*)
        1114 Avenue of the Americas
        New York, New York 10036
        Tel: (212) 506-3900
        Fax: (212) 506-3950
        nkritzer@steptoe.com
        *Counsel for Respondent, Beno Salem*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3rd, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Elise K. Haverman*
Elise K. Haverman