# EXHIBIT 1

**Case No. 24-13237**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

**In re Application of
MOUSSY SALEM**
*Applicant-Appellee*

**v.**

**BENO SALEM**
*Respondent-Appellant*

---

On Appeal from the United States District Court for the Southern
District of Florida, Case No. 1:23-cv-23186-MOORE/Elfenbein

---

**APPELLANT'S OPENING BRIEF**

---

**STEPTOE LLP**
Nathaniel J. Kritzer
Joseph M. Sanderson
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
*nkritzer@steptoe.com*
*josanderson@steptoe.com*

i

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Federal Rule of Appellate Procedure 26.1 and

Eleventh Circuit Rule 26.1, Appellant Beno Salem provides the

following Certificate of Interested Person:

- **Aghai, Ezra** – Defendant in English Litigation

- **Becerra, Jacqueline** – Formerly-Assigned Magistrate Judge Below

- **Berger, James E.** – Former Counsel for Appellee/Applicant

- **Brensilber, Jamie** – Former Counsel for Appellee/Applicant

- **Brown Rudnick LLP -** Counsel for Appellee/Applicant.

- **Collins, Erin** – Former Counsel for Appellee/Applicant

- **Davies, Martin** – Declarant and Former Solicitor to Freddy Salem in English Litigation

- **DLA Piper LLP (US)** – Former Counsel for Appellee/Applicant

- **Flaster Greenberg** – Counsel for Appellee/Applicant

- **Fleischer Lous, Lauren** – Formerly-Assigned Magistrate Judge Below

- **Fulguiera Elfenbein, Marty** – Magistrate Judge Below

- **Gestcom International Trading Offshore SAL/Gee Trading (Offshore) SAL** – Company Alleged By Appellee/Applicant to be Successor to Morsgate International Limited in English Litigation

- **Goldring, Simon** – Declarant and Solicitor to Appellee/Applicant in English Litigation

- **Guernsey Global Trust Limited, As Trustee of the R1 Settlement, F1 Settlement, and B1 Settlement** – Party to Settlement Deed

- **Guzman, Andrea** – Former Counsel for Appellee/Applicant

- **Haverman, Elise Kyla** – Counsel for Appellant/Respondent

- **Ingram Winter Green LLP -** Solicitors for Monline UK Limited and Ezra Aghai in English Litigation

- **JMW Solicitors LLP** - Solicitors for Igal Levy, As Representative of the Estate of Salim Levy, in English Litigation

- **Josephy, Nicole Angela** – Counsel for Appellee/Applicant

- **Kritzer, Nathaniel J.** – Counsel for Appellant/Respondent

iii

- **Latham & Watkins (London) LLP** – Former Solicitors to Freddy Salem in English Litigation.

- **Levy, Igal, As Representative of the Estate of Salim Levy** – Defendant in English Litigation

- **Levy, Salim (Deceased)** – Defendant in English Litigation

- **Marsh, Nicholas** – Declarant and Solicitor to Freddy Salem in English Litigation

- **Meade, Jason E.** – Former Counsel for Appellant/Respondent

- **Monline International Limited (In Liquidation)** – Assignor of Appellee/Applicant's claims in English Litigation

- **Monline UK Limited** – Defendant in English Litigation

- **Moore, K. Michael** – District Judge Below

- **Moore, Meghan Chandler** – Counsel for Appellee/Applicant

- **Morsgate International Limited** – Original Counterparty to Contract at Issue in English Litigation

- **Parker Logistics Limited** – Purported Assignor of Contract at Issue in English Litigation

- **Quinn Emanuel Urquhart & Sullivan UK LLP** – Solicitors to Freddy Salem in English Litigation

- **Rothschild Switzerland (CI) Trustees Limited, As Trustee of the R1 Settlement, F1 Settlement, and B1 Settlement** – Party to Settlement Deed

- **Rothschild Trust Guernsey Limited, As Trustee of the R1 Settlement** – Party to Settlement Deed

- **Rothschild Trust (Schweiz) AG, As Trustee of the F1 Settlement** – Party to Settlement Deed

- **RTB Trustees AG, As Trustee of the B1 Settlement** – Party to Settlement Deed

- **Salem, Beno Moussa** – Appellant/Respondent and Party to Settlement Deed

- **Salem, Faraj Moussa ("Freddy")** – Defendant in English Litigation and Party to Settlement Deed

- **Salem, Mireille Raymond** – Party to Settlement Deed

- **Salem, Moussa Raymond ("Moussy")** – Appellee/Applicant and Party to Settlement Deed

- **Salem, Robert David** – Party to Settlement Deed

- **Sanderson, Joseph Myer** – Counsel for Appellant/Respondent

v

- **Steptoe LLP** – Counsel for Appellant/Respondent

- **Sun, Charlene C.** – Former Counsel for Appellee/Applicant

- **Tabaksblat, Lauren** – Counsel for Appellee/Applicant

- **Turnor Gardner LLP, formerly known as Maurice Turnor Gardner LLP** – Former Solicitors to Appellee/Applicant in English Litigation

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that oral argument would be of assistance to the Court because this case presents the opportunity to clarify (i) the admissibility of matters outside the initial application in opposition to a summary proceeding such as a Section 1782 application; and (ii) the public policy against using Section 1782 applications to collaterally attack foreign courts' relevance determinations.

Additionally, the Court may find it helpful to its understanding of the case to have counsel present to ask questions about (i) the English ruling regarding the relevance of broad discovery regarding the African Business, which the Court below appears to have misread; and (ii) the way the definitions and other provisions relevant to construing the covenant not to sue interact with one another.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES...........................................ii

STATEMENT REGARDING ORAL ARGUMENT ...............................vii

TABLE OF CONTENTS ........................................................................viii

TABLE OF AUTHORITIES....................................................................x

INTRODUCTION....................................................................................1

JURISDICTIONAL STATEMENT ........................................................6

STATEMENT OF THE ISSUES..............................................................7

STATEMENT OF THE CASE .................................................................8

A.   The African Business and Settlement Deed....................................8

B.   The English Litigation Over the Cost-Plus Contract for Certain
     Services.........................................................................................11

C.   Moussy Seeks Sweeping Discovery in England, and Is Turned
     Down "Based on Relevance."........................................................13

D.   Moussy Seeks Sweeping § 1782 Discovery and the District Court
     Grants the Application and Denies Beno's Motion to Dismiss
     Based on the Covenant Not to Sue. ..............................................18

SUMMARY OF THE ARGUMENT ......................................................21

ARGUMENT ..........................................................................................23

I.   Standard of Review.........................................................................23

II.  The Covenant Not To Sue Is A Defense to A Section 1782
     Application. ...................................................................................24

III. Because This Is A Proceeding Relating to A Claim Relating To
     Liabilities In Respect of Facts That Existed As Of April 15, 2016, It
     Is Barred By the Covenant Not To Sue............................................27

A.   "Proceedings *** In Relation to Any Claims" Includes Ancillary
     Applications Like This One...........................................................28

B.   Because the English Litigation Relates to Liabilities "In Respect
     of" Facts Existing as of April 15, 2016, It Is A Claim. ..................30

IV. Sweeping Discovery About The African Business Is Irrelevant to the English Dispute. ................................................................................... 35

V.  The English Court's Ruling That Broad Discovery of The African Business Was Irrelevant Was Entitled to Comity. ........................... 39

CONCLUSION ...................................................................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Bracha Found.*,
  663 F. App'x 755 (11th Cir. 2016)......................................................... 38

*Application of Furstenberg Fin. SAS v. Litai Assets LLC*,
  877 F.3d 1031 (11th Cir. 2017)............................................................... 7

*In re Application of Salem*,
  No. 23-CV-23186, 2024 WL 4464288 (S.D. Fla. Aug. 28,
  2024), *report and recommendation adopted*, 2024 WL
  4314771 (S.D. Fla. Sept. 27, 2024) ........................................................ 8

*In re Escallon*,
  323 F. Supp. 3d 552 (S.D.N.Y. 2018)................................................... 41

*In re FFS Data, Inc.*,
  776 F.3d 1299 (11th Cir. 2015)......................................... 29, 32, 33, 34

*Fuhr v. Credit Suisse AG*,
  687 F. App'x 810 (11th Cir. 2017).......................................................... 7

*Ins. Concepts, Inc. v. W. Life Ins. Co.*,
  639 F.2d 1108 (5th Cir. 1981)............................................................. 42

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).............................................................................. 40

*Kang v. Noro-Moseley Partners*,
  246 F. App'x 662 (11th Cir. 2007)
  ........................................................................................... 35, 38, 39

*Murchison v. Grand Cypress Hotel Corp.*,
  13 F.3d 1483 (11th Cir. 1994)............................................................. 42

*Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*,
  320 F.3d 1260 (11th Cir. 2003)........................................................... 24

*S.E.C. v. McCarthy,*
   322 F.3d 650 (9th Cir. 2003) ............................................................. 25

*Seguros Tepeyac, S. A., Compania Mexicana de Seguros*
   *Generales v. Jernigan,*
   410 F.2d 718 (5th Cir. 1969) .............................................................. 41

*Skilstaf, Inc. v. CVS Caremark Corp.,*
   669 F.3d 1005 (9th Cir. 2012) ............................................................ 26

*Teamsters Loc. 177 v. United Parcel Serv.,*
   966 F.3d 245 (3d Cir. 2020) ............................................................... 25

*In re Tel. Media Grp. Ltd.,*
   No. 23-MC-215, 2023 WL 5770115 (S.D.N.Y. Sept. 6,
   2023) ............................................................................................... 41

*In re Top Matrix Holdings Ltd.,*
   No. 18 MISC. 465 (ER), 2020 WL 248716 (S.D.N.Y. Jan.
   16, 2020) ......................................................................................... 41

*Ungaro-Benages v. Dresdner Bank AG,*
   379 F.3d 1227 (11th Cir. 2004) .......................................................... 41

*United States v. Firestone Tire & Rubber Co.,*
   455 F. Supp. 1072 (D.D.C. 1978) ....................................................... 25

*Victoria, LLC v. Likhtenfeld,*
   791 F. App'x 810 (11th Cir. 2019) ...................................................... 23

**Statutes**

28 U.S.C. § 1291 ................................................................................... 7

28 U.S.C. § 1331 ................................................................................... 6

28 U.S.C. § 1782 ................................................1, 2, 3, 4, 5, 6, 7, 8, 18,
               19, 21, 23, 24, 25, 26, 28, 35, 38, 39, 40, 41

**Other Authorities**

Fed. R. Civ. P. 12(b).............................................................................2

Fed. R. Civ. P. 26(b)(1) .......................................................................13

Practice Direction 57AD § I (Eng.)..............................................13, 14

## INTRODUCTION

This appeal arises from a longstanding intra-family dispute in which Applicant-Appellee Moussy Salem[1] has repeatedly sued his family members over the allocation of a fortune relating to certain African businesses (together, the "African Business"). To end that litigation, members of the family executed a settlement agreement with a broad covenant not to bring any more proceedings in respect of any then-existing facts concerning the African Business. In violation of this covenant, Moussy brought a proceeding in the District Court against Beno Salem under 28 U.S.C. § 1782 relating to his claim alleging that a British Virgin Islands entity–known as Monline International–should have benefitted from rights concerning the African Business provided to it before the settlement agreement was signed.

Beno filed a motion to dismiss the proceeding and also opposed the 28 U.S.C. § 1782 petition on the ground that it violated the settlement agreement. Construing the motions below, the District Court—adopting the report and recommendation of the Magistrate Judge—ruled that (1) a

---

[1] Because many of the parties involved have the same last name, we refer to them by first name. This is done merely for clarity, and no disrespect or undue informality is intended.

covenant not to sue is not a proper basis for a Rule 12(b) motion in a proceeding under Section 1782; (2) a court cannot consider a settlement agreement in connection with a petition for Section 1782 relief, because the Supreme Court's opinion in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), did not address settlement agreements; (3) the Section 1782 proceeding is not the type of "proceeding" barred by the covenant; and (4) the broad language of the covenant did not reach claims that had not yet accrued, even though the covenant specifically includes "unaccrued" claims within its reach. Doc. 84 (Order); Doc. 79 (R&R).[2]

Beno respectfully submits that these rulings, each of which presents a question of law that the Court may review *de novo*, were in error. First, as other district court decisions in this circuit have held, a covenant not to sue is properly considered on a motion to dismiss, as Beno filed, and in any event as a ground to deny the application. Second, the factors articulated in the Supreme Court's opinion in *Intel* did not create a straightjacket into which all Section 1782 petitions must be squeezed.

_____

[2] Citations to District Court docket entries are in the form "Doc. [Number]," with pincites to the page number assigned by the ECF system where applicable.

*Intel* did not involve a settlement agreement and nothing within that decision remotely suggests that a covenant not to bring a proceeding must be ignored simply because the proceeding is one under Section 1782. Third, a Section 1782 petition is plainly a "Proceeding[]" under the covenant, which defined that term to include "any legal, arbitral, administrative, regulatory or other action or proceedings." Doc. 30-2 at 7 § 1.1. Fourth, the District Court's ruling interpreting the covenant simply overlooked its plain language. It is not so limited as the District Court suggested, as the covenant expressly extends to Claims that relate to Liabilities in respect of facts giving rise to rights that are "unaccrued," "contingent," and "unknown." Doc. 30-2 at 7 § 1.1.

Simply, if Moussy wanted a carve-out from a broad covenant not to sue for proceedings seeking discovery, he should have negotiated for it. And if he wanted a carveout where some facts predate the settlement date but others do not, then he should have asked for that as well. The District Court's interpretation to the contrary defeats the express language and purpose of the covenant.

If allowed to stand, the District Court's ruling would create a troubling precedent constricting the freedom to contract for "peace" in

litigation. Without any mechanism to dismiss or deny a Section 1782 proceeding based on a settlement agreement, no party could bargain away the right to seek disclosure under that statute. That, in turn, would discourage settlements, a result directly contrary to well-settled policies that guide this Court. This would also increase the burden on respondents and the courts. The rulings below lack sound basis in procedure or in the language of the covenant and they should be reversed.

The District Court next erred in allowing discovery regarding the African Business to go forward despite the English Court's express refusal to allow discovery on the "broad issues of the African Business." Doc. 69-8 at 43-44. In fact—recognizing that the issue that matters in England is only how much the African Business *spent* on services supposedly covered by the contract, not any other aspect of the African Business's finances or activities—the English Court rejected broad discovery into the composition of the African Business, how the African Business operated, and multiple other requests regarding "the broad issues of the African Business," all "based on relevance." *Id.*

The District Court should have recognized that the English Court's relevance rulings mattered to the Section 1782 application here.

4

The English Court refused requests seeking to fish into the activities of the African Business more generally because the issue before it is how much Monline International should supposedly have earned on a cost-plus contract calculated solely based on *expenses* for covered services. *Id.* But, relying largely on a different Section 1782 order presently on appeal that misunderstood the English case as being about the profits of the African Business itself rather than Monline International's hypothetical cost-plus fee, the District Court got this wrong too. As in the New York Section 1782 proceeding, the District Court fundamentally misunderstood what mattered in the English Proceeding, confusing *Monline UK's fee based on 15% of Monline UK's expenditures*, which Moussy says should have gone to Monline International instead and which *are* subject to discovery in England, with *the entire African Business's revenues and profits*, which are *irrelevant* to any issue in that case. Moussy's case asserts that Monline International should have earned a 15% fee based on *expenditures* (a "cost plus" structure) to provide *certain services* to the African Business, but that the defendants in England supposedly let different companies

provide those services and earn the fees instead. *See* Doc. 69-5 at 13-14; Doc. 69-8 at 31.[3]

Section 1782 is not meant to be used as a second bite at the apple for documents the court most familiar with the foreign litigation found irrelevant. Irrelevant documents are useless for the stated purpose for which they are sought, and it is contrary to the principle of comity to use a Section 1782 application to collaterally attack foreign rulings about what actually matters, effectively sanctioning global forum shopping for judges who have less familiarity with the case in order to evade unfavorable foreign rulings. American district courts should not be used as courts of appeal for global discovery disputes.

For these reasons, this Court should reverse.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and § 1782. It entered its final order granting Moussy's application and denying Beno's motion to dismiss on September 27, 2024. Doc. 84. Beno timely filed a notice of appeal on October 2, 2024.

---

[3] On occasion, the 15% fee is mistranscribed as "50%" in the English transcript.

Doc. 85. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

*See Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d

1031, 1033 (11th Cir. 2017) ("Many of our sister circuits have

determined that an order granting or denying a § 1782 application is

immediately appealable."); *Fuhr v. Credit Suisse AG*, 687 F. App'x 810,

814 (11th Cir. 2017).

## STATEMENT OF THE ISSUES

The issues presented for this Court's review are:

1.     Did the District Court err in ruling that an agreement not to

bring a proceeding may not be raised as a defense to a Section 1782

proceeding, whether by motion or in opposition to the requested relief?

2.     Did the District Court err in ruling that a proceeding

seeking discovery in aid of foreign proceedings was not a "Proceeding,"

defined in the contract to mean "any legal, arbitral, administrative,

regulatory or other action or proceedings"?

3.     Did the District Court err in ruling that the covenant not to

sue did not encompass a proceeding relating to claims unaccrued at the

time of settlement, where the Covenant specifically extends to any

(i) Proceedings relating to (ii) a Claim that ***relates to*** (iii) any liability,

7

whether accrued or **unaccrued**, in respect of (iv) facts that existed when the covenant was executed?

4.      Did the District Court err in determining that, despite the English High Court finding evidence regarding broad issues of the "African Business" irrelevant, it should exercise its discretion in favor of granting discovery regarding the "African Business"?

## STATEMENT OF THE CASE

This appeal arises from an order of the United States District Court for the Southern District of Florida (Moore, J.), adopting a report and recommendation (Elfenbein, M.J.) to grant Moussy's application for discovery in aid of the English Proceeding under 28 U.S.C § 1782 and deny Beno's motion to dismiss based on, among other things, the covenant not to sue. The decisions below are unpublished but available at *In re Application of Salem*, No. 23-CV-23186, 2024 WL 4464288 (S.D. Fla. Aug. 28, 2024), *report and recommendation adopted*, 2024 WL 4314771 (S.D. Fla. Sept. 27, 2024).

### A.      The African Business and Settlement Deed.

Moussy and Beno are members of the Salem family—the children and grandchildren of Moussa Salem and Perla Ishak Yael. Moussa had

four children: the late Raymond, who is Moussy's father; Beno; Freddy; and the late Isaac. Doc. 4 at 6. In the English litigation, these are known as the R, B, F, and I branches of the Salem family. *Id.*

Moussy has been suing his uncles and various other family members, trusts, entities, and others for many years, and on April 15, 2016, the parties entered into a broad settlement agreement to resolve litigation over the family's African Business. Doc. 30-2. As relevant here, the settlement agreement contains broad releases and accompanying covenants not to sue about anything that relates to any facts existing as of the settlement date.

The covenant not to sue, Section 5.1(a) provides as follows:

> The Claimants and Robert each agree that they will not (and will procure that their respective Connected Parties will not) bring *any Proceedings* in England and Wales *or in any other jurisdiction against a Defendant Released Party* [which Beno is] *** *in relation to any Claims* or otherwise assert a Claim against a Defendant Released Party ***.

Doc. 30-2 at 9-10 (emphasis added).

That is, Moussy agreed both (1) not to assert Claims and also (2) to refrain from bringing any Proceedings that even relate to any Claims. This obligation is expressly stated to be enforceable by specific performance, not just by damages. Doc. 30-2 at 10 § 5.4.

In turn, Proceedings are defined as "any legal, arbitral, administrative, regulatory or other action or proceedings. Doc. 30-2 at 7 § 1.1. And a Claim is defined expansively as "in relation to claims against the Beno and Freddy Parties by the Raymond Parties, *any and all claims relating to any and all Liabilities arising from or related to or in connection with*," among many other things "*any other matter arising out of or related to or connected with the relationships between the Parties*," provided that the Liabilities "relate to the African Business or to SSF." Doc. 30-2 at 4-5 § 1.1 (emphasis added). And Liabilities, in turn, mean:

> "*any and all liabilities in respect of any existing (as at the date of this Settlement Deed) matter, fact, action or inaction giving rise to any demand*, liability, *obligation*, complaint, *claim*, counterclaim, right of set-off, right to net, indemnity, right of contribution, cause of action (including, without limitation, in negligence), administrative or regulatory claim or infraction, *petition, right or interest of any kind or nature whatsoever*, whether in law or equity, direct or indirect, joint or several, foreseen or unforeseen, *contingent or actual, accrued or unaccrued*, liquidated or unliquidated, *known or unknown, disclosed or undisclosed, suspected or unsuspected, however arising in whatever capacity and jurisdiction.*"

Doc. 30-2 at 7.

Thus, Moussy agreed to forswear bringing Proceedings related to a Claim that is even related to Liabilities—defined not just in some narrow sense of accounting liabilities or actual obligations to pay, but rather as any right whatsoever—as long as any of the many things falling within the broad heading Liabilities existed as of April 15, 2016.

## B.    The English Litigation Over the Cost-Plus Contract for Certain Services.

The English litigation is focused on a particular transaction—the supposed assignment of a contract under which one Salem family company, Parker Logistics, earned service fees based on a percentage of costs incurred to provide various logistical and management services to the family "treasury" company, Morsgate. Doc. 4-1 at 37. Moussy says (and the English defendants deny) that this contract was assigned to a different company called Monline International. *Compare* Doc. 4-1 at 11, with Doc. 69-5 at 5-7, 10-12. This transfer, Moussy admits, occurred in March 2016. Doc. 4-1 at 11. "Shortly after," in Moussy's own words, the services previously performed by Parker were allegedly taken over by another business, Monline UK. Doc. 4 at 9. Moussy, suing as assignee of Monline International, says this was a diversion of a business opportunity that should have gone to Monline International to

11

Monline UK. Doc. 4-1 at 13. This, he claims, was a breach of fiduciary duties owed by Freddy to Monline International, a gratuitous transfer of Monline International's assets, and a tortious conspiracy to deprive Monline International of its assets. Doc. 4-1 at 13-15.

Parker's revenue under the logistics services agreement that was supposedly assigned to Monline International—the alleged business opportunity that Moussy claims Monline UK (and Freddy) diverted from Moussy's assignor Monline International—was a fee equal to 15% of its own costs for providing the Services. Doc. 69-5 at 4. It thus did not depend on the financial performance of the African Business. Moussy also says that he and his branch of the family has been excluded from management of the African Business in 2013 and has received less profits since that. Doc. 4 at 7. But he does not argue that those are the claims he has asserted in England or that those facts matter in any way to the issues before the English Court; to the contrary, that is precisely what the Settlement Deed resolved. Doc. 30-2 at 4-6 § 1.1 (defining "Claims" released).

### C.     Moussy Seeks Sweeping Discovery in England, and Is Turned Down "Based on Relevance."

Disclosure in the Business and Property Courts in England, where the English Proceeding was assigned, bears a close resemblance to document discovery in the United States. Much as Federal Rule of Civil Procedure 26(b)(1) allows discovery of "nonprivileged matter that is relevant to any party's claim or defense," English disclosure must be "directed to the issues in proceedings." Practice Direction 57AD § I ¶ 2.4. Much as Rule 26(b)(1) requires that discovery be "proportional to the needs of the case," English disclosure must be "reasonable and proportionate." Practice Direction 57AD § I ¶ 2.4. And when parties ask for "extended disclosure," they request searches for and production of documents—favorable or unfavorable—related to particular issues. Practice Direction 57AD § I ¶¶ 6-7. The Practice Directions encourage the parties to limit these requests to "key issues in dispute," meaning that they should avoid "common ground" and focus on issues that "will need to be determined by the court with some reference to contemporaneous documents in order for there to be a fair resolution of the proceedings." Practice Direction 57AD § I ¶ 7.6. There are five "models" of extended disclosure; all of them require disclosure of known

13

adverse documents, with the more intensive models requiring searches for documents (favorable or unfavorable) related to those issues.

Practice Direction 57AD § I ¶ 8.

Likely as part of a plan to get information about the African Business to use for unrelated purposes, Moussy propounded discovery requests in the English litigation that sought "Model D" document disclosure (which includes searching for documents) about the following subjects:

9.  a)   What was the composition of the trading business in Africa associated with the Salem family (African Business) from 2013 onwards and how did it operate?

b)   What role did Morsgate play in the African Business from 2013 onwards?

c)   What role did Parker play in the African Business from 2013 until 30 March 2016?

d)   What role did [Moussy Salem], [Freddy Salem], [Salim Levy] and [Ezra Aghai] play in the African Business, Morsgate, Parker and [Monline UK] from 2013 onwards?

e)   What role did [Monline UK] play in the African Business from 7 June 2016?

Doc. 69-7 at 8-9.

The English Defendants objected, principally on the basis that anything actually placed at issue by the pleadings was already covered by other requests and that any damages would be on a "cost-plus" basis, so the Court only needed to know what the Services were and how much they cost, not anything else about the African Business. Doc. 69-8 at 31.[4] On other issues, such as whether Monline UK had provided the services previously provided by Parker to anyone else (Topic 8(g)), the parties agreed some discovery was appropriate but disagreed as to the appropriate method. Doc. 69-8 at 29.

The judge overseeing discovery, Deputy Master Scher, held a lengthy oral argument about discovery, including a careful analysis of what matters were placed at issue by the pleadings and whether other requests already covered them. Doc. 69-8 at 18-50. A significant portion of that argument focused on the relevance of the African Business, which was the only issue by the time of argument where the question

---

[4] The English Court reporter appears to have mistranscribed the cost-plus fee of 15% as "50%," but the contract makes clear it is 15%. Doc. 69-5 at 13-14.

was whether any discovery was appropriate rather than the scope of

discovery. Doc. 69-8 at 30-44.

Ultimately, he concluded, nothing actually at issue in the English

litigation turned on the requests for discovery about the African

Business and he disallowed the disclosure request, issuing the following

ruling:

> THE DEPUTY MASTER: Okay, thank you. ***I am not
> going to direct issue 9(a) to (e) to be part of the list of
> issues for disclosure. They can all go. The reason is
> that I do not consider the broad issues of the African
> business to be a key issue in these proceedings.*** I note
> that there is evidence of a wider family dispute in which
> these documents may be relevant but ***my decision is not
> based on the allegation of collateral purpose, it is
> based on relevance***. I have looked closely at the
> pleadings; I have been taken to the relevant passages by
> counsel and I have listened to what counsel have said. It
> seems to me that the main relevance of the African
> business is the third and fourth defendants' role in it. To
> put the Parker services in context, I have considered that
> carefully and I have decided that the Parker services are
> sufficiently contextualised by issue 8(b), which is what
> services did Parker supply to Morsgate pursuant to the
> Parker Logistics agreement, and the remainder of the
> other issues in 8, including 8(g), which we kept in? Mr
> Hubbard, did we keep 8(g) in?
>
> MR HUBBARD: Yes, we did.
>
> THE DEPUTY MASTER: Yes, we did, indeed, so that is
> sufficiently covered. As for the third and fourth
> defendants' role in the Africa business, I consider that to

16

be sufficiently covered by 7(a), subject to one point which is a broadening of the model for extended disclosure to model D plus narrative documents, or with narrative documents. That should give the claimants sufficient material to consider to properly understand D3 and D4's role in the African business. Have I got the issue wrong, Mr McLoughlin, you look concerned there, did I mislabel it?

MR McLOUGHLIN: I wondered whether, either before or just now, the court intended to refer to 7(a) or 7(b), both were the subject of----

THE DEPUTY MASTER: It was 7(b), was it not? Forgive me, thank you.

MR McLOUGHLIN: I only say that because I think that is the reference used earlier, but that might have been the wrong reference, not your current one.

MR AL-ATTAR: I think it is 7(b) being nomineeship and trusteeship, the narrative.

THE DEPUTY MASTER: Yes, it is 7(b), thank you for identifying that point. So no to issue 9(a) to (e), and I have given my reasons for that.

Doc. 69-8 at 43-44.[5]

---

[5] The other discovery requests referenced in the ruling generally relate to the formation of Monline UK and related dealings (Issue 7(a)), whether Messrs. Levy and Aghai held their shares on trust for Freddy (Issue 7(b)), and whether Monline UK supplied services previously provided by Parker and, if so, on what terms (Issue 8(g)). Doc. 69-7 at 6-8.

17

In short, the English Court found that broad searches on these subjects were irrelevant; anything that did matter was already covered by other requests.

### D.   Moussy Seeks Sweeping § 1782 Discovery and the District Court Grants the Application and Denies Beno's Motion to Dismiss Based on the Covenant Not to Sue.

Just before the English discovery hearing, Moussy filed this application. Doc. 1. The requests included extraordinarily sweeping requests for documents about the African Business as a whole. Doc. 1-2.

On August 28, 2024 Magistrate Judge Fulgueira Elfenbein recommended granting the Section 1782 application and denying Beno's motion to dismiss based on the covenant not to sue. Doc. 79. After finding that the covenant not to sue did not deprive the court of subject-matter jurisdiction, the report and recommendation held that it could only be considered at all if it was the type of document that could be considered on a motion to dismiss a complaint. Doc. 79 at 10-15.

Then, in the alternative, it held that the covenant not to sue did not apply. While the definitions were "broad," it held, a § 1782 application "is not a claim in the traditional sense." Doc. 79 at 16. It did not discuss, however, whether it was a Proceeding that related to a

18

Claim. Similarly, it held that the Section 1782 request and the claims in the English litigation did not exist as of the time of the Settlement Deed. Doc. 79 at 17. It rejected Beno's argument that a core, disputed fact in the English Proceedings—that Parker transferred its contract to Monline International in March 2016—sufficed because *other* allegations in the English Proceeding included post-April conduct. Doc. 79 at 17-18. And despite the covenant not to sue unequivocally covering unaccrued or contingent rights, the report and recommendation inexplicably limited it to when "that right has actually been taken away." Doc. 79 at 18.

Next, the report and recommendation found the threshold requirements and discretionary *Intel* factors satisfied. Doc. 79 at 18-27. In particular, relying on a different Section 1782 order currently on appeal regarding a subpoena to J.P. Morgan Chase, it rejected the argument that the English Court had found discovery about the African Business entirely irrelevant. Doc. 79 at 23-24. But that was not the point—the point was that the English Court found that *broad* discovery about the African Business was irrelevant because it was a cost-plus contract and what mattered was the expenditures, not everything under

19

the sun about the African Business. It held that information did not have to be discoverable abroad, without recognizing that Beno's argument was not foreign discoverability but rather foreign irrelevance coupled with a collateral attack on the English relevance ruling. Doc. 79 at 24-25. The report and recommendation also found that Beno was required to predict how many hours it would take to respond to subpoenas that had not been served yet in order to make a showing of undue burden, and found them not facially overbroad, though it encouraged the parties to confer. Doc. 79 at 25-26.

Judge Moore denied Beno's objections to the Report and Recommendation and adopted it, generally summarizing each of the findings and adopting them. Doc. 84. He stated that the definition of Liabilities did not include "discovery requests" expressly. Doc. 84 at 10. Like the Report and Recommendation, he held that because the alleged Monline International to Monline UK transfer was a post-April 2016 allegation, it was irrelevant that other key, disputed facts in the English Proceedings predate April 2016. Doc. 84 at 10-11. And like the Report and Recommendation, Judge Moore focused on the English Court allowing some targeted discovery into a few discrete factual

20

questions, rather than its rejection of broad discovery into the African Business as irrelevant. Doc. 84 at 13-14.

Beno timely appealed. Doc. 85.

## SUMMARY OF THE ARGUMENT

The District Court's order should be reversed because it fundamentally misread the Covenant and because the District Court should have rejected or limited discovery to the issues deemed relevant in England rather than allowing a collateral attack on the English Court's order finding broad discovery related to the African Business irrelevant.

***First***, to the extent that the District Court suggested that the Covenant could only be considered if it was judicially noticeable or incorporated by reference into the pleadings, that is simply wrong. A Section 1782 application is a summary proceeding—there are no pleadings and the application is heard like a motion. A covenant not to sue is a defense that must be considered on such an application, whether or not the petition refers to it.

***Second***, the covenant prohibits this proceeding. It covers not only substantive claims but ancillary proceedings like this one—that is why

Section 5.1 distinguishes between "assert[ing] a Claim" and bringing "Proceedings . . . in relation to any Claims." Doc. 30-2 at 9-10. And this is a Proceeding "in relation to" a Claim. The English Proceedings relate to whether a contract was transferred to Monline International a month before the settlement. That is an existing fact as of April 15, 2016, giving rise to rights, interests, obligations, or claims, among other things, so the English Proceedings are Claims related to liabilities in respect of those facts. The language of the Settlement Deed is remarkably broad and specifically states—contrary to the District Court's interpretation—that the right giving rise to a liability to which a Claim relates may be contingent, unknown, and/or unaccrued. It is only the facts to which a liability relates that need exist as of the settlement date, not the Claim. Doc. 30-2 at 4-5, 7. Even if the English Proceedings require proof of additional, subsequent facts, nothing in the definition would remove them from the definition of Claim. Moussy should be held to what he agreed.

   ***Third***, all or most of the discovery requested is irrelevant. The English Court has issued rulings defining what is relevant, and it specifically rejected the relevance of broad discovery about the African

Business. What matters in England is what services Monline UK
provided and how much it spent to provide them, since the supposedly
diverted business opportunity is the chance to earn a fee equal to 15% of
expenditures. Anything broader than that is irrelevant, which is
grounds for denying the application. The District Court erred when it
held otherwise.

*Finally*, the District Court erred to the extent it thought itself
free to reexamine the relevance of matters in the English proceeding.
Comity and the public policy against relitigation or collateral attack on
a foreign court's relevance determinations weigh strongly against
allowing a do-over of discovery rulings in a court less familiar with the
allegations and applicable law that determines relevance.

## ARGUMENT

## I.   STANDARD OF REVIEW

Interpreting Section 1782 is a question of law that the Court
reviews *de novo. Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 815
(11th Cir. 2019). If the District Court correctly construed the statute, its
decision to grant or deny discovery is reviewed for abuse of discretion.
*Id.* As for interpreting the covenant not to sue, "*de novo* review is

appropriate when addressing the construction of written contracts."

*Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260,

1267 (11th Cir. 2003).

## II.  THE COVENANT NOT TO SUE IS A DEFENSE TO A SECTION 1782 APPLICATION.

To start, the District Court's orders appear to suggest that, where

a covenant not to sue is raised as a defense to a summary proceeding

like a Section 1782 application, the contract can only be considered if it

meets the sort of level of judicial noticeability or incorporation by

reference that would apply to a motion to dismiss a plenary complaint.

Doc. 79 at 13-15. According to the District Court—which cited only a

case about whether a covenant not to sue is executory in a bankruptcy

context for this point—a covenant not to sue cannot be raised in a

Section 1782 application unless it is "central" to the application as

framed by the applicant. Doc. 79 at 15. The District Court effectively

held that a party *cannot* agree to abstain from bringing a Section 1782

application, or at least that the only remedy for breaching a covenant

meant to end litigation is more litigation.

That is not right. A Section 1782 application is a summary

proceeding more akin to a motion than a complaint. There is not some

24

later motion for summary judgment or trial where other evidence can be introduced. Where Congress authorizes these types of summary applications, it is departing from the usual rules that apply to a complaint. In the analogous context of summary proceedings to confirm arbitration awards, courts have noted that "courts do not resolve these applications for relief using procedures for ordinary civil actions because the FAA provides for applications to be made and heard as motions rather than the filing of a complaint." *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 254–55 (3d Cir. 2020). There are many other examples of this. *E.g.*, *S.E.C. v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (summary proceeding to enforce SEC order); *United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072, 1078 (D.D.C. 1978) (summary proceedings on administrative subpoenas).

The question is thus not whether the covenant was judicially noticeable or incorporated into a pleading, because Section 1782 applications do not have pleadings to be attacked. There is no later stage where there is summary judgment or trial and evidentiary materials can be brought in after the initial application. Rather, because this is a summary proceeding, the District Court was required

25

to consider all evidence relevant to the application—including evidence of affirmative defenses. The application *is* the merits, and any relevant evidence can come in to oppose it, whether it is "central" to the facts asserted by the applicant or not.

A covenant not to sue is precisely the sort of affirmative defense that the District Court should have considered. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 n.10 (9th Cir. 2012) ("[U]nder the modern view a covenant not to sue, like a release, operates as a complete bar to the underlying litigation."). The District Court, citing an irrelevant case about whether covenants not to sue are executory contracts for bankruptcy purposes, seemed to think that the only way such a covenant is enforced is an action for damages, but as *Skilstaf* explains, that is wrong in the modern era. Indeed, it is especially wrong where, as here, the covenant not to sue itself states that it can be enforced specifically and not just through money damages—a clear contractual sign that this is not just a provision remediable through a separate lawsuit for money damages. Settlement Deed § 5.4. Under the District Court's ruling, even an explicit agreement not to bring Section 1782 proceedings could not prevent a Section 1782 proceeding, which

26

cannot be right. Beno bought from Moussy a promise not to bring Proceedings and a further express clarification that it was enforceable through means other than damages. Moussy should be held to that bargain that he freely entered. It simply cannot be correct that more litigation is the only remedy for breach of a deal for no litigation.

## III.   BECAUSE THIS IS A PROCEEDING RELATING TO A CLAIM RELATING TO LIABILITIES IN RESPECT OF FACTS THAT EXISTED AS OF APRIL 15, 2016, IT IS BARRED BY THE COVENANT NOT TO SUE.

Turning to the District Court's interpretation of the covenant, it is simply wrong and fails to grapple step-by-step with its language. The Covenant contains at least four layers of definitions, and the District Court erroneously mixed them together and failed to address language that directly rejects its theory that an ancillary proceeding like this one is not covered or that a claim must have actually accrued as of April 15, 2016 in order to be within its scope.

Moussy promised not to bring Proceedings related to Claims related to Liabilities in respect of facts existing as of April 15, 2016. Only facts creating a liability (which may be unaccrued, contingent or unknown) need exist as of that date, and that liability must merely related to the Claim, not "giv[e] rise to" it as the District Court

27

incorrectly reasoned. Doc. 79 at 17. A Section 1782 petition is a legal proceeding; the petition relates to claims relating to liabilities in respect of facts that existed on April 15, 2016, whether known or unknown to Moussy at the time. That is all that matters. If Moussy wanted to preserve his right to bring ancillary proceedings, he should have limited Section 5.1 to just Claims and not Proceedings in relation to Claims. If Moussy wanted to preserve his right to bring Claims where some facts predate the settlement but others do not, he should not have agreed to the broad "related to" or "in connection with" language or limited Liabilities to accrued claims rather than unaccrued, contingent, unknown claims. In fact, he agreed to this sweeping language, and the District Court's reading of it as not covering discovery or claims partially based on pre-settlement facts is atextual.

### A.    "Proceedings *** In Relation to Any Claims" Includes Ancillary Applications Like This One.

Moussy agreed to forswear not just Claims, but also Proceedings "in relation to any Claims." Doc. 30-2 at 9-10 § 5.1. That plainly covers ancillary proceedings like a discovery application that relate to covered Claims, and so the District Court was wrong to focus on whether a Section 1782 application is a "claim in the traditional sense." Doc. 79 at

28

16. The whole point of including Proceedings related to a Claim is to make clear that not just Claims themselves are barred by the Covenant.

Release or covenant not to sue language should be interpreted in a way that gives effect to all of its provisions. *In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015). That means that "Proceedings *** in relation to any Claims" cannot simply mean Claims. Doc. 30-2 at 9-10 § 5.1. That would render the phrase meaningless and would also defeat the point of having a broad definition of Proceedings as "any legal *** or other action or proceedings." Doc. 30-2 at 7 § 1.1.

Rather, Proceedings "in relation to any Claims" is plainly designed to ensure that not just the substantive claim itself is barred by the covenant *but also any ancillary application or other type of proceeding related to it*. This application—a discovery application that is technically brought as a separate proceeding—is precisely the sort of thing that is intended to be caught by that language. Thus, as long as this application relates to anything falling within the express written definition of Claims, it is barred by the covenant.

The District Court thus went astray by looking for whether a discovery proceeding is a "claim in the traditional sense." Doc. 79 at 16.

29

The point of the Proceedings language is to cover actions such as this one that merely relate to Claims. Similarly, it erred in looking for discovery proceedings in the definition of Liabilities—but that is both atextual and wrong. As long as a Proceeding relates to a Claim, it is barred even if the Proceeding itself does not "assert a Claim" (which is separately addressed in Section 5.2). The *only* thing for which the definition of Liabilities matters is whether anything that this Proceeding relates to is a "Claim." And as explained below, what this Proceeding relates to falls squarely within the definition of a Claim.

**B. Because the English Litigation Relates to Liabilities "In Respect of" Facts Existing as of April 15, 2016, It Is A Claim.**

The District Court similarly failed to follow the textual structure of the Settlement Deed in interpreting whether what this Proceeding relates to is a Claim. Because critical facts underlying the claims asserted in the English Proceeding predate the Settlement Deed, the English Proceeding is a Claim related to a Liability in respect of facts that existed as of April 15, 2016, and so ancillary proceedings that relate to them are also barred. The District Court erred in focusing on whether the claims asserted in the English Proceeding themselves

30

existed as of April 15, 2016. Doc. 79 at 17-19. That conflates the definition of Claim with the definition of Liability and muddles the structure of the definition of Liability on top of that. Indeed, it entirely reads out of the contract the express statement that the right on which a liability is based can be unaccrued and contingent. By the plain text of the definitions, a Claim need only "relate to" a Liability; it need not itself be a Liability, nor must the Liability "giv[e] rise to" the Claim. Doc. 30-2 at 4-5, 7. And a Liability need not itself exist as of April 15, 2016; it need only be in respect of a fact that existed on that date that gives rise to a right, even if that right has not accrued and is contingent, meaning that it only turns into a present right if additional facts happen later. Doc. 30-2 at 7. In short, Moussy agreed to a very broad covenant not to sue that covered even liabilities *partially* based on facts that existed as of April 15, 2016.

To start, the definition of "Claim" includes "any and all claims relating to"—a broad phrase—"any and all Liabilities arising from or related to or in connection with"—again, a broad phrase—a list that includes "any other matter arising out of or related to or connected with the relationships between the Parties." Doc. 30-2 at 4-5 § 1.1. There is a

31

qualifier that it has to "relate to the African Business," but that is obviously satisfied here. *Id.* So, if the English Proceeding even just *relates* to Liabilities, as defined by the Settlement Deed, it is a Claim.

And it does relate to Liabilities. Liabilities are "any and all liabilities in respect of any existing (as of [April 15, 2016]) matter, fact, action or inaction giving rise to" a long list of things including sweepingly broad ones like "demand," "obligation," "claim," "petition," and "right or interest of any kind whatsoever." Doc. 30-2 at 7. The English Proceeding falls within this definition because it plainly relates to a "Liability" in respect of facts that existed as of April 15, 2016—the disputed fact as to whether the Parker contract was transferred to Monline International in **March 2016**. Doc. 4-1 at 11. That alleged transfer gives rise to an alleged "obligation," "claim," or "right or interest" to pay fees under that agreement. Doc. 30-2 at 7. The claims in the English Proceeding relate directly to the alleged transfer of this agreement in March 2016 and the fees Moussy claims Monline International should have earned under it. *Compare* Doc. 4-1 at 11, with Doc. 69-5 at 5-7, 10-12. Without that transfer, there is no English case.

Those facts alone might not have been *sufficient* to create a viable claim in England, but that is answered by the text of the provision itself, in at least two different ways.

***First***, by the plain text of the provision, it is the "matter, fact, action or inaction" that must exist as of April 15, 2016. Doc. 30-2 at 7. The liability need not exist by then; the liability need only be "in respect of" a fact that existed then. *Id.* And here, in any event, the alleged "Liability" to pay fees under the Parker contract, and the alleged transfer of that right, existed as of March 2016. Doc. 4-1 at 11.

***Second***, the provision also makes clear—in an explicit and repetitive way—that the obligation, claim, interest, or right, need not even have accrued or may depend on additional facts that did not yet exist. It is "of any kind or nature whatsoever," and specifically includes "contingent" rights—ones that depend on facts that have not yet happened. Doc. 30-2 at 7. It specifically includes "unaccrued" rights, meaning ones that cannot yet be sued upon because additional things have to happen for the cause of action to be complete. *Id.* And it specifically includes "unknown," "undisclosed," and "unsuspected" rights, so none of this turns on whether Moussy knew or even could

33

possibly have known the facts. *Id.* These are the broad terms to which Moussy agreed in the settlement.

So here, Step 1—proving Monline International had the contractual rights in the first place—falls within the definition of a Liability and the English Proceedings relate to that Liability. It does not matter that additional facts, postdating the settlement, may have been necessary to cause the claim to accrue or those rights were contingent. The definition is drafted so that these subsequent, additional facts do not take a claim that already falls within the definition out of it.

That is where the District Court went wrong. It does not matter if there are other allegations in the English Proceeding that post-date the settlement. It does not matter if the claims do not accrue or are contingent on additional post-settlement facts. Moussy, fully represented, agreed to a broad covenant not to sue for claims relating to liabilities relating to facts as of April 15, 2016 that give rise to unknown, unaccrued, contingent rights. That is surely a broad agreement and Moussy may now regret signing it. But it was not the District Court's place to rewrite it, and the fact that the English

34

Proceedings allege additional, subsequent facts—even ones necessary for the claim to accrue—does not take them out of the agreement's plain language.

As such, this is a Proceeding related to a Claim related to a Liability. Thus, the covenant not to sue prohibits it and requires denial of the Section 1782 application.

## IV. SWEEPING DISCOVERY ABOUT THE AFRICAN BUSINESS IS IRRELEVANT TO THE ENGLISH DISPUTE.

The District Court abused its discretion in granting the Section 1782 application because the broad information Moussy sought about the African Business for more than a decade is irrelevant, as the English Court had already held. This Court has held that Section 1782 assistance should be denied based on "the irrelevance of the requested discovery to the nature of the foreign proceedings." *Kang v. Noro-Moseley Partners*, 246 F. App'x 662, 664 (11th Cir. 2007).

Here, the English Court had already held "based on relevance" that information about the African Business (other than the narrow question of what services Monline UK provided to them and what Monline UK was paid on its cost-plus contract for doing so) did not affect any fact at issue. Doc. 69-8 at 43-44. The Requests here go far

35

beyond that, and the District Court erred in approving them on the theory that just because the English Court held some narrow categories relating to the African Business was relevant, its ruling that *broad* discovery beyond those narrow points was irrelevant had no impact.

To start, it is important to make clear what the issues in dispute in England are. This is not litigation over Moussy's rights to the African Business generally or to the profits of the African Business. It is a case saying that *Monline International* supposedly should have earned some profits on a cost-plus contract for providing services to the African Business. Doc. 69-5 at 13-14; Doc. 69-8 at 31. That is why the English Court ruled that discovery about what services Monline UK provided and how much they cost were relevant. Doc. 69-8 at 43-44. And it is likewise why it *denied* discovery seeking anything else about the African Business as irrelevant, because it does not matter at all what the African Business's revenues, profits, activities, or operations are. *Id.* *All* that matters to calculate damages in England is what services provided by Monline UK fell into the category that the parties there have called "Parker Services" and what expenses Monline UK incurred in providing them, triggering the supposed cost-plus fee of 15%. The

District Court abused its discretion by failing to recognize that the English Court had held all or almost all of what Moussy seeks in the categories it found irrelevant.

That is why the English Court said that Issue 9—the request for broad discovery of the African Business—did not matter "based on relevance." Doc. 69-8 at 44. As Deputy Master Scher said, "I do not consider the broad issues of the African business to be a key issue in these proceedings." Doc. 69-8 at 43. All that matters is what costs Monline UK incurred in providing services and what that sum multiplied by 15% is.

The District Court noted that the English Court *did* allow discovery into certain topics rather than enjoining *all* discovery about the African Business. But those topics were much narrower than the discovery sought here. They covered narrow issues like what services Monline UK—the entity that took over the supposedly diverted business opportunity to provide services on a cost-plus basis—provided and what they earned for it. These issues, Issues 8(g) and (h), turn on the cost to Monline UK of providing the services alleged to have been

formerly covered by the Parker contract, not the broad information about the African Business Moussy now seeks here. Doc. 69-7 at 6-8.

It is no answer to an argument based on irrelevance that a court considering a Section 1782 application is not required to limit itself to the discovery available in the foreign court. *See In re Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016). Beno's argument is not that a Section 1782 application is limited to material discoverable in England, but rather that the English Court has said that what Moussy seeks, or at the very least most of it, is *irrelevant to the English Proceeding*. Irrelevance *is* a proper basis to deny Section 1782 assistance. *Kang*, 246 F. App'x at 664. And no court is better placed to decide that something is irrelevant than the court actually overseeing the proceeding. The point is thus not that the English court denied discovery but *why* it did so: because the underlying facts, whatever they may be, do not matter to resolving any issue before it.

Fundamentally, most, if not all, of what Moussy seeks is what the English Court decided had no relevance to the issues before it. Properly understanding that ruling—rather than looking for some sort of injunction against seeking discovery related to the African Business—

38

should have led to denial of the application because, as in *Kang*, what it seeks simply is not the issue in England.

## V. THE ENGLISH COURT'S RULING THAT BROAD DISCOVERY OF THE AFRICAN BUSINESS WAS IRRELEVANT WAS ENTITLED TO COMITY.

Even if the Requests scrape over the threshold of relevance, moreover, the District Court misunderstood the scope of its discretion under Section 1782 and erred by failing to give significant weight to the English Court's determination that the African Business was broadly irrelevant to calculating the cost-plus fee that Monline International supposedly should have earned. Section 1782 is intended as a comity-promoting statute, giving aid to foreign courts. It should not be used to collaterally attack determinations of relevance in the underlying foreign proceeding.

Under *Intel*, whether to grant Section 1782 assistance is discretionary. The Supreme Court has identified certain "non-exclusive factors" that guide that discretion including (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" over whom the "foreign tribunal has jurisdiction" and thus "can itself order them to produce evidence"; (2) the "nature of the

foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Here, the District Court treated Beno's comity arguments as if they stood outside the *Intel* factors and thus could not be considered—itself a mistake, because *Intel* lists some non-exclusive factors but does not limit a court to those factors or turn them into some narrow formula. *Id.* But in any event, Beno's arguments principally fall under the third *Intel* factor because seeking a do-over in a court in the United States of discovery denied abroad on relevance grounds violates public policy. It is wasteful litigation that fails to accord due respect to a court of coordinate jurisdiction and encourages wasteful and cumulative relitigation rather than respecting the finality of the English Court's order. The appropriate path, at least once the English Court's order is construed correctly, is to "respect the judgment of [the] foreign tribunal

40

[and] to defer to parallel foreign proceedings." *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004). Courts elsewhere have frequently noted that collateral attacks on foreign discovery orders, particularly ones based on relevance rather than technical grounds, are strongly disfavored under Section 1782. *See, e.g.*, *In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020) (noting that courts "routinely reject[] Section 1782 motions under Factor Three when applicants have already exhausted available remedies in foreign tribunals and seek another 'bite at the apple' after having already been denied recourse," while ultimately finding that no such concern existed on the facts of that case); *In re Tel. Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *8 (S.D.N.Y. Sept. 6, 2023) (same); *In re Escallon*, 323 F. Supp. 3d 552, 560 (S.D.N.Y. 2018) (finding that seeking deposition of witnesses after they had testified in Colombia was a circumvention attempt). Wasteful relitigation contravenes public policy. *See, e.g.*, *Seguros Tepeyac, S. A., Compania Mexicana de Seguros Generales v. Jernigan*, 410 F.2d 718, 727 (5th Cir. 1969) ("[N]o useful public policy is

served by permitting Seguros to relitigate its rights under an insurance policy that has already been expressly construed in a prior suit.").

This Court should not permit relitigation of the lines that the English Court drew. The English Court made clear what the key issues were. Those issues *included* what services Monline UK actually provided to, among others, the African Business. But those issues *excluded* broader discovery regarding the African Businesses—Issue 9. Doc. 69-8 at 43-44. Sweeping discovery of the African Business and related entities is plainly on the wrong side of that line.

Moreover, even if the Settlement Deed were not a standalone defense to the entire application, there is a strong public policy in favor of enforcing settlement agreements. *E.g.*, *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) ("We favor and encourage settlements in order to conserve judicial resources."); *Ins. Concepts, Inc. v. W. Life Ins. Co.*, 639 F.2d 1108, 1111 (5th Cir. 1981) ("Without a doubt, public policy favors the settlement of claims brought before the courts."). As discussed above, once the District Court's misreading of it is corrected, the public policy favoring settlement strongly supports denying the application.

42

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's order and deny the application.

Dated:  November 20, 2024                STEPTOE LLP


                                        */s/ Nathaniel J. Kritzer*
                                        Nathaniel J. Kritzer
                                        *nkritzer@steptoe.com*
                                        Joseph M. Sanderson
                                        *josanderson@steptoe.com*
                                        STEPTOE LLP
                                        1114 Avenue of the Americas
                                        New York, New York  10036
                                        (212) 506-3900

                                        *Counsel for Appellant*

43

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,723 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style required of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2019 in Century Schoolbook 14-point font.

Dated:  November 20, 2024          STEPTOE LLP

*/s/ Nathaniel J. Kritzer*
Nathaniel J. Kritzer
*nkritzer@steptoe.com*
Joseph M. Sanderson
*josanderson@steptoe.com*
STEPTOE LLP
1114 Avenue of the Americas
New York, New York  10036
(212) 506-3900

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I am electronically filing the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on November 20, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  November 20, 2024                    STEPTOE LLP

_/s/ Nathaniel J. Kritzer_____
Nathaniel J. Kritzer
*nkritzer@steptoe.com*
Joseph M. Sanderson
*josanderson@steptoe.com*
STEPTOE LLP
1114 Avenue of the Americas
New York, New York  10036
(212) 506-3900

*Counsel for Appellant*

1